UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN BRATTON,                       )
                                    )
    Plaintiff,                      )
                                    )
vs.                                 )
                                    )   Court No. 06 Civ. 0694 (JDB)
CHATEL REAL ESTATE, INC.;           )
THIERRY LIVERMAN; and               )
MARY WHITE,                         )
                                    )
    Defendants.                     )

**FIRST AMENDED COMPLAINT**

    Plaintiff, John Bratton, for his complaint, alleges as follows:

**NATURE OF THE ACTION**

1.    This is an action for unlawful racial discrimination and deprivation of civil rights in connection with defendants' leasing of office space to plaintiff in the District of Columbia.

2.    Plaintiff seeks compensatory and punitive damages against defendants Chatel Real Estate, Inc. ("Chatel"), Thierry Liverman, and Mary White for their violation of 42 U.S.C. §§ 1982 and 1981.

3.    In addition to the asserted federal civil rights violations, plaintiff alleges violation of §§ 2-1402.21 and 2-1402.23 of the District of Columbia Human Rights Act ("Human Rights Act"), giving rise to additional damages.

4.    Plaintiff's request for compensatory and punitive damages is based upon the following: (1) defendants repeatedly declined to lease office space to plaintiff in the District of Columbia because he is an African-American and because he had long hair with dreadlocks; (2) after receiving several offers from plaintiff to lease the property, defendants falsely misrepresented to

him that the office space had been leased to another tenant when no other tenant had executed a lease agreement for the premises nor made an offer to defendants, (3) defendants leased the office space to plaintiff only after he filed a racial discrimination complaint with the District of Columbia Office of Human Rights ("Office of Human Rights"), (4) when defendants finally accepted plaintiff's offer to lease office space after he filed an administrative complaint, they did so under highly unfavorable terms and conditions, (5) racial animus was the motivating factor in defendants' wrongful actions; and (6) defendants' racial discrimination of plaintiff was willful or done with reckless disregard of the civil rights laws.

## JURISDICTION AND VENUE

5.      This action arises under 42 U.S.C. § 1982 (prohibiting racial discrimination in property transactions), 42 U.S.C. § 1981 (prohibiting racial discrimination in the making of contracts), and the Human Rights Act, §§ 2-1402.21 (prohibiting discrimination based upon race or personal appearance in commercial space accommodations) and 2-1402.23 (prohibiting discrimination by real estate brokers and sales agents).

6.      The Court possesses jurisdiction to entertain plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction, as the pendent claims are so related to the federal claims that they form part of the same case or controversy).

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all defendants reside in the District of Columbia and all of the events and omissions giving rise to plaintiff's claims occurred in the District of Columbia.

**THE PARTIES**

8.      Plaintiff John Bratton is a citizen of the District of Columbia, residing at 1223 10th Street, N.W., Washington, DC 20001.  Mr. Bratton is a real estate broker and the owner of Bratton Realty, Inc.  Mr. Bratton is an African-American.  At all relevant times, Mr. Bratton had long hair with dreadlocks.  Subsequent to the events at issue here, Mr. Bratton donated his hair to a cancer treatment center.

9.      Defendant Chatel Real Estate, Inc. is a District of Columbia corporation having its principal place of business at 3210 N Street, N.W., Washington, DC 20007.  Chatel is in the business of real estate brokerage—the sale and leasing of residential and commercial property—and property management.

10.     Defendant Thierry Liverman is a citizen of the District of Columbia residing at 3554 T Street, N.W., Washington, DC 20007.  Mr. Liverman is Chatel's principal broker and manager.

11.     At all relevant times, John Pagones was a licensed real estate agent employed by or acting as an agent of Chatel.  Mr. Pagones was affiliated with Chatel's Georgetown Office located at 3210 N Street, N.W., Washington, DC 20007.

12.     At all relevant times, John Pagones was the lawful agent of Chatel and its broker, Thierry Liverman, constituting a principal-agent relationship for *repondeat superior* purposes.

13.     Defendant Mary White is a citizen of the District of Columbia residing at 1241 33rd Street, N.W., Washington, DC 20007.  Ms. White is a real estate broker currently affiliated with Washington Fine Properties, LLC.

14.     Ms. White is the owner of the commercial property located at 1622 Wisconsin Avenue, N.W., Washington, DC 20007.

15. Ms. White was the owner of a real estate brokerage in the District of Columbia named Mary White Real Estate, Inc. At all relevant times, Barrett Anderson was Ms. White's office manager at 1622 Wisconsin Avenue, N.W., Washington, DC 20007.

## FACTUAL ALLEGATIONS

16. At all relevant times, defendants and each of them knew that plaintiff is an African-American.

17. On July 29, 2005, defendant White publicly announced her intent to lease her commercial property located at 1622 Wisconsin Avenue, N.W., Washington, DC 20007 ("Wisconsin Avenue property"). This property has three levels, the upper level being residential and the street and lower levels commercial.

18. On July 29, 2005, defendants Chatel and Liverman, through their employee or agent John Pagones, listed the street level of Ms. White's property located at 1622 Wisconsin Avenue, N.W., Washington, DC 20007. The listing was posted on the Metropolitan Regional Information Systems, Inc. ("MRIS"), the primary source of listing information for real estate brokers and agents in the District of Columbia.

19. On or about the same time, Chatel placed a visible "for rent" sign outside Ms. White's Wisconsin Avenue property. Chatel also inserted a "lockbox" next to the entrance of the Wisconsin Avenue property to provide real estate agents access to the property for showing to prospective tenants.

20. The MRIS listing provided that the street level of the Wisconsin Avenue property was available for a 12 to 48-month lease at the rate of $2,500 per month. Utilities were designated as "separate" charges.

21.     No other terms or conditions pertaining to the lease were disclosed on the listing for the Wisconsin Avenue property. The listing did not indicate that a portion of the real estate taxes were to be paid by the tenant. Nor did it provide that a right of first refusal for purchase of the property during the lease term was unavailable.

22.     The listing identified John Pagones as the listing agent, Chatel as the listing company, and Mary White as the owner of the Wisconsin Avenue property.

23.     On September 23, 2005, based upon Ms. White's instructions, defendants Chatel and Liverman, through their employee or agent John Pagones, listed on the MRIS the lower level of the Wisconsin Avenue property.

24.     The listing specifically provided that the lower level of the Wisconsin Avenue property was available for a 12 to 36-month lease at the rate of $1,000 per month. Utilities were designated as "separate" charges.

25.     No other terms or conditions pertaining to the lease were disclosed on the listing for the lower level of the Wisconsin Avenue property. The listing did not indicate that a portion of the real estate taxes were to be paid by the tenant. Nor did it provide that a right of first refusal for purchase of the property during the lease term was unavailable.

26.     The listing identified Mr. Pagones as the listing agent, Chatel as the listing company, and Ms. White as the owner of the Wisconsin Avenue property.

27.     On October 6, 2005, both the street and lower levels of the Wisconsin Avenue property were vacant and continued to be posted on the MRIS as available for rent. Further, Chatel's lockboxes and "for rent" signs continued to be visibly placed outside the Wisconsin Avenue property. Indeed, as of October 6, 2005, the street level of the Wisconsin Avenue property had been on the market for 66 days.

28. On October 6, 2005, plaintiff visited the Wisconsin Avenue property to determine whether it would be a suitable office space for his real estate brokerage, Bratton Realty, Inc. Plaintiff informed Ms. White's office manager, Barrett Anderson, that he was interested in leasing the property. Mr. Anderson stated that Mr. Pagones, a real estate agent at Chatel, was the listing agent for the Wisconsin Avenue property and directed plaintiff to discuss the proposed lease with him.

29. Shortly thereafter, on October 6, 2005, plaintiff visited Chatel's Georgetown office located at 3210 N Street, N.W., Washington, DC 20007, to obtain further information and execute a lease agreement for the Wisconsin Avenue property. Plaintiff informed Mr. Pagones that he had recently toured the Wisconsin Avenue property and would like to lease it. Plaintiff further informed Mr. Pagones that he was a real estate broker and the owner of a real estate company. Plaintiff indicated that he would like to execute a lease agreement for the Wisconsin Avenue property today.

30. Upon learning that plaintiff, an African-American with long hair with dreadlocks, intended to lease the Wisconsin Avenue property, Mr. Pagones began sweating and acting nervous.

Mr. Pagones informed plaintiff that he did not have a lease agreement available. When plaintiff inquired as to whether Chatel had a blank lease agreement for execution, Mr. Pagones stated, "I don't have a lease." When plaintiff inquired as to whether Chatel had a rental application available, Mr. Pagones stated that he had none. When plaintiff inquired about the terms and conditions that the landlord required on the lease, Mr. Pagones stated that he had no information. When plaintiff offered to provide a security deposit and first month's rent to Chatel in order to

make an offer for the property the next day, Mr. Pagones declined to accept plaintiff's checks on the spurious basis that Chatel had no lease agreement.

31.     Despite Mr. Pagones' representations to plaintiff, Chatel possessed blank lease agreements containing its logo at its Georgetown office on October 6, 2005.  Further, Mr. Pagones could have readily obtained a standard lease agreement by logging into the Greater Capital Area Association of Realtors' ("GCAAR") database of forms.  Mr. Pagones' representations that Chatel neither had a lease agreement nor a rental application on October 6, 2005 were false and driven by racial animus toward plaintiff, seeking to dissuade him from leasing the Wisconsin Avenue property.

32.     At the conclusion of his conversation with Mr. Pagones on October 6, 2005, plaintiff informed Mr. Pagones that he would draft his own lease agreement at his office and make an offer for the Wisconsin Avenue property the next day.  In response, Mr. Pagones stated that Ms. White intended to "keep the back room in the lower level unit and the backyard for herself." However, the backyard had no relation to the street level property sought by plaintiff.

33.     On October 7, 2005, plaintiff hand-delivered his lease agreement to Mr. Anderson, along with his financial information, security deposit ($2,500) and first month's rent ($2,500). Mr. Anderson delivered this material to Mr. Pagones the same day.

34.      On October 7, 2005, plaintiff left telephonic messages for Ms. White, informing her of his lease agreement for the Wisconsin Avenue property.  Ms. White did not return plaintiff's messages.

35.     On October 10, 2005, Mr. Pagones informed plaintiff that Ms. White had rejected his lease agreement because she wanted him "to fill out a standard commercial lease and an

7

application." Mr. Pagones sent plaintiff a commercial lease agreement bearing Chatel's logo along with a rental application obtained from GCAAR's database of forms. Contrary to Mr. Pagones' representation on October 6, 2005, Chatel indeed possessed lease agreements and rental applications to serve its property management and real estate clientele.

36. On October 11, 2005, plaintiff submitted a revised lease agreement to Ms. White on the forms supplied by Chatel. Plaintiff informed Mr. Pagones that he was open to leasing both the street and lower levels of the Wisconsin Avenue property at the listed price of $3,500. However, Mr. Pagones informed plaintiff that he would have to pay $200 per month for property taxes even though this "condition" was not set forth in the MRIS listing or in any other material previously submitted by Chatel to plaintiff.

37. Later that day, Mr. Pagones informed plaintiff that his lease agreement may be rejected because another tenant was interested in the Wisconsin Avenue property. Subsequently, on October 11, 2005, Mr. Liverman (Chatel's broker) informed plaintiff that Ms. White had rejected his lease application because another tenant, purportedly "a friend of a friend," had leased the space. When plaintiff complained of the discriminatory practices of defendants, Mr. Liverman stated that this was "just business." Mr. Liverman further indicated that Ms. White had made a decision and would not change her mind.

38. Defendants have failed to identify the tenant who purportedly leased the Wisconsin Avenue property from Ms. White on or about October 11, 2005. Nor did defendants ever change the availability status of the Wisconsin Avenue property on their MRIS listing, which indicated that the property was available for rent as of October 13, 2005.

39. On the basis of information and belief, defendants misrepresented to plaintiff the unavailability of the Wisconsin Avenue property, and no one (other than plaintiff) executed a

lease agreement or submitted an offer to lease the Wisconsin Avenue property between October 6 and October 11, 2005. Defendants and each of them knew that the Wisconsin Avenue property was available for rent on October 11, 2005, and they refused to lease the space to plaintiff because he is an African-American and had long hair with dreadlocks. Defendants' decision not to lease the Wisconsin Avenue property to plaintiff on October 11, 2005 was driven by racial animus toward him and done willfully or with reckless disregard of the civil rights laws.

40.     Defendants' rejection of plaintiff's offers to lease the Wisconsin Avenue property caused plaintiff great humiliation, embarrassment, and emotional distress.

41.     On October 12, 2005, plaintiff informed defendants of his intent to institute legal proceedings against them for their unlawful discrimination in connection with the leasing of the Wisconsin Avenue property.

42.     On October 19, 2005, plaintiff filed an administrative complaint with the Office of Human Rights, alleging unlawful discrimination against defendants in connection with the leasing of the Wisconsin Avenue property.

43.      Upon learning of plaintiff's administrative complaint, defendants changed their decision not to lease the Wisconsin Avenue property to plaintiff despite their previous representations that another tenant had executed a lease agreement for the property and that the property was no longer available. Defendants' decision to lease the Wisconsin Avenue property to plaintiff after he filed an administrative complaint was made with the intent to conceal their racial animus toward plaintiff.

44.     Following plaintiff's administrative complaint, Ms. White's counsel, John Gordon Forester, informed plaintiff that he was going to "negotiate the lease" with him. Mr. Forester indicated Ms. White would only execute a lease agreement containing the following conditions,

none of which were included in the MRIS listing: (1) plaintiff would not have a right of first refusal allowing him to purchase the Wisconsin Avenue property for the same price as the highest offer made to Ms. White during the term of the lease, (2) plaintiff would not lease the lower level of the Wisconsin Avenue property, and (3) plaintiff would have to pay $200 per month for real estate taxes.  Mr. Forester insisted that Ms. White never intended to lease the lower level property despite its being listed on the MRIS since September 2005 and there being a lockbox placed on the steps specifically for the lower level property.  Mr. Forester thus directed plaintiff to sign a (third) lease agreement –this time drafted by Mr. Forester—incorporating these conditions and to submit his tax returns and bank statements for scrutiny.

45.     Mr. Forester also accused plaintiff of being a "test case" for discrimination, stating that plaintiff did not intend in good faith to lease Georgetown office space and was simply "looking for a reason to sue."

46.     The new conditions described in paragraph 44 above were highly unfavorable to plaintiff, were demanded by Ms. White in order to dissuade plaintiff from leasing the Wisconsin Avenue property, and were driven by Ms. White's racial animus toward plaintiff.

47.     On October 31, 2005, plaintiff executed a (third) lease agreement for the Wisconsin Avenue property incorporating the new terms and conditions demanded by Ms. White. Plaintiff's execution of this lease agreement was based on his perceived business need to set up a real estate office in a prominent location in Georgetown.  Ms. White's demand of highly unfavorable terms and conditions from plaintiff, driven by racial animus, caused plaintiff further humiliation, embarrassment, and emotional distress.

48.     Plaintiff has since been occupying the street level of the Wisconsin Avenue property for his real estate office.  The lower level of the property remains vacant to this day.

49.     Plaintiff and defendants conducted mediation before Mandi W. Galloway, Esq., of the Office of Human Rights but could not resolve their dispute. On December 7, 2006, upon the conclusion of mediation proceedings, Ms. Galloway informed plaintiff that his administrative case would be "closed within 10 days" if the parties could not reach agreement. The parties did not reach agreement concerning plaintiff's administrative action.

50.     On May 2, 2006, plaintiff submitted a withdrawal request to the Office of Human Rights. On May 10, 2006, the Office of Human Rights dismissed plaintiff's administrative complaint "with no finding being made on the merits of the allegations."

51.     On the basis of information and belief, defendants Chatel and Liverman terminated John Pagones' affiliation as a real estate agent with Chatel after plaintiff filed an administrative complaint for discrimination against defendants.

## COUNT ONE

### (42 U.S.C. § 1982)

52.     Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

53.     Section 1982 prohibits racial discrimination in property transactions. It provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

54.     The protections of section 1982 extend to the leasing of commercial property, including the office space sought by plaintiff in this case.

55.     Defendants' repeated rejection of plaintiff's offers to lease the Wisconsin Avenue property from October 6 to October 11, 2005, was driven by racial animus toward him because

11

he is an African-American.  There were no legitimate non-discriminatory reasons for defendants' decision not to lease the Wisconsin Avenue property to plaintiff.

56. Defendant's refusal to lease the Wisconsin Avenue property to plaintiff from October 6 to October 11, 2005 amounts to racial discrimination in violation of section 1982.

57. Defendants' demand of unfavorable terms and conditions from plaintiff, when these conditions were not set forth in the MRIS listing or anywhere else, amounts to unlawful discrimination in violation of section 1982.

58. Defendants' refusal to lease the lower level of the Wisconsin Avenue property to plaintiff, when the property was listed in the MRIS since September 2005, amounts to unlawful discrimination in violation of section 1982.

59. Defendants' aforementioned conduct caused plaintiff great humiliation, embarrassment, and emotional distress.

60. Defendants' racial discrimination was willful or done with reckless disregard of the civil rights laws warranting the imposition of punitive damages.

## COUNT TWO

### (42 U.S.C. § 1981)

61. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

62. Section 1981 prohibits racial discrimination in the making and enforcement of contracts.  It provides in pertinent part:  "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  Subsection (b) defines the term "make and enforce

contracts" as "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

63. The protections of section 1981 extend to the making of contracts for the leasing of commercial property, including the office space sought by plaintiff in this case.

64. Defendants' repeated rejection of plaintiff's offers to lease the Wisconsin Avenue property from October 6 to October 11, 2005 was driven by racial animus toward him because he is an African-American. There were no legitimate non-discriminatory reasons for defendants' rejection of plaintiff's offers to lease the Wisconsin Avenue property.

65. Defendant's rejection of plaintiff's offers to lease the Wisconsin Avenue property from October 6 to October 11, 2005 amounts to racial discrimination in violation of section 1981.

66. Defendants' demand of unfavorable terms and conditions from plaintiff, when these conditions were not set forth in the MRIS listing or anywhere else, amounts to unlawful discrimination in violation of section 1981.

67. Defendants' refusal to lease the lower level of the Wisconsin Avenue property to plaintiff, when the property was listed in the MRIS since September 2005, amounts to unlawful discrimination in violation of section 1981.

68. Defendants' aforementioned conduct caused plaintiff great humiliation, embarrassment, and emotional distress.

69. Defendants' racial discrimination was willful or done with reckless disregard of the civil rights laws warranting the imposition of punitive damages.

## COUNT THREE

## (DC ST. § 2-1402.21)

70. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

71. Section 2-1402.21 of the Human Rights Act prohibits discrimination based upon race and personal appearance in commercial space accommodations.

72. The protections of section 2-1402.21 extend to the leasing of the office space sought by plaintiff in this case.

73. Defendants' refusal to lease the Wisconsin Avenue property to plaintiff, their demand for unfavorable terms and conditions from plaintiff, and their decision not to lease the lower level of the office space to plaintiff, were driven by discrimination due to plaintiff's race (African-American) and personal appearance (long hair with dreadlocks).

74. Defendants' aforementioned conduct amounts to unlawful discrimination in violation of section 2-1402.21 of the Human Rights Act.

75. Defendants' aforementioned conduct caused plaintiff great humiliation, embarrassment, and emotional distress.

76. Defendants' discrimination was willful or done with reckless disregard of the Human Rights Act warranting the imposition of punitive damages.

## COUNT FOUR

## (DC ST. § 2-1402.23)

77. Plaintiff repeats and re-alleges all previous allegations as if set forth herein.

78. Section 2-1402.23 of the Human Rights Act prohibits discrimination by real estate brokers and salespersons in the sale and leasing of residential and commercial property.

79. The protections of section 2-1402.23 extend to the leasing of the office space sought by plaintiff in this case.

80. Defendants were all highly experienced real estate professionals fully aware of and subject to the duties set forth in section 2-1402.23.

81. Defendants' refusal to lease the Wisconsin Avenue property to plaintiff, their demand for unfavorable terms and conditions from plaintiff, and their decision not to lease the lower level of the property to plaintiff, were driven by discrimination due to plaintiff's race and personal appearance.

82. Defendants' aforementioned conduct amounts to unlawful discrimination in violation of section 2-1402.23.

83. Defendants' aforementioned conduct caused plaintiff great humiliation, embarrassment, and emotional distress.

## DEMAND FOR JURY TRIAL

84. Plaintiff hereby demands trial before a jury.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief against defendants and each of them, jointly and severally, as follows:

(a) Judgment in favor of plaintiff and against all defendants for the above counts;

(b) Awarding plaintiff compensatory damages in an amount to be determined at trial for the humiliation, embarrassment, emotional distress, and deprivation of civil rights suffered by plaintiff as a result of defendants' violation of 42 U.S.C. §§ 1981 and 1982, and §§ 2-1402.21 and 2-1402.23 of the Human Rights Act;

(c) Awarding plaintiff punitive damages for defendants' willful and malicious violation of 42 U.S.C. §§ 1981 and 1982, and §§ 2-1402.21 and 2-1402.23 of the Human Rights Act;

(d) Awarding plaintiff reasonable attorney's fees and costs for prosecuting this action pursuant to 42 U.S.C. § 1988(b) and DC ST. §§ 2-1403.16(b) and 2-1403.13(a)(1)(E);

(e) Awarding plaintiff expert witness fees incurred in prosecuting this action pursuant to 42 U.S.C. § 1988(c);

(f) Prejudgment and post-judgment interest on all of the above counts; and

(g) Awarding plaintiff such other and further relief as the Court may deem just and proper.


Dated: May 17, 2006                    /s/ Stefan Shaibani
                                       Stefan Shaibani (Bar No. 490024)
                                       LITIGATION ASSOCIATE, PLLC
                                       1150 Connecticut Avenue, N.W.
                                       Suite 900
                                       Washington, DC 20036
                                       Tel:  (202) 862-4335
                                       Fax: (202) 828-4130

                                       *Attorney for plaintiff John Bratton*