UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN BRATTON**<br><br>    Plaintiff<br><br>v.<br><br>**CHATEL REAL ESTATE, INC, et al**<br><br>    Defendants. | Case No.: 1: 06CV00694<br><br>**ORAL HEARING REQUESTED**<br><br>Hon. John D. Bates |

**DEFENDANTS CHATEL REAL ESTATE, INC AND THIERRY LIVERMAN'S FIRST MOTION FOR SUMMARY JUDGMENT**

Defendants Chatel Real Estate, Inc. ("Chatel") and Thierry Liverman ("Liverman")(collectively "Chatel Defendants"), by and through their undersigned counsel, move this Court, pursuant to the Federal Rules of Civil Procedure, for an Order granting summary judgment against the Plaintiff on all claims against them and state as follows:

    1.    Plaintiff lacks standing to bring the claims that have been asserted against these Defendants.

    2.    Attached hereto and incorporated by reference is a Memorandum of Points and Authorities in support of this Motion.

    WHEREFORE, for the reasons stated herein and in their Memorandum of Points and Authorities, Defendants Chatel Real Estate and Thierry Liverman respectfully request that the court dismiss all claims against them with prejudice.

Respectfully Submitted,

**CHATEL REAL ESTATE, INC and THIERRY LIVERMAN**

By: _____/s/_____
Matthew A. Ranck, Esq. (DC Bar # 484983)
Nicholas B. Reuhs, Esq. (DC Bar # 500005)
ECCLESTON & WOLF, P.C.
2001 S Street, N.W., Suite 310
Washington, D.C. 20009
(202) 857-1696 (telephone)
*Counsel for Defendants Chatel Real Estate, Inc. and Thierry Liverman*

## REQUEST FOR ORAL ARGUMENT

Defendants respectfully request oral argument on this matter.

_____/s/_____
Matthew A. Ranck, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of February 2006, a true copy of the foregoing Motion and Memorandum of Points and Authorities in support thereof was served by electronic mail upon:

**Stefan Shaibani**
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, NW
9th Floor
Washington, DC 20036
*Counsel for Plaintiff*

**Robert H. Bouse, Jr.**
ANDERSON, COE & KING, LLP
201 North Charles Street
Suite 2000
Baltimore, MD 21201
*Counsel for Defendant Mary White*

_____/s/_____
Matthew A. Ranck, Esq.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN BRATTON**<br><br>    Plaintiff<br><br>v.<br><br>**CHATEL REAL ESTATE, INC, et al**<br><br>    Defendants. | Case No.: 1: 06CV00694<br><br>**ORAL HEARING REQUESTED**<br><br>Hon. John D. Bates |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS CHATEL REAL ESTATE, INC AND THIERRY LIVERMAN'S FIRST MOTION FOR SUMMARY JUDGMENT**

Defendants Chatel Real Estate, Inc. ("Chatel") and Thierry Liverman ("Liverman")(collectively "Chatel Defendants"), by and through their undersigned counsel, hereby file this Memorandum of Points and Authorities in support of their First Motion for Summary Judgment, and state as follows:

**I. INTRODUCTION**

In the summer of 2005, Defendant Mary White decided to make a certain commercial property located at 1622 Wisconsin Avenue (the "Property") available for lease. She retained Chatel to find tenants for the Property and, in July 2005, the Property was listed in the MRIS computer as available for lease. In October 2005, Plaintiff John Bratton ("Plaintiff") expressed interest in the Property as a location for Bratton Realty, LLC, a real estate company that he owns and operates. Subsequently, several lease offers

3

were submitted on behalf of Bratton Realty, LLC.  However, Plaintiff was notified that Ms. White had decided to pursue a lease with another applicant, Roberta Medlin.

Shortly thereafter, negotiations to finalize a lease with Ms. Medlin broke down and the property again became available.  Within days, Ms. White caused her attorney to reinstate negotiations with Plaintiff, and on October 31, 2006, a lease agreement was finalized between Ms. White and Plaintiff.  Despite the fact that Plaintiff obtained a lease on the Property within 24 days of submitting an initial offer, he filed the instant action alleging that the Defendant's conduct was driven by racial animus and amounted to wrongful discrimination in violation of: (1) §§ 1981 and 1982 of the Federal Civil Rights Act and (2) §§ 1402.21 and 1402.23 the D.C. Human Rights Act.  However, as discussed herein, Plaintiff lacks standing to assert any of these claims against the Chatel Defendants in his individual capacity.

## II. STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Plaintiff John Bratton is owner and president of Bratton Realty, LLC ("Bratton Realty").  Bratton Realty is a Limited Liability Company that was formed under the laws of the District of Columbia in September 2003.[1]

On Thursday October 6, 2005, Plaintiff came to the offices of Defendant Chatel, identified himself as "the owner of [Bratton Realty,]"[2] and expressed interest in putting his brokerage firm in the Property.[3]  The next day, October 7, 2005, Plaintiff submitted a proposed lease, identifying the owner Mary White as the landlord and "Bratton Realty"[4] as the tenant.  The agreement was accompanied by two checks written from a Bratton

---

[1] *See Exhibit 1,* Certificate of Good Standing, dated 12/27/05.
[2] *See Amended Complaint,* at ¶ 29.
[3] *See Exhibit 2,* Deposition of John Bratton, at 99:1-4.
[4] *See Exhibit 3*, Lease Agreement dated 10/7/05.

4

Realty account[5] (intended to cover the security deposit and first month's rent) and a cover letter indicating, "the space was a great fit for [Plaintiff's] current plans to open a second [Bratton Realty] office in DC[,]" and explaining that he hoped to "continue the tradition of [the Property] being a boutique real estate firm."[6]

On October 10, 2005 Plaintiff submitted a second proposed lease, altering some of the terms but leaving the tenant identified as Bratton Realty.[7] Later on October 10, Plaintiff was told that he would need to complete a Chatel standard commercial lease agreement (as opposed to the one he had drafted) and was provided with the form document to complete.[8] On October 11, 2005 Plaintiff submitted one or more of three separate versions of the form Chatel lease. While each agreement contained slight variations in terms, *all continued to identify Bratton Realty as the tenant.*[9] At no time did Plaintiff ever submit any proposed lease to Chatel identifying himself, individually, as the prospective tenant.

On October 12, 2005, Ms. White met with Chatel principal and Defendant Thierry Liverman to evaluate the leases submitted by Bratton Realty and the other tenant candidate, Roberta Medlin. Ms. White made a decision to pursue negotiations with the other applicant. Plaintiff was notified of Ms. White's decision.[10] Thereafter, negotiations to finalize a lease with Ms. Medlin broke down and the property again became available. After this date, Defendants Chatel and Liverman had no further contact with Plaintiff regarding his leasing the Property.[11] Rather, Mary White's counsel

---

[5] *See Exhibit 4*, Checks from Bratton Realty
[6] *See Exhibit 5*, 10/7/05 letter from Bratton Realty to Mary White.
[7] *See Exhibit 6*, Letter from John Bratton to John Pagones with "Updated Lease" attached.
[8] *See Exhibit 2, supra,* at 173:5-7, 176: 9-20.
[9] *See Exhibit 7, 8 & 9,* Various leases submitted by Plaintiff.
[10] *See Exhibit 10,* Deposition of Thiery Liverman, at 100:8-102:5.
[11] *See Exhibit 2, supra,* at 277:8-15.

5

resumed negotiations with Plaintiff and the parties eventually came to an agreement whereby Plaintiff, individually, leased the Property. As part of these negotiations, Ms. White requested that Plaintiff personally guarantee the lease,[12] and in order to address this issue, the lease was signed by Plaintiff in his individual capacity.[13] Nonetheless, at all times in which the Chatel Defendants were involved, Bratton Realty was the only prospective tenant contemplated.

Based on the undisputed facts, it is respectfully submitted that John Bratton, individually lacks standing to sue the Chatel's for alleged violations of: (1) §§ 1981 and 1982 of the Federal Civil Rights Act and (2) §§ 1402.21 and 1402.23 the D.C. Human Rights Act.

## II. PLAINTIFF LACKS STANDING TO ASSERT CIVIL RIGHTS CLAIMS AGAINST DEFENDANTS CHATEL AND LIVERMAN

During all dealings with Defendants Chatel and Liverman, Plaintiff was acting for the benefit of Bratton Realty and was attempting to enter into a contract on behalf of that entity. Indeed, at no point did Plaintiff submit any document to Defendants Chatel or Liverman, or otherwise indicate to the Chatel Defendants, that he wished to negotiate or contract in his individual capacity or for his individual benefit. Rather, every single lease submitted for this commercial property was submitted on behalf of, and identified the prospective tenant as, Bratton Realty. As such, any injuries caused by Defendants alleged refusal (or delay) to contract with Plaintiff *were sustained solely by the entity Plaintiff was seeking the contract for, Bratton Realty.* Therfore, Plaintiff, an employee and owner of Bratton Realty, lacks standing to bring these civil rights actions against Defendants Chatel and Liverman. *See Johnson v. D.C.,* 2004 U.S. App LEXIS 24145, *1

---

[12] *See Exhibit 11,* 10/18/05 letter from John Gordon Forrester, .
[13] *See Exhibit 12,* 10/19/05 letter from Plaintiff offering to lease the property in his own capacity, at ¶4.

(D.C. Cir. 2004)(citing *Gersman v. Group Health Association, Inc.,* 289 U.S. App. D.C. 332, 931 F.2d 1565, 1569 (D.C. Cir. 1991)).  Indeed, it is a fundamental premise that the president, employees or shareholders of a corporation have no standing to bring a lawsuit for injuries sustained by the corporation.  *Id.*  In fact, as more fully set forth below, this Circuit and courts elsewhere have not only endorsed such a rule, but have specifically applied it to individuals asserting claims almost identical to those asserted here.  *See e.g. Id.; see also, Dominos Pizza v. McDonald*, 546 U.S. 470, 126 S.Ct. 1246, 1249-1252 (2006).

### A. The President, Employees Or Shareholders Of A Corporation Have No Standing To Bring A Civil Rights Claim For Injuries Sustained By The Corporation

As noted above, the Supreme Court recently reaffirmed this rule and its rationale. In *Dominos Pizza v. McDonald*, 546 U.S. 470, 126 S.Ct. 1246, 1249-1252 (2006), plaintiff John McDonald claimed that, due to his race and personal appearance, defendants had refused to enter into certain construction contracts with a construction company he owned and operated.  As such, McDonald brought suit in his individual capacity under § 1981 of the Civil Rights Act.  The 9th Circuit allowed his claim to proceed and the defendants appealed.  The Supreme Court reversed, determining that McDonald lacked standing to assert such claims because the contracts *which he intended to enter into were not for his own benefit, but for that of the his construction company.* The Court explained:

> McDonald argues that the statute must be read to give him a cause of action because he 'made and enforced contracts' for [his construction company]. On his reading of the text, 'if Domino's refused to deal with the salesman for a pepperoni manufacturer because the salesman was black, that would violate the section 1981 right of the salesman to make a contract on behalf of his principal.' We think not. The right to 'make contracts" guaranteed by the statute [is] not the insignificant right to act as

an agent for someone else's contracting...[but rather, the right] to give and receive *contractual rights* on one's own behalf. Common usage alone is enough to establish this, but the text of the statute makes this common meaning doubly clear by speaking of the right to "make *and enforce*" contracts....Any claim brought under § 1981, therefore, must initially identify an impaired "contractual relationship," under which the plaintiff has rights....Absent the requirement that the plaintiff himself must have rights under the contractual relationship, §1981 would become a strange remedial provision designed to fight racial animus in all of its noxious forms, but only if the animus and the hurt it produced were somehow connected to *somebody's* contract. We have never read the statute in this unbounded -- or rather, *peculiarly* bounded -- way. *Id., at 1249-1251* (internal citations omitted).

In the case at bar, the undisputed facts demonstrate that the Chatel Defendants were involved with only one contractual relationship, the one between *Bratton Realty* and Mary White. Indeed, each of the numerous leases submitted to and through Chatel Real Estate specifically identified the prospective tenant to the lease as *Bratton Realty*.[14] At no time was any lease offer submitted to these Defendants identifying Plaintiff individually as a prospective tenant or otherwise suggesting that Plaintiff wished to enter into a lease in his personal capacity. In fact, Plaintiff was quick to indicate to Defendants at their first meeting that he was interested in leasing a space *on behalf of his real estate firm*.[15]

Thus, while Plaintiff alleges these Defendants discriminated based on *his* personal appearance and that *he* was personally injured in his capacity as president and owner of Bratton Realty, such allegations, even if true, simply do not provide the requisite standing for Plaintiff to pursue these claims. As Justice Scalia explained in response to a similar argument:

> [The plaintiff] proposes a new test for § 1981 standing: Any person who is an "actual target" of discrimination, and who loses some benefit that

---

[14] *See* Exhibits 3, 6-9.
[15] *See* FN2, *supra*.

8

would otherwise have inured to him had a contract not been impaired, may bring a suit. Under this theory, an individual is the "actual target" if he was the *reason* a defendant chose to impair its contractual relationship with a third party. [Plaintiff]'s formulation simply ignores the explicit statutory requirement that the plaintiff be the "person" whose "right . . . to make and enforce contracts," § 1981(a), was "impaired," § 1981(c), on account of race. It is just the statutory construction we have always rejected... nothing in the text of § 1981 suggests that it was meant to provide an omnibus remedy for *all* racial injustice. If so, it would not have been limited to situations involving contracts. Trying to make it a cure-all not only goes beyond any expression of congressional intent but would produce satellite § 1981 litigation of immense scope. [Plaintiff]'s theory would permit class actions by all the minority employees of the nonbreaching party to a broken contract (or, for that matter, minority employees of any company failing to receive a contract award), alleging that the reason for the breach (or for the refusal to contract) was racial animus against them. *Dominos,* 126 S.Ct., at 1251-52.

That is, regardless of whether discrimination occurred or even whether Plaintiff was the target of that discrimination, because the contracts at issue were indisputably between Ms. White and *Bratton Realty*, and were to be enforceable solely by *Bratton Realty*, that entity is the only party with standing to bring these civil rights claims. Consequently, the current suit, brought by Mr. Bratton, individually, must be dismissed.

### B. This Rule Is Equally Applicable To Each Of Plaintiff's Claims

While the Court in *Dominos* dealt only with section §1981, standing requirements under each of the other asserted statutes have been evaluated and construed consistent with this same rule. For instance, in *Krupa, et. al. v. Leonardi,* 2007 U.S. Dist. LEXIS 3972 (N.D.Il. 2007), a case with many factual similarities to the one at bar, the *Dominos* rule was applied to § 1982. In *Krupa,* plaintiff Shaurin Mehta was the sole owner and officer of a small grocery store. Mr. Mehta sought to obtain assignment of the leasehold over a property where he intended to operate his store. When the defendant landlord failed approve the assignment, Mr. Mehta filed suit under §§ 1981 and 1982, claiming

9

that the refusal was motivated by racial animus. The court noted that that "[s]ections 1981 and 1982 are construed in tandem," cited the *Dominos* holding, and granted defendants summary judgment on both claims. In support of its conclusion, the court explained that just as a claim under § 1981 requires a showing that the plaintiff intended to enter into a contract *in his own capacity*, a claim under § 1982 requires a showing that the plaintiff intended to lease or purchase property *in his own capacity*. That is, such claims "require[] that the plaintiff have his 'own contractual relationship, not of [sic] someone else's...'" The court concluded, "a shareholder and contracting officer has no rights...under the corporation's contracts. Accordingly, a shareholder and contracting officer of a corporation cannot bring suit under Section 1981 [] and similarly section 1982..." *Id.*, at *6-*8.

Similarly, in *Gersman*, 289 U.S. App. D.C. 332, 931 F.2d 1565, the D.C. circuit specifically applied the *Dominos* rationale to *the DC Human Rights Act.* In *Gersman,* plaintiff Alan Gersmam was the president and (along with his wife) owner of a software company called CSI. Mr. Gersman believed that a contract to which CSI was a party was terminated solely because the other contracting party discovered Mr. Gersman was Jewish. He filed suit in the U.S. District Court for the District of Columbia, both in his own capacity and in the name of CSI, asserting claims under § 1981 and the D.C. Human Rights Act. Before analyzing the merits of CSI's claim, the court noted that as a threshold issue *Gersman himself has no standing to bring any such claims*, explaining that "[i]t was CSI, and not Gersman, whose contract was terminated. Gersman, as a shareholder, has no standing to bring claims for an injury suffered by CSI." *Id. at* 1569

(internal citations omitted); see also, *Johnson v. D.C.,* 2004 U.S. App LEXIS 24145 (citing *Gersman* as good law).

Each of the claims asserted by Plaintiff requires that such action be brought by the direct *victims*, not the *targets*, of the alleged discrimination. Thus, the undisputed facts make clear that only Bratton Realty, as the entity seeking the contract, has standing to assert these claims.

### C. Plaintiff Has Alleged No Harm Distinct From That Allegedly Suffered By Bratton Realty

As discussed at length above, a stockholder/officer cannot generally maintain a personal action for injuries caused to his corporation. However, some courts have suggested that a limited exception to this rule may exist. *See, e.g., Stat-Tech Intl. Corp v. Delutes*, 47 F.3d 1054, 1060 (10th Cir. 1995); *see also, Guides v. Yarmouth,* 295 F.3d 1065, 1072-73 (10th Cir. 2002). This exception would apply when "the actions of the third party that injure the corporation also cause injury to the shareholder which is unique to himself or herself...and not suffered by other shareholders." *Id.* That is, a shareholder/employee/officer may posses a separate cause of action only if his injury is wholly distinct from the injury suffered by the corporation.

In the case at bar, Plaintiff has alleged only two categories of damages: (1) the economic consequences of Defendants' alleged refusal to timely process and/or accept Bratton Realty's proposed lease terms; and (2) the humiliation, embarrassment and emotional distress that allegedly arose from these refusals. Obviously, the first category of damages represents economic injuries to Bratton Realty. Even if Plaintiff shared in that injury, his damages certainly could not be said to be unique from those allegedly

11

suffered by Bratton Realty. To hold otherwise would eviscerate the standing requirements altogether.

Application of this exception to the second category of damages has been specifically considered and rejected in a case with facts nearly identical to the case at bar. *See Guides,* 295 F.3d, at 1072. In *Guides*, plaintiff Tseghe Foote was the president and sole shareholder of Africa House, a small store operating out of a property leased from defendant Yarmouth. When the lease expired, Ms. Foote attempted to negotiate a long-term renewal. Although another tenant was offered ten-year lease, Ms. Foote was told that the Africa House "did not mix well with the other tenants" and was offered only a four-month tenancy. Ms. Foote brought claims under §§ 1981 and 1982 claiming that the refusal to offer Africa House terms similar to those offered other tenants was motivated by racial animus. The claims were filed in both Ms. Foote's name and in the name of Africa House and alleged both economic and emotional distress damages. Ms. Foote's claims were dismissed for lack of standing and she appealed, invoking the exception discussed above. The court, in an analysis that could apply verbatim to the case at bar, explained:

> Ms. Foote alleged that she suffered *emotional distress* as a result of the defendants' actions. However, *this distress arose from the failure of the defendants to contract with or lease to Africa House and was a product of the economic damages which were suffered by the corporation*. Foote suffered no violation of her contract rights or right to lease that was in any way different from the violations claimed by Africa House. Her claim is derivative of that of Africa House and she does not have standing to sue on her own behalf. *Id*. (emphasis added)

That is, alleged emotional distress suffered by a shareholder/officer arising from another's wrongful refusal to lease property to their corporation *is not a distinct injury giving such an individual standing*. As such, under *Guide,* Plaintiff's emotional distress

12

cannot serve as the basis for standing. Not only is *Guides* factually similar to the case at bar, but its holding and rule *have been specifically embraced by this Court*. *See DAG Ent. v. Exxon Mobil Corp.,* 2004 U.S. Dist. LEXIS 27393, *11-*12 (D.C. 2004) (citing *Guides*, 295 F.3d, at 1072).

### III. CONCLUSION

WHEREFORE, for the reasons stated herein, Defendants Chatel Real Estate and Thierry Liverman respectfully request that the court dismiss all claims against them with prejudice.

Respectfully Submitted,

**CHATEL REAL ESTATE, INC and THIERRY LIVERMAN**

By: _____/s/_____
Matthew A. Ranck, Esq. (DC Bar # 484983)
Nicholas B. Reuhs, Esq. (DC Bar # 500005)
ECCLESTON & WOLF, P.C.
2001 S Street, N.W., Suite 310
Washington, D.C. 20009
(202) 857-1696 (telephone)
(202) 857-0762 (facsimile)
*Counsel for Defendants Chatel Real Estate, Inc. and Thierry Liverman*