

DEFENDANT'S EXHIBIT

CH0019

## COMMERCIAL LEASE AGREEMENT

This Commercial Lease Agreement ("Agreement") is made and effective Oct 7 , 2005, by and between _____ ("Landlord") and Bratton Realty, Inc. ("Tenant").

Landlord is the owner of land and improvements commonly known and numbered as 1622 Wisconsin Ave, NW, Washington, D.C. 20007 and legally described as lot number 0027 and square number 1279 (the "Building").

Landlord makes available for lease a portion of the Building designated as the main commercial space on the first floor, also know as unit _____ (the "Leased Premises").

Landlord desires to lease the Leased Premises to Tenant, and Tenant desires to lease the Leased Premises from Landlord for the term, at the rental and upon the covenants, conditions and provisions herein set forth.

THEREFORE, in consideration of the mutual promises herein, contained and other good and valuable consideration, it is agreed:

1. **Term.**

A. Landlord hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an "Initial Term" beginning November 1, 2005 and ending October 31, 2006. Landlord shall give Tenant possession at the beginning of the Lease term. If Landlord is unable to timely provide the Leased Premises, rent shall not become due during the period of delay.

B. Tenant may renew the Lease for one extended term of twelve (12) months. Tenant shall exercise such renewal option, if at all, by giving written notice to Landlord not less than ninety (90) days prior to the expiration of the Initial Term. The renewal term shall be at the rental set forth below and otherwise upon the same covenants, conditions and provisions as provided in this Lease.

C. At any time during the term of this Commercial Lease Agreement if landlord places the Leased Premises on the open market for sale, Tenant shall be entitled to the right of first refusal.

2. **Rental.**

A. Tenant shall pay to Landlord during the Initial Term rental of THIRTY THOUSAND DOLLARS ($30,000) per year, payable in installments of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500) per month. Each installment payment shall be due in advance on the first day of each calendar month during the lease term to Landlord at _____ or

at such other place designated by written notice from Landlord or Tenant. The rental

payment amount for any partial calendar months included in the lease term shall be prorated on a daily basis. Tenant shall also pay to Landlord a "Security Deposit" in the amount of TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500).

3. **Use**.

Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.

4. **Sublease and Assignment**.

Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in whole or in part without Landlord's consent. Such consent by Landlord shall not be unreasonably withheld or delayed.

5. **Alterations, Improvements and Signage**.

Tenant, at Tenant's expense, shall have the right following Landlord's consent to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to display, inscribe, print, paint, maintain or affix on any place inside or outside of the Leased Premises any sign, notice, bulletin, legend, listing or advertisement. This includes the right to install personal property, trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All signage, personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by Tenant at Tenant's expense.

7. **Property Taxes**.

Landlord shall pay, prior to delinquency, all general real estate taxes and installments of special assessments coming due during the Lease term on the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises. Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Leased Premises.



CH0020

CH0021

### 8. Insurance.

A. If the Leased Premises or any other part of the Building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees or invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

B. Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amounts as Landlord shall deem appropriate. Tenant shall be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

### 9. Utilities.

Tenant shall pay one third of all charges for water, sewer, gas, electricity and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilizes excessive electrical energy or which may, in Landlord's reasonable opinion, overload the wiring or interfere with electrical services to other tenants.

### 10. Signs.

Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

### 11. Entry.

Landlord shall have the right to enter upon the Leased Premises with scheduled appointments to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

### 14. Damage and Destruction.




Subject to Section 8 A. above, if the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage.  In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord.  In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes, governmental restrictions, inability to obtain necessary materials or labor or other matters which are beyond the reasonable control of Landlord.  Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes.  Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant.  The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

15. **Default**.

If default shall at any time be made by Tenant in the payment of rent when due to Landlord as herein provided, and if said default shall continue for fifteen (15) days after written notice thereof shall have been given to Tenant by Landlord, or if default shall be made in any of the other covenants or conditions to be kept, observed and performed by Tenant, and such default shall continue for thirty (30) days after notice thereof in writing to Tenant by Landlord without correction thereof then having been commenced and thereafter diligently prosecuted, Landlord may declare the term of this Lease ended and terminated by giving Tenant written notice of such intention, and if possession of the Leased Premises is not surrendered, Landlord may reenter said premises.  Landlord shall have, in addition to the remedy above provided, any other right or remedy available to Landlord on account of any Tenant default, either in law or equity.  Landlord shall use reasonable efforts to mitigate its damages.

16. **Quiet Possession**.

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.



CH0022

### 19. Security Deposit.

The Security Deposit shall be held by Landlord without liability for interest and as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of rental or a measure of Landlord's damages in case of default by Tenant. Unless otherwise provided by mandatory non-waivable law or regulation, Landlord may commingle the Security Deposit with Landlord's other funds. Landlord may, from time to time, without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any arrearages of rent or to satisfy any other covenant or obligation of Tenant hereunder. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied in order to restore the Security Deposit to its original amount. If Tenant is not in default at the termination of this Lease, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant. If Landlord transfers its interest in the Premises during the term of this Lease, Landlord may assign the Security Deposit to the transferee and thereafter shall have no further liability for the return of such Security Deposit.

### 20. Notice.

Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:

If to Landlord to:

[Landlord]

[Landlord's Address]

If to Tenant to:

Bratton Realty, Inc.
[Tenant]

1223 10th Street, N.W.  Washington, D.C. 20001
[Tenant's Address]



CH0023

Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

21. <u>Commission</u>.

Landlord agrees that Bratton Realty, Inc. is entitled to a commission of ONE THOUSAND ONE HUNDRED DOLLAR ($1,100) for the successful lease of Landlords commercial property.

24. <u>Headings</u>.

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

25. <u>Successors</u>.

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

26. <u>Consent</u>.

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

27. <u>Performance</u>.

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the unreimbursed balance plus accrued interest to Tenant on demand.

28. <u>Compliance with Law</u>.

Tenant shall comply with all laws, orders, ordinances and other public requirements now or hereafter pertaining to Tenant's use of the Leased Premises. Landlord shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.



CH0024

#### 29. Final Agreement.

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

#### 30. Governing Law.

This Agreement shall be governed, construed and interpreted by, through and under the Laws of the District of Columbia.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

_____    _____
[Landlord] Signature                Date

_____
[Landlord] Printed Name

*[signature]*                       10/6/05
_____    _____
[Tenant] Signature of Registered Officer    Date

John H. Bratton
_____
[Tenant] Registered Officer Name



CH0025

Hello John Pagones,

Attached is the updated lease requesting a two year lease with an automatic option to extend to at least three years. The initial lease was written because to thought the owner was looking for a very short lease period.

Thanks for the clarification.

John Bratton

CH0026