DEFENDANT'S EXHIBIT

CH0044

**CHATEL REAL ESTATE, INC.**

3210 "N" Street, N.W.              1025 16th Street NW
Washington D.C. 20007              Washington DC 20036
(202)965-4300                      (202)745-0813

**COMMERCIAL AGREEMENT OF LEASE - SPACE**

THIS AGREEMENT OF LEASE made and entered into as of this _10_ day of _Oct_ in the year 20_05_, by and between _Mary White_ (hereinafter "LANDLORD") and _Bratton Realty LLC_ (hereinafter "TENANT").

**WITNESSETH**

That for and in consideration of the rent hereinafter received and the covenants herein contained, LANDLORD and TENANT mutually agree as follows:

LEASED PREMISES. LANDLORD does hereby lease and demise unto TENANT the premises situated at _1622 Wisconsin Ave (Main & lower level)_ and consisting of _One level of commercial space on main level_ _One level of commercial space on lower level_.

TERM. The term of this Lease shall commence on the _1st_ day of _Nov_, and shall continue for a term of _Three (3) years_ ending on the _31st_ day of _October 31, 2008_. _With the option to extend to 3 years and first Right of Refusal._

BASE RENT. TENANT shall pay to LANDLORD the following rent under the Lease:
Base rent ("Base Rent") of _Eighty four thousand_ Dollars ($ _84,000_), payable in monthly installments of _Thirty five hundred_ Dollars ($ _3,500_) hereinafter sometimes referred to as the basic monthly rental, in advance on the first day of each month. Additional rent ("Additional Rent") consisting of all other sums of money as shall become due from TENANT under this Lease. TENANT will pay all rent without demand, deduction, offset, set-off or counterclaim to Chatel Real Estate, Inc. at 3210 N Street, N.W. - P.O. Box 25310 - Washington, D.C. 20007 or such other place as may be designated in writing; the first full month's rent to be paid at time of execution of this Lease.

REPRESENTATION IN APPLICATION, ETC. All representations contained in TENANT'S rental application are incorporated herein by reference. LANDLORD has tendered this Lease to TENANT in reliance upon such representations any upon the security deposit delivered by TENANT in order to induce LANDLORD to execute this Lease. If any of the representations contained in the application shall be found by LANDLORD to be misleading, incorrect or untrue, or there is a failure to deliver any part of the security deposit, LANDLORD shall have the right to forthwith cancel this Lease and to repossess the leased premises under the Code of Law of the District of Columbia relating to LANDLORD and TENANT. The right to receive a 30 day notice to quit is hereby expressly waived.

TENANT ACKNOWLEDGES GOOD CONDITION. TENANT hereby acknowledges that he has inspected said leased premises and that he accepts them in "AS IS" condition. TENANT acknowledges that the premises are in good condition and in compliance with applicable local and federal regulations and his acceptance of this Lease is conclusive evidence that said premises are in good and satisfactory order and repair, unless otherwise specified herein. TENANT agrees that no representation as to the condition of the premises has been made and no promise made to decorate, after, repair or improve the premises unless otherwise specified in writing.

LEASE ASSIGNMENT-SUBLETTING. TENANT will not assign this Lease, or any portion of the term of this Lease, or sublet the leased premises, or any portion thereof, without the prior written consent of the LANDLORD, nor shall any subletting or assignment thereof be effected by operation of Law or otherwise than by written consent of the LANDLORD first had and obtained which consent shall not be unreasonably withheld.

UTILITIES-ADDITIONAL RENT. (a) TENANT will pay all bills for electricity, gas, and water used in the within premises, and any sewer charges, as well as public space rent, if any, during the term of this Lease, as they become due and payable.
(b) If and to the extent that the leased premises are separately metered, TENANT will pay all utility bills directly to the servicing utility company. Where necessary, TENANT shall make necessary deposits to the utility companies to secure service.
(c) If the demised premises are not separately metered for some or all forms of utility service, TENANT shall pay to LANDLORD as additional rent the following shares of utilities of the building of which the leased premises are a part: water/sewer _2/3_ percent (_%_), gas _%_, fuel oil _%_ percent (_%_), electricity _2/3_ percent (_%_) as and when they become due and payable. Any such amount due to LANDLORD shall be paid within ten (10) days after it shall be demanded by LANDLORD. In each case, a utility bill shall be sufficient evidence of the amount of utility charges in respect of the building.
TENANT shall indemnify and hold LANDLORD harmless against any liability on such account.

8. USE OF PREMISES. (a) TENANT will comply with all the rules and regulations now in effect or that may hereafter be enacted by the Municipal, County, State of Federal Government, insofar as the same pertain to the conduct of his business in the demised premises.

(b) TENANT agrees to obtain and maintain, at his sole expense, any occupancy permit, business license, or any other permit, license of approval required or appropriate for TENANT'S use of the demised premises and to promptly provide LANDLORD (or his agent) with a copy of all such permits, licenses or approvals. TENANT shall pay for the cost of any improvements or alterations required to obtain or maintain any such permit, license or approval.

(c) TENANT will not use, permit or suffer to be used, said premises for any disorderly or unlawful purpose, or for any other purpose than that of Professional Office_____. In no event shall the leased premises or any part thereof be used for residential purposes.

9. PLUMBING AND HEATING. (a) TENANT will furnish heat, hot water and air-conditioning, if any, at his own expense where the leased premises include mechanical systems to provide such services.

(b) LANDLORD warrants the plumbing, air-conditioning, heating and electrical systems in and for the demised premises to be in good working order as of the date upon which possession of the demised premises is delivered to TENANT. Thereafter, TENANT agreed to keep the plumbing, heating, air-conditioning and electrical systems located in the demised premises in good order and repair, to make replacements thereto whenever said repairs or replacements be necessitated by ordinary wear and tear or otherwise, or at election of TENANT to maintain a service contract on heating and air-conditioning systems which provides for periodical inspection and servicing of all said equipment and repairs and replacements thereto, whether said replacements be necessitated by ordinary wear and tear or otherwise. On failure to keep such plumbing, electrical systems, heating and air-conditioning equipment in good order and repair, LANDLORD may make replacements or perform all repairs which may be necessary to any of said equipment and add the amount of the cost of such replacements or repairs to the next installments due hereunder on the first day of the month following the date of repairs, and such cost of replacements or repairs shall constitute a part of rent, together with all other rent provided for under the terms of this Lease.

10. REPAIRS. TENANT will make any and all repairs and replacements to the premises hereby leased during the term of this Lease, except repairs to the roof, downspouts, gutters, and exterior walls to which LANDLORD agrees to make, unless damage to said roof, downspouts, gutters, and/or exterior walls is caused by the negligence of TENANT or his agents. Without limiting the foregoing, TENANT is responsible to pay all charges for repairs necessitated by negligence of or damage by him, his servants, his guests or invitees. Failure to comply with this provision shall be deemed a material breach of this agreement. TENANT shall promptly notify LANDLORD or Agent of any water or roof leaks and will keep the plumbing free of obstructions at his own expense.

During the term of this Lease, no repairs or construction shall be made by the Landlord to the property which are likely to unreasonably interfere with the Tenant's business without the written consent of Tenant. During the term of that Lease, no repairs or construction shall be made by the Tenant to the leased premises which are likely to unreasonably interfere with the use of the other portions of the property of which the leased premises are a part without the written consent of Landlord. In each instance such consent shall not be unreasonably withheld or unduly delayed.

11. ADDITIONAL RENT TO COVER REAL ESTATE TAXES.

(a) TENANT shall pay to LANDLORD, as additional rent, annually, _____ Percent (____ %) of all real estate taxes imposed upon the building of which the leased premises are a part. The total taxes for the building for FY ____ were $_____ and the amount allocated to this space under the terms of the prior sentence is $_____ per annum.

If there is an increase in the property taxes, tenant shall pay 50% of any increase whether said increase is a result of an increase in the rate or a new tax and/or re-assessment of the property or for any other reason.

For the calendar years during which the term of this Lease commences or ends, TENANT'S share of real estate taxes shall be prorated to exclude any portion of the year during which the Lease is not in effect.

(b) Such amount shall be paid within ten (10) days after it shall have been sufficient evidence of the amount of the taxes so imposed, part of the rent. A copy of a tax bill shall be sufficient evidence of the amount of the taxes so imposed.

(c) Prior to the determination of the actual amount of TENANT'S share of real estate taxes on an estimated basis, based upon LANDLORD'S good faith estimate of TENANT'S share of real estate taxes, TENANT shall pay LANDLORD on the first day of each month of the calendar year one twelfth (1/12th) of LANDLORD'S estimate. TENANT'S failure to make any such payment shall be deemed to be a material breach of this LEASE.

(d) After the end of each tax year, LANDLORD shall determine the amount of TENANT'S share of real estate taxes and prepare a statement for TENANT of such information. Within ten (10) days of delivery of such statement, TENANT shall pay to LANDLORD any deficiency between the TENANT'S share of real estate taxes and the estimated payments made by TENANT towards such amount, or in the case of excess estimated payments, TENANT shall be credited with the excess towards subsequent estimated payments.

12. LIABILITIES. LANDLORD assumes no liability or responsibility whatever in respect to the conduct and operation of the business to be conducted in said leased premises by TENANT, nor for any damage of whatsoever kind, or by whomever caused, to person or property of TENANT or to anyone on or about the premises, however such damage may be caused and TENANT agrees to hold LANDLORD and Agent harmless against all such damage claims.

13. PERSONAL PROPERTY. All goods and personal property of every kind, in and upon the said leased premises, shall be at the sole risk and hazard of TENANT, or those claiming by, through or under him, or the owner thereof.

14. SAFES, ETC. TENANT will not move into the said building any safe or safes or heavy furniture, fixtures, or materials, without the written consent of LANDLORD first had and obtained. All damage done to the building by taking a safe, or heavy furniture, fixtures or materials in or out, or due to its being on the premises, shall be repaired at the expense of TENANT. Landlord agrees to allow Tenant to move onto the leased premises all those fixtures required to carry on the intended use as described in Paragraph 8(c) above provided such equipment does not damage the leased premises due to excessive weight or special positioning.

15. FIRE OR CASUALTY.

If the demised premises shall be partially damaged by fire or other unavoidable casualty, without the fault or neglect of TENANT, TENANT'S servants, employees, agents, visitors or invitees, or licensees, the damages shall be repaired by and at the expense of LANDLORD, and the rent until such repairs be made shall be apportioned according to the part of the demised premises which is unusable by TENANT. Due allowance shall be made for reasonable delay which may arise by reason of adjustment of fire insurance

Lease, Page 2

CH0045

CH0046

on the part of LANDLORD and/or TENANT, and for reasonable delay on account of "labor troubles" or any other cause beyond LANDLORD'S control.

But if the demised premises are rendered wholly untenantable by fire or other unavoidable casualty, and LANDLORD shall decide not to rebuild the same, or if the building shall be so damaged that LANDLORD shall decide to demolish it or rebuild it, then or in any of such events, LANDLORD may at LANDLORD's option, give TENANT a notice in writing of such decision, and thereupon the term of this Lease shall expire by lapse of time upon the third day after such notice is given and TENANT shall vacate the demised premises and surrender the same to LANDLORD.

In neither of the contingencies mentioned in this Section shall there be any liability on the part of LANDLORD to TENANT, his successors or assigns, covering or in respect of any period during which occupation of said leased premises by TENANT, because of the matters herein above stated may not be possible.

Furthermore in neither of the contingencies mentioned in this Section shall there be any liability on the part of LANDLORD to TENANT, his successors or assigns, covering or in respect of any property of the Tenant in the leased premises or to reconstruct or repair any of such property of Tenant. Tenant assumes full responsibility for obtaining insurance with respect to the property of the Tenant installed or located in the leased premises.

16. MAINTENANCE. TENANT will keep the said demised premises at all times in good condition and repair, clean and in proper sanitary condition and will at the end of his tenancy surrender the same in like good order and condition as this same were at the commencement of his original tenancy, ordinary wear and tear excepted. TENANT agrees to provide his own janitorial services, replace fuses and light bulbs and provide his own trash disposal services.

17. CLEAN PREMISES. TENANT will keep at his own cost and expense agrees that he will keep the premises clean, will maintain suitable receptacles for trash and refuse, and will promptly remove the same from the demised premises all accumulations of trash and refuse in a clean and sanitary manner. In the event TENANT fails to perform any of said covenants contained in this paragraph, then and in that event, LANDLORD, at his option, may cause the work provided for herein to be performed at the cost and expense of TENANT, who agrees to reimburse LANDLORD for the cost so incurred as additional rent upon the next date rent is due and payable hereunder. Where the leased premises consists of or includes ground floor space, TENANT at his own cost and expense agrees that he will keep the sidewalks in front of said premises free from obstruction of any and all nature, and will promptly remove all snow and ice from said sidewalks.

18. EMINENT DOMAIN. If the whole or any part of the demised premises consist vault space, if any, shall be taken or condemned by any competent authority for any public or quasi-public use or purpose, then, and in that event, the term of this Lease shall cease and terminate from the date when the possession of the part so taken shall be required for such use or purposes and without apportionment of the award. The current rental, however, shall in any such case be apportioned. The taking of vault space shall not entitle TENANT to any reduction in amount of rent payable hereunder. In the event of any such taking of or condemnation, TENANT will make no claim for compensation for the balance of the term of this Lease or for any portion of LANDLORD'S award but TENANT may file its own claim against the condemning authority.

19. SUBORDINATION. This Lease is subject and subordinate to all ground or underlying leases and mortgages and/or deeds of trust which may now or hereafter affect the real estate of which the demised premises are a part. At the request of LANDLORD, TENANT shall promptly execute and deliver to LANDLORD such papers as LANDLORD may request to effect or confirm this subordination. Failure to do so is a material breach of this agreement.

20. FIRE INSURANCE/PREMIUM INCREASE. TENANT will not do or permit anything in said premises, or bring or keep anything therein, that shall, in any way, increase the rate of fire insurance on said building, or the property therein, or conflict with the regulations of the Fire Department or the fire laws, or with the terms of any insurance policy upon said building, or any part thereof, or which make void or voidable any insurance on the said premises or building against fire. It is further understood and agreed that in the event that the rate of fire insurance on said premises (the term "fire rate" meaning the normal base rate promulgated by the Underwriters Association of the District of Columbia or the like stock company rating bureau having jurisdiction over the demised premises for the kind of occupancy allowed by the Lease) is increased due to neglect of TENANT, then any resulting increase in the cost of said insurance for the building which is said premises or in which said premises are located shall be paid by said TENANT as additional rental hereunder, upon demand of LANDLORD.

21. LANDLORD'S ACCESS. LANDLORD or his agent shall have access to demised premises at any and all reasonable times for the purpose of protecting the said leased premises against fire, (or the prevention of damage and injury to the said leases premises, or for the purpose of inspecting the same, or exhibiting the same to prospective TENANT during the last 60 days of the term of this Lease. In the event that the building of which the demised premises are a part is put on the sale market during the term of this Lease (including, without limitation, any renewal or extension term), TENANT agrees that the demised premises may be shown by LANDLORD or his agent upon reasonable notice not more than two (2) times a week.

22. BANKRUPTCY. If at any time during the term hereby demised, a petition shall be filed, either by or against TENANT, in any court or pursuant to any statute either of the United States or of the State or District where said premises are located, whether in bankruptcy, insolvency, for the appointment of a receiver of TENANT'S property or because of any general assignment made by TENANT of TENANT'S property for the benefit of TENANT'S creditors, then immediately upon the happening of any such event, and without any entry or other act by LANDLORD, this Lease shall expire ipso facto, cease and come to an end with the same force and effect as if the date of the happening of any such event were the date herein fixed for the expiration of the term of this Lease, it is further stipulated and agreed that, in the event of the termination of the term of this Lease by happening of any such event, LANDLORD shall forthwith, upon such termination, any other provisions of this Lease to the contrary notwithstanding, become entitled to recover as and for liquidated damages caused by such breach of the provisions of this Lease an amount equal to the difference between the then cash value of the rent reserved hereunder for the unexpired portion of the term hereby demised; and the then cash rental value of the demised premises for such unexpired portion of the term hereby demised, unless the statute which governs or shall govern the proceeding in which such damages are to be proved limits or shall limit the amount of such claim capable of being so proved, in which case LANDLORD shall be entitled to prove as and for liquidated damages an amount equal to that allowed by or under any such statute. The provisions of this paragraph of this Lease shall be without prejudice to LANDLORD'S right to prove in full damages for rent accrued prior to the termination of this Lease, but not paid. This provision of this Lease shall be without prejudice to any rights given to LANDLORD by any pertinent statute to prove for any amounts allowed thereby.

23. BANKRUPTCY DAMAGES. In making any such computation, the then cash rental value of the demised premises, shall be deemed prima facie to be the rental realized upon any re-letting, if such re-letting can be accomplished by LANDLORD within a reasonable time after such termination of this Lease, and the then present cash value of the future rents hereunder reserved to

Lease, Page 3

CH0047

LANDLORD for the unexpired portion of the term hereby demised shall be deemed to be such sum, if invested at four per centum (4%) simple interest, as will produce the future rent over the period of time in question.

**24. DEFAULT, PROVIDED,** always that if the rent aforesaid, or any installment thereof, shall not be paid within fifteen (15) days after the same shall become due and payable, as aforesaid, although no demand shall have been made for the same; or if TENANT shall fail or neglect to keep and perform each and every covenant, condition and agreement herein contained, and on the part of said TENANT to be kept and performed, or if the same or any part of them shall be broken, then and in each and every case from thenceforth, and at all times thereafter, at the option of LANDLORD, his successors or assigns, TENANT's right of possession shall thereupon cease and determine, and LANDLORD, his successors or assigns shall be entitled to the possession of said leased premises and to re-enter the same without demand of rent or demand of possession of said premises, and may forthwith proceed to recover possession of the said leased premises by process of law, any notice to quit, or of intention to re-enter the same being hereby expressly waived by TENANT.

**25. LATE CHARGE, ETC.** TENANT agreed to pay the Agent (or LANDLORD where there is no agent) a "late charge" equal to 5% of the outstanding balance of rent due in the event that any rent payment is not paid within fifteen (15) days after its due date. After any late payment or dishonored check, LANDLORD or Agent acting in their sole discretion shall have the right to require that all rent payments be made by cashier's or certified check or by money order. Any rent or other charges paid by check shall not be considered paid until LANDLORD has received full payment thereon from the bank drawn upon. TENANT agrees that if he shall elect to mail the rent herein reserved to LANDLORD then he hereby notifies the U.S. Mail as his agent and undertakes all responsibility for miscarriage or delay of said mails.

**26. SURCHARGE, ETC.** If any check given to LANDLORD or Agent is not paid when presented to the bank upon which it is drawn, TENANT shall pay to LANDLORD or Agent a service charge of $25.00 or such other amount as the bank may charge. In the event that rent is not received by LANDLORD or Agent within fifteen (15) after its due date LANDLORD may, in its sole option, require all future payments to be made by money order or certified funds.

**27. ABANDONMENT.** If the demised premises shall be abandoned or become vacant during the term of this Lease without TENANT having paid in full the rent for the entire term, or if LANDLORD shall recover possession subsequent or pursuant to LANDLORD and TENANT proceedings, then in the happening of either of said events, LANDLORD shall have the right, at his option, to take possession of the demised premises, to let the same as agent of TENANT and apply the proceeds received from such letting toward the payment of the rent of TENANT under this Lease, and such re-entry and re-letting shall not discharge TENANT from liability for rent to date of such re-taking and for any loss of rent sustained by LANDLORD in respect to the balance of the term; any such loss of rent for the balance of the term shall be payable monthly by TENANT in advance in the same manner that rent hereunder is to be paid, and LANDLORD shall have the right to recover any such loss of rent monthly whether or not said premises had been re-let.

**28. WAIVER.** And it is further provided that if, under the provisions hereof, a seven (7) days' summons or other applicable summary process shall be served, and a compromise or settlement thereof shall be made, it shall not be construed as a waiver of any covenant herein contained; and that no waiver of any such breach of any covenant, condition, or agreement herein contained shall operate as a waiver of the covenant, condition or agreement itself, or of any subsequent breach thereof.

**29. HOLDOVER PROVISION.** In the event that TENANT shall not immediately surrender said premises on the day after the end of the term hereby created, then TENANT shall, by virtue of this agreement, become a TENANT by the month at the rental per month of the monthly installments of rent agreed by the said TENANT to be paid as aforesaid, commencing said monthly tenancy with the first day next after the end of the term above demised; and the said TENANT, as a monthly TENANT, shall be subject to all of the conditions and covenants of this Lease as though the same had originally been a monthly tenancy, and said TENANT shall give to LANDLORD at least thirty (30) days' written notice of any intention to quit said premises, and said TENANT shall be entitled to thirty (30) days' written notice to quit said premises, except in the event of non-payment of rent in advance or of the breach of any other covenant by the said TENANT, in which event the said TENANT shall not be entitled to any notice to quit, the usual thirty (30) days notice to quit being hereby expressly waived; provided, however, that in the event that TENANT shall hold over after the expiration of the term hereby created, and if the said TENANT and/or LANDLORD desire to regain possession of said premises promptly at the expiration of the term aforesaid, then at any time prior to the payment of rent by TENANT as a monthly TENANT thereunder, the said LANDLORD, at its election or option, may re-enter and take possession of said premises, forthwith, without process or by any legal process in force in the State or District in which said premises are located, the right to any Notice to Quit being hereby expressly waived.

**30. POSSESSION.** If, for any reason whatsoever, LANDLORD does not deliver possession of the demised premises according to the terms of this Lease, the rent shall be abated until such date as possession of the demised premises is tendered by LANDLORD. In no event shall LANDLORD, its Agents or employees be liable in damages for failure to deliver possession under the terms of this Lease, except for willful failure so to do.

**31. AGENCY.** LANDLORD in appointing Chatel Real Estate, Inc. (herein sometimes called "Agent") as rental agent herein, does so for and in consideration of its services in securing TENANT hereunder and in regulation of this agreement, and agrees to pay said Agent a commission of _____ and _____ percent ( ____ %) of all rents paid during the full term of this agreement and any renewal or extension hereof even though the premises hereby demised shall be sold during the term of this Lease or any extension or renewal thereof. Cancellation of this Lease or any portion of the term, or any extended term hereof, by agreement of LANDLORD and TENANT without the consent of Agent, shall not relieve LANDLORD of the obligation to pay Agent the full commission due hereunder for the full term of this Lease and any extension or renewal hereof if this Lease is extended or renewed.

**32. DISPLAY SIGN.** It is further understood and agreed that all advertising and all display on or about the within mentioned premises is subject to the approval of LANDLORD and that no advertising or display on or about the within mentioned premises shall be made or exhibited by TENANT if the said LANDLORD shall make a reasonable objection thereto, and that no signs are to be affixed or attached to the exterior of the building and no exterior painting done without the written consent of LANDLORD first had and obtained. It is further understood and agreed that no display or sign shall be placed on or about the exterior of the demised premises, any door and/or any window facing the exterior without the prior approval of the Fine Arts Commission or Landmarks Commission, if required.

Lease, Page 4

CH0048

Landlord shall neither assert any unreasonable objections to advertising nor withhold or unreasonably delay any approvals required pursuant to this paragraph.

33. SHOWING PREMISES. In the event TENANT does not renew this Lease, he hereby gives permission to LANDLORD to show the premises to prospective new tenants and to put up a "For Rent" sign advertising said space as being available for rent. TENANT shall give LANDLORD at least sixty (60) days' notice in writing of his intention to vacate, at the expiration of this Lease. In the event LANDLORD desires to sell the property of which the leased premises are a part during the term of this lease, including any extension thereof, TENANT hereby gives permission to LANDLORD to put up a "For Sale" sign on the property. TENANT further agrees to allow LANDLORD to show the property during reasonable hours to prospective purchasers.

34. ALTERATIONS/QUALITY OF WORK. TENANT shall not make any alterations, additions or improvements to the demised premises except on the conditions that any such alteration, addition or improvement shall:

a. be made only with the prior written consent of LANDLORD after delivery to LANDLORD of detailed architectural plans;

b. comply with all governmental rules and requirements;

c. equal or exceed the current construction standards for the building of which the demised premises are a part;

d. be performed by a licensed contractor first approved by and in accordance with regulations set forth by LANDLORD and, which contractor, if requested, will prior to commencing work deliver to LANDLORD evidence of insurance coverage in amount and form satisfactory to LANDLORD.

All work performed shall be done in such manner as not to disrupt the operation of the building of which the demised premises are a part or of any other TENANTS situated in such building. Following completion of any alterations, additions and improvements, TENANT shall furnish LANDLORD with (i) final bills from each of the contractors involved marked "Paid in full" and (ii) current as built drawings and specifications for the demised premises reflecting such alterations, amendments or improvements as may be made to the demised premises. Notwithstanding anything to the contrary contained herein, any increase in real estate taxes or insurance premiums on the building of which the demised premises are a part attributable to such alteration, addition or improvement shall be paid by TENANT.

Landlord and Tenant hereby agree to cooperate fully with one another in any alterations to the leased premises or the property of which the leased premises are a part which alterations are required with any local state or federal laws related to access for disabled persons.

35. ALTERATIONS–END OF LEASE. If consent to make any alterations, additions or improvements is given and alterations, additions or improvements have been made by TENANT, at TENANT'S expense, then at the option of LANDLORD such alterations, additions and improvements shall at the option of LANDLORD, either remain upon the premises at the expiration (or prior termination) of the Lease and become the property of LANDLORD, or at the option of LANDLORD be removed by and at the expense of TENANT on or before the expiration of the term, and all damage caused to said premises by such removal shall be repaired by TENANT at TENANT'S expense on or before the expiration of said term.

36. LIENS. TENANT shall not cause or allow items of any kind to be filed or placed against the demised premises or the building or property of which they are a part, if any liens are filed, with or without TENANT'S knowledge, and such liens are the result of any act, (inactive or action of TENANT, or failure to act of TENANT, TENANT shall immediately, at TENANT'S sole expense, take whatever action may be necessary to cause such liens(s) to be immediately satisfied and discharged.

37. PLATE GLASS. TENANT will be responsible for any damage to and breakage of plate glass in said premises and will carry during the term of this Lease in a standard insurance company satisfactory to LANDLORD, full coverage insurance on all plate glass in aforementioned premises, and cause same to be replaced if damaged or broken; said insurance to be carried in the name of LANDLORD, the policy or policies for which are to be deposited with LANDLORD or LANDLORD'S agents.

38. INDEMNITY OF LANDLORD (a) TENANT shall indemnify LANDLORD and hold LANDLORD harmless from any loss, damage or liability, including attorney's fees, resulting from any default by TENANT hereunder or any willful act or omission on the part of TENANT or its agents or invitees.

(b) TENANT agrees to protect, indemnify and save harmless LANDLORD, Agent, and D.C. Government when required, of and from any and all claims for personal injury, property damage or claims of any nature whatsoever relative to the leased premises including, without limitation, claims by reason of any accident, or happening in, upon, or about the demised premises. As part of such indemnification obligation, TENANT agrees to indemnify LANDLORD, Agent, and the D.C. Government when required, for any and all costs ( including without limitation reasonable attorney's fees) incurred in defending against such claims that may arise. 39. TENANT INSURANCE. (a) TENANT, at TENANT'S expense, shall obtain and maintain at all times during the term of the Lease (including any renewal or extension) providing at least the following insurance coverage:

(i) A policy of fire and extended coverage insurance , i.e. an "all risk" policy covering all TENANT'S personal property and all other property in the premises for not less than the replacement value. Any and all proceeds of such insurance shall be used only to repair or replace the items so insured.

(ii) A policy covering business interruption insurance to TENANT'S business in an amount equal to one hundred percent (100%) of the estimated gross annual income of TENANT'S business.

(iii) a comprehensive general liability insurance policy, naming LANDLORD and any mortgagee of the property as additional insureds and protecting LANDLORD, TENANT and any such mortgagee against any liability for bodily injury, personal injury, death or property damage occurring upon, in or about the property of which the leased premises are a part, or arising from any of the items set forth in Section 33 against which TENANT is required to indemnify LANDLORD with such policy to afford protection with a limit of not less than $ 1,000,000 with respect to bodily injury, personal injury, or death to any one person, with a limit of not less than $ 1,000,000 with respect to bodily injury, personal injury, or death in any one occurrence and with a limit of not less than $ 1,000,000 with respect to damage to property in any one occurrence.

(b) All insurance policies to be obtained and maintained by TENANT under this Lease must (i) be issued by insurance companies approved by LANDLORD and must have form and content satisfactory to LANDLORD; (ii) be written as primary policy coverage and not contributing with or in excess of any coverage which LANDLORD or its mortgagees may carry (iii) contain an express waiver of any right of subrogation by the insurance company against the LANDLORD, first mortgagees and its agents and (iv) provide that the policy cannot be cancelled or nonrenewed unless LANDLORD shall have received at least 15 days prior written notice of cancellation of nonrenewal. TENANT shall deliver certified copies or duplicate originals of each such policy or renewal policy together with evidence of payment of all applicable premiums, at least 10 days before the commencement date of the lease and at least 30 days before the expiration of the expiring policies previously furnished.

(c) TENANT agrees to furnish LANDLORD with a current insurance certificate, or copy of current policy, showing such insurance to be in force at the commencement of the lease and annually thereafter during the term of the lease (including any renewal or extension).

40. REIMBURSEMENT TO LANDLORD. If LANDLORD shall incur any charge or expense on behalf of TENANT under the terms of this Lease such charge or expense shall be considered additional rent hereunder; in addition to and not in limitation of any other rights and remedies which LANDLORD may have in case of the failure by TENANT to pay such sums when due, such non-payment shall entitle LANDLORD to the remedies available to it hereunder for non-payment of rent. All such charges or expenses shall be paid to LANDLORD at the offices of Chatel Real Estate, Inc., 3210 N Street, N.W., P.O. Box 25310, Washington, D.C. 20007, or at such other place as LANDLORD or Agent may from time to time designate in writing.

41. SALE. Should the property be put on the market for sale during the term of this Lease (including any renewal or extension) or within 90 days thereafter, the firm of Chatel Real Estate, Inc. will be appointed exclusive agent and a sale commission in the amount of 6% shall be paid to said agent. Should TENANT, directly or indirectly, purchase the demised premises, or the property of which the demised premises are a part, during the terms (including any renewal or extension term) of this Lease, or any renewal or extension thereof or within one year after the termination of his tenancy of the demised premises upon any terms, or should TENANT acquire the demised property, or the property of which the demised premises are a part, during the term of this Lease, or any renewal or extension thereof or within one year after the termination of his tenancy of the demised premises by trade or exchange, Agent, its successor or assign shall be deemed the procuring agent in this transaction and will be paid by LANDLORD at settlement from proceeds of sale or exchange, a commission of six per cent (6%).

Landlord hereby agrees that, in the event that the property of which the leased premises is a part is offered for sale during the term of the Lease, Tenant shall be given five(5) business days within which to meet any price offered in writing for the property or to match any signed contract of sale. Tenant agrees that any such right of Tenant to match a contract to purchase the property shall be subject to any tenant's right under the Tenant Opportunity Act, as amended from time to time.

42. UNLAWFUL USE, DISTURBING NOISES, ETC. TENANT shall not use or permit to be used the leased premises for any unlawful purposes or do or permit any unlawful act in or upon the leased premises. TENANT shall not make or permit to be made any disturbing noises or boisterous conduct or do or permit any act which will unreasonably interfere with the rights, comforts, or convenience of other tenants or neighbors. This includes any violation of the D.C. Noise Control Act of 1977 ( or any successor laws or regulations) and the the or police regulations and the commission of any nuisance. TENANT shall keep in such premises the right to close all doors leading from and into the leased premises closed at all times and LANDLORD reserves the right to close all doors in the event of the violation of this provision. This provision shall, in no event, be construed as an undertaking that LANDLORD shall provide a security building.

43. ATTORNEY'S FEE. In the event of the employment of an attorney by LANDLORD because of the violation of TENANT of any term or provision of this Lease, including non-payment of rent as due, TENANT shall pay and hereby agrees to pay reasonable attorney's fees and all other costs ( e.g. court costs, interest, notary fees, process service fees, etc. ) incurred therein by LANDLORD.

44. SECURITY DEPOSIT. In addition to the first monthly rent, LANDLORD herewith acknowledges the receipt of _Twenty Five hundred_ Dollars ($ 2,500 ), which he is to retain as security for the faithful performance of all of the covenants, conditions, and agreements for TENANT'S failure to perform; the LANDLORD be obliged to apply the same on rents or other charges in arrears or on damages for TENANT'S failure to perform; the said covenants, conditions, and agreements; LANDLORD may so apply the security deposit at his option; and LANDLORD'S right to the possession of the premises for nonpayment of rent or for any other reason shall not in any event be affected by reason of the fact that LANDLORD holds this security deposit. The said sum if not applied toward the payment of rent in arrears or toward the payment of damages suffered by LANDLORD by reason of the defendant's breach of the covenants, conditions, and agreements of this Lease is to be returned to TENANT within 120 days of the end of the term of this lease and any renewal or extension thereof, and in no event is the said security deposit to be retained until TENANT has vacated the premises and delivered possession to LANDLORD. In the event that LANDLORD repossesses himself of the said premises because of TENANT'S default or because of TENANT'S failure to carry out the covenants, conditions, and agreements of this Lease, LANDLORD may apply the said security deposit on all damages suffered to the date of said repossession and may retain the said security deposit to apply on such damages as may be suffered or shall accrue thereafter by reason of TENANT'S default or breach. LANDLORD shall not be obliged to keep the said security deposit as a separate fund, but may mix the said security deposit with his own funds.

Any security deposit shall bear interest as required by law as if the deposit funds were held under a residential lease.

45. ADDITIONAL RENT- CPI ADJUSTMENT. The basic monthly rental shall be adjusted for each year of the term of this Lease by any change in the index now known as "United States Bureau of Labor Statistics, Consumer Price Index for Urban Wage Earners and Clerical Workers all items for Washington, D.C. SMSA (BASE: 1967=100.0)" or any successor index (hereinafter referred to as the "index"); provided, however, that the amount payable by TENANT under this Lease as rental shall not be less than the rental payment schedule as outlined in this Lease, nor shall the rental payment be less than any rental previously established pursuant to a Consumer Price Index increase. Such adjustment shall be accomplished by multiplying the aforementioned basic monthly rental (i) first by 1.78 and (ii) then by a fraction, the numerator of which shall be the most recently published monthly index preceding the first day of the Lease year for which such annual adjustment is to be made, and the denominator of which fraction shall be the corresponding monthly index immediately preceding the commencement date of the term of this Lease. If such index shall be discontinued with no successor, or comparable successor index, then the parties shall attempt to agree upon a substitute formula, but if the parties are unable to agree upon a substitute formula, then the matter shall be determined by arbitration in accordance with the rules of the American Arbitration Association then prevailing.

The intent of the parties in applying this formula is to increase rent by an amount which would be the same amount as would be determined by applying a CPI increase to a base rent of $1,487.00.

46. FUNDS APPLICATION. All payments previously tendered by TENANT shall, at the option of LANDLORD be applied in the following order: (i) to any unpaid amounts previously due hereunder, (ii) to any charges or fees under a pending court action against TENANT, (iii) to current rent and (iv) the balance, if any, either on account of the next rent or other charges due or refunded to TENANT in accordance with TENANT'S instructions.

47. PERSONAL PROPERTY LIEN. LANDLORD shall have a lien upon all the personal property and equipment of TENANT in and upon the leased premises or in the building of which the leased premises are a part, as and for security for the rent herein provided to be paid; and such installments of rent as shall remain unpaid to the amount and extent thereof shall become and are hereby made a specific lien upon such personal property, to all intents and purposes as though TENANT had executed a security

Lease, Page 6

CH0050

agreement to secure LANDLORD for the rent reserved; and TENANT shall not remove, or attempt to remove, any personal property from said leased premises or the aforesaid building, while there yet shall remain due and owing any portion of the rent reserved by this Lease, and should said TENANT attempt to remove such property, LANDLORD is hereby empowered to seize and detain the same until LANDLORD shall be paid fully for such rent as shall then be, or thereafter become, due under the terms of this Lease. In addition, LANDLORD shall have a right to distrain for rent due as provided by law.

Notwithstanding the foregoing, Landlord agrees to subordinate its lien on any equipment belonging to Tenant to any purchase money lien required by Tenant in order to obtain financing for any equipment located in or on the premises.

48. LOCKS. No locks on the premises shall be changed or rekeyed without the prior written consent of LANDLORD or Agent and, where such consent is given, TENANT shall promptly deliver to LANDLORD or Agent a copy of all key(s) for each lock installed or rekeyed.

49. PROPERTY STORAGE. All personal property placed in the leased premises, storage room or basement (if any) or in any other portion of said building or any place appurtenant thereto, shall be at the sole risk of TENANT or the parties owning the same, and LANDLORD and Agent shall in no event be liable for the loss, destruction, theft or damage to such property.

50. CONDITION OF PREMISES UPON TENANT VACATING. TENANT agrees to maintain the leased premises in their current condition and to return premises to LANDLORD upon termination of this lease in the same condition as he received said premises, ordinary wear and tear excepted.

TENANT will be responsible for any damages to walls or woodwork including but not limited to those resulting from the use of picture hooks, cup hooks, nails or screws and said TENANT agrees to repair all holes and damage made in walls and woodwork, etc., at his expense. Where the premises contain wall-to-wall carpeting, TENANT will at the expiration of his lease return all such carpeting in the same condition as received and, where the carpeting was professionally cleaned at lease commencement, shall have such carpeting professionally cleaned as evidenced by a paid current bill. At expiration of tenancy, TENANT will replace as light bulbs, clean said premises and remove trash from the premises. If such cleaning and removal of trash is not accomplished by TENANT, action deemed necessary by LANDLORD or the Agent shall be taken by the Agent and the cost deducted from the security deposit.

Upon vacating the premises, TENANT shall deliver all keys thereto to the Agent within twenty-four (24) hours after vacating. Failure to comply will be cause for LANDLORD to replace all locks and charge the cost against the security deposit.

51. NOTICE. Any notice by one party to the other shall be deemed to be duly given if in writing and either delivered personally to or mailed and deposited in any general or branch post office enclosed in a postpaid envelope addressed to the other at the following addresses

If to Tenant at
the leased premises

If to Landlord at
_____
_____

With a copy to Agent at
Chatel Real Estate, Inc.
3210 N Street, N.W.
Washington DC 20007.

Either party may change its address for purposes hereof by written notice in conformity with the requirements of this section.

52. WAIVER. No failure by LANDLORD to insist upon the strict performance of any term or condition of this lease or to exercise any right or remedy available on a breach thereof, and no acceptance of full or partial rent during the continuance of any such breach shall constitute a waiver of any such breach or of any such term or condition. No term or condition of this lease required to be performed by TENANT, and no breach thereof, shall be waived, altered, or modified, except by a written instrument executed by LANDLORD. No waiver of any breach shall affect or alter any term or condition in this lease, and each such term or condition in this lease, and such and such term or condition shall continue in full force and effect with respect to any other than existing or subsequent breach thereof.

53. NOTICE OF TERMINATION. TENANT agrees that, in the event that TENANT does not intend to continue possession after the expiration of this lease, TENANT will give no less than thirty (30) days' written notice of intent to vacate. Notices received by LANDLORD from TENANT after the first day of the month of intended removal from the premises shall be deemed late notices and shall be effective as if received on the first day of the following month, and TENANT'S liability to LANDLORD for rent shall extend to the last day of the month for which said notice is effective.

54. SOCIAL SECURITY- TAX IDENTIFICATION NUMBER. TENANT (or each TENANT, as the case may be) agrees to provide to LANDLORD his social security number, tax identification number or tax exemption number.

55. ENTIRE AGREEMENT-SEVERABILITY. This Lease contains the entire and final agreement of and between the parties hereto, and they shall not be bound by any statements, conditions, representations, inducements or warranties, oral or written, not herein contained, unless there is written amendment thereto signed by all the parties hereto.

If any term or provision of this lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term and provision of this lease shall be valid and be enforced to the fullest extent permitted by law.

56. ENFORCEABILITY. The conditions and agreements contained herein are binding on, and may be legally enforced by the parties hereto, their heirs, executors, administrators, successors and assigns, respectively.

57. MISCELLANEOUS. Paragraph headings are for purposes of convenience only and not to be considered as part of this Lease. Feminine or neuter pronouns shall be substituted for those of the masculine form, and the plural shall be substituted for the singular number, in any place or places herein in which the context may require such substitution or substitutions.

The parties agree to execute and deliver any instruments in writing necessary to carry out any agreement, term, condition, or assurance in this lease whenever occasion shall arise and request for such instruments shall be made. The specified remedies to which LANDLORD may resort under the terms of this lease are cumulative and are not intended to be exclusive of any other remedies or means of redress to which LANDLORD may be lawfully entitled in case of any breach or threatened breach by TENANT of any provision or provisions of this lease.

**50. ADDENDUM.** Additional Paragraphs _____ through _____ set forth on the Addendum hereto are incorporated herein and made a part hereof, and all parties acknowledge that they have read said paragraphs as indicated by their initials or signatures at the end of the Addendum.

**49. REVIEW OF AGREEMENT.** TENANT has read this lease agreement in its entirety and understands its terms and understands that this agreement is a binding contract.

**51. CONSENT.** Whenever consent of the LANDLORD is required hereunder, LANDLORD agrees to act in a reasonable manner and not to unreasonably withhold or delay such consent. Failure by Landlord to object in writing within ten (10) business days of receipt of a written request from TENANT shall be deemed consent to TENANT's request.

In Testimony Whereof, LANDLORD and TENANT have signed these presents the day and year first herein before written.

CHATEL REAL ESTATE, INC.
BY: _____
    (Vice) President

LANDLORD
BY: _____
    (Vice) President

TENANT
Tax id or SS #: 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
BY: _____
    (Vice) President

Lease, Page 8

P.13/13　　TOTAL P.13　　CH0051