## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOHN BRATTON** | &#124; | |
| Plaintiff | &#124; | |
| v. | &#124; | Case No.: 06-CV-00694 (JDB) |
| **CHATEL REAL ESTATE, INC.** | &#124; | The Honorable John D. Bates |
| and | &#124; | |
| **THIERRY LIVERMAN** | &#124; | |
| and | &#124; | |
| **MARY WHITE** | &#124; | |
| Defendants | &#124; | |

---

## DEFENDANT MARY WHITE'S FIRST MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, TO DISMISS

Defendant, Mary White, by her attorney, Robert H. Bouse, Jr., pursuant to Federal Rules of Civil Procedure 12 and 56, moves this Court for summary judgment in her favor and against the Plaintiff on all claims, or, in the alternative, for dismissal with prejudice, and in support thereof, states as follows:

1.  Plaintiff lacks standing to bring the claims that have been asserted against this Defendant.

2.  Defendant hereby adopts and incorporates by reference its Memorandum of Points and Authorities, attached hereto.

WHEREFORE, for the reasons stated in this Motion and in Defendant's Memorandum of Points and Authorities, Defendant Mary White respectfully requests that the Court grant judgment in her favor or, in the alternative, dismiss with prejudice all claims against her.

_____/s/_____
Robert H. Bouse, Jr. (Bar #MD01926)
ANDERSON, COE & KING, LLP
201 N. Charles Street, Suite 2000
Baltimore, Maryland 21201
Telephone: 410-752-1630
Fax: 410-752-0085
*Attorney for Mary White*

## REQUEST FOR ORAL ARGUMENT

Defendant, Mary White, respectfully requests oral argument on her Motion.

_____/s/_____
Robert H. Bouse, Jr. (Bar #MD01926)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of February, 2007, a copy of the foregoing Motion, Memorandum of Points and Authorities, Request for Oral Hearing and proposed Order was served by electronic mail upon:

Stefan Shaibani, Esq.
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, NW
Suite 900
Washington, D.C. 20036
*Attorney for Plaintiff John Bratton*

Matthew A. Ranck, Esq.
Nicholas B. Reuhs, Esq.
ECCLESTON & WOLF, P.C.
2001 S. Street, N.W., Suite 310
Washington, D.C. 20009
*Attorneys for Defendants, Chatel
Real Estate, Inc. and Thierry Liverman*

_____/s/_____
Robert H. Bouse, Jr. (Bar #MD01926)

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOHN BRATTON** | | |
|     Plaintiff | | |
| v. | | Case No.: 06-CV-00694 (JDB) |
| **CHATEL REAL ESTATE, INC.** | | The Honorable John D. Bates |
| and | | |
| **THIERRY LIVERMAN** | | |
| and | | |
| **MARY WHITE** | | |
|     Defendants | | |

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**MARY WHITE'S FIRST MOTION FOR SUMMARY JUDGMENT OR, IN THE**
**ALTERNATIVE, TO DISMISS**

Defendant, Mary White ("Ms. White"), by her attorney, Robert H. Bouse, Jr., hereby files

this Memorandum of Points and Authorities in support of her First Motion for Summary

Judgment or, In the Alternative, to Dismiss, and in support thereof, states as follows:

**I.**     **INTRODUCTION**

Ms. White owned commercial property located at 1622 Wisconsin Avenue in the

Georgetown area of Washington, D.C., which she made available for lease in the summer of

2005. To list the property, find potential tenants and show the property, Ms. White retained

Chatel Real Estate, Inc. ("Chatel"), now a co-Defendant in this litigation. In response to the

property's listing on the Metropolitan Regional Information System ("MRIS") database, Ms.

White received, through Chatel, several lease offers including one from Plaintiff John W. Bratton

("Plaintiff"). Plaintiff's interest in the property arose from his desire to use it as a second office location for his real estate company, Bratton Realty, LLC ("Bratton Realty").

After Plaintiff submitted leases for Ms. White's approval, Ms. White decided to pursue a lease with another candidate, Roberta Medlin ("Ms. Medlin"), and Plaintiff was advised of Ms. White's intentions. Thereafter, lease negotiations with Ms. Medlin broke down and Ms. White advised her attorney to contact Plaintiff to re-initiate lease negotiations with him. On October 31, 2005, less than one month after Plaintiff first expressed interest in the property, Ms. White and Plaintiff ratified a lease agreement whose start date was the following day, November 1, 2005. To date, Plaintiff's use of the property has been as a second office location for Bratton Realty, just as the parties mutually intended upon signing the lease.

Despite the fact that Plaintiff actually obtained a lease for the property on behalf of Bratton Realty and has been unimpeded in his use of that property for Bratton Realty, Plaintiff filed the instant action, individually, alleging that Defendants wrongfully discriminated against him based on his race and appearance. His Complaint is premised upon alleged violations of 42 U.S.C. §§ 1981 and 1982 of the Federal Civil Rights Act and §§ 1402.21 and 1402.23 of the District of Columbia Human Rights Act ("DCHRA"). As set forth below, Plaintiff's negotiation and ultimate signing of the lease were on behalf of Bratton Realty, thus, if Defendants caused any injury, it would have been endured by Bratton Realty and not the Plaintiff individually. Accordingly, Plaintiff is without standing to assert these claims in his individual capacity and Defendant is entitled to summary judgment in her favor and against Plaintiff, or, in the alternative, to dismissal with prejudice of all claims against her.

2

## II.    STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE

Ms. White hereby adopts and incorporates the sectioned titled "Statement of Material Facts Not in Dispute" as set forth in co-Defendant, Chatel Real Estate and Thierry Liverman's First Motion for Summary Judgment.  In addition, Ms. White states as follows:

In an attempt to finalize lease negotiations with Plaintiff, Ms. White's personal counsel, John Gordon Forester, Jr. ("Mr. Forester"), assumed lease negotiations with Plaintiff on October 18, 2005.  (Exhibit 1, 10/18/05 Letter from Forester to Bratton).  As part of their negotiations, Mr. Forester advised Plaintiff that although Bratton Realty may remain the lease tenant, Plaintiff must personally guarantee the lease.  (Id.)  To accommodate Mr. Forester's request, Plaintiff signed the lease in his individual capacity as personal guarantor for Bratton Realty.  (Exhibit 2, 10/31/05 Lease and Checks).

Despite the fact that Plaintiff signed the lease individually, the only tenant ever discussed or contemplated by the parties for lease of the property was Bratton Realty.  This is supported by the lease language, which provided that the tenant would not use the property for any purpose other than "commercial office space," and the Plaintiff's payment of the first month's rent and the security deposit, both of which were in the form of checks from Bratton Realty.  (Exhibit 2, 10/31/05 Lease & Checks).  In accordance with the parties' intentions, Plaintiff's use of the property has been limited to commercial space for Plaintiff's company, Bratton Realty.

## III.    ARGUMENT

Throughout the negotiation process, Plaintiff acted entirely for the benefit of Bratton Realty with the goal of securing commercial rental space.  Plaintiff never represented that his actions were on behalf of himself, always holding himself out as the President of Bratton Realty, and Ms. White, through her agents, relied on those representations throughout their dealings with

3

him. Prior to the ratification of the final lease, every lease submitted by Plaintiff was on behalf of the prospective tenant, Bratton Realty, not John Bratton individually. In fact, the only reason Plaintiff individually signed the last lease is because Defendant required it. (Exhibit 1, 10/18/05 Letter from Forester to Bratton). In a letter sent to Plaintiff on October 18, 2005, Mr. Forester explained that "[t]he tenant can be the LLC, but you must personally guarantee the lease." (Id.)

Plaintiff's suit was brought by John Bratton, individually, and alleges injuries suffered by Plaintiff, personally. However, because he was acting on behalf of Bratton Realty when he signed the lease and because his role in signing was as a contracting officer and personal guarantor of a corporate contract, any alleged injuries would have been to the prospective tenant, Bratton Realty, and not Plaintiff in his individual capacity. Having failed to allege any harm distinct from that allegedly suffered by Bratton Realty, summary judgment should be granted in Ms. White's favor and against Plaintiff, or in the alternative, Plaintiff's claims against Ms. White should be dismissed with prejudice.

### *a.  Plaintiff lacks standing to assert civil rights claims against Ms. White under 42 U.S.C. § 1981.*

Inasmuch as § 1981 of the Civil Rights Act protects the equal right of all persons "to make and enforce" contracts, a plaintiff cannot state a claim under the statute unless "he has rights under the existing contracts that he wishes 'to make and enforce.'" Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 126 S.Ct. 1246, 1252 (2006); Rev. Stat. § 1977, 42 U.S.C. § 1981. In the case setting forth that rule, the Supreme Court, through Justice Scalia, analyzed the issue of "whether a plaintiff who lacks any rights under an existing contractual relationship...may bring suit under Rev. Stat. § 1977, 42 U.S.C. § 1981." Id. at 1247. There, plaintiff John McDonald brought suit against Domino's Pizza alleging that they had broken contracts with JWM, a corporation of which McDonald was the sole shareholder and president. Id. The suit

4

was dismissed by the District Court because "a president or sole shareholder may not step into the shoes of the corporation" and assert a § 1981 claim personally. Id. at 1248-49. The Ninth Circuit reversed the District Court, holding that because McDonald suffered "injuries distinct from that of the corporation," he may bring a § 1981 suit. Id. at 1249. Ultimately, the Supreme Court reversed the Ninth Circuit, holding that McDonald lacked standing to assert his claims against defendants because the relevant contractual relationship was between Domino's and JWM, not between Domino's and McDonald. Id. at 1250.

The Supreme Court's opinion was based upon principles of corporation and agency law; namely, that because a "shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts," the officer is precluded from exercising any rights under the contract. Id. Thus, in order to maintain standing to bring a §1981 claim, a plaintiff "must identify injuries flowing from a racially motivated breach of their own contractual relationship, not of someone else's." Id. at 1252. Where plaintiff fails in this regard, the claims must be dismissed. Id.

In the instant case, Plaintiff is the owner, president and sole member of Bratton Realty, a Limited Liability Company formed under the laws of the District of Columbia in September 2003. (Exhibit 3, 12/27/05 Certificate of Good Standing). He first inquired about Ms. White's property because he felt it was "a suitable office space for his real estate brokerage, Bratton Realty." (Plaintiff's Complaint, ¶ 28). When he first met with Ms. White's brokers, he informed them that "he was a real estate broker and owner of a real estate company" and that "he would liked to execute a lease agreement for the Wisconsin Avenue property…" (Id., ¶ 29). Plaintiff then submitted multiple leases to Ms. White's agents, each on behalf of Bratton Realty and each listing "Bratton Realty" as the tenant. (Exhibit 4, Various Leases). When he submitted the final

lease, which was ratified by both parties, Plaintiff also submitted the first month's rent and a security deposit, each drawn on Bratton Realty bank accounts. (Exhibit 2, 10/31/05 Lease & Checks; Exhibit 4, Various Leases). It is clear that Plaintiff was, at all relevant times, acting on behalf of Bratton Realty as its contracting officer and corporate guarantor, as agreed by the parties. At no time was he acting in his individual capacity or for any reason other than to secure commercial space for Bratton Realty.

Though Plaintiff contends in his Complaint that Ms. White's alleged discrimination personally injured him, the law does not support his claims. (Plaintiff's Complaint, ¶ 57). Plaintiff here is in the same position that John McDonald found himself in Domino's Pizza. 126 S.Ct. at 1252. His complaint identifies a contractual relationship, but it is between two other parties, Ms. White and Bratton Realty. Plaintiff, individually, was nothing more than an agent and, as such, his injuries, if any, were necessarily derivative of Bratton Realty's. Accordingly, Plaintiff's fate in this case must be the same as it was for John McDonald in Domino's Pizza. Id.

Plaintiff has failed to identify injuries which flow from a racially motivated breach of his own relationship, rather than that of his corporation's. Id. Consequently, Plaintiff lacks standing to assert his claims individually against Ms. White. See Gersman v. Group Health Association, Inc., 931 F.2d 1565, 1567, 289 U.S.App.D.C. 332 (D.C.Cir. 1991) (holding that corporate officer lacked standing to bring §1981 or DCHRA claims against defendant who had contractual and business relationship with officer's corporation, but not officer individually); see also Johnson v. D.C., 2004 WL 2616286, *1, 2004 U.S. App. LEXIS 24145, *1 (D.C. Cir. 2004) (citing Gersman approvingly).

6

### b. *Plaintiff lacks standing even though he signed the lease individually.*

Defendant anticipates Plaintiff's argument that he signed the lease agreement personally

and, as such, has individual standing to bring suit arising out of that lease agreement. As set

forth above, though, Plaintiff was not acting in his individual capacity. In each lease Plaintiff

drafted, prior to the final lease, Bratton Realty was the listed tenant. The only reason the final

lease was signed by John Bratton is that Ms. White required him to "personally guarantee the

lease." (Exhibit 1, 10/18/05 Letter from Forester to Bratton). In other words, even though it is

Plaintiff's signature on the ratified lease, his signature simply represents his capacity as an agent

and contracting officer of Bratton Realty for the purposes of signing the lease agreement. The

lease agreement itself was for the benefit of Bratton Realty, was signed by Bratton Realty's agent

and was accompanied by checks drawn on Bratton Realty's accounts. The lease agreement is,

indeed, Bratton Realty's.

These circumstances are not necessarily uncommon. In <u>Krupa v. Leonardi Enterprises</u>,

2007 WL 178305 (N.D.Ill. 2007), the plaintiff, Shaurin Mehta, was the sole shareholder of

Shreeji Krupa, Inc., a grocery store which leased space from defendant, Leonardi Enterprises.

<u>Id</u>. at *1. Claiming that Leonardi Enterprises failed to extend a lease to Shreeji Krupa because

its sole shareholder was of dark skin and Indian ancestry, Mehta brough suit alleging a violation

of 42 U.S.C. §§ 1981 and 1982. <u>Id</u>. Relying on <u>Domino's Pizza</u>, the District Court granted

defendant's motion to dismiss, holding that the shareholder and contracting officer lacked

standing. <u>Id</u>. at *3. Significantly, the plaintiff attempted to distinguish <u>Domino's Pizza</u> by

arguing that "because he personally guaranteed the lease, he has a sufficient contractual

relationship to bring suit." <u>Id</u>. The Court disagreed, specifically stating that "even if Mehta was

7

the guarantor of the corporate debt, that status does not result in a contractual relationship sufficient to create standing…"  Id.

This Court held the same way, albeit in a case alleging different theories of liability.  In Labovitz v. Washington Times Corp., 900 F.Supp. 500 (D.D.C. 1995), judgment aff'd, 172 F.3d 897 (D.C. Cir. 1999), plaintiffs were officers, directors and shareholders of a corporation that entered into a Loan Agreement and Purchase Agreement with the Washington Times newspaper. Id. at 501-02.  "Plaintiffs signed the Loan Agreement and Purchase Agreement in their individual capacities, as guarantors of the loan, and as [] stockholders, respectively." Id. at 502.  When the Washington Times subsequently seized full control of the operation of plaintiff's company, plaintiffs brought suit individually on several counts, alleging devaluation of stock, breach of contract and that their personal guarantees were triggered.  Id.  Defendants moved to dismiss plaintiff's claims, arguing that plaintiffs lacked standing because of the "general rule that a shareholder may not sue as an individual if the alleged wrong is primarily against the corporation," absent some special injury. Id. at 503.

The Court granted defendant's motion to dismiss plaintiffs' claims, holding that plaintiffs failed to satisfy the standing requirement that they have suffered some individual injury distinct from the injury suffered by the corporation. Id. at 504.  The plaintiffs argued that defendants breached a special duty owed to them because "they signed the Loan Agreement and the Purchase Agreement in their individual capacities, and therefore, had a direct contractual relationship with [defendants]." Id. at 505.  The Court disagreed, holding that "although [plaintiffs] may have dealt directly with [defendant] in their individual capacity, 'direct *dealing* is not direct *injury.*'" Id. at 505 (citing Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago, 877 F.2d 1333, 1336 (7th Cir. 1989)) (emphasis original).  The Court noted that many

8

courts have "rejected the assertion that a stockholder's status as a guarantor of a corporate debt gives him standing to assert an individual claim against some third party." Id. (citing Nicholson v. Ash, 800 P.2d 1352, 1357 (Colo.Ct.App. 1999)). From a policy perspective, the Court also explained that "[a]llowing recovery for derivative injuries would be a form of double counting; because the corporation is allowed to litigate in its own name and collect the whole sum." Id. In other words, in this case, both Plaintiff and Bratton Realty would be permitted to the same recovery, separately.

Just as in those cases, Plaintiff here personally guaranteed and signed contracts on behalf of a company of which he is owner and sole shareholder and dealt directly with Defendants. Just as in those cases, Plaintiff here alleged injuries which were the same as those allegedly incurred by the company. Consequently, just as in those cases, Plaintiff here should be precluded from bringing suit because the alleged injury was not suffered individually, but rather by the company. See Domino's Pizza, 126 S.Ct. at 1252. Regardless of the fact that Plaintiff signed the lease agreement individually, he acted on behalf of Bratton Realty, not himself. This was so from the first moment he expressed interest in the property to the moment the lease was ratified and even today as he continues to use the property as office space for Bratton Realty. As the Supreme Court stated in Domino's Pizza,

> The corporate form and rules of agency protected his personal assets even though he negotiated, signed, performed and sought to enforce contracts for [the corporation]. The corporate form and the rules of agency similarly deny him rights under those contracts.

Domino's Pizza, 126 S.Ct. at 1251. Plaintiff's direct dealing with defendants in this case does not translate to direct individual injury. See Labovitz, 900 F.Supp. at 505. Accordingly, any legal remedies available in this action belong to Bratton Realty and not the Plaintiff.

### c. *Plaintiff's lack of standing applies to each claim.*

Ms. White hereby adopts and incorporates section II.B., titled "This Rule Is Equally Applicable To Each Of Plaintiff's Claims" as set forth in co-Defendant, Chatel Real Estate and Thierry Liverman's First Motion for Summary Judgment and, in addition thereto, states as follows:

While Domino's Pizza only interpreted 42 U.S.C. § 1981, other cases have construed §1981 and §1982 in tandem as both are derived from Section 1 of the Civil Rights Act of 1866. See, e.g., Krupa v. Leonardi Enterprises, 2007 WL 178305 (N.D.Ill. 2007). In addition, courts are encouraged to look to comparative federal law for guidance in interpreting the D.C. Human Rights Act. See Futrell v. Department of Labor Federal Credit Union, 816 A.2d 793, 802 - 803 (D.C. 2003) ("in considering claims brought under the DCHRA, we rely on 'the same three-part, burden-shifting test articulated by the Supreme Court for Title VII cases.'"); Wallace v. Skadden, Arps, Slate, Meagher & Flom, 715 A.2d 873, 888 n. 31 (D.C. 1998) (noting that D.C. Courts generally look to Title VII of the Civil Rights Act of 1964 in interpreting the DCHRA); Daka, Inc. v. Breiner, 711 A.2d 86, 98 (D.C. 1998) ("this court, after examining the legislative history of the DCHRA, concluded that the legislature had specifically patterned the statute after both Title VII...and the predecessor of 42 U.S.C. § 1981 (the Civil Rights Act of 1866, as amended in 1870...)).

## IV.    CONCLUSION

For all the reasons stated in Defendant, Mary White's Motion for Summary Judgment or, In the Alternative, To Dismiss and in this Memorandum of Points and Authorities in Support Thereof, Defendant respectfully requests that the Court grant summary judgment in Ms. White's favor against Plaintiff or, in the alternative, that Plaintiff's claims be dismissed with prejudice.

_____/s/_____
Robert H. Bouse, Jr. (Bar #MD01926)
ANDERSON, COE & KING, LLP
201 N. Charles Street, Suite 2000
Baltimore, Maryland  21201
Telephone:  410-752-1630
Fax:  410-752-0085
*Attorney for Mary White*

11