## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JOHN BRATTON, )
)
Plaintiff, )
)
vs. )    Civil Action No. 06-694 (JDB)
)
CHATEL REAL ESTATE, INC., *et al.*, )
)
Defendants. )

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**1.     John Pagones—Chatel's real estate agent who listed Mary White's Property on the MRIS—introduced the first lease drafted by John Bratton to Mary White by stating**:

> Pagones:     She asked me who the lease was from.
> Q:             Could you elaborate on that, what you talked about with her?
> A:             I told her it was a real estate office, and **it was an African-American.  And I told her, be prepared for trouble.**[1]

**2.     Defendants misrepresented the availability of the 1622 Wisconsin Avenue Property to Plaintiff on October 12, 2005.**  During her October 12 meeting with Thierry Liverman, Mary White asked him whether she "had" to accept John Bratton's lease.[2]  After the meeting, Mr. Liverman telephonically informed John Bratton that the Property was no longer available, that it was already leased to someone else, that it was a done deal, and to not take it personally.[3]  Mr. Liverman relayed this information to John Bratton even though there was no lease executed on the Property on October 12, 2005,

---

[1] Exhibit 13, John Pagones Depo. Trans., November 20, 2006, pp. 53-54, lines 21-4.
[2] Exhibit 6, Thierry Liverman Depo. Trans., January 11, 2007, p. 253-254, lines 17-6.
[3] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2006, p. 129, lines 9-19; p. 218-219, lines 16-16; p. 256-258, lines 21-5.

and the only other potential tenant who expressed interest in the Property, Roberta

Medlin, had not even entered into a verbal commitment with Mary White.[4]  Mr.

Liverman testified in his deposition that he was acting under instructions of his principal

when he informed John Bratton that Mary White had leased the property to the other

candidate and "that's just business."[5]

3.    **Mary White's purported justifications for rejecting John Bratton's five**

**offers to lease the Property have all been refuted or withdrawn.**  There were three

purported justifications to Mary White's decision to lease the property to Roberta

Medlin.[6]  These are as follows:

> (a)  **Roberta Medlin was already a property owner in the area.**[7]  Nonetheless,
>
> John Bratton was also a property owner in the District of Columbia.  In fact, Mr.
>
> Bratton owned several properties in DC.
>
> (b)  **Mary White preferred the property to be leased to a jewelry store**
>
> **operator rather than to a potential competitor in the real estate industry.**[8]  In
>
> her responses to Plaintiff's First Set of Interrogatories, Ms. White claimed she
>
> wished to avoid having a tenant who would be a potential competitor in the real

---

[4] Exhibit 14, Roberta Medlin Depo. Trans., dated September 16, 2006, pp. 25-26, lines 14-4.

[5] Exhibit 6, pp. 100-101, lines 2-11.

[6] Exhibit 15, Defendant Mary White's Answers to Interrogatories and Responses to Request for Production of Documents Propounded by Plaintiff John Bratton, Response to Interrogatory # 7, p. 9 (which sets forth the three selection criteria for why she preferred leasing the Property to Roberta Medlin); See also Exhibit 16, Defendant Chatel Real Estate's and Thierry Liverman's Answers to Plaintiff's First Set of Interrogatories, Response to Interrogatory # 6, p. 7.

[7] *Id.*

[8] *See* Footnote 6, *supra*.

estate market.[9]   However, Ms. White subsequently stated in her deposition that she did not know where this information came from, and that her lawyers said it, not her.[10]   Further, Bratton Realty and Washington Fine Properties (where Ms. White joined in May 2005) are not competitors in the real estate market. Washington Fine Properties predominantly handles the sale of multimillion dollar properties[11] and has listings for properties worth as much as $16.5 million.[12] Bratton Realty, on the other hand, handles listings predominantly in the $400,000 - $600,000 range.[13]

**(c)  Mary White had purportedly received an "extremely favorable reference" for Roberta Medlin from a "personal friend."[14]**   In actuality, there never was a "personal friend" who provided an "extremely favorable reference" to Ms. White.  Roberta Medlin testified in her deposition that she did not know Mary White prior to October 2005 and that they had no mutual friends.[15]   Nor could Mary White identify in her deposition the person who purportedly gave her a favorable reference for Roberta Medlin.  Ms. White testified that the reference was neither verbal nor written![16]

---

[9] Exhibit 15, Defendant Mary White's Answers to Plaintiff's Interrogatories, Response to Int. # 4, p. 4.

[10] Exhibit 8, Mary White Depo. Trans., pp. 132-134, lines 5-22 (in which she claims these words were "put in her mouth").

[11] Exhibit 11, Thomas Anderson Depo. Trans., January 8, 2007, p.64-65, lines 11-7.

[12] Exhibit 11, p.65, lines 9-19.

[13] Exhibit 9, John Bratton Depo. Trans., January 24, 2007, p.95, lines 6-9.

[14] *See* Footnote 6, *supra*.

[15] Exhibit 14, Roberta Medlin Depo. Trans., dated September 26, 2006, pp. 11-14, lines 21-1.

[16] Exhibit 8, Mary White Depo. Trans., dated February 1, 2007, pp. 7-9, lines 9-11, pp. 70-72, lines 14-9.

**4.      Defendants discriminated against Plaintiff with respect to the terms and conditions of his lease.[17]**

   **(a)  Plaintiff was denied a right of first refusal.**  The lease drafted by defendants for Roberta Medlin included a right of first refusal[18] even though Ms. Medlin never asked for it.[19]  The lease executed between Mary White and John Bratton, on the other hand, had the provision regarding a tenant's right of first refusal (¶41) crossed out[20] even though it was a boilerplate clause in Chatel's Commercial Agreement of Lease.

   **(b)  Plaintiff was not allowed to convert his lease to month-to-month at the expiration of the two-year term.**  The lease drafted by defendants for Roberta Medlin included two provisions converting the lease to month-to-month at the expiration of the initial lease term (¶¶ 53 & 45).[21]  These same provisions were crossed out in John Bratton's lease agreement with Mary White.[22]

   **(c)  Plaintiff was denied an option to renew his lease at the expiration of the two-year term.**  Defendants advertised the street-level of Mary White's property as available to the public for a lease term ranging from 12-48 months.[23]  The

---

[17] Exhibit 39, Chatel's Fair Housing Manual, p. 3.

[18] Exhibit 3, Chatel's Standard Commercial Lease Agreement between Roberta Medlin and Mary White, dated October 11, 2005, p. 6, ¶41, lines 10-12.

[19] Exhibit 14, Roberta Medlin Depo. Trans., p.44, lines 14-16.

[20] Exhibit 1, Chatel's Standard Commercial Lease Agreement between John Bratton and Mary White, dated October 31, 2005, p. 6, ¶41.

[21] Exhibit 3, at pp.6-7, ¶¶45 and 53.

[22] Exhibit 1, Commercial Lease Agreement between John Bratton and Mary White, Oct. 31, 2005, pp. 6-7, ¶¶45 and 53.

[23] Exhibit 4, MRIS Listing, Street-Level of the Property, October 6, 2005, p.2; See also John Pagones Depo. Trans., p. 75-76, lines 17-9 (in which he acknowledges that the 121/48 on the MRIS is a typographical error and should instead be 12/48, meaning the property was advertised as available for a lease term between 12 to 48 months).

MRIS listing did not preclude the tenant's option to renew the lease,[24] and Mary White never informed Chatel when the property was first listed that she didn't want the prospective tenant to have an option to renew the lease.[25]    Nonetheless, John Bratton was informed that the street-level property was only available for a 2-year term, without an option to renew.[26]    In fact, John Gordon Forester (Mary White's lawyer) instructed Chatel's Liverman that the provision providing plaintiff with the option to renew the lease after his initial lease-term ended should be removed.[27]    There is no dispute that defendants wanted plaintiff to vacate the Property at the end of his two-year lease.[28]

**(d) Plaintiff was required to pay $200 per month for real estate taxes; Roberta Medlin was not.**    Defendants demanded an additional $200 per month in real estate taxes be paid by John Bratton, even though the MRIS listings did not require this, and the lease drafted by defendants for Roberta Medlin did not require her to pay any property taxes.[29]

---

[24] Exhibit 4.

[25] Exhibit 6, at p. 80, lines 14-20.

[26] Exhibits 19-21, John Gordon Forester's letters to John Bratton, dated October 18, 19 and 26, 2005.

[27] Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October 26, 2005.

[28] Exhibit 8, Mary White Depo. Trans., pp. 100-101; lines 9-2; See also Exhibit 6, Deposition Transcript of Thierry Liverman, pp. 198-199, lines 14-1 (in which they both admit that plaintiff must vacate the property after the 2-year lease term ends.)

[29] Compare Exhibit 1, ¶ 11 with Exhibit 3, ¶ 11.

**5.    John Bratton and Bratton Realty, LLC have suffered substantial economic damages as a result of defendants' discrimination**.

**(a)  Lost Rental Revenue**

Because of the denial of the option to renew and right to convert the lease to month-to-month at the end of the two-year term, plaintiff is forced to maintain two separate offices in DC—his previous office location at 1223 10th Street (which he owns), and the property he has leased from Mary White—since he has no choice but to vacate the 1622 Wisconsin Avenue Property at the expiration of his lease on October 31, 2007.[30]  As a result, John Bratton has been losing rental revenue that he could have generated from the 1223 10th Street Property in Logan Circle for over $1,600 per month during the two-year term of his lease with Mary White.[31]  These damages amount to over $38,400.

**(b)  Relocation Costs**

Plaintiff will incur expenses as a result of having to move his office.  These expenses include moving costs, purchasing some new office furniture to fit the new office, equipment, new business cards for seven independent contractors and plaintiff, new letterhead, logos, marketing and advertising material, new telephone, DSL, and facsimile lines, new signage for property listings and banner for the office, and license transfer fees.[32]  These expenses will exceed $12,000.

---

[30] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p. 63, lines 5-15.

[31] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 132-134, lines 14-2.

[32] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 123-124, lines 7-13.

**(c) Lost Profits and Loss of Goodwill**

Bratton Realty, LLC will also suffer loss of goodwill and loss of future real estate sales volume as a result of having to move its business from 1622 Wisconsin Avenue in Georgetown, the location Mr. Bratton's customers associate his business with.[33]  Mr. Bratton testified in his deposition that clients tend to gravitate more towards the Georgetown name and reputation[34] and the central location on Wisconsin Avenue draws numerous clientele and greater foot traffic through its visibility.[35]  Losing the Georgetown property and moving to a less prominent area will be a "major blow" to plaintiff's business, resulting in substantial loss of business deals and transactions amounting to tens of thousands of dollars per year.[36]  These damages would be applicable for over two years, since Mary White's property was advertised to the public as available for a 1 to 4-year lease, and plaintiff intended to occupy that space for the coming years.

6.    **Plaintiff was required to submit income tax returns and bank statements to financially qualify for the lease; Roberta Medlin was not**.  Under Mary White's instructions, John Gordon Forester demanded that Mr. Bratton submit two years of income tax returns and banks statements to financially qualify for the lease.[37]

---

[33] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, pp.344-345, lines 16-13.

[34] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 124-125, lines 15-1.

[35] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 126-127, lines 20-3.

[36] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 126-128, lines 20-16.

[37] Exhibit 19, John Gordon Forester's letter to John Bratton, dated October 18, 2005.

Mr. Bratton had over $250,000 in his checking account and clean credit.[38]  In contrast,

only a credit check was conducted on Roberta Medlin,[39] who was also self-employed. [40]

**7.     Defendants refused to lease Mary White's basement to John Bratton even**

**though the basement was advertised to the public as available for lease**.[41]  A

company used to lease the basement of Mary White's property for several years until

September 2005. When that tenant's lease expired in September 2005, Mary White

instructed her temporary office manager, Barrett Anderson, to clean up the area and sell

most of her office furniture on Craig's List.[42]  Soon thereafter, on September 23, 2005,

Mary White instructed Chatel to list the basement of the Property on the MRIS.[43]  Hope

Edwards, the receptionist at Chatel, created the graphic designs for both the street-level

and basement of the Property.[44]  In late September through early October 2005, Mary

White attempted to lease the basement of the Property to a white male who worked out of

---

[38] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 77-78, lines 17-17; See also Exhibits 24-25, Bank of America Account Activity Pages for John Bratton's Bank Accounts, dated October 19, 2005; See also Exhibit 18, National Registry Check on John Bratton, dated October 12, 2005.

[39] Exhibit 14, page 39, lines 8-16 and page 40, lines 8-11 of Roberta Medlin Depo. (in which Medlin admits that she was subject to a credit check and does not recall submitting any other documents in connection with her financial background to Chatel or Mary White); See also Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p. 226, lines 7-11; See also Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, p. 78, lines 1-6.

[40] Exhibit 14, Roberta Medlin Depo. Trans, dated September 26, 2006, p. page 37, lines 5-22; page 38, lines 1-22; page 39, lines 1-22; and page 40, lines 1-16, in which she admits that she does not recall being required to submit any financial information to Chatel or Mary White when she offered to lease the Property.

[41] Exhibit 5, MRIS Listing: Lower Level of the Property, Listing date: September 23, 2005 (October 6, 2005).

[42] Exhibit 12, Barrett Anderson Depo. Trans., dated November 16, 2006, p. 31, lines 14-19; pp. 133-134, lines 7-22.

[43] See Footnote 41, supra.

[44] Exhibit 7, Hope Edwards Depo. Trans., pp. 37-38, lines 17-8; See also Exhibit 41, Promotional Advertisement for the 1622 Wisconsin Ave. lower level commercial space.

his home in Georgetown.[45]  Nonetheless, when plaintiff attempted to lease the basement

of Mary White's property in October 2005, it suddenly became unavailable.

**8.      Mary White's contention that she withdrew the listing for the basement**

**because she needed to use it as her own office until renovations on "her new office"**

**at Washington Fine Properties were complete is false.[46]**  Mary White signed an

independent contractor agreement with Washington Fine Properties on May 10, 2005 and

was officially affiliated with them by no later than July 2005 when her license was

transferred there.[47]  After joining Washington Fine Properties, Mary White had access to

its offices located at 1101 30th Street[48] and 3201 New Mexico Avenue,[49] which she used

to attend meetings, handle business dealings and conduct transactions.  Ms. White used

Washington Fine Properties' offices in handling her first transaction involving purchase

of a property located at 1342 29th Street, which settled on June 20, 2005 for $659,000.[50]

She rarely, if ever, physically occupied or had use for the 1622 Wisconsin Avenue

Property, which is why she wished to lease the basement of the Property in September

---

[45] Exhibit 12, p. 19-21, lines 14-10 (in which he discusses Mary White's several
interactions with the unnamed male living in Georgetown who only wished to lease the
back portion of the lower-level of the Property.)
[46] Exhibit 15, Defendant Mary White's Answers to Interrogatories and Responses to
Request for Production of Documents Propounded by Plaintiff John Bratton, Response to
Interrogatory #8, p. 10; See also Exhibit 16, Defendants Chatel Real Estate's and Thierry
Liverman's Answers to Plaintiff's First Set of Interrogatories, Response to Interrogatory
# 6, p. 7.
[47] Exhibit 28, Independent Contractor Agreement executed between Mary White and
Washington Fine Properties on May 10, 2005.
[48] Exhibit 11, Thomas Anderson Depo. Trans, p. 22, lines 10-17, (in which Mr. Anderson
asserts that Mary White would physically come to the 1101 30th Street location); See also
Exhibit 8, p.137, lines 1-12.
[49] Exhibit 11, pp. 46-50, lines 16-11; See also Exhibit 8, p. 137, lines 13-15.
[50] Exhibit 23, Letter from Gerald Dziecichowicz at Saul Ewing to Stefan Shaibani, dated
October 5, 2006.

2005. Her decision not to rent the basement of the Property came only after John Bratton offered to rent both levels of her Property.[51]

**9.    Defendants engaged in illegal steering by favoring a Georgetown resident to lease the Property rather than Plaintiff, who did not reside in Georgetown.[52]**  One of the reasons defendants preferred to lease the Property to Roberta Medlin rather than John Bratton was because Ms. Medlin was already a property owner in Georgetown.[53]  Having an established residence in Georgetown ultimately made Roberta Medlin the more attractive and "first-class" candidate for leasing the property,[54] while John Bratton was perceived as a "second-class" candidate.

**10.    Defendants processed Roberta Medlin's application much faster than John Bratton's application, in violation of Chatel's First-Come, First-Served policy**.[55]

    **(a)    John Bratton first visited and expressed serious interest in the 1622 Wisconsin Avenue Property on October 6, 2005.[56]**  Despite his repeated

---

[51] Exhibit 21, Letter from John Gordon Forester to John Bratton, dated October 26, 2005 (claiming that lease was only available for the street level, this was not a new term and had been presented as such from the beginning.)  See also Exhibit 13, John Pagones Depo. Trans., dated November 20, 2006, p.24, lines 9-13 (in which Pagones admits that Mary White decision not to rent the lower-level of the Property was made after John Bratton inquired about the Property.)

[52] Exhibit 15, Defendant Mary White's Answers to Interrogatories and Responses to Request for Production of Documents Propounded by Plaintiff John Bratton, Response to Interrogatory # 7, p.9 (setting forth the first selection criteria for offering the lease to Roberta Medlin.  See also Exhibit 16, Defendants Chatel Real Estate's and Thierry Liverman's Answers to Plaintiff's First Set of Interrogatories, Response to Interrogatory # 8, p. 7 (which sets forth the first factor Mary White based her decision on.)

[53] *Id.*  Both defendants cite their first reason for choosing to lease the property to Roberta Medlin rather than John Bratton to be that Ms. Medlin was "already a property owner in the area."

[54] See Exhibit 6, Thierry Liverman Depo. Trans., dated January 11, 2007, p. 97, lines 3-7 (in which Mr. Liverman states that Mary White, based on second-hand information, believed Roberta Medlin's husband to be a "first class person.")

[55] Exhibit 39, Chatel's Fair Housing Manual.

attempts to acquire a blank lease agreement, rental application and information from Chatel regarding the landlord's requirements for the lease, he was continually denied this information.[57]  Similarly, Mary White did not respond to Mr. Bratton's letter and telephone calls.  Defendants' behavior continued for five days, as John Bratton attempted to draft five separate leases[58] without any aid from defendants.  Each lease he drafted from October 6 to October 11, 2005 was, in turn, rejected.

**(b)     Roberta Medlin expressed interest in the Property on October 11, 2005,[59] five days after John Bratton had already visited and expressed serious interest in securing the Property.**  Mary White agreed to meet with Roberta Medlin, gave Ms. Medlin a personal tour of the property,[60] answered all of Ms. Medlin's questions regarding the lease, assisted her in drafting a lease, and immediately contacted Thierry Liverman at Chatel to meet with Ms. Medlin the same day.[61]  Defendants didn't run a credit check on John Bratton until October 12, 2005, six days after he initially visited the 1622 Wisconsin Avenue Property

---

[56] Exhibit 10, John Bratton's Depo. Trans., dated January 19, 2007, p. 89, lines 3-9.

[57] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p. 105-106, lines 8-5.

[58] Exhibit 30, Signed Commercial Lease Agreement between John Bratton and Mary White, dated October 7, 2005; Exhibit 31, Signed Commercial Lease Agreement between John Bratton and Mary White, dated October 10, 2005; Exhibit 32-34, three different versions of Chatel's Standard Commercial Lease Agreement between John Bratton and Mary White, dated October 10, 2005.

[59] See Exhibit 40, Email from Barrett Anderson to Mary White, re: 1622 Lease Level 1, dated October 11, 2005.

[60] Exhibit 14, Roberta Medlin Depo. Trans., dated September 26, 2006, pp. 34-35, lines 17-4.

[61] Exhibit 6, Thierry Liverman Depo. Trans., dated January 11, 2007 pp. 135-137, lines 7-2.

and expressed interest in acquiring a lease agreement for it,[62] yet they ran Roberta

Medlin's credit check on October 11, 2005, the same day she visited the

Property.[63]  Indeed, pursuant to Mary White's request, Chatel met with Roberta

Medlin the first day she went to Chatel's office on October 11, 2005.  In this way,

defendants violated Chatel's First-Come First-Served Policy.[64]

**11.    The only reason Defendants leased the Property to Plaintiff for a two-year**

**term was because he had threatened to sue them for discrimination, and they**

**wanted to conceal their discrimination and avoid a lawsuit**.  In his conversation with

Thierry Liverman on October 12, 2005, Plaintiff informed Mr. Liverman he felt he had

been discriminated against, that "he would take this to a higher level,"[65] and that he was

going to file a complaint against defendants for discrimination.[66]  A few days after this

news was relayed to Ms. White,[67] she hired her attorney, John Gordon Forester, to

contact Plaintiff to commence "negotiating" the terms of the lease for the 1622

Wisconsin Avenue Property.[68]

**12.    Mr. Forester accused plaintiff of being a "test case" for discrimination,**

**because plaintiff was an African-American with dreadlocks, stating that he did not**

**intend in good faith to lease Georgetown office space and was simply looking to**

**"induce a lawsuit."[69]**

---

[62] Exhibit 18, National Registry Check on John Bratton, dated October 12, 2005.
[63] Exhibit 17, National Registry Check on Roberta Jean Medlin, dated October 11, 2005.
[64] Exhibit 39, Chatel's Fair Housing Manual.
[65] Exhibit 6, Thierry Liverman Depo. Trans., p. 102, lines 12-15.
[66] Exhibit 10, John Bratton Depo. Trans, January 19, 2007, p. 258, lines 3-11.
[67] Exhibit 6, pp. 102-105, lines 7-18.
[68] Exhibit 19, Letter from John Gordon Forester to John Bratton, dated October 18, 2005.
[69] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 66-71, lines 8-2.

13.    **Under Mary White's instructions, Mr. Forester demanded new and unfavorable terms and conditions from John Bratton to dissuade him from leasing the Property.**[70]   Execution of the lease agreement between John Bratton and Mary White was contingent on John Bratton's acceptance of her particular terms.   There was no negotiation between the parties, but continuous demands for new terms and conditions. Despite Mr. Forester's involvement to facilitate the lease, it ultimately took 24 days for John Bratton to execute the final lease from the date of his first offer on October 6, 2005.[71]   Drafting a lease for a small office space should not take so long.   This was a property renting for $2,500 a month, not the entire floor of a high-rise destined to be leased to a law firm.   Ultimately, despite Plaintiff's clear financial ability to lease the Property, it wasn't enough to outweigh the fact that he was black and had dreadlocks, and therefore, his money was no good to defendants.

14.    **John Pagones was previously involved in a discrimination suit which aired on Dateline-NBC in an Episode titled "No Way In," where he falsely stated to a person in a wheelchair inquiring about a property to lease in Georgetown:  "I have nothing in Georgetown."**[72]   It was later revealed in the Dateline-NBC episode that Chatel had several properties available in Georgetown on that day.   The Greater Housing Council of Washington, DC filed a discrimination suit against Chatel based on John Pagones' dishonest representation to the handicapped visitor.[73]   The case was subsequently settled,

---

[70] Exhibit 19-21, Letters from John Gordon Forester to John Bratton, dated October 18, 19 and 26, 2005.

[71] Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005.

[72] Exhibit 38, DVD of Dateline Episode titled "No Way In" (to be filed in paper).

[73] Exhibit 37, Washington Lawyers Committee for Civil Rights, Fair Housing Council of Greater Washington, p. 14.

but the evidence speaks for itself.  Significantly, Mary White testified that she did not

care about John Pagones' conduct as set forth in the Dateline NBC episode,[74] and on a

scale of one to ten, she gave him a "5 or 6 out of 10" with respect to his dealings with

John Bratton.[75]

**15.    Plaintiff is devastated by defendants' discriminatory treatment towards him.**

Defendants' racial discrimination towards plaintiff has taken a toll on his emotional well-

being.  John Bratton now suffers from depression as a result and continues to battle the

emotional trauma of the past 16 months on a daily basis.[76]

**16.    The final lease agreement was signed between Mary White and John**

**Bratton, not Bratton Realty, LLC.[77]**   The October 31, 2005 lease identifies Mr. Bratton

as the "Tenant."  Defendants insisted that John Bratton be the tenant named on the lease,

and not Bratton Realty, LLC.[78]

**17.    Chatel's contention that it had no involvement with John Bratton after**

**October 12, 2005 is contrary to evidence.[79]**

> **(a)    Chatel was intimately involved with drafting the October 31, 2005**
>
> **lease agreement executed between John Bratton and Mary White.  Indeed,**
>
> **Mary White's lawyer, John Gordon Forester, sent a fax to Chatel's**
>
> **Liverman on October 26, 2005, instructing him to draft a lease for John**

---

[74] Exhibit 8, Mary White Depo. Trans., pp. 220-221, lines 19-20.

[75] Exhibit 8, Mary White Depo. Trans., pp. 17-18, lines 19-5.

[76] Exhibit 42.

[77] Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005.

[78] Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October 26, 2005.

[79] See Defendants Chatel Real Estate, Inc and Thierry Liverman's First Motion for Summary Judgment, p. 5, ¶2, line 4.

Bratton.[80]  Mr. Forester asked Mr. Liverman to change the terms of Chatel's

Commercial Agreement of Lease in drafting the final lease agreement for John

Bratton.  Specifically, Mr. Forester informed Mr. Liverman to limit the duration

of the lease to two years only, excluding the tenant's right of first refusal and

option to renew for a third year, and to remove the provision converting the lease

to a month-to-month at the expiration of its term.  Chatel was further instructed to

include an additional $200 per month in real estate taxes.[81]  Thierry Liverman

testified in his deposition that he prepared Mr. Bratton's lease agreement

incorporating the terms and conditions requested of Mr. Forester during "the first

round" and transmitted a draft of the lease to Mr. Forester for further negotiations

with John Bratton.[82]  Mr. Liverman further testified that the final lease executed

between John Bratton and Mary White, containing the cross-outs, was drafted by

Chatel.[83]

**(b)    Chatel was Mary White's broker when John Bratton signed the final
lease agreement, and Chatel received a commission for the deal.[84]**

---

[80] Exhibit 2; See also Exhibit 8, Mary White's Depo. Trans., pp. 96-98 (in which she
admits she instructed Gordon Forester to request that Chatel draft the lease with the
specified changes.)

[81] *See* Footnote 77, *supra*.

[82] Exhibit 6, p. 153-155, lines 5-2.

[83] Exhibit 6, pp. 154-155; See also Exhibit 1, Signed Lease Agreement between John
Bratton and Mary White, dated October 31, 2005.

[84] Exhibit 6, Thierry Liverman Depo. Trans., pp. 68-69, lines 21-2; See also Exhibit 8,
Mary White Depo. Trans., pp.27-28, lines 11-10 (in which she admits that even though
she hired Gordon Forester to facilitate negotiating the lease, she still paid Chatel a
commission for leasing the Property.)

(c) **Chatel was managing Mary White's Property when John Bratton signed the lease on October 31, 2005, and Chatel continues to manage the Property to this day.[85]**

(d) **As part of its management of the Property, Chatel sent a $1,019 plumbing invoice to John Bratton months after he moved into the Property.[86]** Paragraph 9 of the lease agreement between Ms. White and Mr. Bratton warrants the plumbing system to be in good working order as of the date the tenant takes possession of the property.[87] The plumbing system at Mary White's Property was problematic before John Bratton's move-in date, and he made complaints about it within 30 days of having moved in.[88] Neither Thierry Liverman or Mary White could identify John Bratton as being responsible for the plumbing defects.[89] Nonetheless, Chatel sent a $1,019 plumbing invoice to John Bratton on February 18, 2006, as part of its management of Mary White's Property.

Clearly, Chatel was involved in the leasing of Mary White's Property to John Bratton after October 12, 2005, despite Chatel's contentions to the contrary.

---

[85] Exhibit 6, p. 113, lines 5-9 (in which Mr. Liverman admits that Chatel continues to manage the street and upper-level of Mary White's property); Exhibit 8, p. 275, lines 2-12 (in which Mary White admits that Chatel still manages the 1622 Property)

[86] Exhibit 22, Plumbing Invoice issued by Chatel Real Estate, Inc. to John Bratton, dated 02/08/06; See also Exhibit 6, Thierry Liverman Depo. Trans., p. 194, lines 8-21; See also Exhibit 8, Mary White Depo. Trans. p. 266 lines 7-15 (in which she states that her property was being managed by Chatel during the time the plumbing invoice was sent out.)

[87] Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005, ¶9, §b.

[88] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p.327, lines 6-16.

[89] Exhibit 6, p. 195, lines 7-13; See also Exhibit 8, pp. 266-268, lines 7-15.

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

DEFENDANTS STATEMENT 1:

1.      Plaintiff John Bratton is owner and president of Bratton Realty, LLC ("Bratton Realty").

PLAINTIFF'S RESPONSE:

1.      Agrees.

DEFENDANTS STATEMENT 2:

2.      Bratton Realty is a Limited Liability Company that was formed under the laws of the District of Columbia in September 2003.[90]

PLAINTIFF'S RESPONSE:

2.      Agrees.

DEFENDANTS STATEMENT 3:

3.      On Thursday, October 6, 2005, Plaintiff came to the offices of Defendant Chatel, identified himself as "the owner of [Bratton Realty,]" [91] and expressed interest in putting his brokerage firm in the Property.[92]

PLAINTIFF'S RESPONSE:

3.      Disagrees to the extent plaintiff sought to lease Mary White's office space for both himself and Bratton Realty, LLC.

---

[90] See Defendants Exhibit 1, Certificate of Good Standing, dated 12/27/05.
[91] See Amended Complaint, at ¶29.
[92] See Defendants Exhibit 2, Deposition of John Bratton, at 99:1-4.

17

DEFENDANTS STATEMENT 4:

4.      The next day, October 7, 2005, Plaintiff submitted a proposed lease, identifying

the owner Mary White as the landlord and "Bratton Realty"[93] as the tenant.

PLAINTIFF'S RESPONSE:

4.      Agrees.  However, while Plaintiff submitted several proposed leases identifying

"Bratton Realty" as the tenant, the final lease was executed between Mary White and

John Bratton, not Bratton Realty, LLC.[94]  Defendants insisted that John Bratton be the

tenant named on the lease, not Bratton Realty, LLC.[95]  See Plaintiff's Statement of

Material Facts Not in Dispute, ¶16.

DEFENDANTS STATEMENT 5:

5.      The agreement was accompanied by two checks written from a Bratton Realty

account[96] (intended to cover the security deposit and first month's rent) and a cover letter

indicating, "the space was a great fit for [Plaintiff's] current plans to open a second

[Bratton Realty] office in DC[,]" and explaining that he hoped to "continue the tradition

of [the Property] being a boutique real estate firm."[97]

---

[93] See Defendants Exhibit 3, Lease Agreement dated 10/7/05.

[94] Plaintiff's Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005

[95] Plaintiff's Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October 26, 2005.

[96] See Defendants Exhibit 4, Checks from Bratton Realty.

[97] See Defendants Exhibit 5, 10/7/05 letter from Bratton Realty to Mary White.

PLAINTIFF'S RESPONSE:

5.      Disagrees.  The checks submitted were issued from John Bratton's account - "John Bratton dba Bratton Realty."[98]  Further, John Bratton is "the company" Bratton Realty,[99] and Mr. Bratton declares all the income from Bratton Realty on his own federal income tax returns.

DEFENDANTS STATEMENT 6:

6.      On October 10, 2005, Plaintiff submitted a second proposed lease, altering some of the terms but leaving the tenant identified as Bratton Realty.[100]

PLAINTIFF'S RESPONSE:

6.      Agrees.  However, see Plaintiff's Statement of Material Facts Not in Dispute, ¶16. Plaintiff was forced to submit a second lease because his first lease was rejected, and Defendants refused to aid Plaintiff, or answer any of his questions as to what terms and conditions Mary White required.

DEFENDANTS STATEMENT 7:

7.      Later on October 10, Plaintiff was told that he would need to complete a Chatel standard commercial lease agreement (as opposed to the one he had drafted) and was provided with the form document to complete.[101]

---

[98] Plaintiff's Exhibit #1 Chatel's Standard Commercial Lease Agreement between John Bratton and Mary White, dated October 31, 2005, last page.
[99] Plaintiff's Exhibit # 9, John Bratton Depo. Transcript, p. 99, line 8.
[100] See Defendants Exhibit 6, Letter from John Bratton to John Pagones with "Updated Lease" attached.
[101] See Defendants Exhibit 2, supra, at 173:5-7, 176:9-20.

PLAINTIFF'S RESPONSE:

7.      Agrees.  However, Plaintiff was given this information after he repeatedly attempted to contact Defendants, wrote letters to Chatel and Mary White,[102] and submitted two draft leases on his own which were rejected by defendants.[103]

DEFENDANTS STATEMENT 8:

8.      On October 11, 2005, Plaintiff submitted one or more of three separate versions of the form Chatel lease.

PLAINTIFF'S RESPONSE:

8.      Agrees.  From October 5 – October 11, Plaintiff ultimately submitted 5 different lease proposals – all of which were rejected by defendants.[104]

DEFENDANTS STATEMENT 9:

9.      While each agreement contained slight variations in terms, *all continued to identify Bratton Realty as the tenant.*[105]

PLAINTIFF'S RESPONSE:

9.      Agrees.  However, while Plaintiff submitted several proposed leases identifying "Bratton Realty" as the tenant, the final lease was executed between Mary White and John Bratton, not Bratton Realty, LLC.[106]  Defendants insisted that John Bratton be the

---

[102] Plaintiff's Exhibit 29, Letter from John Bratton to Mary White, dated October 7, 2005; See also Exhibit 40, E-mail from Barrett Anderson to Mary White, dated October 11, 2005.

[103] Plaintiff's Exhibits 30 and 31.

[104] Plaintiff's Exhibits 30-34.

[105] Defendants Exhibit 7, 8 & 9, Various leases submitted by Plaintiff.

[106] Plaintiff's Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005

tenant named on the lease, not Bratton Realty, LLC.[107]  See Plaintiff's Statement of Material Facts Not in Dispute, ¶16.

DEFENDANTS STATEMENT 10:

10.    At no time did Plaintiff ever submit any proposed lease to Chatel identifying himself, individually, as the prospective tenant.

PLAINTIFF'S RESPONSE:

10.    Disagrees.  See Plaintiff's Statement of Material Facts Not in Dispute, ¶¶ 16-17. Chatel drafted the final lease executed between Mary White and John Bratton after receiving instructions from John Gordon Forester on October 26, 2005.

DEFENDANTS STATEMENT 11:

11.    On October 12, 2005, Ms. White met with Chatel principal and Defendant Thierry Liverman to evaluate the leases submitted by Bratton Realty and the other tenant candidate, Roberta Medlin.

PLAINTIFF'S RESPONSE:

11.    Agrees.

DEFENDANTS STATEMENT 12:

12.     Ms. White made a decision to pursue negotiations with the other applicant.

PLAINTIFF'S RESPONSE:

12.    Plaintiff disagrees with defendants' characterization that Ms. White "made a decision to pursue negotiations" with Roberta Medlin.  Instead, on October 12, 2005, defendants falsely informed plaintiff that the Property had been leased and that this was "just business," even though Mary White had not made a verbal commitment to Roberta

---

[107] Plaintiff's Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October 26, 2005.

Medlin, and no lease agreement had been executed between Ms. White and Ms. Medlin.
See Plaintiff's Statement of Material Facts Not in Dispute, ¶¶ 2-3.

DEFENDANTS STATEMENT 13:

13.    Plaintiff was notified of Ms. White's decision.[108]

PLAINTIFF'S RESPONSE:

13.    Disagrees.  Defendants misrepresented the availability of the Property to Plaintiff
on October 12, 2005.  Plaintiff was not told Ms. White wished to pursue "negotiations"
with the other applicant, but rather that someone else had already leased the property and
that it was a "done deal".  See Plaintiff's Statement of Material Facts Not in Dispute,
¶¶ 2-3.

DEFENDANTS STATEMENT 14:

14.    Thereafter, negotiations to finalize a lease with Ms. Medlin broke down and the
property again became available.

PLAINTIFF'S RESPONSE:

14.    Agrees.  However, defendants did not timely contact Plaintiff as to the Property's
availability.  Rather they waited five days until after Plaintiff threatened to sue them for
discrimination to contact him with regard to commencing negotiations for the Property.
See Plaintiff's Statement of Material Facts Not in Dispute, ¶11.

DEFENDANTS STATEMENT 15:

15.    After this date, Defendants Chatel and Liverman had no further contact with
Plaintiff regarding his leasing the Property.[109]

---

[108] See Defendants Exhibit 10, Depositions of Thierry Liverman, at 100:8-102:5.
[109] See Defendants Exhibit 2, supra, at 277:8-15.

PLAINTIFF'S RESPONSE:

15.     Disagrees.  Chatel was intimately involved with plaintiff's attempts to lease the Property after October 12, 2005.  See Plaintiff's Statement of Material Facts, ¶17.

DEFENDANTS STATEMENT 16:

16.     Rather, Mary White's counsel resumed negotiations with Plaintiff and the parties eventually came to an agreement whereby Plaintiff, individually, leased the Property.

PLAINTIFF'S RESPONSE:

16.     Disagrees.  See Plaintiff's Statement of Material Facts, ¶¶ 11-13, 17.

DEFENDANTS STATEMENT 17:

17.     As part of these negotiations, Ms. White requested that Plaintiff personally guarantee the lease,[110] and in order to address this issue, the lease was signed by Plaintiff in his individual capacity.[111]

PLAINTIFF'S RESPONSE:

17.     Disagrees.  Plaintiff was always the party to the lease agreement executed with Mary White, not a "guarantor."  See Plaintiff's Statement of Material Facts, ¶ 16.

DEFENDANTS STATEMENT 18:

18.      Nonetheless, at all times in which the Chatel Defendants were involved, Bratton Realty was the only prospective tenant contemplated.

---

[110] See Defendants Exhibit 11, 10/18/05 letter from John Gordon Forrester.
[111] See Defendants Exhibit 12, 10/19/05 letter from Plaintiff offering to lease the property in his own capacity, at ¶4.

PLAINTIFF'S RESPONSE:

18.     Disagrees.  Chatel was intimately involved with plaintiff's attempts to lease the Property after October 12, 2005.  See Plaintiff's Statement of Material Facts Not in Dispute, ¶¶ 16-17.

DEFENDANTS STATEMENT 19:

19.     Based on the undisputed facts, it is respectfully submitted that John Bratton, individually lacks standing to sue the Chatel's for alleged violations of: (1) §§ 1981 and 1982 of the Federal Civil Rights Act and (2) §§ 1402.21 and 1402.23 the D.C. Human Rights Act.

PLAINTIFF'S RESPONSE:

19.     Disagrees.  This statement is a legal conclusion to which no response is required. Without waiving this objection, plaintiff submits that he is the party to the lease executed with Mary White on October 31, 2005, and that he possesses standing to sue defendants for discrimination.[112]  Further, Chatel was intimately involved with plaintiff's attempts to lease the Property after October 12, 2005.  See Plaintiff's Statement of Material Facts Not in Dispute, ¶¶ 16-17.

                                        Respectfully submitted,

Dated: February 23, 2007                /s/ Stefan Shaibani
                                        Stefan Shaibani (Bar No. 490024)
                                        LITIGATION ASSOCIATE, PLLC
                                        1150 Connecticut Avenue, N.W.
                                        Suite 900
                                        Washington, DC 20036
                                        Tel:  (202) 862-4335
                                        Fax: (202) 828-4130

                                        *Attorney for Plaintiff*

---

[112] *See* Footnote 94, *supra*.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 23, 2007, I electronically filed "PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE, AND PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE," and that service was thus effected upon defendants' counsels in accordance with Local Civil Rule 5.4(d).

<u>/s/ Stefan Shaibani</u>