# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

JOHN BRATTON,               )
                                     )
      Plaintiff,              )
                                     )
        vs.                 )   Civil Action No. 06-694 (JDB)
                                     )
CHATEL REAL ESTATE, INC., _et al._,   )
                                     )
      Defendants.          )
_____)

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

**1.**    **John Pagones—Chatel's real estate agent who listed Mary White's Property on the MRIS—introduced the first lease drafted by John Bratton to Mary White by stating**:

> Pagones:    She asked me who the lease was from.
> Q:         Could you elaborate on that, what you talked about with her?
> A:         I told her it was a real estate office, and **it was an African-American. And I told her, be prepared for trouble.**[1]

**2.**    **Defendants misrepresented the availability of the 1622 Wisconsin Avenue Property to Plaintiff on October 12, 2005.** During her October 12 meeting with Thierry Liverman, Mary White asked him whether she "had" to accept John Bratton's lease.[2] After the meeting, Mr. Liverman telephonically informed John Bratton that the Property was no longer available, that it was already leased to someone else, that it was a

---

[1] Exhibit 13, John Pagones Depo. Trans., November 20, 2006, pp. 53-54, lines 21-4.
[2] Exhibit 6, Thierry Liverman Depo. Trans., January 11, 2007, p. 253-54, lines 17-6; Exhibit 8, Mary White Depo. Trans., February 1, 2007, p. 171, lines 12-17 (in which Mary White admits to having asked Thierry Liverman whether she "had" to accept John Bratton's lease.)

done deal, and not to take it personally.[3]  Mr. Liverman relayed this information to John

Bratton even though there was no lease executed on the Property on October 12, 2005,

and the only other potential tenant who expressed interest in the Property, Roberta

Medlin, had not even entered into a verbal commitment with Mary White.[4]  Mr.

Liverman testified in his deposition that he was acting under instructions of his principal

when he informed Mr. Bratton that Ms. White had leased the property to the other

candidate and "that's just business."[5]

**3.      Mary White's purported justifications for rejecting John Bratton's five**

**offers to lease the Property have all been refuted or withdrawn.**  There were three

purported justifications to Mary White's decision to lease the property to Roberta

Medlin.[6]  These are as follows:

>   **(a)  Roberta Medlin was already a property owner in the area.[7]**  Nonetheless,
>
>   John Bratton was also a property owner in the District of Columbia.  In fact, Mr.
>
>   Bratton owned several properties in DC.
>
>   **(b)  Mary White preferred the property to be leased to a jewelry store**
>
>   **operator rather than to a potential competitor in the real estate industry.[8]**  In

---

[3] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2006, p. 129, lines 9-19; p.
218-219, lines 16-16; p. 256-258, lines 21-5.
[4] Exhibit 14, Roberta Medlin Depo. Trans., dated September 16, 2006, pp. 25-26, lines
14-4.
[5] Exhibit 6, pp. 100-101, lines 2-11.
[6] Exhibit 15, Defendant Mary White's Answers to Interrogatories and Responses to
Request for Production of Documents Propounded by Plaintiff John Bratton, Response to
Interrogatory # 7, p. 9 (which sets forth the three selection criteria for why she preferred
leasing the Property to Roberta Medlin); See also Exhibit 16, Defendant Chatel Real
Estate's and Thierry Liverman's Answers to Plaintiff's First Set of Interrogatories,
Response to Interrogatory # 6, p. 7.
[7] *Id.*
[8] *See* Footnote 6, *supra*.

her responses to Plaintiff's First Set of Interrogatories, Ms. White claimed she wished to avoid having a tenant who would be a potential competitor in the real estate market.[9]  However, Ms. White subsequently stated in her deposition that she did not know where this information came from, and that her lawyers said it, not her.[10]  Further, Bratton Realty and Washington Fine Properties (where Ms. White joined in May 2005) are not competitors in the real estate market. Washington Fine Properties predominantly handles the sale of multimillion dollar properties[11] and has listings for properties worth as much as $16.5 million.[12] Bratton Realty, on the other hand, handles listings predominantly in the $400,000 - $600,000 range.[13]

**(c)  Mary White had purportedly received an "extremely favorable reference" for Roberta Medlin from a "personal friend."[14]**  In actuality, there never was a "personal friend" who provided an "extremely favorable reference" to Ms. White.  Roberta Medlin testified in her deposition that she did not know Mary White prior to October 2005 and that they had no mutual friends.[15]  Nor could Mary White identify in her deposition the person who purportedly gave her

---

[9] Exhibit 15, Defendant Mary White's Answers to Plaintiff's Interrogatories, Response to Int. # 4, p. 4.
[10] Exhibit 8, Mary White Depo. Trans., pp. 132-134, lines 5-22 (in which she claims these words were "put in her mouth").
[11] Exhibit 11, Thomas Anderson Depo. Trans., January 8, 2007, p.64-65, lines 11-7.
[12] Exhibit 11, p.65, lines 9-19.
[13] Exhibit 9, John Bratton Depo. Trans., January 24, 2007, p.95, lines 6-9.
[14] *See* Footnote 6, *supra*.
[15] Exhibit 14, Roberta Medlin Depo. Trans., dated September 26, 2006, pp. 11-14, lines 21-1.

a favorable reference for Roberta Medlin.  Ms. White testified that the reference

was neither verbal nor written![16]

4.     **Defendants discriminated against Plaintiff with respect to the terms and**

**conditions of his lease.[17]**

(a)  **Plaintiff was denied a right of first refusal.**  The lease drafted by defendants

for Roberta Medlin included a right of first refusal[18] even though Ms. Medlin

never asked for it.[19]  The lease executed between Mary White and John Bratton,

on the other hand, had the provision regarding a tenant's right of first refusal

(¶41) crossed out[20] even though it was a boilerplate clause in Chatel's

Commercial Agreement of Lease.

(b)  **Plaintiff was not allowed to convert his lease to month-to-month at the**

**expiration of the two-year term.**  The lease drafted by defendants for Roberta

Medlin included two provisions converting the lease to month-to-month at the

expiration of the initial lease term (¶¶ 53 & 45).[21]  These same provisions were

crossed out in John Bratton's lease agreement with Mary White.[22]

(c)  **Plaintiff was denied an option to renew his lease at the expiration of the**

**two-year term.**  Defendants advertised the street-level of Mary White's property

---

[16] Exhibit 8, Mary White Depo. Trans., dated February 1, 2007, pp. 7-9, lines 9-11, pp. 70-72, lines 14-9.

[17] Exhibit 39, Chatel's Fair Housing Manual, p. 3.

[18] Exhibit 3, Chatel's Standard Commercial Lease Agreement between Roberta Medlin and Mary White, dated October 11, 2005, p. 6, ¶41, lines 10-12.

[19] Exhibit 14, Roberta Medlin Depo. Trans., p.44, lines 14-16.

[20] Exhibit 1, Chatel's Standard Commercial Lease Agreement between John Bratton and Mary White, dated October 31, 2005, p. 6, ¶41.

[21] Exhibit 3, at pp.6-7, ¶¶45 and 53.

[22] Exhibit 1, Commercial Lease Agreement between John Bratton and Mary White, Oct. 31, 2005, pp. 6-7, ¶¶45 and 53.

as available to the public for a lease term ranging from 12-48 months.[23]  The

MRIS listing did not preclude the tenant's option to renew the lease,[24] and Mary

White never informed Chatel when the property was first listed that she didn't

want the prospective tenant to have an option to renew the lease.[25]  Nonetheless,

John Bratton was informed that the street-level property was only available for a

two-year term, without an option to renew.[26]  In fact, John Gordon Forester (Mary

White's lawyer) instructed Chatel that the provision providing plaintiff with the

option to renew the lease after his initial two-year term ended should be removed

from Mr. Bratton's lease.[27]  There is no dispute that defendants wanted plaintiff to

vacate the Property at the end of his two-year lease.[28]  As a result, plaintiff has to

move his business when his lease expires in November 2007.

**(d) Plaintiff was required to pay $200 per month for real estate taxes;**

**Roberta Medlin was not.**  Defendants demanded an additional $200 per month

---

[23] Exhibit 4, MRIS Listing, Street-Level of the Property, October 6, 2005, p.2; See also
John Pagones Depo. Trans., p. 75-76, lines 17-9 (in which he acknowledges that the
121/48 on the MRIS is a typographical error and should instead be 12/48, meaning the
property was advertised as available for a lease term between 12 to 48 months);  Exhibit
8, Mary White Depo. Trans., February 1, 2007, pp. 63-63, lines 13-21(in which Mary
White acknowledges that she provided the information for the MRIS listing to John
Pagones and Chatel).

[24] Exhibit 4.
[25] Exhibit 6, at p. 80, lines 14-20; See also Exhibit 8, Mary White Depo. Trans., pp. 263-
264, lines 16-1 (in which Mary White acknowledges that she never instructed Chatel that
she didn't want potential tenants to have the option to renew, right of first refusal, and
option to convert to month to month).
[26] Exhibits 19-21, John Gordon Forester's letters to John Bratton, dated October 18, 19
and 26, 2005.
[27] Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October
26, 2005.
[28] Exhibit 8, Mary White Depo. Trans., pp. 100-101; lines 9-2; See also Exhibit 6,
Deposition Transcript of Thierry Liverman, pp. 198-199, lines 14-1 (in which they both
admit that plaintiff must vacate the property after the 2-year lease term ends.)

in real estate taxes be paid by John Bratton, even though the MRIS listings did not require this, and the lease drafted by defendants for Roberta Medlin did not require her to pay any property taxes.[29]

**5.    John Bratton and Bratton Realty, LLC have suffered substantial economic damages as a result of defendants' discrimination**.

**(a)  Lost Rental Revenue**

Because of the denial of the option to renew and right to convert the lease to month-to-month at the end of the two-year term, plaintiff has been forced to maintain two separate offices in DC—his previous office location at 1223 10th Street (which he owns), and the property he has leased from Mary White—since he has no choice but to vacate the 1622 Wisconsin Avenue Property at the expiration of his lease on October 31, 2007.[30]  As a result, John Bratton has been losing rental revenue that he could have generated from the 1223 10th Street Property in Logan Circle for over $1,600 per month during the two-year term of his lease with Mary White.[31]  These damages amount to over $38,400.

**(b)  Relocation Costs**

Plaintiff will incur expenses as a result of having to move his office.  These expenses include moving costs, purchasing some new office furniture to fit the new office, equipment, new business cards for seven independent contractors and plaintiff, new letterhead, logos, marketing and advertising material, new

---

[29] Compare Exhibit 1, ¶ 11 with Exhibit 3, ¶ 11; See Exhibit 8, Mary White Depo. Trans. p. 264, lines 2-6 (in which Mary White acknowledges that when she listed the Property, she did not submit anything in writing to Chatel indicating that the prospective tenant would have to pay $200 per month for property taxes).
[30] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p. 63, lines 5-15.
[31] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 132-134, lines 14-2.

telephone, DSL, and facsimile lines, new signage for property listings and banner

for the office, and license transfer fees.[32]  These expenses will exceed $12,000.

**(c)  Lost Profits and Loss of Goodwill**

Bratton Realty, LLC will also suffer loss of goodwill and loss of future real estate

sales volume as a result of having to move its business from 1622 Wisconsin

Avenue in Georgetown, the location Mr. Bratton's customers associate his

business with.[33]  Mr. Bratton testified in his deposition that clients tend to

gravitate more towards the Georgetown name and reputation[34] and the central

location on Wisconsin Avenue draws numerous clientele and greater foot traffic

through its visibility.[35]  Losing the Georgetown property and moving to a less

prominent area will be a "major blow" to plaintiff's business, resulting in

substantial loss of business deals and transactions amounting to tens of thousands

of dollars per year.[36]  These damages would be applicable for over two years,

since Mary White's property was advertised to the public as available for a 1 to 4-

year lease, and plaintiff intended to occupy that space for the coming years.

6.    **Plaintiff was required to submit income tax returns and bank statements to**

**financially qualify for the lease; Roberta Medlin was not**.  Under Mary White's

instructions, John Gordon Forester demanded that Mr. Bratton submit two years of

---

[32] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 123-124, lines 7-13.
[33] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, pp.344-345, lines 16-13.
[34] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 124-125, lines 15-1.
[35] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 126-127, lines 20-3.
[36] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 126-128, lines 20-16.

income tax returns and banks statements to financially qualify for the lease.[37]  Mr.

Bratton had over $250,000 in his checking account and clean credit.[38]  In contrast, only a

credit check was conducted on Roberta Medlin,[39] who was also self-employed. [40]

**7.      Defendants refused to lease Mary White's basement to John Bratton even**

**though the basement was advertised to the public as available for lease**.[41]  A

company used to lease the basement of Mary White's property for several years until

September 2005. When that tenant's lease expired in September 2005, Mary White

instructed her temporary office manager, Barrett Anderson, to clean up the area and sell

most of her office furniture on Craig's List.[42]  Soon thereafter, on September 23, 2005,

Mary White instructed Chatel to list the basement of the Property on the MRIS.[43]  Hope

Edwards, the receptionist at Chatel, created the graphic designs for both the street-level

---

[37] Exhibit 19, John Gordon Forester's letter to John Bratton, dated October 18, 2005.

[38] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 77-78, lines 17-17; See also Exhibits 24-25, Bank of America Account Activity Pages for John Bratton's Bank Accounts, dated October 19, 2005; See also Exhibit 18, National Registry Check on John Bratton, dated October 12, 2005.

[39] Exhibit 14, page 39, lines 8-16 and page 40, lines 8-11 of Roberta Medlin Depo. (in which Medlin admits that she was subject to a credit check and does not recall submitting any other documents in connection with her financial background to Chatel or Mary White); See also Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p. 226, lines 7-11; See also Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, p. 78, lines 1-6.

[40] Exhibit 14, Roberta Medlin Depo. Trans, dated September 26, 2006, p. page 37, lines 5-22; page 38, lines 1-22; page 39, lines 1-22; and page 40, lines 1-16, in which she admits that she does not recall being required to submit any financial information to Chatel or Mary White when she offered to lease the Property.

[41] Exhibit 5, MRIS Listing: Lower Level of the Property, Listing date: September 23, 2005 (October 6, 2005).

[42] Exhibit 12, Barrett Anderson Depo. Trans., dated November 16, 2006, p. 31, lines 14-19; pp. 133-134, lines 7-22; See also Exhibit 8, pp.23-24.

[43] See Footnote 41, supra.

and basement of the Property.[44]  In late September through early October 2005, Mary

White attempted to lease the basement of the Property to a white male who worked out of

his home in Georgetown.[45]  Nonetheless, when plaintiff attempted to lease the basement

of Mary White's property in October 2005, it suddenly became unavailable.[46]

**8.      Mary White's contention that she withdrew the listing for the basement**

**because she needed to use it as her own office until renovations on "her new office"**

**at Washington Fine Properties were complete is false.[47]**  Mary White signed an

independent contractor agreement with Washington Fine Properties on May 10, 2005 and

was officially affiliated with them by no later than July 2005 when her license was

transferred there.[48]  After joining Washington Fine Properties, Mary White had access to

---

[44] Exhibit 7, Hope Edwards Depo. Trans., pp. 37-38, lines 17-8; See also Exhibit 41, Promotional Advertisement for the 1622 Wisconsin Ave. lower level commercial space.

[45] Exhibit 12, p. 19-21, lines 14-10 (in which he discusses Mary White's several interactions with the unnamed male living in Georgetown who only wished to lease the back portion of the lower-level of the Property.)

[46] Exhibit 19, Letter from John Gordon Forester to John Bratton dated October 18, 2005 (stating that that only the first floor is available for rent); Exhibit 35, Letter from John Bratton to John Gordon Forester's letter of October 19, 2005 (stating that "both units have been listed as available for commercial lease on MRIS. . . .  the lower level for nearly 25 days" but the basement is now unavailable to Mr. Bratton); Exhibit 21, Letter from John Gordon Forester to John Bratton dated October 26, 2005 ("these are not new terms"); Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, pp. 226-27, lines 12-8, (stating that the "the lower-level space" is not "available for me to lease"), p. 92 lines 4-21; p. 108, lines 6-13; p. 155 lines 12-16.

[47] Exhibit 15, Defendant Mary White's Answers to Interrogatories and Responses to Request for Production of Documents Propounded by Plaintiff John Bratton, Response to Interrogatory #8, p. 10; See also Exhibit 16, Defendants Chatel Real Estate's and Thierry Liverman's Answers to Plaintiff's First Set of Interrogatories, Response to Interrogatory # 6, p. 7.

[48] Exhibit 28, Independent Contractor Agreement executed between Mary White and Washington Fine Properties on May 10, 2005.

its offices located at 1101 30[49] Street and 3201 New Mexico Avenue,[50] which she used

to attend meetings, handle business dealings and conduct transactions.  Ms. White used

Washington Fine Properties' offices in handling her first transaction involving purchase

of a property located at 1342 29th Street, which settled on June 20, 2005 for $659,000.[51]

She rarely, if ever, physically occupied or had use for the 1622 Wisconsin Avenue

Property, which is why she wished to lease the basement of the Property in September

2005.  Her decision not to rent the basement of the Property came only after John Bratton

offered to rent both levels of her Property.[52]  Indeed, Ms. White testified in her

deposition that she visited the basement of the Property only a dozen times from

November 2005 through January 2007.

**9.      Defendants engaged in illegal steering by favoring a Georgetown resident to**

**lease the Property rather than Plaintiff, who did not reside in Georgetown.[53]**  One of

the reasons defendants preferred to lease the Property to Roberta Medlin rather than John

---

[49] Exhibit 11, Thomas Anderson Depo. Trans, p. 22, lines 10-17, (in which Mr. Anderson asserts that Mary White would physically come to the 1101 30th Street location); See also Exhibit 8, p.137, lines 1-12.

[50] Exhibit 11, pp. 46-50, lines 16-11; See also Exhibit 8, p. 137, lines 13-15.

[51] Exhibit 23, Letter from Gerald Dziecichowicz at Saul Ewing to Stefan Shaibani, dated October 5, 2006.

[52] Exhibit 21, Letter from John Gordon Forester to John Bratton, dated October 26, 2005 (claiming that lease was only available for the street level, this was not a new term and had been presented as such from the beginning.)  See also Exhibit 13, John Pagones Depo. Trans., dated November 20, 2006, p.24, lines 9-13 (in which Pagones admits that Mary White decision not to rent the lower-level of the Property was made after John Bratton inquired about the Property.)

[53] Exhibit 15, Defendant Mary White's Answers to Interrogatories and Responses to Request for Production of Documents Propounded by Plaintiff John Bratton, Response to Interrogatory # 7, p.9 (setting forth the first selection criteria for offering the lease to Roberta Medlin.  See also Exhibit 16, Defendants Chatel Real Estate's and Thierry Liverman's Answers to Plaintiff's First Set of Interrogatories, Response to Interrogatory # 8, p. 7 (which sets forth the first factor Mary White based her decision on.)

Bratton was because Ms. Medlin was already a property owner in Georgetown.[54]  Having

an established residence in Georgetown ultimately made Roberta Medlin the more

attractive and "first-class" candidate for leasing the property,[55] while John Bratton was

perceived as a "second-class" candidate.

10.     **Defendants processed Roberta Medlin's application much faster than John**

**Bratton's application, in violation of Chatel's First-Come, First-Served policy**.[56]

(a)     **John Bratton first visited and expressed serious interest in the 1622**

**Wisconsin Avenue Property on October 6, 2005.**[57]  Despite his repeated

attempts to acquire a blank lease agreement, rental application and information

from Chatel regarding the landlord's requirements for the lease, he was

continually denied this information.[58]  Similarly, Mary White did not respond to

Mr. Bratton's letter and telephone calls.[59]  Defendants' behavior continued for

five days, as John Bratton attempted to draft five separate leases[60] without any aid

---

[54] *Id.*  Both defendants cite their first reason for choosing to lease the property to Roberta Medlin rather than John Bratton to be that Ms. Medlin was "already a property owner in the area."  See also Exhibit 8, Mary White Depo. Trans., pp. 13-14, lines 17-1.

[55] See Exhibit 6, Thierry Liverman Depo. Trans., dated January 11, 2007, p. 97, lines 3-7 (in which Mr. Liverman states that Mary White, based on second-hand information, believed Roberta Medlin's husband to be a "first class person.")

[56] Exhibit 39, Chatel's Fair Housing Manual.

[57] Exhibit 10, John Bratton's Depo. Trans., dated January 19, 2007, p. 89, lines 3-9.

[58] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p. 105-106, lines 8-5.

[59] Exhibit 8, Mary White Depo. Trans., p. 215, lines 14-18.  See also Exhibit 29.

[60] Exhibit 30, Signed Commercial Lease Agreement between John Bratton and Mary White, dated October 7, 2005; Exhibit 31, Signed Commercial Lease Agreement between John Bratton and Mary White, dated October 10, 2005; Exhibit 32-34, three different versions of Chatel's Standard Commercial Lease Agreement between John Bratton and Mary White, dated October 10, 2005.

from defendants.  Each lease he drafted from October 6 to October 11, 2005 was, in turn, rejected by defendants.[61]

**(b)     Roberta Medlin expressed interest in the Property on October 11, 2005,[62] five days after John Bratton had already visited and expressed serious interest in securing the Property.**  Mary White agreed to meet with Roberta Medlin, gave

Ms. Medlin a personal tour of the property,[63] answered all of Ms. Medlin's questions regarding the lease, assisted her in drafting a lease, and immediately contacted Thierry Liverman at Chatel to meet with Ms. Medlin the same day.[64] Defendants didn't run a credit check on John Bratton until October 12, 2005, six days after he initially visited the 1622 Wisconsin Avenue Property and expressed interest in acquiring a lease agreement for it,[65] yet they ran Roberta Medlin's credit check on October 11, 2005, the same day she visited the Property.[66] Indeed, pursuant to Mary White's request, Chatel met with Roberta Medlin the first day she went to Chatel's office on October 11, 2005.  In this way, defendants violated Chatel's First-Come First-Served Policy.[67]

---

[61] Exhibit 8, Mary White Depo. Trans., dated February 1, 2007, pp. 115, lines 1-3 (in which Mary White acknowledges having rejected each of John Bratton's five leases submitted from October 6 through October 11, 2005).

[62] See Exhibit  40, Email from Barrett Anderson to Mary White, re: 1622 Lease Level 1, dated October 11, 2005.

[63] Exhibit 14, Roberta Medlin Depo. Trans., dated September 26, 2006, pp. 34-35, lines 17-4.

[64] Exhibit 6, Thierry Liverman Depo. Trans., dated January 11, 2007 pp. 135-137, lines 7-2.

[65] Exhibit 18, National Registry Check on John Bratton, dated October 12, 2005.

[66] Exhibit 17, National Registry Check on Roberta Jean Medlin, dated October 11, 2005.

[67] Exhibit 39, Chatel's Fair Housing Manual.

**11.    The only reason Defendants leased the Property to Plaintiff for a two-year term was because he had threatened to sue them for discrimination, and they wanted to conceal their discrimination and avoid a lawsuit**.  In his conversation with Thierry Liverman on October 12, 2005, Plaintiff informed Mr. Liverman he felt he had been discriminated against, that "he would take this to a higher level,"[68] and that he was going to file a complaint against defendants for discrimination.[69]  A few days after this news was relayed to Ms. White,[70] she hired her attorney, John Gordon Forester, to contact Plaintiff to commence "negotiating" the terms of the lease for the 1622 Wisconsin Avenue Property.[71]  Significantly, Mary White executed a lease with plaintiff on October 31, 2005, approximately 11 days *after* plaintiff filed an administrative complaint for discrimination against defendants at the DC Office of Human Rights.[72]

**12.    Mr. Forester accused plaintiff of being a "test case" for discrimination, because plaintiff was an African-American with dreadlocks, stating he did not**

---

[68] Exhibit 6, Thierry Liverman Depo. Trans., p. 102, lines 12-15.

[69] Exhibit 10, John Bratton Depo. Trans, January 19, 2007, p. 258, lines 3-11.

[70] Exhibit 6, pp. 102-105, lines 7-18.

[71] Exhibit 19, Letter from John Gordon Forester to John Bratton, dated October 18, 2005. Mary White did not contact John Bratton upon learning that Roberta Medlin had withdrawn her offer on October 13, 2007.  Ms. White consistently shifts the blame to Chatel, claiming that "she had hired somebody else" to handle the affairs of her Property, and therefore she should not have been held accountable for any wrongdoing.  Exhibit 8, pp. 189-190.

[72] Exhibit 43, Administrative Complaint for Discrimination Filed by John Bratton at the DC Office of Human Rights, dated October 19, 2005; Exhibit 6, Thierry Liverman Depo. Trans., January 11, 2007, p. 253-54, lines 17-6 (Ms. White asked Mr. Liverman on October 12, 2005 whether she "had to" accept Mr. Bratton's lease); Exhibit 8, Mary White Depo. Trans., February 1, 2007, p. 91 lines 7-16 (stating that John Pagones informed Ms. White on October 7, 2005 that one of Mr. Bratton's references was from the DC Corporation Counsel's Office); Exhibit 9, John Bratton Depo. Trans. January 24, 2007, pp.56-57, lines 13-5 (stating that Mary White did not "engage in actively leasing the space to me until after she found out that I officially filed a lawsuit with the D.C. Office of Human Rights").

intend in good faith to lease Georgetown office space and was simply looking to "induce a lawsuit."[73]

13.    **Under Mary White's instructions, Mr. Forester demanded new and unfavorable terms and conditions from John Bratton to dissuade him from leasing the Property.[74]**  Execution of the lease agreement between John Bratton and Mary White was contingent on John Bratton's acceptance of her particular terms.  There was no negotiation between the parties, but defendants' continuous demands for new terms and conditions from plaintiff.  Despite Mr. Forester's involvement to "facilitate" the lease, it ultimately took 24 days for John Bratton to execute the final lease from the date of his first offer on October 6, 2005.[75]  Drafting a lease for a small office space should not take so long.  This was a property renting for $2,500 a month, not the entire floor of a high-rise destined to be leased to a law firm for a decade.  Ultimately, despite plaintiff's clear financial ability to lease the Property, it wasn't enough to outweigh the fact that he was black and had dreadlocks, and therefore, his money was no good to defendants.

14.    **John Pagones was previously involved in a discrimination suit which aired on Dateline-NBC in an Episode titled "No Way In," where he falsely stated to a person in a wheelchair inquiring about a property to lease in Georgetown:  "I have nothing in Georgetown."[76]**  It was later revealed in the Dateline-NBC episode that Chatel had several properties available in Georgetown on that day.  The Greater Housing Council of Washington, DC filed a discrimination suit against Chatel based on John Pagones'

---

[73] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 66-71, lines 8-2.
[74] Exhibit 19-21, Letters from John Gordon Forester to John Bratton, dated October 18, 19 and 26, 2005.
[75] Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005.
[76] Exhibit 38, DVD of Dateline-NBC Episode titled "No Way In" (filed manually).

dishonest representation to the handicapped visitor.[77]  The case was subsequently settled, but the evidence speaks for itself.  Nonetheless, Mary White testified that she did not care about John Pagones' conduct as set forth in the Dateline NBC episode,[78] and on a scale of one to ten, she gave him a "5 or 6 out of 10" with respect to his dealings with John Bratton.[79]

**15.     Plaintiff is devastated by defendants' discriminatory treatment towards him.**

Defendants' racial discrimination towards plaintiff has taken a toll on his emotional well-being.  John Bratton now suffers from depression as a result and continues to battle the emotional trauma of the past 16 months on a daily basis.[80]

**16.     John Bratton is the tenant named on the lease executed with Mary White, not a guarantor.[81]**  The October 31, 2005 lease identifies Mr. Bratton as the "TENANT."  John Bratton is not a guarantor for Bratton Realty, LLC.  In fact, the name Bratton Realty, LLC does not appear anywhere on the October 31, 2005 lease signed with Mary White.  Ms. White testified in her deposition that her Property was leased to John Bratton.[82]  Ms. White herself insisted that Mr. Bratton be the tenant named on the lease, not Bratton Realty, LLC.[83]

---

[77] Exhibit 37, Washington Lawyers Committee for Civil Rights, Fair Housing Council of Greater Washington, p. 14.
[78] Exhibit 8, Mary White Depo. Trans., pp. 220-221, lines 19-20.
[79] Exhibit 8, Mary White Depo. Trans., pp. 17-18, lines 19-5.
[80] Exhibit 42.
[81] Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005.
[82] Exhibit 8, Mary White Depo. Trans., p. 99, lines 18-21; see also p. 115, lines 13- 17.
[83] Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October 26, 2005.

17.    **Chatel's contention that it had no involvement with John Bratton after October 12, 2005 is contrary to evidence.**[84]

(a)    **Chatel was intimately involved with drafting the October 31, 2005 lease agreement executed between John Bratton and Mary White.  Indeed, Mary White's lawyer, John Gordon Forester, sent a fax to Chatel's Liverman on October 26, 2005, instructing him to draft a lease for John Bratton.**[85]  Mr. Forester asked Mr. Liverman to change the terms of Chatel's Commercial Agreement of Lease in drafting the final lease agreement for John Bratton.  Specifically, Mr. Forester informed Mr. Liverman to limit the duration of the lease to two years only, excluding the tenant's right of first refusal and option to renew the lease, and to remove the provision converting the lease to a month-to-month at the expiration of its term.  Chatel was further instructed to include an additional $200 per month in real estate taxes.[86]  Thierry Liverman testified in his deposition that he prepared Mr. Bratton's lease agreement incorporating the terms and conditions requested by Mr. Forester during "the first round" and transmitted a draft to Mr. Forester for further negotiations with John Bratton.[87]  Mr. Liverman further testified that the final lease executed between John Bratton and Mary White, containing the cross-outs, was drafted by Chatel.[88]

[84] See Defendants Chatel Real Estate, Inc and Thierry Liverman's First Motion for Summary Judgment, p. 5, ¶2, line 4.
[85] Exhibit 2; See also Exhibit 8, Mary White's Depo. Trans., pp. 96-98 (in which she admits she instructed Gordon Forester to request that Chatel draft the lease with the specified changes.)
[86] *See* Footnote 77, *supra*.
[87] Exhibit 6, p. 153-155, lines 5-2.
[88] Exhibit 6, pp. 154-155; See also Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005.

(b)     **Chatel was Mary White's broker when John Bratton signed the final lease agreement, and Chatel received a commission for the deal.[89]**

(c)     **Chatel was managing Mary White's Property when John Bratton signed the lease on October 31, 2005, and Chatel continues to manage the Property to this day.[90]**

(d)     **As part of its management of the Property, Chatel sent a $1,019 plumbing invoice to John Bratton months after he moved into the Property.[91]** Paragraph 9 of the lease agreement between Ms. White and Mr. Bratton warrants the plumbing system in the Property to be in good working order as of the date the tenant takes possession of the property.[92]  The plumbing system at Ms. White's Property was problematic before John Bratton's move-in date, and it flooded his office within 30 days of when he moved in.[93]  Neither Thierry Liverman or Mary White could identify John Bratton as being responsible for the plumbing defects.[94]  Nonetheless, Chatel sent a $1,019 plumbing invoice to John

---

[89] Exhibit 6, Thierry Liverman Depo. Trans., pp. 68-69, lines 21-2; See also Exhibit 8, Mary White Depo. Trans., pp.27-28, lines 11-10 (in which she admits that even though she hired Gordon Forester to facilitate negotiating the lease, she still paid Chatel a commission for leasing the Property.)
[90] Exhibit 6, p. 113, lines 5-9 (in which Mr. Liverman admits that Chatel continues to manage the street and upper-level of Mary White's property); Exhibit 8, p. 275, lines 2-12 (in which Mary White admits that Chatel still manages the 1622 Property)
[91] Exhibit 22, Plumbing Invoice issued by Chatel Real Estate, Inc. to John Bratton, dated 02/08/06; See also Exhibit 6, Thierry Liverman Depo. Trans., p. 194, lines 8-21; See also Exhibit 8, Mary White Depo. Trans. p. 266 lines 7-15 (in which she states that her property was being managed by Chatel during the time the plumbing invoice was sent out.)
[92] Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005, ¶9, §b.
[93] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p.327, lines 6-16.
[94] Exhibit 6, p. 195, lines 7-13; See also Exhibit 8, pp. 266-268, lines 7-15.

Bratton on February 18, 2006, as part of its management of Mary White's Property.

**(e) The October 31, 2005 lease executed between John Bratton and Mary White is on Chatel's form, and it specifically refers to Chatel as the broker that is to receive a commission for the deal.**[95]  Clearly, Chatel was involved in the leasing of Mary White's Property to John Bratton after October 12, 2005, despite Chatel's contentions to the contrary.

**18.    John Bratton wished to lease Mary White's Property for his own use as well as for Bratton Realty, LLC.**  Besides being a broker, John Bratton handles real estate development projects independent of Bratton Realty,[96] and the Georgetown space provided him with ample resources in pursuing these projects.  Mr. Bratton intended to lease the 1622 Wisconsin Avenue Property for both himself and Bratton Realty.[97] Further, Bratton Realty, LLC is solely owned by John Bratton, and it has no employees.[98]

**19.    Bratton Realty, LLC has assigned its claims with respect to this action to John Bratton.**[99]

---

[95] Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005.

[96] Exhibit 10, John Bratton Depo. Trans., January 19, 2007, pp. 70-72, lines 12-1 (in which he discusses his outside projects developing various properties.)

[97] Exhibit 10, John Bratton Depo. Trans.,p. 75, January 19, 2007, lines 1-4 (in which he states  he became interested in the 1622 property for use by Bratton Realty); see also p. 87, lines 12-13 (in which he states his plan was to use Georgetown as [his] D.C. office.); p.98-99, lines 20-7 (in which Bratton expresses how "perfect" the property was for his brokerage firm.)

[98] Exhibit 10, John Bratton Depo. Trans. January 19, 2007, p. 62, lines 11-15; see also p. 273, line 9; p. 99, line 8.

[99] Exhibit 44, Agreement of Assignment between Bratton Realty, LLC and John Bratton, dated February 27, 2007.

**PLAINTIFF'S RESPONSE TO MARY WHITE'S**
**STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

DEFENDANT'S STATEMENT 1:

1.      Ms. White hereby adopts and incorporates the section titled "Statement of

Material Facts Not in Dispute" as set forth in co-Defendant, Chatel Real Estate and

Thierry Liverman's First Motion for Summary Judgment.

PLAINTIFF'S RESPONSE:

1.      Plaintiff hereby adopts and incorporates Plaintiff's Response to Defendants

Chatel Real Estate, Inc.'s and Thierry Liverman's Statement of Material Facts Not in

Dispute, ¶¶ 1-19, including the exhibits submitted in support thereof.

DEFENDANT'S STATEMENT 2:

2.      In an attempt to finalize lease negotiations with Plaintiff, Ms. White's personal

counsel, John Gordon Forester, Jr. ("Mr. Forester"), assumed lease negotiations with

Plaintiff on October 18, 2005. (Exhibit 1, 10/18/05 Letter from Forester to Bratton).

PLAINTIFF'S RESPONSE:

2.      Disagrees to the extent Mr. Forester's role was to "finalize lease negotiations."

Mr. Forester did not attempt to negotiate the terms of the lease agreement with John

Bratton.  Rather, Mr. Forester, under Ms. White's instructions, demanded new and

unfavorable terms and conditions to dissuade John Bratton from pursuing the lease.  *See*

Plaintiff's Statement of Material Facts ¶¶11-13, 17.

DEFENDANT'S STATEMENT 3:

3.      As part of their negotiations, Mr. Forester advised Plaintiff that although Bratton

Realty may remain the lease tenant, Plaintiff must personally guarantee the lease. (Id.)

PLAINTIFF'S RESPONSE:

3.      Disagrees.  John Bratton is named as the "TENANT" in the final lease agreement executed with Mary White.  Plaintiff was always the intended party to the lease agreement executed with Mary White, not a "guarantor."  *See* Plaintiff's Statement of Material Facts, ¶ 16.

DEFENDANT'S STATEMENT 4:

4.      To accommodate Mr. Forester's request, Plaintiff signed the lease in his individual capacity as personal guarantor for Bratton Realty.  (Exhibit 2, 10/31/05 Lease and Checks).

PLAINTIFF'S RESPONSE:

4.      Disagrees.  John Bratton is named as the "TENANT" in the final lease agreement executed with Mary White.  Plaintiff was always the intended party to the lease agreement executed with Mary White, not a "guarantor."  *See* Plaintiff's Statement of Material Facts, ¶ 16.

 DEFENDANT'S STATEMENT 5:

5.      Despite the fact that Plaintiff signed the lease individually, the only tenant ever discussed or contemplated by the parties for lease of the property was Bratton Realty.

PLAINTIFF'S RESPONSE:

5.      Disagrees.  John Bratton intended to lease the Property for both himself and Bratton Realty, LLC.  Further, John Bratton is "the company" Bratton Realty, LLC.[100] While Plaintiff submitted several proposed leases identifying "Bratton Realty" as the

---

[100] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, p. 99, line 8.

tenant, the final lease executed between the parties has John Bratton named as the "TENANT."[101]  This was at defendants' insistence.[102]  *See* Plaintiff's Statement of Material Facts Not in Dispute, ¶¶16 & 18-19.  Further, Bratton Realty, LLC has assigned its claims in connection with this case to John Bratton.

DEFENDANT'S STATEMENT 6:

6.      This is supported by the lease language, which provided that the tenant would not use the property for any purpose other than "commercial office space," and the Plaintiff's payment of the first month's rent and security deposit, both of which were in the form of checks from Bratton Realty. (Exhibit 2, 10/31/05 Lease & Checks).

PLAINTIFF'S RESPONSE:

6.      Disagrees.  The checks submitted were issued from John Bratton's account - "John Bratton dba Bratton Realty."[103]  John Bratton is named as the "TENANT" in the final lease executed between the parties.  Indeed, Bratton Realty, LLC is nowhere named in the October 31, 2005 lease.  Further, John Bratton is "the company" Bratton Realty,[104] and Mr. Bratton declares all the income from Bratton Realty on his own federal income tax returns.  *See* Plaintiff's Statement of Material Facts Not in Dispute, ¶¶16, 18-19.

DEFENDANT'S STATEMENT 7:

7.      In accordance with the parties' intentions, Plaintiff's use of the property has been limited to commercial space for Plaintiff's company, Bratton Realty.

---

[101] Plaintiff's Exhibit 1, Signed Lease Agreement between John Bratton and Mary White, dated October 31, 2005
[102] Plaintiff's Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October 26, 2005.
[103] Plaintiff's Exhibit #1 Chatel's Standard Commercial Lease Agreement between John Bratton and Mary White, dated October 31, 2005, last page.
[104] Plaintiff's Exhibit # 9, John Bratton Depo. Transcript, p. 99, line 8.

<u>PLAINTIFF'S RESPONSE</u>:

7.        Disagrees.  Plaintiff's intention was to lease the property for both himself and

Bratton Realty, LLC.  Plaintiff is named as the "TENANT" in the final lease agreement

executed between the parties.  Plaintiff has used the property for both himself and Bratton

Realty, LLC.  *See* Plaintiff's Statement of Material Facts Not in Dispute, ¶¶16, 18-19.

Further, Bratton Realty, LLC has assigned its claims in connection with this claim to

John Bratton.

                                    Respectfully submitted,

Dated: February 27, 2007            <u>/s/ Stefan Shaibani</u>
                                    Stefan Shaibani (Bar No. 490024)
                                    LITIGATION ASSOCIATE, PLLC
                                    1150 Connecticut Avenue, N.W.
                                    Suite 900
                                    Washington, DC 20036
                                    Tel:  (202) 862-4335
                                    Fax: (202) 828-4130

                                    *Attorney for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2007, I electronically filed "PLAINTIFF'S

STATEMENT OF MATERIAL FACTS NOT IN DISPUTE, AND PLAINTIFF'S

RESPONSE TO DEFENDANT MARY WHITE'S STATEMENT OF MATERIAL

FACTS NOT IN DISPUTE," and that service was thus effected upon defendants'

counsels in accordance with Local Civil Rule 5.4(d).


<u>/s/ Stefan Shaibani</u>