Case 1:06-cv-00694-JDB   Document 34-37   Filed 02/27/2007   Page 1 of 9
11/28/06 TUE 14:58 FAX 202 966 4357   Received 11/28/2006 02:50PM in 08:46 on line [12] for 5134 * Pg 7/15
WASHINGTON FINE PROP   ☒007

# WASHINGTON FINE PROPERTIES, LLC

### BROKER-SALES ASSOCIATE INDEPENDENT CONTRACTOR AGREEMENT

THIS AGREEMENT, made this __10__ day of __MAY__, 2005, by and between WASHINGTON FINE PROPERTIES, LLC, hereinafter referred to as "Broker", and Mary White, hereinafter referred to as "Sales Associate", for and in consideration of their mutual premises and agreements and for their mutual benefits effective for the calendar year 2005, and year to year thereafter, unless terminated in writing by either party with 3 days written notice.

Witnesseth

WHEREAS, said broker is now engaged in business as a general Real Estate Broker in the District of Columbia, the State of Maryland and the Commonwealth of Virginia, and is duly qualified to and does procure the listings of real estate for sale lease or rental and prospective purchasers, leases and renters thereof and has and does enjoy the good will of and reputation of fair dealing with the public, and;

WHEREAS, said Broker maintains offices in Washington, D C. properly equipped with furnishings and other equipment necessary and incidental to the proper operation of said business and staffed with employees, suitable to serving the public as a Real Estate Broker and;

WHEREAS, said Sales Associate is an independent contractor now engaged in business as a Real Estate Associate or Associate Broker duly licensed by the District of Columbia and/or by the State of Maryland and or the commonwealth of Virginia and;

WHEREAS, it is deemed to be to the mutual advantage of said Broker and Sales Associate to enter into this Independent Contractor relationship upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, for and in consideration of the premises and of the mutual covenants hereinafter contained, it is mutually agreed as follows:

1.   Broker agrees to make available to the Sales Associate all current listings of the office, except such as the Broker, for valid and usual business reasons may keep exclusively in its possessions or may place exclusively in the temporary possession of some other Sales Associate. Broker agrees, upon requests, to assist the Sales Associate in Sales Associate's work by advice and instruction and agrees to provide full cooperation in every way possible, when requested, if it does not otherwise interfere with other business arrangements of Broker.

2.   Broker agrees that the Sales Associate may share together with other Broker Sales Associates all the facilities of the offices (including, but not limited to desk space, clerical service and general office facilities) now operated by said Broker in connection with the subject matter of this Agreement.

3.   Sales Associate agrees to work diligently and with best efforts to sell, lease or rent any and all real estate listed with the Broker, to solicit additional listings and customers for said Broker and said Sales Associate, and otherwise promote the business of serving the public in real estate transactions to the end that each of the parties hereto may derive the greatest profit possible.

4.   Sales Associate agrees to conduct its business and regulate its habits so as to maintain and to increase the goodwill and reputation of the Broker and the Sales Associate, and the parties hereto agree to conform and abide by all laws, rules and regulations, and such code of ethics as are binding upon or applicable to real estate brokers and real estate sales associates in the appropriate jurisdiction(s) including, but not limited to the Code of Ethics of the National Associate of Realtors (NAR). Each new party acknowledges receipt and knowledge of said Code of Ethics, local board constitution and by-laws, the Rules and Regulations of the MRIS, and a current copy of the District of Columbia, State of Maryland and/or Commonwealth of Virginia real estate license laws.

1


PLAINTIFF'S EXHIBIT 28

Received 11/28/2006 02:50PM in 08:46 on line [12] for 5134 * Pg 8/15
11/28/06 TUE 14:59 FAX 202 966 4357    WASHINGTON FINE PROP    ☒008

5.  The commissions to be charged for any services performed hereunder shall be those determined by the Broker, and the Broker shall advise the Sales Associate, prior to settlement, of any special commission arrangement relating to any particular transaction which Sales Associate undertakes to handle. When the Sales Associate shall perform any service hereunder whereby a commission is earned, said commission shall, when collected, be divided between the Broker and Sales Associate, in which division the Sales Associate shall receive a proportionate share as set out in the **WASHINGTON FINE PROPERTIES, LLC** Commission Understanding and the Broker shall receive the balance.

The Broker may, in its sole discretion, deduct and withhold from any commission such amounts as have been advanced and billed to the Sales Associate. On property listed with the Broker or controlled by the Sales Associate, a special division of commission may be applied, provided that such rate of division shall be agreed upon in advance and in writing by the Broker and the Sales Associate. In the event that two or more Sales Associates participate in such a service, or claim to have done so, the amount of commission accruing to the Broker shall be divided between the participating Sales Associates according to the agreement between them. If there is no such agreement, the Broker reserves the absolute right to determine such division, with Broker's decision in all cases to be final.

In no such case shall the Broker be personally liable to the Sales Associate for any commission, nor shall said Sales Associate be personally liable to said Broker for any commission, but when the commission shall have been collected form the party or parties for whom the service was performed, said Broker shall hold the same in trust for said Sales Associate and itself to be divided according to the terms of this Agreement. Any promissory notes taken as commission shall be executed only by the Broker or a duly authorized representative and shall be collected by **WASHINGTON FINE PROPERTIES, LLC** and shall retain all amounts collected and incur all costs.

6.  The division and distribution of the earned commissions, as set out in paragraph Five (5) hereof, which shall be paid to Broker shall take place after collection of such commissions from the party or parties for whom the services may have been performed; said division and distribution shall take place as soon as practical under Broker's system of collections and payments as established, from time-to-time, in Broker's sole discretion and without notice and/or publication.

7.  Sales Associate hereby grants to Broker the power of attorney in Sales Associate's name, place and stead to institute any action in a court of competent jurisdiction concerning commissions or others matters related to the conduct of such real estate business of Broker and Sales Associate as have been pursued by the parties under this Agreement, to conduct the same to a final decision, to negotiate settlements, to defend actions, suits or proceedings pertaining to said real estate business, to employ counsel, and to conduct said matters in final consummation in such manner and upon such terms as Broker may deem expedient or desirable.

In the event any transaction in which Sales Associate is involved results in a dispute, litigation or legal expense, Sales Associate shall cooperate fully with Broker. Broker and Sales Associate shall share all expenses connected therewith in the same proportion, as they would normally share the commission resulting from such transaction as though there were no dispute or litigation. It is the policy of Broker to avoid litigation wherever possible and Broker, within its sole discretion, may determine whether or not any litigation or dispute shall be prosecuted, defended, compromised or settled, and the terms and conditions of any compromise or settlement, or whether or not legal expense shall be incurred. In the event Sales Associate refuses to participate In advance of Broker's obligation to pay expenses associated with the above, Sales Associate automatically forfeits any and all rights to any proceeds associated therewith.

8.  It is specifically acknowledged and recognized by the Sales Associate, by the way of illustration only and not by way of limitation, that if any litigation or dispute involving the Sales Associate relates to any act of racial or other defined discrimination, fraud or any other intentional tort or situation wherein a Sales Associate is involved as a direct principal (i.e., as seller, principal, landlord or tenant) in any real estate sale or rental transaction, no errors and omissions insurance is available to the Sales Associate. Further, by the way of illustration only and not by the way of limitation, there is no errors and omissions insurance available to the Sales Associate in matters that relate to insurance, mortgage brokering or settlement services.

Received 11/28/2006 02:50PM in 08:46 on line [12] for 5134 * Pg 9/15
11/28/06  TUE 15:00  FAX 202 966 4357        WASHINGTON FINE PROP                               ☒009

9.   It is agreed that Sales Associate shall furnish the automobile and pay all expenses thereof for Sales Associate and that Broker shall have no responsibility therefore. Sales Associate agrees to carry public liability insurance upon such automobile with minimum limits of Two Hundred and Fifty Thousand Dollars ($250,000) for each person and Five Hundred Thousand Dollars ($500,000) for each accident and for the property damage limits of One Hundred Thousand Dollars ($100,000) and shall provide the Broker with proof of such coverage upon request. Further, Sales Associate shall pay all expenses relating to sale activities except for those which Broker expressly agrees to pay in advance, in writing, including, but not limited to, all association dues and expenses, auto expenses, announcements and errors and omission insurance.

10.   This agreement shall be governed by the laws of the jurisdiction of Sales Associate's "primary office", located at 2624 P Street, NW, Washington, DC. It shall be binding upon and the benefits shall inure to the heirs and successors of the parties hereto. This Agreement is personal to the parties and may not be assigned, sold or otherwise conveyed or transferred by either of them.

11.   This Agreement does not constitute a hiring or employment by either party. The parties hereto are and shall remain Independent Contractors bound by the provisions hereof. Sales Associate shall not be treated as an employee will respect to the services performed hereunder for Federal Tax purposes. This Agreement shall not be construed as a partnership, and neither party hereto shall be liable for any obligation incurred by the other except as provided elsewhere herein. Broker shall not withhold from Sales Associate's commissions any amounts for taxes, social security or any other employment-related items. Broker shall not make any premium payments or contributions for unemployment compensation for Sales Associate, Broker, only if required by the laws of the District of Columbia and/or the State of Maryland and/or the Commonwealth of Virginia shall make premium payments for workmen's compensation for Sales Associate. This requirement to pay such premiums shall not affect the Independent Contractor relationship created herein.

12.   Sales Associate recognizes that the hooks and records of Broker are confidential and therefore covenants and agrees that Sales Associate shall not, either during the term of this Agreement or at any time thereafter, make any disclosure or use of the books and records of Broker as to the information set forth therein.

13.   It is agreed that Sales Associate shall not conduct any other business from the office of Broker and shall not use the Broker's telephones, secretarial service, equipment, name, logo, office space and the like for Sales Associate's own personal business except that which is directly related to the sale, listing and general brokerage services being rendered by the Sales Associate through and under this Agreement and for the benefit of the Broker, other than on an occasional, incidental-basis

14.   This Agreement, and the association created hereby, may be terminated by either party hereto at any time upon three (3) days written notice given to the other, but the rights of the parties to any commissions which accrued prior to said notice shall not be divested by the termination of this Agreement and shall be disbursed in accordance with the **WASHINGTON FINE PROPERTIES, LLC** Commission Understanding. On the occurrence of any of the following causes, Broker MAY, without prior notice, terminate this Agreement:

1.   Election of broker to sell its entire business or to cease doing business in Washington DC.
2.   Any breach of this Agreement by the Sales Associate, unless such breach can be easily cured within 15 days of notice
3.   Cessation of Sales Associate to be licensed;
4.   Failure by Sales Associate to comply with any law, regulation or Code of Ethics of the Real Estate Commission or otherwise pertaining to the sale of real estate;
5.   The filing by or against Sales Associate of any petition under the law for the relief of debtors; and/or
6.   Conviction of Sales Associate of any crime, other than minor traffic offenses.

a.   Upon termination of this Agreement, Sales Associate further agrees not to furnish to any person, firm, company or corporation any information as to Broker's clients or customers nor any other information concerning Broker and/or its business. Sales Associate shall not, after notice or termination of this Agreement, remove from the files or from the office of the Broker any maps, books and publications, expressly agreed that the aforementioned records and information are the property of the Broker. Sales Associate shall be entitled to photo shoots of certain documents relating to transactions in which Sales Associate has a bona fide interest, and Broker shall not unreasonably withhold the same.

11/28/06 TUE 15:00 FAX 202 966 4357   WASHINGTON FINE PROP   Received 11/28/2006 02:50PM in 08:46 on line [12] for 5134 * Pg 10/15   ☒010

b.   When the Agreement has been terminated, Sales Associate's scheduled share of commission on any sales in which Sales Associate has actively participated and is, therefore, due a commission, if collected by Broker, shall be disbursed and Sales Associate shall be entitled to receive the portion of commissions received by Broker after termination, allocable to the listing and /or the sale procured and sold by Sales Associate during Sales Associate's association with Broker, except in cases of termination for cause.

c.   The **WASHINGTON FINE PROPERTIES, LLC** Commission Understanding is hereby appended to this Agreement and made part thereof.

15.   Herein where a masculine pronoun is used it shall refer to both males and females, as with the neuter gender.

16.   This Agreement supersedes all prior contracts or agreements pertaining to the subject matter herein.

17.   Sales Associate and Broker acknowledge and agree that Sales Associate is and shall be treated as an independent contractor for Federal, state and local income tax purposes.

18.   An annual income of $12,000 in agent earnings is required in order to maintain affiliation with **WASHINGTON FINE PROPERTIES, LLC.** In the event the minimum income is not met, Sales Associate MAY be offered a probationary period in order to earn the minimum.

19.   **ANTI-TRUST COMPLIANCE POLICIES**
The commission rates of **WASHINGTON FINE PROPERTIES, LLC** are based upon the cost of the services we provide the value of these services to our clients, and competitive market conditions. Our commission rates are not determined by agreement with, or recommendation or suggestion from, any person not a party to a listing agreement with our firm.

Salespersons affiliated with this firm shall not participate in any discussion with any person affiliated with or employed by any other real estate firm concerning the commission rate charged by this firm or any other real estate firm in our community.

When soliciting a listing or negotiating a listing agreement, no salesperson affiliated with **WASHINGTON FINE PROPERTIES, LLC** shall make any reference to a "prevailing" commission level in the community the "going rate", or any other words or phrases that suggest that commission rates are uniform or "standard" within our marketing area.

The amount of sub-agency compensation or "commission split" offered by this firm to cooperating brokers is determined by the level of service we can expect a cooperating office to perform, and the amount of compensation necessary to induce cooperation under prevailing market conditions. Sub-agency compensation, or commission splits, are not intended, and may not be used, to induce or compel any other real estate firm in our market area to raise or lower the commission they charge to their client.

When soliciting or negotiating a listing agreement, no salesperson affiliated with **WASHINGTON FINE PROPERTIES, LLC** shall disparage the business practices of any other real estate firm, nor suggest that this office, or any other office, will not cooperate with any other real estate firm. Listing presentations shall focus exclusively upon the level of service and professionalism provided by you, the seller's agent, and this office, the results we have achieved for other clients, and the value the client can expect to receive for the fees we charge. Potential clients should be invited and encouraged to compare the value of our services to those of any other real estate firm in our marketing area. Likewise, any salesperson that is invited by a potential client to compare our services with those of any other real estate firm should do so by emphasizing the nature and quality of the services we provide.

Whenever a salesperson is unsure about the proper way to respond to the concerns of an actual or potential client or customer, he/she should defer answering and say he/she will consult the manager and get back to the party with an answer. He /she should then ask his/her manager for advice. The broker/manager will then consult with the firm's counsel if necessary.

When a salesperson, manager, or anyone associated with this firm is present during any unauthorized discussion of fees or commissions, he/she should immediately interrupt the conversation, say that he/she cannot participate in such a discussion, and that no one else should either, and then he/she should immediately leave the room. This should be reported in writing to the manager immediately, along with the actions taken.

No person at any level in this firm shall participate with any member or members of any other firm in the practice of boycotting any person or firm for any reason. Any such participation shall be grounds for immediate dismissal of the parties involved.

20. ANTI-DISCRIMINATION POLICIES AND PROCEDURES
As part of our continuing effort to ensure compliance with federal, state and local anti-discrimination laws, we remind all agents and employees of WASHINGTON FINE PROPERTIES, LLC policies respecting non-discrimination. It is important that each agent and employee review his or her own actions in light of these policies, to keep in mind the importance of treating all persons equally, and to remember that it is not only good business, but the law.

**It is the policy and practice of WASHINGTON FINE PROPERTIES, LLC not to engage in or assist efforts of others to engage in housing discrimination.** Consistent with that policy, we remind you that the anti-discrimination laws of the United States, the District of Columbia, the State of Maryland, and the Commonwealth of Virginia are quite specific.

In addition to the Federal classes listed below, the District of Columbia has afforded protection to an additional eight classes of individuals. The D.C. law makes it illegal to discriminate against any person on the basis of age, personal appearance, matriculation, source of income, marital status, sexual orientation, political affiliation or place of residence or business. Therefore, you will not at any point during the course of your association or employment with **WASHINGTON FINE PROPERTIES, LLC**:

a. Refuse to show, rent, negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, national origin, or handicapped condition;

b. Discriminate against any person in the terms, conditions, or privileges of a rental or in the provision of services or facilities in connection therewith because of race, color, religion, sex, familial status, national origin, or handicapped condition;

c. Make any oral or written statement with respect to the purchase or rental of a dwelling that indicates any preference, limitation or discrimination based on race, color, religion, sex, familial status, national origin, or handicapped condition, or any statement indicating an intention to make any such preference, limitation or discrimination;

d. Represent to any person because of race, color, religion, sex, familial status, national origin, or handicapped condition that any dwelling is not available for inspection or rental when such dwelling is in fact available;

Case 1:06-cv-00694-JDB   Document 34-37   Filed 02/27/2007   Page 6 of 9
Received 11/28/2006 02:50PM in 08:46 on line [12] for 5134 * Pg 12/15
11/28/06  TUE 15:01 FAX 202 966 4357      WASHINGTON FINE PROP                    ☒012

e. Discriminate against any person in offering individual apartment units or assigning tenants to such units on the basis of race, color, religion, sex, familial status, national origin, or handicapped condition; or

f. Knowingly enter into an agreement which imposes any restrictions on the race, color, religion, sex, familial status, national origin, or handicapped condition of persons to whom a dwelling may be shown or rented.

It is critically important to understand that any action taken by you even in part because of race, color, religion, sex, familial status, national origin, or handicapped condition that has the effect of making housing unavailable to such persons protected under these laws, constitutes a violation of federal, slate, and local laws.

**You should understand that any violation of our anti-discrimination policies or procedures will lead to discipline, up to and including discharge.**

21. By signing below, the Sales Associate acknowledges that he/she has received the opportunity to review the "**WASHINGTON FINE PROPERTIES, LLC** Policies and Procedures Manual", as amended from time to time, the firm's Fair Housing Policies and Procedures Manual", as amended from time to time and the Sales Associate Commission and Understanding.

**IN WITNESS WHEREOF**, the parties hereto have signed this Agreement the day and year written above.

Approved & Accepted By:

_____ 5/10/05
Mary White / Date

Print Name  MARY WHITE
SS#  323 28 4387
Mailing Address  1241 · 33rd St. NW
_____ DC 20007
Telephone  202-338-3355

Approved & Accepted By.

_____
WASHINGTON FINE PROPERTIES, LLC

Print Name  DANA LANDRY
Branch Office  NEW MEXICO AVENUE

Facsimile copies of this Agreement and all signatures shall be considered, for all purposes, as originals.

6

**WASHINGTON FINE PROPERTIES, LLC**
*Addendum to Independent Contractor Agreement*

**COMMISSION UNDERSTANDING**
**BROKER SALES ASSOCIATE COMMISSION AND BONUS STRUCTURE**

The standard company commission is six percent (6%). Exceptions to this must be approved in advance by the Sales Manager, in writing. Any agent who deviates from the company policy on commission policy shall assume the cost. Any processing fee or referral fee comes "off the top" of the listing or sale side only and the remainder of the commission will be treated as one hundred percent (100%).

| *Agent Earnings* | |
|---|---|
| $0-$6,000 | 45% |
| $6,001- $14,000 | 50% |
| $14,001-$20,000 | 52% |
| $20,001-$25,000 | 54% |
| $26,001-$36,000 | 56% |
| $36,001-$50,000 | 58% |
| $50,001 - $65,000 | 62% |
| $65,001-$85,000 | 64% |
| $85,001-$150,000 | 70% |
| $150,000++ | 80%* |

Agent earnings are defined as commission earned by a sales associate to the company during the calendar year to include sale commissions, listing commissions and referral fees. Agent earnings for this purpose do not include bonus income.

Agents will begin each New Year on the commission level indicated by their Federal Form 1099 income from settled transactions as of December 31 of the previous year. Bonus income is not factored into commission level at year-end.

An agent who's earnings exceed $36,000 will receive 90% of the listing commission less all marketing expenses when selling their personal residence (applicable once every 18 months). Regular commission split will be in effect for the sale and rental of all investment or other properties.

An agents who's earnings exceed $36,000 will receive 90% of the selling commission less all company expenses when purchasing their personal primary residence (applicable once every 28 months). Regular commission split will be in effect for the purchase and rental of all investment or other properties.

Agents will pay the agents' share of Errors and Omission Insurance.

11/28/06  TUE 15:02 FAX 202 966 4357     Received 11/28/2006 02:50PM in 08:46 on line [12] for 5134 * Pg 14/15
                                          WASHINGTON FINE PROP                                    ☒014

When an agent leaves Washington Fine Properties LLC, the company may deduct any out of pocket expenses it incurs to process each transaction.

All leasing fees and referral fees will be split in the same manner as the commission.

Retainer fees for Buyer/Brokerage shall be divided as per the commission schedule and may be paid out in advance of settlement.

Retainer Fees for Buyer/Brokerage shall be divided as per the commission schedule and may be paid out in advance of settlement.

A bonus of five percent (5%) of the gross selling commission will be paid for selling a company (wide) listing. This applies only where there is a six percent (6%) commission. Bonus income will not be factored into commission levels at year's end. No more than a five percent (5%) bonus will be paid for any one transaction, *No bonus will be paid on a commission level of 80% or higher.

Any MRIS entry fee will be deducted from the agent's commission or billed at an earlier date. Any withdrawn or expired listings that are later re-entered into the system will likewise be charged to the listing agent and deducted from their commission or billed at an earlier date.

Any fees associated with listings entered into MRIS that do not sell, for whatever reason, will be billed to the listing agent.

All agent advertising and promotion must be in the Washington Fine Properties/SLR format and must be approved by management prior to release.

No bonuses are paid to any terminated associate on commission disbursed after their termination. All commissions and bonuses are paid based upon your commission rate at the settlement date, not the date of contract or date of disbursement (except, as noted above, for Buyer/Broker retainer fees). Commissions that settle towards the end of the year may not be disbursed until early in the next year. These commissions will count towards the year's earning in which they settle for purposes of determining your commission level for the next year. However, for tax purposes, they will not show on your Federal Form 1099 for that year, but rather on your 1099 for the following year. Please keep in mind the difference between "earned" and "paid" commission.

Washington Fine Properties, LLC reserves the right to change the commission schedule at any time. In addition, agents coming to the company from another company may do so under a different arrangement other than above - the company reserves the right to individualize commission rates with individual agents.

### Miscellaneous

### Office Expenses

**Washington Fine Properties will pay for:**

A. Sotheby's affiliate membership fees
B. Corporate promotional expenses in various media
C. Participation in corporate property advertising at 50% of cost (scheduled by management)
D. MRIS work stations (not including user fees and entry fees) and associated costs (except as described below)
E. Providing Errors and Omission Insurance (see G below)
F. Desk space, telephone, voice mail and reception services
G. Business related postage (not for client or farm marketing purposes)
H. Office telephone and facsimile expense (Business related telephone calls only)
I. Corporate Stationary (not for mass mailings and farming)

J.  Normal office copy machine costs for black and white copies.
K.  Yard Signs
L.  Wooden sign posts (company pays ½ of the installation and removal cost of sign post)
M.  Contracts and other forms
N.  Directory services

**Agent will pay for:**

A.  Property marketing expenses (Exception as described in C above.)
B.  License fees to the Real Estate Commission
C.  Board fees and application fees
D.  Agent MRIS User Fees and MRIS entry fees
E.  Business Cards (to be paid when order is placed)
F.  Any courier and overnight freight expenses
G.  Pro rata portion of the Errors & Omissions insurance (Currently $40 per transaction)
H.  Name Riders (to be paid when order is placed)
I.  Open House Arrows (to be paid when order is placed)
J.  Wooden sign posts—agent pays one-half the installation and removal costs (to be paid when order is placed.
K.  Other agent incurred third party expenses

All other expenses to be determined on an ease-by-case basis.

I, _____, hereby acknowledge that I have read, understand and agree to abide by this Washington Fine Properties, LLC Commission Agreement,

Signature _____    Date 5/10/05
         Mary White

Sales Manager Receipt: _____Dana E. Landry_____

Received by: _____

Date: _____

9