# FAIR HOUSING MANUAL





# CHATEL REAL ESTATE, INC.



PLAINTIFF'S
EXHIBIT

39

BRA 0343

# FAIR HOUSING POLICY MANUAL - CONTENTS

I.   INTRODUCTION ................................................................1
     A.   What is Fair Housing? ...............................................1
     B.   Our Fair Housing Credo and Practice ................................1
     C.   Personnel ..........................................................2

II.  GETTING DOWN TO THE BASICS: AN OVERVIEW OF FEDERAL FAIR
     HOUSING LAWS ............................................................2
     A.   The Fair Housing Act...............................................2
     B.   Fair Housing Amendments Act of 1988 ...............................3
          (1)   Familial Status ............................................3
          (2)   Handicap ...................................................4
     C.   Broad Interpretation of the Fair Housing Act ......................4
     D.   Civil Rights Act of 1866 .........................................5
          (2)   How the Federal Laws are Enforced...........................5
     E.   District of Columbia Human Rights Act .............................5
          (1)   How the D.C. Human Rights Act is Enforced ..................6

III. OCCUPANCY POLICIES .....................................................6
     A.   Occupancy Requirements under the District of Columbia Human Rights Act .......6

IV.  SECURITY DEPOSITS ......................................................7

V.   DESIGNATION OF FAIR HOUSING OFFICER ....................................7

VI.  OTHER POLICIES.........................................................7
     A.   Advertising........................................................7
     B.   Fair Housing Poster................................................8
     C.   Maintenance and Other Building Services ...........................8
     D.   Sexual Harassment..................................................8
          (1)   Posting of Policy Against Sexual Harassment.................8

VII. SOME PRACTICAL EXAMPLES ................................................9
     SHOWING APARTMENTS.....................................................10

VIII. YOUR PERSONAL COMMITMENT TO FAIR HOUSING ..............................12

**APPENDICES**

Familial Status Exemptions ....................................... Appendix A

Reasonable Modification and Accommodation Requirements........ Appendix B

i

BRA 0244

A.    Interest-bearing Escrow Accounts:  The Restoration Deposit ..........................1

B.    Procedure for Handling Modification Requests from Disabled Persons..........2

C.    Reasonable Accommodations .............................................................................2





BRA 0245

## I.    INTRODUCTION

This manual is designed to help the reader better understand the importance of understanding of and compliance with fair housing.  As you review this manual, you will come to appreciate that compliance has to do in large part with your own experience as a property management professional and using the best principles of managing residential property.  The point at which you start (and where we end) is professional service offered to the public on a uniform basis.

### A.    What is Fair Housing?

At **Chatel Real Estate, Inc.** fair housing means the policy of equal housing opportunity which came about when the Fair Housing Act (Title VIII of the Civil Rights Act of 1968) became law.  This policy guaranteed qualified people an equal opportunity to rent an apartment free from discrimination based on reasons which Congress and the state and local legislatures have said should not limit that opportunity.

As you read on, we will detail for you some of the more important elements of fair housing and relate those elements to what you do and see on a day-to-day basis.  Remember, this manual is provided by **Chatel Real Estate, Inc.** as a tool to assist you in eliminating discriminatory housing practices within our company.  This manual does not constitute legal advice and we strongly recommend that you consult the company's Fair Housing Officer regarding specific concerns that you may have about fair housing.

### B.    Our Fair Housing Credo and Practice

The watchword of **Chatel Real Estate, Inc.,** *The Prospective Homeseeker Makes The Choice,* goes to the heart of our company's policies and practices.   once you give a prospective homeseeker information about all we have to offer, the decision as to whether to rent from us is really the ultimate choice of the homeseeker.  We want to assist in that informed decision-making.

**Chatel Real Estate, Inc., Inc.** has developed a comprehensive policy which supports the highest quality of property management.  We are particularly aware of our nation's strong commitment to equal housing opportunity and we are proud to have incorporated the goal of fair housing as the foundation of our policy.

**Chatel Real Estate, Inc.** firmly believes that one of the ways we can maintain the highest level of property management is through *respect for the homeseeker's individual right to make housing choices consistent with the  nation's  fair housing policy.*

OFFICE OF HUMAN
Received
NOV 2 1 2005

OFFICE OF HUMAN RI
NOV 2 1 2005

BRA 0246

### C.    Personnel

Knowledge and information help you to serve the homeseeking public as a true property management professional. That is important to us because you are our representative to the public.

That is why we will do our best to keep you knowledgeable and informed, particularly about fair housing.

Part of the policy of **Chatel Real Estate, Inc.** is to keep our employees aware of the fundamentals, as well as new developments in fair housing law. Not only are all managers, leasing agents and all personnel dealing with the public required to attend fair housing training, each is required to sign a pledge certifying that our fair housing policy has been read and understood and that it will be practiced.

## II.    GETTING DOWN TO THE BASICS: AN OVERVIEW OF FEDERAL FAIR HOUSING LAWS

To assure that *THE HOMESEEKER MAKES THE CHOICE,* we have to know what laws say when it comes to fair housing.

Congress has enacted two federal laws that enforce fair housing in this country. One of these laws, the 1968 federal Fair Housing Act, has prohibited housing discrimination based on

- Race
- Color
- National Origin
- Sex
- Disability (Handicap)
- Familial Status
- Religion

### A.    The Fair Housing Act

The 1968 federal Fair Housing Act, with limited exemptions, prohibits discriminatory housing practices in all residential housing. The Act makes it unlawful for a person, on the basis of: race, color, sex, religion, national origin, disability or familial status, to do the following:

| | |
|---|---|
| It is unlawful to: | Represent a house or apartment is unavailable when, in fact, it is available. |
| It is unlawful to: | Refuse to rent or to negotiate for the rental of a house or apartment or otherwise make housing unavailable. |



2

CREA0247

| | |
|---|---|
| It is unlawful to: | Discriminate in the terms and conditions for renting a house or apartment. |
| It is unlawful to: | Make, print, publish or post statements or advertisements that a house or apartment is available only to persons of a certain classification. |
| It is unlawful to: | Persuade or attempt to persuade people, for profit, to rent their houses or apartments by representing that minority groups (or others) are moving into the area. (This is commonly called "block-busting" or "panic peddling".) |
| It is unlawful to: | Deny or make different terms for home loans by commercial lenders, such as banks or savings and loan associations, on the basis of the prohibited reasons. |
| It is unlawful to: | Deny anyone the use of real estate services, such as a broker or multiple listing services. |

**B.    Fair Housing Amendments Act of 1988**

Congress enacted the Fair Housing Amendments Act on September 13, 1988, which took effect on March 12, 1989. Through those Amendments, disability ("handicap") and familial status were added to the list of protected classifications.

(1)    **Familial Status** is defined as a family which includes a minor under the age of eighteen (18) domiciled with a parent or other person having legal custody.

Are there other kinds of situations under this new law in which a homeseeker's status as a "family" might arise? Yes!

This protection also includes a woman who is pregnant or a person in the process of obtaining custody of a child. Custody may mean an adoption, legal guardianship or custody arising out of a domestic relations matter.

*(a)    Exemptions*

On the subject of familial status protections, you should know that there are very limited exemptions for housing for "older persons" which are referred to in more detail in Appendix A.




BRA 0248

(2)    **Handicap** is defined as a physical or mental impairment which substantially limits one or more "major life activities."  This protection applies to the homeseeker, the persons <u>residing</u> with the homeseeker (for example, the spouse) and any person "associated" with the handicapped homeseeker.

This new protection makes it illegal for a person on the basis of disability to:

*Refuse to rent a house or apartment or otherwise deny or make housing unavailable.*

*Discriminate in the terms, conditions or privileges for renting a house or apartment.*

(a)    *Reasonable Modification and Reasonable Accommodation Requirements*

The Federal Fair Housing Act now permits a disabled tenant to make "reasonable modifications" to both the inside of the apartment unit and even to the common/public use areas of the building to afford the tenant full use and enjoyment of the premises.  *Ordinarily, the tenant bears the cost of any modifications that are made.*  <u>Appendix B</u> contains a more detailed discussion of reasonable modification and accommodation requirements and includes the "reasonable accommodations and reasonable modifications request" form.

**C.    Broad Interpretation of the Fair Housing Act**

The federal courts have afforded the Fair Housing Act liberal interpretation over the years.  This means that both *direct and indirect* forms of prohibited housing discrimination have been consistently held to be unlawful.

Some of the kind of *indirect* forms of housing bias found improper include:

(a)    steering" which is the unlawful manipulation for improper reasons of housing choice (*See* Section XI for examples of steering);

(b)    denying truthful information about availability of housing for discriminatory reasons; or

(c)    *unintentional* significant differences in marketing(advertising) or showing units. (For example, changing the route you usually take people on to see units)

Examples of *more obvious* unlawful housing discrimination include:

(a)    charging more rent for the same unit where the only difference in the homeseeker is race, sex, familial status, religion, national origin, color, or disability;

4

BB 0249

(b)    requiring higher income or wages for the same unit where the only difference in the homeseeker is race, sex, familial status, religion, national origin, color, or disability; or

(c)    establishing tougher standards of credit-worthiness for the same unit where the only difference in the homeseeker is race, sex, familial status, religion, national origin, color, or disability.

**Intent to discriminate is not required to prove a claim of discrimination. If the effect of conduct is discriminatory, it can create the basis for a claim.**

**D.    Civil Rights Act of 1866**

(d)    The same year Congress passed the Fair Housing Act, the U.S. Supreme Court ruled in a St. Louis, Missouri, case that a law passed shortly after the Civil War prohibited all forms of racial discrimination in housing.

The Civil Rights Act of 1866 was the original enabling legislation of the Thirteenth Amendment (outlawing slavery), prohibiting all racial discrimination in the purchase, sale, or rental of real and personal property. This law virtually laid dormant until the Court resurrected it in its June 1968 decision. In 1987, the Supreme Court again interpreted the 1866 Civil Rights Act, holding that this law may also protect certain other racial and ethnic groups from biased practices.

(2)    **How the Federal Laws are Enforced**

Both the 1968 Fair Housing Act and the 1866 Civil Rights Act may be enforced by filing a lawsuit in federal district court. Further, the U.S. Department of Housing and Urban Development ("HUD") has administrative authority to enforce the 1968 Fair Housing Act. HUD has power to investigate a complaint of housing discrimination and issue a charge after it determines that there is reasonable cause that a discriminatory housing practice has occurred.

After HUD issues a charge, a hearing may be held where damages can be awarded to the victim of housing discrimination, including the assessment penalty. All parties, including the owners, managers, maintenance staff and leasing consultants can be held liable. Further, once a claim of discrimination is made, the burden of proof is on the person charged to prove that it did not discriminate. HUD does not have similar authority to enforce the 1866 law.

**E.    District of Columbia Human Rights Act**

The District of Columbia Human Rights Act prohibits discrimination in housing based on race, color, religion, sex, national origin, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, political affiliation, matriculation, source of income (e.g., tenant assistance programs, vouchers, alimony, welfare programs, etc.) and place of residence/business.

OFFICE OF HUM... Received NOV 2 1 2005    NOV 2 1 2005    CDCM BRA 0250

(1)     **How the D.C. Human Rights Act is Enforced**

The D.C. Office of Human Rights is authorized to investigate complaints of housing discrimination and attempt to seek resolution through conciliation. If conciliation efforts are unsuccessful, the complaint will be sent to the D.C. Commission on Human Rights for a public hearing.

Also, the D.C. Human Rights Act can be invoked by filing a lawsuit in D.C. Superior Court.

## III.    OCCUPANCY POLICIES

The question of "occupancy policies" is an important area of concern because the particular occupancy limitation might have the effect of discriminating on the basis of disability or familial status.

The new federal law and regulations acknowledge the importance of local occupancy, density and zoning laws.

Because our units are maintained in the District of Columbia, *our occupancy policy will be consistent with the D.C. Human Rights Act.*

### A.    Occupancy Requirements under the District of Columbia Human Rights Act

In the District of Columbia, it may be considered a *discriminatory* housing practice if residential occupancy is more restrictive than the following:

(1)     in an efficiency apartment, two persons; or

(2)     in an apartment with one or more bedrooms, two times the number of bedrooms plus one.

**Child is not defined in the D.C. Human Rights Act, but under the federal Fair Housing law is defined as someone 18 years of age.** It is not appropriate to discuss the number of "children". You may, however, ask the number of people in the household, their names and their ages .

The above occupancy provisions apply to a person alleging housing discrimination who has one or more children and where the children reside with that person. For example, it could be unlawful in the District of Columbia to deny the rental of a one bedroom apartment to a single parent because he or she has two children. In other words, *a single parent with two children* may rent a *one bedroom apartment* (2 x # of bedrooms + 1) in the District of Columbia. *This policy must be applied consistently and equally to all tenants.* Consult the Fair Housing Officer if you have *any* questions concerning occupancy requirements in the District of Columbia.

6

BRA 0251

## IV.    SECURITY DEPOSITS

The purpose of a security deposit is to insure generally that any repair for damages which exceed normal wear and tear are guaranteed in the event work must be undertaken to restore the unit to the condition in which it existed at the beginning of the tenancy, and to protect against the failure of a tenant to pay rent.  The use of security deposits is a well-established, fair and proper method of offering protection to owners, residents and managers, as well as being an accepted part of life in rental housing.

Consistent with this understanding, our policy regarding security deposits is as follows:

1.    In cases where security deposits are required, they will be required without regard to any protected classes.

2.    Upon termination of the tenancy, after any deduction have been made for damages exceeding normal wear and tear or unpaid rent, the balance of the deposit will be returned to the tenant who made the security deposit.

## V.    DESIGNATION OF FAIR HOUSING OFFICER

_____ has been designated as the company's Fair Housing Officer.  In that role, _____ will not only do his best to keep current on developments regarding the laws and regulations governing fair housing, but will also provide managers and leasing agents with information concerning important developments as they relate to our business.

_____'s role is not a ceremonial one.   When questions arise having anything to do with fair housing, call him.  Sometimes it will be necessary to speak with him in determining how to respond to a question asked by a homeseeker.   On other occasions, _____ will be there for you concerning questions a resident may have.  Or you may believe there are other matters which may potentially have fair housing implications. You should feel free to call and make any inquiry or suggestion you feel is appropriate. Remember, the Fair Housing Officer is there to help you and wants to hear from you.

Where you are facing a  difficult or confusing situation involving either a homeseeker or a resident which you do feel equipped to address, you should politely excuse yourself and call

_____.

## VI.    OTHER POLICIES

**Chatel Real Estate, Inc.**, wants to remain in the forefront as a fair housing property management company.  The following policies reflect that commitment.

### A.    Advertising

Advertisements that express a preference, limitation or discrimination based on a protected classification violate federal and local fair housing laws.

7

OFFICE OF HUMAN R...
Received
NOV 2 1 2005

NOV ... 2005

BRA 0252

Our advertisements include the use of the phrase "Equal Housing Opportunity" (EHO). This conveys to the public not only the message of our support of fair housing, but that the philosophy is integral to all housing we market to the public.

We hope that the use of the EHO language will attract those who in the past may not have been conscious of our fair housing policy and who might not have applied. This affirmative part of our policy should enhance the diversity of our residents.

In order to insure that we are complying with fair housing laws, all advertisements will be reviewed by our Fair Housing Officer, _____, before publication. Our Fair Housing Officer will keep records of all advertisements.

**B.      Fair Housing Poster**

As a policy matter, the fair housing posters outlining both federal and local fair housing laws will be displayed in a prominent location in the rental office. The prominent display of the fair housing posters does more than comply with the law. The posters convey a message, particularly to those afforded protections under the Fair Housing Act.

**C.      Maintenance and Other Building Services**

Fair housing laws require that maintenance and other building services be provided on an equal basis. It is our policy that all service work must be assigned through the office.

Because fair housing concerns not only rental personnel, but also maintenance workers and other staff who have tenant contact, it is required that all personnel undertake fair housing instruction. It is our fair housing policy to have all personnel treat our tenants equally and fairly.

**D.      Sexual Harassment**

**(1)      Posting of Policy Against Sexual Harassment**

The following separate policy against sexual harassment will be made known to employees and residents:

# SEXUAL HARASSMENT IS PROHIBITED

**Chatel Real Estate, Inc.** expressly prohibits sexual harassment by employees at its facilities. All employees have been instructed about the company's steadfast commitment to equal housing opportunity and understand that any act of harassment based on sex may result in significant disciplinary action including discharge.

This policy has also been established to protect all tenants. If you have any questions or concerns, you are free to contact the company's Fair Housing Officer, _____ at _____.



B      253

All complaints of harassment will be immediately made known to the Fair Housing Officer. Inform the tenant in your most professional manner that the complaint is being handled by _____. Give the tenant the name and telephone of the Fair Housing Officer. Assure the tenant that the complaint is being taken very seriously.

It is the policy of **Chatel Real Estate, Inc.** to have all our personnel treat our tenants in a professional manner. Our personnel have been instructed to maintain all contacts with our tenants on a professional level and to refrain from making personal and/or offensive comments.

## VII.    SOME PRACTICAL EXAMPLES

All of us want to provide the best service we can to all homeseekers and residents and, in our effort to serve, we must guard against any effort which might have the purpose or effect of restricting or limiting housing choice for the wrong reasons.

### WHERE DO WE PUT THE FAMILIES?

For example if a young family is applying to rent an apartment and there are several young families living in a particular building or section of the building, do not <u>assume</u> that this family wants that particular building or section of the building. The key is offering all the units we have. The fact that other families live in a certain area is not a marketing factor.

Here's your answer. **Let the homeseeker make the choice**. As long as you are responding truthfully and as long as the information is not influencing the homeseeker by steering or manipulating away from the homeseeker a full choice, your efforts are not only good for business, but consistent with fair housing. In other words, families may <u>choose</u> to live wherever they desire consistent with available housing.

### RACIAL, SEXUAL HARASSMENT BY RESIDENTS

Sometimes the personal prejudices of residents surface in a disagreement between or among tenants. If the expression of racial or other bias by a resident is brought to our attention, particularly in the context of threats to persons or property, we will treat such conduct consistent with any other anti-social actions prohibited by our lease and by our policy that residents are entitled to peaceful enjoyment.

As soon as such information is brought to your attention, intervention by the Fair Housing Officer should be sought for appropriate action.

Intimidation and harassment of our residents by other residents will not be tolerated.

### INFORMATION ABOUT UNITS




BRA 0254

How many times have you been asked the following specific information about your building? How big are your 1-bedrooms? Is a credit check required an is there a fee? How much do I need to put down for the security deposit? How many blacks live in the building?

The first three questions are legitimate, but the last one is not. You may respond to the last question by saying that **Chatel Real Estate, Inc.** is proud to be a fair housing company. We make apartments available on an equal and fair basis.

But what do you do with the homeseeker who persists? "Yes, I know all that, but how many 'Martians' are in the building?" Even if you have some idea of about how many of that minority are in your building, is there any harm in answering truthfully? Yes. No matter how truthful you are, responding to racial inquiries may create problems. No specific data is maintained in this respect. But your response should be professional and consistent with our strong fair housing policy. Your diplomatic referral to our Fair Housing Officer offers to reassure homeseekers that the company practices fair housing. *The key is to avoid responding to what might be a racially (or other protected class) motivated inquiry and handle a sensitive issue professionally.*

## SHOWING APARTMENTS

Show available apartments (or model) to all applicants. Always explain any delay to an applicant who is waiting to view an apartment. If a unit cannot be shown, for example, during a particular period, make sure that exceptions are not made (i.e., making special arrangements to show a unit to certain prospects and not others).

Remember, *don't tell a prospective tenant that you think there might be an apartment becoming available next month unless you give this information to all prospective tenants.* Encourage all prospective tenants to keep in touch with the rental office about upcoming availability of units.

In responding to questions about amenities, you should be sure to present information in a consistent manner might cause problems. For example, what if a single person looking for housing asks if your building has a playground with swings. The homeseeker may be seeking a response regarding families living in the property because he or she does not want to live in a multifamily structure with children.

## SHOWING AMENITIES

There is absolutely nothing wrong with an honest showing of a building's facilities including the amenities. However, if play facilities exist, they exist in the context of many other amenities such as a pool or exercise room. Simply stated, emphasis of the playground at the exclusion of the other amenities is not only inappropriate, but fails to market the broad benefits of the building.

10

BRA 0255

## DON'T ASSUME

When it comes to homeseekers who fall within these protected classes, one of the worst things you can say to someone is:  "I don't think you'd be happy here . . ."  Such a response may come from a genuine concern that perhaps the  person may be seeking a community housing persons who fall into the same classification.

As well intended as your response might be, it  is wrong.  <u>Let the homeseeker choose</u>.

## STEERING

Assumptions  about  prospective  tenants  might  cause  problems  with  steering.    For example, a Martian is looking for a one-bedroom apartment.  A one-bedroom unit is available in both Buildings A and C.  The rental agent wants to put the Martian in Building A because she feels that the Martian would have more things in common with the next door neighbor who is also a Martian.  Is there a problem?

Probably.  The homeseeker should be provided with information as to what is available; and then the homeseeker should choose.

## HYPING A ONE-BEDROOM UNIT

Some property management companies have expressed concern that "hyping" a particular type of apartment might get them into trouble with fair housing laws.  This would be true if the "hype" were being done selectively.  In other words, as long as, for example, one-bedroom apartments are being hyped irrespective who is of the prospective tenant, this would probably not violate fair housing.
In applying this example, keep in mind our company's occupancy standards (<u>See</u> Section III).

## FIRST COME, FIRST SERVE

**Chatel Real Estate, Inc.,** maintains a **"first come, first serve" policy.**  What happens when the first applicant (black) submits an application five minutes before the second applicant (white) for the same apartment?  (Both are in the office at the same time).  The credit bureau first sends back the credit report on the white applicant, who applied second, and the report is good.  Because all the information was in hand, the resident manager accepts the second (white) applicant.  The resident manager explains to the black applicant that the credit bureau did not send his credit report back until a day after the apartment was rented.  The black applicant sues.  Could the lawsuit have been prevented?

Probably.  If the resident manager had used the "first come, first serve" policy, the lawsuit could have been avoided.  At least in this example, the resident manager should have waited the extra day it usually takes to get the credit report back.

11

BRA 0256

## VIII.  YOUR PERSONAL COMMITMENT TO FAIR HOUSING

**Chatel Real Estate, Inc.** has been very proud to have made fair housing practice a priority in our company and will continue to do so.  But our objective in making housing available to all homeseekers is ultimately your responsibility.  By attending periodic training programs on fair housing, by studying these materials, by utilizing the assistance of the Fair Housing Officer, you do your best in supporting fair housing.

Practicing fair housing is both professional and the right thing to do.  Your pledge to us (which is included in this material) is really a pledge to yourself and a reaffirmation that we are professionals who treat people fairly and equally.

Fair housing is the law of the land.  It is the law of **Chatel Real Estate, Inc.** and your practice of fair housing will help us serve the public and keep our company a leader in the field.

Sign:_____          Date:_____





12

BRA 0257

# REAFFIRMATION TO FAIR HOUSING

I, _____, am familiar with **Chatel Real Estate, Inc.'s** strong commitment to the nation's policy of fair housing and am aware of the company's active and genuine commitment to equal housing opportunity. I have attended company programs in which fair housing principles have been explained and examples reviewed with me. I am aware of the availability of **Chatel Real Estate, Inc.'s** Fair Housing Officer in the event any potential housing discrimination problem becomes evident. I have received and have studied the Fair Housing Policy Manual which have been issued by **Chatel Real Estate, Inc.** and understand that I am part of an organization which has made fair housing an integral part of its operation and practice.

I understand that I may be subject to disciplinary action, including immediate discharge, in the event I participate in unlawful housing discrimination and may be liable to the alleged victim and the company for such conduct.

I understand that fair housing is the law of the land and a basic part of **Chatel Real Estate, Inc.'s** philosophy and day-to-day practice. I reaffirm my commitment to practice fair housing to all people.

_____         _____
NAME                                                         DATE

NOV 21 2005

13

BRA 0258

# FAIR HOUSING MANUAL

## APPENDIX A

**Familial Status Exemptions**



## FAMILIAL STATUS EXEMPTIONS
## AND HOW THEY ARE TREATED

There are very limited exemptions under the familial status protections for housing "older persons." The housing for older persons exemption generally applies housing for persons fifty-five (55) or older and, in some instances, to persons sixty-two (62) or older. These exemptions, however, have fairly specific requirements under federal law and if you have a question about whether it applies, call the Fair Housing Officer <u>before</u> making a determination on your own.

Importantly, in keeping with the fair housing credo of **Chatel Real Estate, Inc.**, the requirements of this exemption are not reviewed with the homeseeker. Obviously we want to offer the broadest possible choice and not permit the homeseeker to misinterpret remarks about the exemption as a limitation.



BRA 0260

# FAIR HOUSING MANUAL

## APPENDIX B

### Reasonable Modification and Accommodation Requirements



NOV 2 1 2005

NOV 2 1 2005

BRA 0261

## I.    REASONABLE MODIFICATION AND ACCOMMODATION REQUIREMENTS

As stated in Section II, federal fair housing law now permits a disabled tenant to make "reasonable modifications" to both the inside of the apartment unit and even to the common/public use areas of the building.

What are "reasonable modifications?"  Here are examples of apartment unit modification and common/public modification.  For the unit, a tenant may widen a doorway or may install grab bars in the bathroom.  In the common area, a tenant may install a wheelchair ramp in the lobby or in the laundry room.  *Ordinarily, whatever the modification, the tenant bears the cost*.

What happens when the tenant moves out?  The tenant is responsible for <u>restoration</u> of any modifications made to the <u>interior</u> of the apartment <u>only if</u>, upon termination, the modification would affect the use and enjoyment of the premises by future tenants.

What's the standard?  "Reasonableness."

It may be reasonable, for example, to require a tenant to remove grab bars in the bathroom.  However, it may not be reasonable to require a tenant to restore doorways that have been widened back to the original dimensions.  Why?  Because wider doorways would probably not affect the use and enjoyment of tenancy by future tenants.

Remember that restoration relates only to interiors.  In the example of the wheelchair ramps for the lobby or for the laundry room, the tenant does not have to remove the ramp at the end of the tenancy.

For <u>new</u> residential buildings ready for first occupancy on March 31, 1991, the Fair Housing Amendments Act, with some exemptions, require construction and adaptive design requirements.  These matters will likely be of more concern to developers rather than you as leasing agents, property managers and resident managers.

### A.    Interest-bearing Escrow Accounts:  *The Restoration Deposit*

Where a disabled tenant makes a reasonable modification, for example, what may be done to insure that restoration costs, if necessary, will be there at the appropriate time?

An interest-bearing escrow account may be established by management where an estimated cost of restoration is reasonable.  When is it reasonable to establish an interest-bearing escrow account?  Here are the factors that need to be considered:

(e)    the nature and extent of modification;

(f)    the length of tenancy; and

(g)    the credit/employment history of the tenant.



Thus the "restoration deposit" is not automatic.

Before modification, the tenant, of course, must make a request for modification.  When

BRA 0262

the request is made, this is what is permissible to have in writing:

(a)    a written description of the work to be undertaken;

(b)    a written assurance that the work will be performed in a "workmanlike" manner by the tenant; and

(c)    all building permits by the tenant.  It would be unlawful to require a tenant to hire a particular contractor.

**B.    Procedure for Handling Modification Requests from Disabled Persons**

How **Chatel Real Estate, Inc.** processes modification requests from disabled homeseekers and/or present tenants will be consistent with the new federal law.

The new federal regulations prohibit increasing any customarily required security deposits for disabled persons.  If a question regarding security deposits is raised by <u>anyone</u>, it is important that you respond that our general rule is that security deposits are required of <u>all</u> residents.  If a person who is disabled indicates that he or she intends to modify existing exterior or interior structures as a condition of tenancy, that's your signal to involve _____, our Fair Housing Officer (<u>See</u> Section IV).  In your most professional and diplomatic manner, because such modifications are now generally permissible, explain that the details of implementing this will be coordinated by the office.  The law generally permits disabled homeseekers and/or tenants, at their own expense, to modify the public/common areas and inside of the unit to achieve access.  Also, under certain circumstances, a disabled person requesting to make modifications, may be required as a condition of tenancy to pay the cost of restoration into an interest bearing escrow account.

**C.    Reasonable Accommodations**

Disabled tenants may ask for a "reasonable accommodation" of apartment management policies, practices and procedures.  What does this mean?

If, for example, a disabled tenant requests a reserved parking space near the building's entrance, this may be a "reasonable accommodation."



BRA 0263

## REASONABLE ACCOMMODATIONS/MODIFICATIONS FORM:

(Please read our Reasonable Accommodations/Reasonable Modifications policy before completing this form.)

Name:_____

Address:_____

City, State, Zip:_____

We are requesting a REASONABLE ACCOMMODATION/REASONABLE MODIFICATION. Specifically, we are requesting the following alteration of policy or physical structure.

_____

_____

_____

I/We are requesting this change for the following reasons: (Note:  Do not give any details as to the disability or medical condition.  Simply describe why you are requesting an alteration of policy of physical structure.  You may continue with your answer on the back on this form, if necessary):

_____

_____

_____

_____

_____

_____

We understand that in cases where the disability is not obvious, the Owner/Managing Agent may request verification of disability and the need for the accommodation and/or modification that may be necessary to equally enjoy the dwelling unit.  We authorize the Owner/Managing Agent to seek and verify the necessity of my/our request by contacting the following source(s) provided by me/us prior to make a determination concerning my/our request.

BRA 0264

Source Name:_____

Address:_____

Telephone:_____    Fax:_____

_____    _____
Signature                                              Date

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### For Office Use Only

Date Received: _____    Date Verification Sent:_____

Action:_____    Approved _____    Denied_____

Comments:

_____

_____

_____

_____

_____

_____

_____

_____

_____    _____
Signature of Authorized Official                        Date

275508v1

5

BRA 0265