UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN BRATTON | * | |
| Plaintiff | * | |
| v. | * | Case No.: 06-CV-00694 (JDB) |
| CHATEL REAL ESTATE, INC. | * | The Honorable John D. Bates |
| and | * | |
| THIERRY LIVERMAN | * | |
| and | * | |
| MARY WHITE | * | |
| Defendants | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
MARY WHITE'S MOTION TO STRIKE PLAINTIFF'S EXPERT**

Defendant, Mary White ("Ms. White"), by her attorney, Robert H. Bouse, Jr., hereby files this Memorandum of Points and Authorities in support of her Motion to Strike Plaintiff's Expert, Thomas J. Lynch, and in support thereof, states as follows:

**I.       INTRODUCTION**

This action for damages arises out of the lease of commercial property from Defendant, Mary White ("Ms. White") to Plaintiff, John Bratton ("Plaintiff"). Ms. White owned commercial property located at 1622 Wisconsin Avenue, which she made available for lease in the summer of 2005. To list the property, find potential tenants and show the property, she retained Chatel Real Estate, Inc. ("Chatel"), a co-Defendant in this litigation. In response to the property's listing on the Metropolitan Regional Information System ("MRIS") database, Ms.

1

White received, through Chatel, several lease offers including from Plaintiff John W. Bratton ("Plaintiff"), who was interested in leading the property to use as a second office location for his real estate company, Bratton Realty, LLC ("Bratton Realty"). On October 31, 2005, less than one month after Plaintiff first expressed interest in the property, Ms. White and Plaintiff executed a lease agreement, which began the following day, November 1, 2005.

Despite the fact that Plaintiff leased the property for his business, Bratton Realty and has been unimpeded in his use of that property, Plaintiff filed the instant action alleging that the Defendants wrongfully discriminated against him based on his race and appearance. His Complaint is premised upon alleged violations of 42 U.S.C. §§ 1981 and 1982 of the Federal Civil Rights Act and §§ 1402.21 and 1402.23 of the District of Columbia Human Rights Act ("DCHRA").

In support of his allegations, Plaintiff offered the expert testimony of Thomas J. Lynch, a licensed real estate broker since 1970. (Exhibit 1, Lynch Report). Plaintiff filed Mr. Lynch's twenty-seven page report pursuant to FED.R.CIV.P. 26(a)(2), which requires that all witnesses retained to provide expert testimony in a case submit "a written report prepared and signed by the witness" which "shall contain a complete statement of all opinions to be expressed and the basis and reasons therefore."[1] FED.R.CIV.P. 26(a)(2). The opinions offered in Mr. Lynch's report, as well as those offered at his deposition, make clear that Mr. Lynch's opinions are legal conclusions that Defendants violated the Civil Rights Act and the District of Columbia

---

[1] As noted in the Memorandum to Co-Defendants' Motion to Strike, Mr. Lynch admitted at deposition that contrary to the requirements of FED.R.CIV.P. 26(a)(2), he did not prepare the report. Instead, Plaintiff's counsel prepared the report before ever meeting with Mr. Lynch. (Exhibit 2, Lynch Deposition Excerpts, pp. 69-76). Mr. Lynch testified that he made changes, but only to make Plaintiff's counsel's statements "more in keeping with my interpretation of the D.C. Human Rights Act and how it applies, and what, you know, what's my understanding of protected classes." (Id. at p. 76).

2

Human Rights Act. In fact, in its entirety, the "Conclusion" section in Mr. Lynch's report states that, "[i]n my opinion, Defendants' treatment of John Bratton was discriminatory in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1982, and the District of Columbia Human Rights Act §§ 2-1402.21 and 2-1402.23." (Exhibit 1, p. 27).

As set forth more fully below, expert witnesses are not permitted to state legal conclusions or otherwise usurp the province of the jury by simply telling them what result should be reached. See Weston v. Washington Metropolitan Area Transit Authority, 78 F.3d 682, 684 (D.C. Cir. 1994); Frase v. Henry, 444 F.2d 1228, 1231 (10th Cir. 1971).

## II.    ARGUMENT

### a.    *Mr. Lynch's Report and Deposition Testimony*

The substance of Mr. Lynch's opinions is found in sections IV and V of his report. Despite the fact that Section IV is titled, "Standards of Conduct for Real Estate Salespersons and Brokers[,]" it contains two subsections devoted entirely to the law: (Exhibit 1, p. 5). In the subsection titled, "42 U.S.C. §§ 1981 and 1982," the report restates the language of §§ 1981 and 1982 of the Civil Rights Act and explains that "[r]eal estate brokers and salespersons are expected to comply with the Civil Rights Act." (Id.). Applying his interpretation of the facts of the case to the law set forth in the Civil Rights Act, Mr. Lynch comes to the legal conclusion that "Defendants stripped John Bratton of these rights" and that "Defendants violated the Civil Rights Act, §§ 1981 and 1982." (Id. at p. 5-6).

The next subsection in the "Standards" section is titled "District of Columbia Human Rights Act (§§ 2-1402.21 and 2-1402.23)." (Id. at p. 6). Like the subsection before it, this subsection again simply restates the law, explaining that the "District of Columbia Human Rights Act prohibits discrimination on the basis of race and personal appearance in the sale and rental of

real estate." (Id. at p. 6). Mr. Lynch quotes the direct language of the Human Rights Act and sets forth every class protected thereunder. (Id. at p. 7). After applying his interpretation of the facts of the case to the law set forth in the Human Rights Act, Mr. Lynch sets forth another of his legal conclusion,; that "Defendants violated John Bratton's rights under the District of Columbia Human Rights Act" and "discriminated against John Bratton because of his race (African-American) and personal appearance (long hair with dreadlocks)." (Id.).

The remaining sections of the report set forth, according to Mr. Lynch, each act or omission which he believes constitutes discrimination. With respect to co-Defendant Chatel Realty, Mr. Lynch concludes that "Chatel's misrepresentation of the availability of the Property to John Bratton on or about October 12, 2005 is a text book example of unlawful discrimination based upon Mr. Bratton's race and personal appearance." (Id. at p. 15). With respect to Ms. White, Mr. Lynch found all of her reasons for choosing to lease the property to the other candidate "pretexts for discrimination." (Id. at p. 17). In keeping with his pattern of making legal conclusions, the subsection of the report which specifically addressed Ms. White's acts was titled "Mary White's Discriminatory Treatment of John Bratton." (Id. at p. 16-17.).

The opinions set forth in Mr. Lynch's report were explored in detail at his deposition which took place over two days in February. According to Mr. Lynch's deposition testimony, the first time he spoke with Plaintiff's counsel, he was told the general facts of the case and that Plaintiff felt he was being discriminated against. (Exhibit 2, Lynch Deposition Excerpts, pp. 25-26). In response, sounding more like an attorney than a realtor, Mr. Lynch came to the following legal conclusion: "it certainly sounds very, very plausible and reasonable that we have a case of discrimination here based on his race and other protected interests under the D.C. Human Rights Act of 1977 as amended, specifically personal appearance." (Id.)

4

Later in his deposition, describing the behavior of the Defendants as it relates to entertaining leases from Roberta Medlin and the Plaintiff, Mr. Lynch testified, "[i]f, in fact, the property was not under contract with Roberta Medlin, then his characterization of what actually was going on was saying something was unavailable when, in fact, it was still available, and that is one of the principal no-nos as far as dealing with human rights and fair dealing with respect to the D.C. Human Rights Act." (Id. at p. 131). Asked whether he was prepared to testify that co-Defendant Thierry Liverman was motivated by racism, Mr. Lynch responds that his "testimony will be that he participated in a prohibited activity under the D.C. Human Rights Act." (Id. at p. 132). Again setting forth nothing more than a legal analysis, Mr. Lynch even testified that "the entire intent of the council, the D.C. City Council in creating the D.C. Human Rights Act of 1997 and the first paragraph said it is the intent of the council is to put an end to discrimination in the District of Columbia save for personal issues." (Id. at p. 138).

At one point during Mr. Lynch's deposition, counsel for co-Defendant asked whether the statutes relevant to this case prohibit discriminatory conduct or just conduct that is perceived as discriminatory. Interestingly, Plaintiff's counsel objected and the following colloquy ensued:

> COUNSEL FOR PLAINTIFF: Objection. Calls for a legal conclusion, and I'm instructing him not to answer that question.
>
> COUNSEL FOR MS. WHITE: How can you do that? He's not your client.
>
> COUNSEL FOR PLAINTIFF: Yes. This is it a legal conclusion, and you cannot – the instructions from the court will advise the jury what's required to prove the case, not Mr. Lynch's testimony, doesn't say anything about appearance versus reality.
>
> COUNSEL FOR CHATEL: Are you then prepared to withdraw all of the portions of your expert's report where he lays out what the law is and what's prohibited?

> COUNSEL FOR PLAINTIFF: No. Those portions cite specific statutes and most of them are COSIF.

(Id. at p. 174). Presumably, despite the fact that Plaintiff's counsel drafted Mr. Lynch's report and that it is rife with legal conclusions, counsel for Plaintiff agrees that such opinions are impermissible. (Id.)

These quotes from Mr. Lynch's testimony do not represent every legal conclusion he offered. Rather, they are just representative of the legal and conclusory nature of his opinions and of the underlying theme of his opinions – that the behavior of the Defendants was discriminatory and in violation of the Civil Rights Act and the District of Columbia Human Rights Act. Mr. Lynch does not attempt to couch his opinions in terms of the standard of care of people in his profession, nor does he ever attempt to conceal the fact that his opinions are legal conclusions. These opinions are not proper expert opinions in a race-based discrimination case and they, along with Mr. Lynch, should be excluded and not heard by the jury.

    **b.**    *Mr. Lynch's Expert Opinions Do Not Meet the Requirements of FED.R.EVID. 702.*

Federal Rule of Evidence 702 states that a "witness qualified as an expert…may testify [] in the form of an opinion or otherwise" in cases where "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." FED.R.EVID. 702. The touchstone of this rule is the helpfulness of expert testimony; a condition that goes primarily to relevance. See United States v. Downing, 753 F.2d 1224, 1235 (3d Cir.1985); see also FED.R.EVID. 403 (which provides for the exclusion of evidence for "waste of time.")

In light of the importance of the helpfulness aspect of Rule 702, courts have applied a two-part test for determining whether the expert testimony is admissible: (1) the witness must

be qualified, and (2) the witness must be capable of assisting the trier of fact. Burkhart v. Washington Metropolitan Area Transit Authority, 112 F.3d 1207, 1211 (D.C. Cir. 1997). The task of the Court in making this assessment "is to distinguish helpful opinion testimony that embraces an ultimate fact from unhelpful opinion testimony that states a legal conclusion." U.S. v. Perkins, 470 F.3d 150, 158 (4th Cir. 2006) (citing U.S. v. Barile, 286 F.3d 749, 760 (2002)). Where an expert's opinion amounts to nothing more than a legal conclusion, it is unhelpful and should be stricken. See Burkhart, 112 F.3d at 1214.

It is also true that the so-called "ultimate issue" rule has been abolished and that opinion testimony is not objectionable simply because it embraces an ultimate issue to be decided by the trier of fact. Nevertheless, FED.R.EVID. 704 has not lowered the bar "so as to admit all opinions." FED.R.EVID. 704 advisory committee's note. Ultimate issue testimony still "must be otherwise admissible under the Rules of Evidence." U.S. v. Perkins, 470 F.3d 150, 157 (4th Cir. 2006) (quoting FED.R.EVID. 704 advisory committee's note). "This means that the testimony must be helpful to the trier of fact, in accordance with Rules 701 and 702, and must not waste time, in accordance with Rule 403." Id.

In accordance with the Rule 702 requirements just set forth, "[a]n expert witness may not deliver legal conclusions on domestic law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702." Weston, 78 F.3d at 684; see Weinstein's Federal Evidence § 704.04(2)(a) ("The most common reason for excluding opinion testimony that gives a legal conclusion is lack of helpfulness ....") Stated another way Rule 702 "afford[s] ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." Barile, 286 F.3d at 759 (4th Cir. 2002), (quoting FED.R.EVID. 702 advisory committee's note); see also Lipinski v.

People of State of N.Y., 557 F.2d 289, 293 (2nd Cir. 1977) (for a discussion on the historical practice of oath-helping).

Keeping in mind the general rule that legal conclusions are inadmissible, courts must assess whether the fact that opinion testimony states a legal conclusion makes it unhelpful to the jury. In performing this analysis, Courts must "determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." Burkhart, 112 F.3d at 1212 (quoting Torres v. County of Oakland, 758 F.2d 147, 150 (6th Cir. 1985)). "If they do, exclusion is appropriate." Id.

The language of Mr. Lynch's opinions track, verbatim, the language of the Civil Rights Act and the D.C. Human Rights Act. See Torres, 758 F.2d at 151. In fact, he begins the substantive sections of his report by quoting 42 U.S.C. §§ 1981 and 1982 and stating that "real estate brokers and salespersons are expected to comply" with them. (Exhibit 1, p. 5). He goes on to state that "Defendants stripped John Bratton of these rights" and ultimately concluded that "Defendants violated the Civil Rights Act." (Id. at pp. 5-6). In many of the cases analyzing whether an expert's opinion is a legal conclusion, the Court is forced to compare the expert's language with the language of the statute and to make a determination about whether they are similar. Here, the Court need not determine whether they are similar because Mr. Lynch uses the same language. The opinions in his report and deposition testimony track the exact language of the statute. His testimony was not expressed in terms of industry standards, it was couched in terms of whether the law was broken. (Id.)

Moreover, the terms utilized by Mr. Lynch are terms of art with very "specialized meaning in the law[,]" separate and distinct from the vernacular. See Torres, 758 F.2d at 151. As the Court held in Torres, "the term 'discrimination' has a specialized meaning in the law and

8

in lay use the term has a distinctly less precise meaning." Id.; Burkhart, 112 F.3d at 1214; see also Ward v. Westland Plastics, Inc., 651 F.2d 1266, 1271 (9th Cir. 1980) (witness held "incompetent to voice an opinion on whether that or any other conduct constituted illegal sex discrimination."). Therefore, by invoking legal terms of art like "discrimination," "protected class," and "fair dealing," Mr. Lynch's testimony constitutes impermissible legal conclusions. See Burkhart, 112 F.3d at 1213 ("by invoking a legal term of art, Spurlock's testimony constituted an impermissible legal conclusion.").

Both Torres and Burkhart, the cases cited most often herein, applied the principles of FED.R.EVID. 702 to discrimination claims involving testimony of a conclusory nature. In Torres, the Sixth Circuit found that a witness' testimony setting forth the opinion that Plaintiff "had been discriminated against because of her national origin" was improperly "couched as a legal conclusion" and, thus, "not helpful to the jury." 758 F.2d at 150. In Burkhart, the D.C. Circuit adopted the Torres rationale in determining whether an expert could testify "as to how the [Americans with Disabilities Act] and Rehabilitation Act impact on police practices, procedures and training." 112 F.3d at 1210. The Court found that the expert's testimony "consisted of impermissible legal conclusions rather than permissible factual opinions." Id. at 1213. Because "expert testimony that consists of legal conclusions cannot properly assist the trier of fact[,]" the Court found that it was "not 'otherwise admissible.'" 112 F.3d at 1212.

Mr. Lynch's report, which is required to set forth his opinions in their entirety, is nothing more than a twenty-seven page legal opinion and analysis of race-based discrimination. In situations where "the admission of opinions [] would merely tell the jury what result to reach" the Federal Rules of Evidence and their advisory committee notes specifically state that they should not be permitted. FED.R.EVID. 702 advisory committee's note. "It is not for witnesses to

instruct the jury as to the applicable principles of law, but for the judge." Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 509-10 (2nd Cir. 1977). In that regard, "[t]he special legal knowledge of the judge makes the witness' testimony superfluous." Id. (citing VII Wigmore on Evidence s 1952, at 81). Under the circumstances of this case, Mr. Lynch's proffered opinions fail to meet the requirements of FED.R.EVID. 702 and 401, would not be helpful to a jury and, thus, are inadmissible. See Torres, 470 F.3d 150; Burkhart, 112 F.3d 1207; Weston, 78 F.3d at 684. Accordingly, the Court should not permit Mr. Lynch to testify as an expert, or in any other capacity, in this case.

### III. CONCLUSION

For all the reasons stated in Defendant, Mary White's Motion to Strike Plaintiff's Expert and in the accompanying Memorandum, Defendant respectfully requests that this Court strike Plaintiff's expert and his proffered testimony.

/s/
Robert H. Bouse, Jr. (Bar #MD01926)
ANDERSON, COE & KING, LLP
201 North Charles Street, Suite 2000
Baltimore, Maryland 21201
Telephone: 410-752-1630
Fax: 410-752-0085
*Attorney for Mary White*