```
0001

 1            IN THE UNITED STATES DISTRICT COURT

 2               FOR THE DISTRICT OF COLUMBIA

 3      ------------------------------------X

 4    JOHN BRATTON,                         :

 5              Plaintiff                   :

 6         v.                               :   Case No.:

 7    CHATEL REAL ESTATE, INC., et al.,     :   1:06CV00694

 8              Defendants                  :

 9      ------------------------------------X

10

11            Deposition of THOMAS J. LYNCH

12                   Washington, D.C.

13              Friday, February 9, 2007

14                      1:25 p.m.

15    Job No.:  1-96264

16    Pages 1 - 211

17    Reported by:  Lynn Schindler

18

19

20

21

22
```

```
0141
 1      A    Regardless of, regardless of, what's his
 2   name, Gordon Forester's involvement, it's not unusual
 3   that a prospective lessee or lessor ask one's personal
 4   attorney to get involved in the lease.  It doesn't
 5   take Chatel entirely out of the picture, because they
 6   are still agents.
 7   BY MR. RANCK:
 8      Q    If something happened against -- if
 9   something happened to Mr. Bratton after Chatel --
10   after October 13, when Chatel was no longer dealing
11   with Mr. Bratton, if somebody at Gordon Forester did
12   something that Mr. Bratton alleges is discriminatory,
13   is it your opinion that Chatel is somehow responsible
14   for that, that that conduct becomes conduct of Chatel?
15           MR. SHAIBANI:  Objection.
16      A    I don't know what communications and
17   conversations Forester might have had, but I would say
18   it certainly lessens Chatel's issues.
19   BY MR. RANCK:
20      Q    Tell me what discriminatory acts Chatel
21   engaged in after October 13 in your opinion.
22      A    I think they did the most significant damage
```

```
0142
 1   probably on the 12th.
 2        Q    That wasn't my question, however.  My
 3   question was after October 13, which as far as I
 4   understand the record is the last contact between John
 5   Bratton and Chatel, you tell me what discriminatory
 6   acts in your opinion Chatel engaged in.
 7        A    I don't know of any after the 13th that just
 8   jump into my mind at all.
 9        Q    Are you aware of any on the 13th?
10        A    No.
11        Q    So the last act in your opinion that Chatel
12   engaged in that was discriminatory was on October 12
13   when Mr. Liverman, I presume, called Mr. Bratton?  Is
14   that your testimony?
15        A    I would say that's a very big issue.  One
16   thing I do not -- I'd have to dig this thing out as to
17   whether or not Chatel made any -- when and if they
18   made any changes as to the availability of the
19   property on the 12 to -- 12- to 48-month program.  I
20   mean, they still had control of what was basically put
21   out there to the buying -- not the buying, excuse me,
22   the leasing public and also to -- and obviously to
```

```
0143
 1   brokers who subscribe to the MRIS system.  So the --
 2       Q    But assuming --
 3       A    That continued after.  That's what I'm
 4   saying.
 5       Q    Assuming that Chatel did not promptly remove
 6   the property from MRIS.
 7       A    Or change whatever terms that were
 8   supposedly important terms that were not going to be
 9   accepted.
10       Q    Your opinion would be that was in error;
11   correct?
12       A    Yeah, I would, I would.
13       Q    But your opinion wouldn't be that that was
14   somehow discriminatory.
15       A    Well, only in the sense that, if I'm John
16   Bratton and I'm looking at -- it's still staying this
17   in the computer, is that just for somebody else, and
18   it's a different program for me.  This is --
19       Q    But that's not active discrimination against
20   Mr. Bratton.  That would just, in Mr. Bratton's mind,
21   I presume, evidence the discrimination that had
22   occurred.  They told me the property was leased, but
```