UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN BRATTON** | |
| Plaintiff | |
| v. | Case No.: 06-CV-00694 (JDB) |
| **CHATEL REAL ESTATE, INC**. | The Honorable John D. Bates |
| and | |
| **THIERRY LIVERMAN** | |
| and | |
| **MARY WHITE** | |
| Defendants | |

_____

### DEFENDANT MARY WHITE'S REPLY
### IN SUPPORT OF HER FIRST MOTION FOR SUMMARY JUDGMENT

Defendant, Mary White ("Ms. White"), by her attorney, Robert H. Bouse, Jr., hereby files this Reply Memorandum in support of her First Motion for Summary Judgment or, In the Alternative, to Dismiss, and in support thereof, states as follows:

**I.    INTRODUCTION**

In his Opposition to Defendant Mary White's First Motion for Summary Judgment or, In the Alternative, To Dismiss ("Opposition Memorandum"), Plaintiff essentially argues two points.  First, Plaintiff argues that he signed the final lease individually, not as a guarantor, and that by virtue of his signing, he maintains standing to sue on the contract.  (See Opposition Memorandum, p. 19-23).  Second, Plaintiff argues that his

injuries are separate and distinct from those suffered by Bratton Realty, LLC ("Bratton Realty"). (Id., pp. 23-24). For all the reasons set forth herein, as well as those reasons stated in Ms. White's First Motion for Summary Judgment or, In the Alternative, To Dismiss, Plaintiff's arguments are without merit and he lacks standing to maintain this suit against Ms. White.

In addition to both arguments, Plaintiff requests leave of Court to file a Second Amended Complaint to add Bratton Realty, LLC as an additional plaintiff. (Id.) Ms. White hereby objects to that request, and adopts and incorporates by reference the argument against that request stated in co-Defendant's Reply in Support of Their First Motion For Summary Judgment, § C.

## II.   STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE

In his Opposition Memorandum, Plaintiff's Statement of Material Facts Not In Dispute consists of seventeen pages of facts that are most certainly in dispute. (Id., pp. 2-18). They are almost entirely, though, irrelevant to the issue of standing to sue. With respect to the few facts relevant to Ms. White's Motion, they will be addressed in the subsequent Argument section.

## III.   ARGUMENT

### a. Plaintiff Does Not Have Standing To Sue On A Corporate Contract Entered Into By Ms. White and Bratton Realty.

It is apparently undisputed by Plaintiff that an owner of a corporation lacks standing to assert discrimination claims under a contract entered into on behalf of his corporation. See Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 126 S.Ct. 1243,

2

1250-51 (2006). Indeed, Plaintiff never refuted this point. Instead, Plaintiff argues that his name appears as the tenant on the final lease agreement executed with Ms. White and, thus, he was executing the lease agreement personally and not as a guarantor. (Opposition Memorandum, p. 22). In support of this argument, Plaintiff avers that he "did not agree to guarantee the lease" and that "he signed the lease under his own name acting under his individual capacity." (Opposition Memorandum, p. 22). The evidence does not support Plaintiff's new factual interpretation, and in making such an argument, Plaintiff overlooks the circumstances surrounding and the time period leading up to the execution of that lease.

To maintain standing, Plaintiff must first "identify an impaired 'contractual relationship.'" Domino's Pizza, 126 S.Ct. at 1249 (quoting 42 U.S.C. §1981(b)). In this case, that relationship is evidenced by more than just the final lease agreement between the parties. At all times, Plaintiff's purpose in leasing Ms. White's property was as "a suitable office space for his real estate brokerage, Bratton Realty." (Plaintiff's Complaint, ¶ 28). Plaintiff described his first meeting with Mr. Pagones at Chatel Real Estate as follows:

> I told him that I just toured the property. I told him I was a real-estate agent and a broker, and ***I was thinking about putting my brokerage firm here in Georgetown***. That's the perfect fit, exact same size I'm looking for. It's street level, exactly what I was looking for, and that I was interested in doing an application to lease.

(Exhibit 1, Bratton Deposition Excerpts, pp. 98-99). (Emphasis added). In addition, on October 7, 2005, Plaintiff sent Ms. White a letter wherein he explained his intended purpose for the Georgetown space: "I immediately realized that the space was a great fit

3

for my current plans to open a second office in DC." (Exhibit 2, 10/7/05 Letter from Bratton to White).

At all times relevant, Plaintiff was acting in his role as Bratton Realty agent, not individually, and at no time did he ever represent to Ms. White or her agents that he intended to sign the lease individually or use the leased space for personal purposes. Except for the last lease signed, in each lease exchanged between the parties, Bratton Realty was listed as the tenant. (Exhibit 4, Various Leases). In fact, the only reason Plaintiff is listed as the tenant on the final lease is that Mr. Forester required him to "personally guarantee the lease." (Exhibit 3, 10/18/05 Letter from Forester to Bratton). Plaintiff agreed to that accommodation by letter on October 19, 2005. (Exhibit 5, 10/19/05 Letter from Bratton to Forester). Thus, the "impaired contractual relationship" required by § 1981 was, at all times the contract between Ms. White and Bratton Realty, with John Bratton as guarantor.

Support for the fact that Plaintiff was nothing more than a personal guarantor can also be found by examining the substance of the letters exchanged between Mr. Forester and Plaintiff on October 18 and October 19, 2005. In Mr. Forester's October 18, 2005 letter, he advises Plaintiff that his 2003 and 2004 federal income tax returns are required because he is self-employed, but reported a high annual income. (Exhibit 4). It was because of the lack of sufficient documentation relating to Bratton Realty that Plaintiff was requested to guarantee the lease personally. (Id.) In his October 19, 2005 letter, Plaintiff acknowledged Ms. White's concerns by agreeing to have his tax accountant

2

supply additional financial data and consenting to Mr. Forester's request that he personally guarantee the lease. (Exhibit 5, 10/19/05 Letter from Bratton to Forester).

Even as a personal guarantor, though, Plaintiff's status is insufficient to create a contractual relationship under the Civil Rights Act. See Shreeji Krupa, Inc. v. Leonardi Enterprises, 2007 WL 178305 (N.C. Ill. 2007). Plaintiff attempts to distinguish Krupa by arguing that the court's holding was based on the fact that the plaintiff there "did not sign any documents guaranteeing the lease." Id. Plaintiff correctly states one basis for the court's holding, but in doing so ignores the remaining portions. The plaintiff in Krupa argued that Domino's Pizza does not doom his claims because he personally guaranteed the lease. Id. at *3. The court found that argument irrelevant, specifically holding that "even if [plaintiff] was the guarantor of the corporate debt, that status does not result in a contractual relationship sufficient to create standing…" Id.

The Tenth Circuit in Guides, Ltd. v. Yarmouth Group Property Management, Inc., 295 F.3d 1065 (10th Cir. 2002) came to the same conclusion. There, plaintiffs were The Guides, Ltd., d/b/a Africa House and its sole shareholder and president, Tseghe Foote. Id. at 1070. The case arose from two short-term lease agreements entered into between Africa House and a downtown shopping mall. Id. Ms. Foote attempted to obtain long-term leases for Africa House, and alleged that her failure to do so was the result of race-based discrimination on the part of the shopping mall. Id. The court found that Ms. Foote had no standing to sue because the impaired contractual relationship was between Africa House and the mall and that Ms. Foote was not a party. Just as in Krupa, Ms. Foote attempted to distinguish her personal situation by arguing that "she has standing as a

3

result of her guarantee of the corporation's 1993 lease." Id. at 1073.  The court disagreed, explicitly "reject[ing] the premise that a stockholder's status as a guarantor gives the stockholder status to assert an individual claim against a third party where that harm is derivative of that suffered by the corporation." Id.  Ultimately, the court held that "Foote's status as guarantor of the previous lease is of no significance to her claim that the defendants refused to contract or lease to her corporation." Id.

Plaintiff goes on to argue that Ms. White's reliance on Gersman v. Group Health Association, Inc., 931 F.2d 1565 (D.C. Cir.), vacated and remanded, 502 U.S. 1068 (1991) and Guides, 295 F.3d 1065 are misguided.  Curiously, though, Plaintiff cites language from Guides that is contrary to his position.  As discussed, supra, the court in Guides found that only the corporation, and not the corporation's owner or shareholder, had standing to bring a suit based on race-based discrimination relating to a corporate contract.  Guides, 295 F.3d at 1072.  This was so because the alleged discrimination, if any, was suffered by the company for whom plaintiff sought a commercial lease.  Thus, the corporation would have standing to bring a suit arising out of that commercial lease, but not the owner of the corporation.  Gersman stands for the same result.  That is, a corporate officer lacks standing under the Civil Rights Act or the D.C. Human Rights Act for claims against a defendant who had a contractual relationship with the corporation, but not the corporate officer individually.  Gersman, 931 F.2d at 1567.

Ultimately, the only piece of evidence working in Plaintiff's favor is the fact that he signed the final lease.  Nevertheless, the undisputed circumstances surrounding the agreement and the facts leading up to the execution of that agreement make clear that the

4

parties at all times intended the agreement to be between Ms. White and Bratton Realty, with Plaintiff serving as nothing more than a personal guarantor.

### b. Any Injuries Allegedly Suffered by Plaintiff Arose From Bratton Realty's Dealings with Defendants and Plaintiff Cannot Recover On Them Individually.

Plaintiff secondarily argues that he can personally maintain his suit against Defendants because he suffered depression and devastation that was distinct and separate from those injuries allegedly suffered by Bratton Realty. (Opposition Memorandum, pp. 23-24). Plaintiff's argument is presumably premised upon the exception which states that a corporate officer may personally bring suit for injuries to a corporation when the officer suffers injuries which are unique and not suffered by all officers or shareholders. See Guides, 295 F.3d at 1072 (citing Stat-Tech Intern. Corp. v. Delutes, 47 F.3d 1054, 1060 (10th Cir. 1995)). The exception is inapplicable to this case.

In Guides, the plaintiff also "alleged that she suffered emotional distress as a result of the defendants' actions." Id. The court disagreed, finding that any distress or damages suffered by the plaintiff "arose from the failure of the defendants to contract with or lease" to the corporation "and was a product of the economic damages which were suffered by the corporation." Id. at 1072-73. The court found the plaintiff's claim to be derivative of the corporation because she "suffered no violation of her contract rights or right to lease that was in any way different from the violations claimed by [the corporation]." Id.

A limited liability company like Bratton Realty is a separate and distinct entity from his owners, members or shareholders. Thus, in order for Plaintiff, as Bratton

5

Realty's owner, to maintain a suit based on injuries to the company, he must be able to prove that he suffered separate injuries that were not exactly the same as those suffered by the corporation. Plaintiff fails in this regard. In the affidavit submitted with his Opposition Memorandum, Plaintiff makes it clear that defendants' discriminatory behavior is what has "emotionally affected him." (Exhibit 6, Plaintiff's Affidavit, ¶ 1). Later, he states that these injuries only began after the events relating to obtaining a lease for Ms. White's property. (Id.) Indeed, his alleged injuries are neither separate nor distinct from the injuries allegedly suffered by Bratton Realty and arise from exactly the same set of operative facts. See Guides, 47 F.3d at 1072-73. As such, they are not unique to him as owner, but are simply the personal manifestation of the same injuries allegedly suffered by his company. Those are not sufficient to confer standing on the Plaintiff individually.

## IV. CONCLUSION

For all the reasons stated in this Reply Memorandum, as well as those stated in Ms. White's Motion for Summary Judgment or, In the Alternative, To Dismiss, Defendant respectfully requests that the Court grant summary judgment in her favor against Plaintiff or, in the alternative, that Plaintiff's claims be dismissed with prejudice.

                                                                            _____/s/_____
Robert H. Bouse, Jr. (Bar #MD01926)
ANDERSON, COE & KING, LLP
201 N. Charles Street, Suite 2000
Baltimore, Maryland 21201
Telephone: 410-752-1630
Fax: 410-752-0085
*Attorney for Mary White*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of March 2007 copies of the foregoing Motion and Memorandum of Points and Authorities was served by electronic mail upon:

Stefan Shaibani, Esquire
Litigation Associate, PLLC
1150 Connecticut Avenue, NW
Suite 900
Washington, D.C. 20036
*Attorney for Plaintiff John Bratton*

Matthew A. Ranck, Esquire
Eccleston & Wolf, P.C.
2001 S. Street, N.W., Suite 310
Washington, D.C. 20009
*Counsel for Defendants*

                                            _____/s/_____
                                            Robert H. Bouse, Jr. (Bar #MD01926)
                                            ANDERSON, COE & KING, LLP
                                            201 N. Charles Street, Suite 2000
                                            Baltimore, Maryland  21201
                                            Telephone:  410-752-1630
                                            Fax:  410-752-0085
                                            *Attorney for Mary White*