# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN BRATTON, | ) |
| Plaintiff, | ) |
| vs. | ) Civil Action No. 06-0694 (JDB) |
| CHATEL REAL ESTATE, INC., *et al.*, | ) |
| Defendants. | ) |

## PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND

Pursuant to Rule 15 of the Federal Rules of Civil Procedure ("FRCP") and Local Civil Rules 7(i) and 15.1, plaintiff, John Bratton, respectfully requests leave of Court to file a second amended complaint. On February 16, 2007, Matthew Ranck, counsel for Chatel Real Estate, Inc. and Thierry Liverman, and Robert Bouse, counsel for Mary White, declined to consent to this motion. In support of this motion, plaintiff relies upon his memorandum of points and authorities, the arguments and evidence submitted by plaintiff in his response to defendants' First Motion for Summary Judgment, and the Second Amended Complaint attached hereto.

Respectfully submitted,

Dated: March 17, 2007

/s/ Stefan Shaibani
Stefan Shaibani (Bar No. 490024)
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
Tel: (202) 862-4335

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN BRATTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     vs. | ) Civil Action No. 06-0694 (JDB) |
| | ) |
| CHATEL REAL ESTATE, INC., *et al.*, | ) |
| | ) |
|     Defendants. | ) |
| | ) |

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT
OF PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND**

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure and Local Civil Rule 7(i) and 15.1, plaintiff, John Bratton, respectfully requests leave of Court to file a Second Amended Complaint ("SAC"). As discussed below, plaintiff's motion for leave to amend should be granted because (1) the SAC seeks to add Bratton Realty, LLC (a limited liability company solely owned by John Bratton) as an additional plaintiff because it is entitled to unique economic damages suffered as a result of defendants' discrimination in the terms and conditions of the lease offered to John Bratton, (2) Mary White failed to produce the business liability insurance policy issued by Hartford until the deadline for adding new parties and the discovery cut-off had already passed despite plaintiff's repeated demands for six months for the insurance policy, and plaintiff was unaware that the policy named Mary White, Inc. as the insured until after the deadline for adding new parties, (3) the SAC does not necessitate additional discovery to the extent defendants deposed Mr. Bratton concerning his economic damages during two days of depositions, and Mary White, Inc. was adequately represented by counsel throughout this litigation via Mary White's attorneys, (4) amendment of plaintiff's complaint will not prejudice defendants, and (5) the Court of Appeals for the District of Columbia Circuit and this Court have

2

adopted a liberal policy toward granting motions for leave to amend, particularly when there is no prejudice to the opposing parties, as is the case here.

## STATEMENT OF FACTS

This action arises from defendants' unlawful discrimination in the terms and conditions of a lease for Georgetown office space given to plaintiff under the following circumstances:

**I.   Facts Surrounding Plaintiff's Allegations of Discrimination**

1.   Chatel's real estate agent, John Pagones, introduced plaintiff's lease application to Mary White by stating: "I told her it was a real estate office, and **it was an African-American. And I told her 'be prepared for trouble**.' "[1]   In Mr. Bratton's words, Mr. Pagones introduced him to Ms. White as "an angry black man."[2]

2.   On October 12, 2005, defendants falsely informed plaintiff that Mary White's property had been leased to another prospective candidate (Roberta Medlin), that the property was gone and this was "just business."[3]   Despite these representations, no verbal commitment had been reached between Roberta Medlin and Mary White and no lease agreement had been executed between them at that time or anytime thereafter.[4]

3.   Defendants refused to lease the basement of Mary White's property to plaintiff even though the basement had been advertised to the public as available 13 days before plaintiff first

---

[1] Exhibit 13, John Pagones Depo. Trans., November 20, 2006, pp. 53-54, lines 21-4.
[2] Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp.15-16, lines 21-6; p.18, lines 13-16; p. 24, lines 2-4; p.39, lines 7-12; p.55 lines 5-13.
[3] Exhibit 6, Thierry Liverman Depo. Trans., January 11, 2007, pp. 100-101, lines 2-11.  See also Exhibit 10, John Bratton Depo. Trans., dated January 19, 2006, p. 129, lines 9-19; p. 218-219, lines 16-16; p. 256-258, lines 21-5.
[4] Exhibit 14, Roberta Medlin Depo. Trans., dated September 16, 2006, pp. 25-26, lines 14-4.

went to Chatel to inquire about the property[5], and Mary White had attempted to lease her basement to a Georgetown resident who worked out of his home during the same time-frame.[6]

4.    Defendants discriminated against plaintiff with respect to the terms and conditions of his lease agreement.  Specifically, (a) defendants refused to give plaintiff a right of first refusal when this provision was a boilerplate clause in Chatel's Commercial Agreement of Lease (¶ 41),[7] Mary White had instructed Chatel to "use Chatel's lease" months before plaintiff inquired about the property[8], and a right of first refusal was offered by defendants to Roberta Medlin,[9] the white female prospective candidate for the property; (b) defendants required plaintiff to vacate the property after the initial two-year term of his lease[10] even though Mary White's property had been advertised to the public as available for a 12-48 month lease,[11] and Roberta Medlin was given a provision in her lease allowing her to convert it to month-to-month at the end of the initial two-year term[12]; (c) defendants denied plaintiff an option to renew his lease[13] and removed the provision in Chatel's boilerplate Commercial Agreement of Lease that provided for

---

[5] Exhibit 5, MRIS Listing: Lower Level of the Property, Listing date: September 23, 2005 (October 6, 2005)

[6] Exhibit 12, Barrett Anderson Depo. Trans., dated November 16, 2006, p. 19-21, lines 14-10 (in which he discusses Mary White's several interactions with the unnamed male living in Georgetown.)

[7] Exhibit 1, Commercial Lease Agreement executed between John Bratton and Mary White, dated October 31, 2005, p. 6, ¶41.

[8] Exhibit 8, Mary White Depo. Trans., Feb. 1, 2007, p. 53, lines 10-15.

[9] Exhibit 3, Unexecuted Lease Agreement between Roberta Medlin and Mary White, dated October 11, 2005, p. 6, ¶41, lines 10-12.

[10] Exhibits 19-21, John Gordon Forester's Letters to John Bratton, dated October 18, 19, and 26, 2005 (stating that the Property is available for a two-year lease only.)

[11] Exhibit 4, MRIS Listing, Street-Level of the Property, October 6, 2005, p.2; See also John Pagones Depo. Trans., p. 75-76, lines 17-9 (in which he acknowledges that the "121/48" on the MRIS Listing is a typographical error and should instead be 12/48, meaning the property was advertised as available for a lease term between 12 to 48 months).

[12] Exhibit 3, pp.6-7, ¶45 and ¶53; Compare with Exhibit 1, in which ¶45 and ¶53 are crossed out.

[13] Exhibits 20-21, John Gordon Forester's letters to John Bratton, dated October 19 and 26, 2005.

4

conversion of the lease to month-to-month at the end of the initial lease term.[14]  Defendants thus forced plaintiff to relocate his real estate business from 1622 Wisconsin Avenue in Georgetown at the end of his two-year lease.[15]

5.      Defendants imposed strict financial qualification requirements on plaintiff—including submission of two years of income tax returns and bank statements to qualify for the lease[16] — but did not require the same from Roberta Medlin, the white female prospective candidate for the property[17], even though she was also self-employed[18] and plaintiff's credit report was clean.[19]  In this regard, Mr. Liverman testified in his deposition that he thought Roberta Medlin's husband was a "first class person."[20]

6.      Ultimately, it took plaintiff 24 days to lease the street-level of Mary White's property, but only after submission of 5 draft leases,[21] several letters to Chatel, John Gordon Forester (Mary

---

[14] Exhibit 2, Facsimile from John Gordon Forester to Thierry Liverman, dated October 26, 2005 (requesting that he draft a Commercial Lease Agreement for John Bratton with specific terms and conditions); See also Exhibit 1, ¶45 and ¶53.
[15] Exhibit 8, Mary White Depo. Trans., p. 100-101, lines 9-2; See also Exhibit 6, Thierry Liverman Depo. Trans., pp. 198-199, lines 14-1 (in which they both agree that Plaintiff must vacate the Property at the end of two years.)
[16] Exhibit 19, John Gordon Forester's letter to John Bratton, dated October 18, 2005, (demanding that Plaintiff submit two years worth of tax returns and bank statements); See also Exhibit 9, John Bratton Depo. Trans., Jan. 24, 2007, pp. 134-135, lines 13-8.
[17] Exhibit 14, Roberta Medlin Depo. Trans., dated September 26, 2006, p. 37, lines 5-22; p. 38, lines 1-22; p. 39, lines 1-22; and p. 40, lines 1-16, (in which she admits that she was not required to submit any financial information to Chatel or Mary White when she offered to lease the Property.)
[18] Exhibit 19 (in which Mr. Forester stated that Mr. Bratton must turn in additional financial documents because he was self-employed.)
[19] Exhibit 18, National Registry Check on John Bratton, dated October 12, 2005.
[20] Exhibit 6, Thierry Liverman Depo. Trans., p. 97, lines 3-7.
[21] Exhibit 30, Commercial Lease Agreement between John Bratton and Mary White, dated October 7, 2005; Exhibit 31, Commercial Lease Agreement between John Bratton and Mary White, dated October 10, 2005; Exhibit 32-34, three different versions of Chatel's Standard Commercial Lease Agreement between John Bratton and Mary White, dated October 10, 2005.

White's lawyer)[22], and Mary White[23], and numerous telephone calls to defendants. Indeed, it took three real estate brokers and an attorney to draft a simple two-year lease for plaintiff for a property leased at $2,500 per month. Clearly, defendants sought to dissuade plaintiff from leasing Mary White's property by placing so many impediments in his way for 24 days in the hopes that he would give up.[24] Defendants' attempts to portray this conduct as "negotiation of a commercial lease" is highly misleading.[25]

7.      Defendants ultimately decided to lease the street-level of Mary White's property to plaintiff only after he threatened to sue them for discrimination when he was falsely informed that the property had been leased to another candidate and this was "just business."[26] Defendants thus attempted to conceal their discrimination and avoid a lawsuit.

8.      Despite securing a lease for the property, plaintiff and Bratton Realty, LLC have suffered substantial economic damages, because they have to vacate Mary White's property in November 2007, and plaintiff has to move his business from the prominent location 1622 Wisconsin Avenue in Georgetown. The economic damages suffered by plaintiff consist of (a) lost rental revenue for having to maintain two separate offices in DC when plaintiff would have rented his property in Logan Circle to generate at least $1600 per month in rents for two years (the duration of his lease with Mary White),[27] amounting to $34,800, and (b) time lost for having to rectify defendants' discriminatory treatment when this time would have otherwise been used to conduct

---

[22] Exhibits 35-36, John Bratton's letters to John Gordon Forester, dated October 19 and 26, 2005.
[23] Exhibit 29, Letter from John Bratton to Mary White, dated October 7, 2005.
[24] Exhibits 19-21, John Gordon Forester's letters to John Bratton, dated October 18, 19 and 26, 2005.
[25] Exhibit 8, pp. 99-100, lines 22-7 (in which Mary White states that 24 days is the "normal" time-frame for negotiating a lease.)
[26] Exhibit 6, Thierry Liverman Depo. Trans. pp. 100-101, lines 2-11, pp.102-105, lines 7-18; See also Exhibit 10, John Bratton Depo. Trans, January 19, 2007, p. 258, lines 3-11.
[27] Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, p. 63, lines 5-15; See also Exhibit 9, John Bratton Depo. Trans., dated January 24, 2007, pp. 132-134, lines 14-2.

profitable real estate transactions. The economic damages suffered by Bratton Realty, LLC consist of: (a) relocation expenses, including costs for moving, purchasing new office furniture and supplies, application fee to change the address of the brokerage with the DC Real Estate Commission, and creating new letterhead, logos, advertising materials, and business cards for Bratton Realty, LLC's real estate agents;[28] (b) lost profits (real estate sales volume) and loss of good will arising from having to move the business from 1622 Wisconsin Avenue in Georgetown to a less prestigious location.[29]

9. These economic damages are not insignificant. Indeed, the lost rental revenue from having to maintain two separate offices in DC for two years amount to over $38,400 alone.[30] Bratton Realty, LLC's relocation expenses also amount to over $12,000. This is due to the fact that Bratton Realty, LLC has to create new advertising material, letterhead, business cards, and logos, obtain a new real estate brokerage license and signage, purchase new furniture to fit the new office, and incur moving expenses.[31] In addition, Bratton Realty, LLC's lost profit damages for having to relocate its office from 1622 Wisconsin Avenue to a less prestigious location amount to tens of thousands of dollars.[32]

10. **Mary White testified in her deposition that she was "mugged" by some African-American males** in 1986, and that the perpetrators were not prosecuted despite having been identified.[33] This may have been a motivating factor in defendants' discrimination of plaintiff in this case.

---

[28] Exhibit 9, p. 124, lines 8-13.
[29] Exhibit 9, p. 124-127, lines 15-18.
[30] *See* FN25, *supra*.
[31] Exhibit 9, pp. 123-124, lines 7-13.
[32] Exhibit 9, pp. 127-128, lines 5-16.
[33] Exhibit 8, Mary White Depo. Trans., pp. 207-209, lines 10-8.

11.     John Pagones (the real estate agent at Chatel who listed Mary White's property in this case) was featured in a Dateline-NBC episode named "No Way In," wherein he falsely stated to a person in a wheelchair inquiring about a property to lease in Georgetown: **"I have nothing in Georgetown."**[34]  As uncovered by Dateline-NBC, Chatel had several properties available for lease in Georgetown on that day.  John Pagones' misrepresentation to the person on the wheelchair led to the Fair Housing Council of Washington filing a discrimination suit against Chatel.[35]  The suit was settled but Mr. Pagones' conduct speaks for itself.

12.     Plaintiff and all defendants in this case are experienced real estate brokers in the District of Columbia,[36] constructively imputed with knowledge of civil rights and anti-discrimination laws in real estate transactions,[37] and held to a higher standard than ordinary individuals by virtue of their licensure, training, and knowledge.

## II.     Mary White, Inc.'s Extensive Involvement In Leasing The Property To Plaintiff

As discussed below, Mary White was acting within the scope of her duties as the owner and officer of Mary White, Inc. in connection with leasing the 1622 Wisconsin Avenue Property to plaintiff.[38]  Consequently, Mary White, Inc. is a proper defendant to this suit.

1.     Mary White was winding down the affairs of Mary White, Inc. when she decided to close her business of 30 years and lease the 1622 Wisconsin Avenue Property.  This process included

---

[34] Exhibit 38, DVD of Dateline-NBC Episode titled "No Way In" (filed manually).
[35] Exhibit 37, Washington Lawyers Committee for Civil Rights, Fair Housing Council of Greater Washington, p. 14 (describing discrimination suit filed by Fair Housing Council of Washington, DC versus Chatel).
[36] Exhibit 6, p. 13, lines 8-10, p.26, lines 10-20; Exhibit 8, p.15, lines 3-6.
[37] Exhibit 8, p. 35, lines 18-21; Exhibit 13, pp. 11-12, lines 22-6.
[38] Exhibit 8, Mary White Depo. Trans., dated February 1, 2007, p. 24, lines 8-10; p. 49, lines 2-6;

cleaning and discarding documents and files related to various real-estate contracts, including the 1622 Wisconsin Avenue Property files.[39]

2.  Mary White, in her capacity as the owner and officer of Mary White, Inc., hired Barrett Anderson as her Temporary Office Manager[40] to assist her with winding down the affairs of Mary White, Inc.[41]

    a) Barrett Anderson's duties consisted of providing tours of the Property to prospective tenants, including plaintiff.[42]

    b) Barrett Anderson transmitted Mary White's instructions to her agent, John Pagones, requesting that the MRIS Listing be "flowered up" to attract a greater number of candidates to the Property.[43]

    c) Barrett Anderson used Mary White, Inc.'s e-mail, office space, and telephone lines in winding down the affairs of the business and leasing the Property.[44]

---

[39] Exhibit 8, Mary White Depo. Trans., dated February 1, 2007, p. 48, lines 1-19 (in which she acknowledges shredding and discarding documents as a part of closing down the business); See also Exhibit 12, Barrett Anderson Depo. Trans., dated November 16, 2006, p. 7, lines 13-14.

[40] Exhibit 46, Mary White, Inc.'s Answers to Interrogatories and Requests for Production of Documents propounded by the D.C. Office of Human Rights, p. 2, Response to Question #5 (providing that Barrett Anderson was hired as Ms. White's "temporary office manager."); See also Exhibit 10, John Bratton Depo. Trans., dated January 19, 2007, pp.90-91, lines 15-8 (in which Bratton Anderson introduced himself to John Bratton as Mary White's office manager); See also Exhibit 16, Defendants Chatel Real Estate's and Thierry Liverman's Answers to Plaintiff's First Set of Interrogatories, p. 6, Response to Interrogatory #5, (in which Chatel refers to Barrett Anderson as Mary White's "office assistant.)

[41] Exhibit 12, Barrett Anderson Depo. Trans., p.4, line 17 (in which Barrett states that his purpose was to "assist [Mary White] with the closing of her office); Exhibit 8, Mary White Depo. Trans., dated February 1, 2007, p. 46-47, lines 19-8. See also Exhibit 10, p. 91, lines 13-14 (John Bratton indicates that Barrett Anderson informed him that he was there to "shut down the office for Mary White.")

[42] Exhibit 12, Barrett Anderson Depo. Trans., dated November 16, 2006, pp. 8-9, lines 5-3 (in which Barrett Anderson testified that he gave John Bratton, as well as several others, a tour of the Property.); See also Exhibit 8, p. 164, lines 2-6.

[43] Exhibit 8, Mary White Depo. Trans., p. 51, lines 15-21; See also Exhibit 12, Bratton Anderson Depo. Trans. pp. 32-34, lines 19-2.

9

    Mr. Anderson also used Mary White, Inc.'s e-mail to transmit information concerning prospective tenants to Mary White.[45]

   d) Barrett Anderson provided keys for the Property to Chatel.[46]

   e) Barrett Anderson was instructed to clean up the basement of the Property[47] and sell furniture used by Mary White, Inc. on Craig's List[48] in an effort to facilitate the leasing of the Property and expedite the closing of the business.

3. Mary White, in her capacity as the owner and officer of Mary White, Inc., hired Chatel Real Estate, Inc. and John Pagones as her broker and listing agent for purposes of leasing the Property, while acting fully within the scope of her employment with Mary White, Inc.[49]

4. The responses submitted to the Interrogatories and Requests for Production of Documents propounded by the D.C. Office of Human Rights were executed by Mary White, Inc., not Mary White.[50]

5. Mary White testified that Mary White, Inc. was a corporation created for her own business ventures outside of the real estate transactions and dealings she engages in for Washington Fine Properties.[51] She also testified that the type of business she operates under

---

[44] Exhibit 12, Barrett Anderson Depo. Trans. p. 7, lines 10-21.
[45] Exhibit 40, Email from Barrett Anderson to Mary White, re: 1622 Lease Level 1, dated October 11, 2005.
[46] Exhibit 8, Mary White Depo. Trans., p. 80, lines 10-17; See also Exhibit 12, Barrett Anderson Depo. Trans., p. 31, lines 15-19.
[47] Exhibit 8, pp. 22-23, lines 22-10;
[48] Exhibit 12, p. 133, lines 11-13.
[49] Exhibit 8, Mary White Depo. Trans, dated February 1, 2007, p. 60, lines 8-16; See also Exhibit 8, pp. 48-49, lines 20-18; (in which Mary White addresses the instructions she provided to her agents with regard to leasing the commercial units of her property.)
[50] Exhibit 46, Mary White, Inc.'s Answers to Interrogatories and Requests for Production of Documents propounded by the D.C. Office of Human Rights.
[51] Exhibit 8, Mary White Depo. Trans., dated February 1, 2007, pp. 140-143.

Mary White, Inc. is that of a "general" one concerning her business and "personal affairs."[52] Closing her office and leasing the 1622 Wisconsin Avenue Property are activities which fall under Mary White, Inc.'s business affairs.

6.      All these activities were conducted by Mary White in the course of her duties as the owner and officer of Mary White, Inc. in facilitating the closing down of her business and accelerating the leasing of the 1622 Wisconsin Avenue Property.

### III.    Mary White's Egregious Delay In Producing The Hartford Insurance Policy

Plaintiff repeatedly requested on numerous occasions that Mary White produce the insurance policy issued to her by Hartford. This policy should have been produced by Mary White **on August 25, 2006** as part of her initial disclosures.[53] *See* Fed. R. Civ. Proc. 26(a)(1)(D) (requiring parties to produce with their initial disclosures "any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment").

Despite plaintiff's repeated demands, Mary White's counsel, Robert Bouse, continuously evaded producing this insurance policy upon the bases that it had been misplaced, and that his "partner" had the "only certified copy" of the policy but was nowhere to be found.[54] Mr. Bouse further misleadingly informed counsel that there was "no issue" with respect to insurance coverage in this case. At no time prior to February 8, 2007 did Mary White inform plaintiff that the Hartford policy named Mary White, Inc. as the insured. Mary White's conduct evidenced bad faith and was intended to delay and hinder plaintiff's efforts to conduct discovery in this case

---

[52] *Id.*
[53] Exhibit 45, Scheduling Order Dated July 25, 2005.
[54] Exhibit E, E-mail Dated January 25, 2007 from Robert Bouse to Stefan Shaibani.

11

and to preclude plaintiff from timely adding Mary White, Inc. as an additional defendant to ensure that a judgment rendered in this case could be satisfied against the $1 million business liability policy issued by Hartford to Mary White, Inc.

Plaintiff made numerous requests from Mary White via telephone, email,[55] and letters[56] for production of the Hartford Insurance Policy. Mary White, however, repeatedly ignored plaintiff's requests and even refused to comply with the Court's oral order to produce the insurance policy during a telephone conference held on January 19, 2007. In this telephone conference, the Court ordered Mary White to produce the insurance policy by January 25, 2007 or face sanctions. The insurance policy was not produced by January 25, 2007 and was once again the subject of a second telephone conference with the Court on February 1, 2007.

Ultimately, Mary White produced the Hartford insurance policy on February 8, 2007, nearly **six months** after the deadline for Initial Disclosures and long after the deadline for adding new parties. This egregious delay in producing the Hartford insurance policy effectively resulted in plaintiff litigating this action in a blind state.

### IV.   Procedural Posture of This Motion

On April 18, 2006, plaintiff filed the instant suit against defendants alleging violation of the Civil Rights Act, 42 U.S.C. §§ 1981 and 1982, and sections 2-1402.21 and 2-1402.23 of the District of Columbia Human Rights Act. On May 18, 2006, plaintiff filed a First Amended Complaint. Discovery was conducted for several months, nine witnesses were deposed

---

[55] Exhibit B, E-mail Dated September 12, 2006 from Robert Bouse to Stefan Shaibani; Exhibit C, E-mail Dated October 4, 2006 from Stefan Shaibani to Robert Bouse; Exhibit E, E-mail Dated January 25, 2007 from Robert Bouse to Stefan Shaibani.
[56] Exhibits A, Letter Dated September 6, 2006 from Stefan Shaibani to Robert Bouse; Exhibit D, Letter Dated October 23, 2006, from Stefan Shaibani to Robert Bouse.

12

(plaintiff's witnesses were deposed over two days each), and a substantial record compiled (over 1,000 pages of documents, lengthy deposition transcripts, and a Dateline NBC episode).

On February 12, 2007, defendants Chatel and Liverman filed a First Motion for Summary Judgment. On February 16, 2007, Mary White filed a First Motion for Summary Judgment, or in the Alternative, to Dismiss. In their motions, defendants contend plaintiff lacks standing to pursue this action because he was attempting to lease Mary White's property for Bratton Realty, LLC, even though plaintiff is the signatory to the final lease executed with Mary White. Defendants' motions for summary judgment lack merit and should be denied independent of the Court's disposition of plaintiff's motion for leave to amend. Plaintiff, however, wishes to amend his complaint to add Bratton Realty, LLC as an additional plaintiff because the economic damages suffered by it are unique, and to add Mary White, Inc. as a new defendant because of its extensive involvement in leasing Mary White's property to plaintiff.

**ARGUMENT**

Rule 15(a) of the Federal Rules of Civil Procedure provides that a plaintiff may amend his complaint "by leave of court or by written permission of the adverse party" but that "leave shall be freely given when justice so requires." It is axiomatic that leave to amend should be liberally granted, particularly when the amendment would not prejudice the opposing party. *See Forman v. Davis*, 371 U.S. 178, 182 (1962); *Thompson v. New York Life Ins. Co.*, 644 F.2d 439, 444 (5th Cir. 1981). The Court of Appeals for the District of Columbia Circuit and this Court have both endorsed the liberal policy toward granting leave to amend pleadings. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) ("it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing

party, or futility of amendment"); *In re Vitamins Antitrust Litigation*, 271 F.R.D. 30, 32 (D.D.C. 2003). The purpose of Rule 15(a) is to facilitate a decision on the merits. *Forman*, 371 U.S. 182.

As discussed below, analysis of the Rule 15(a) factors leads to the inescapable conclusion that plaintiff's motion for leave to amend should be granted.

### A.     Undue Delay

Plaintiff filed this action on April 18, 2006. Plaintiff filed a First Amended Complaint on May 18, 2006 to reflect the withdrawal of his administrative complaint from the Office of Human Rights. Plaintiff now seeks to file a Second Amended Complaint to allege certain economic damages previously touched upon in plaintiff's Rule 26(a)(1) disclosures filed on August 25, 2006; to add Bratton Realty, LLC as a plaintiff to this suit to recover economic damages it suffered as a result of discrimination; and to add Mary White, Inc. as a new defendant.

Plaintiff submits that there is no undue delay because plaintiff requested leave to amend his complaint the very next day after defendants Chatel and Liverman filed their First Motion for Summary Judgment on standing and shortly after plaintiff received the liability insurance policy issued by Hartford to Mary White, Inc. Notably, amendment of this complaint would not necessitate significant new discovery because defendants questioned plaintiff concerning his economic damages during two days of depositions. *See, e.g.*, *Howey v. United States*, 481 F.2d 1187, 1190-92 (9th Cir. 1973) (reversing denial of motion for leave to amend five years after filing of complaint and in the midst of trial); *see also* 3 MOORE'S FEDERAL PRACTICE § 15.08 ("The mere fact that an amendment is offered late in the case is, however, not enough to bar it; amendments may be offered at the trial, or even after reversal and remand").

### B.   Bad Faith

There is no bad faith or dilatory motive in plaintiff's request to amend his complaint promptly upon filing of defendants' first motion for summary judgment on standing and plaintiff's receipt of the business liability insurance policy issued by Hartford to Mary White, Inc.

Amendment of plaintiff's complaint is necessary because some of the economic damages suffered in this case are unique to Bratton Realty, LLC, and these damages are recoverable in a civil rights action alleging discriminatory denial of contract and property rights pursuant to 42 U.S.C. §§ 1981 and 1982.  *See Alexander v. City of Mikwaukee*, 474 F.3d 437, 450-452 (7th Cir. 2007) (economic damages were recoverable in white male police officers' civil rights action against city alleging racially discriminatory promotion practices); *Settlegoode v. Portland Public Schools*, 371 F.3d 503, at 509, 520 (9th Cir. 2004) (reinstating jury's award of $402,000 in economic damages to teacher in her civil rights action against school district alleging non-renewal of contract due to retaliation); *Bains LLC v. Arco Products Co.*, 405 F.3d 764, at 771 (9th Cir. 2005) (in appeal from jury's award of $5 million in punitive damages to Sikh-owned corporation in discrimination suit, the court held:  "Section 1981 extends its prohibition against racial discrimination in the making and enforcement of contracts to cover all phases and incidents of the contractual relationship, not just the termination of a contract").

Further, plaintiff should be permitted to amend his complaint so as to satisfy a judgment that may be rendered in this case against the $1 million liability insurance policy issued by Hartford to Mary White, Inc.  Indeed, if any party is guilty of bad faith, it is Mary White who refused to produce the insurance policy for nearly six months and effectively deprived plaintiff

15

of the opportunity to add Mary White, Inc. as a new defendant within the timelines set forth in the Court's Scheduling Order.

### C. Repeated Failures to Cure Deficiencies

This is the second time plaintiff has sought leave to amend his complaint. There are thus, by definition, no *repeated* failures to cure deficiencies.

### D. Undue Prejudice to the Opposing Party

"Undue prejudice is the touchstone for the denial of leave to amend." *Vitamins Antitrust Litigation*, 271 F.R.D. 32. In order to show prejudice, "the non-movant must show unfairness in procedure or timing preventing the non-movant from properly responding." *Id.* The party opposing the motion "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the amendments been timely." *Dooley v. United Technologies Corp.*, 152 F.R.D. 419, 425 (D.D.C. 1993).

Amendment of plaintiff's complaint in this case will not prejudice defendants because defendants were informed of plaintiff's economic damages in great detail during plaintiff's two-day deposition as well as in plaintiff's Rule 26(a)(1) initial disclosures **filed on August 25, 2006** (pp. 5-6).[57] In addition, the First Amended Complaint (filed on May 18, 2006) alleged that

---

[57] Plaintiff alleged the following economic damages in his Rule 26(a)(1) initial disclosures:

> Plaintiff's compensatory damages further include significant time incurred on securing a lease for the subject Property and prosecuting this action, which time would have otherwise been devoted to plaintiff's successful business as a real estate broker and property developer. Plaintiff's compensatory damages also include defendants' denial to plaintiff of a right of first refusal to purchase the subject Property if it were to be offered for sale during the term of the lease, as well as an option to renew the lease. As a result of defendants' conduct, plaintiff has been compelled to maintain two District of Columbia offices for his real estate brokerage business because defendants declined to offer him an option to extend the lease beyond its current term as well as a right of first refusal.

Plaintiff's Rule 26(a)(1) initial disclosures, at 5-6.

16

defendants discriminated against plaintiff by demanding highly unfavorable terms and conditions for his lease.[58] Defendants were further informed of plaintiff's intent to present expert testimony on his economic damages during Thomas Lynch's deposition, and counsel agreed to have defendants conduct a two-day deposition of Mr. Lynch for this very purpose. Defendants will have the opportunity to present facts and evidence to defend the economic damages claims raised by John Bratton and Bratton Realty, LLC in plaintiff's SAC. At best, defendants' claim of "prejudice," if any, would amount to their having to re-file an answer and conduct another deposition of plaintiff's expert, Mr. Lynch. However, the mere incurring of legal expenses to defend new or revived claims is not the type of prejudice cognizable under Rule 15(a). *See Vitamins Antitrust Litigation*, 271 F.R.D. 33.

Nor is Mary White, Inc. prejudiced by the amendment of plaintiff's complaint because its interests were adequately represented by Robert Bouse, counsel for Mary White, and it was fully aware of the discovery conducted in this case. Indeed, Mary White's egregious delay in producing the Hartford insurance policy prejudiced plaintiff by depriving him of the opportunity to add Mary White, Inc. as a new defendant covered under the $1 million business liability policy issued by Hartford.

If the Court were to deny plaintiff's motion for leave to amend, Bratton Realty, LLC would be compelled to file a separate action under 42 U.S.C. §§ 1981 and 1982 in this Court to recover economic damages suffered by it as a result of defendants' discrimination. Plaintiff would similarly have to be a party in the new suit filed against Mary White, Inc. The new action, in turn, would be assigned to this Court as a related case, and plaintiff would file a motion to consolidate the two actions. The parties would then have to depose the very same witnesses

---

[58] First Amended Complaint, ¶¶ 4 & 47.

already deposed with respect to the same issues. Duplicative motions would be filed, and two separate trials could be scheduled. This would result in tremendous waste of resources and litigation expenses for both the parties and the Court. Plaintiff submits that denial of this motion would prejudice him a great deal more than any prejudice suffered by defendants as a result of amendment of plaintiff's complaint.

### E. Futility of Amendment

Amendment of this complaint would not be futile because plaintiff, as the party and signatory to the lease executed between plaintiff and Mary White, possesses standing to pursue this action against defendants for economic damages he has suffered as a result of defendants' discrimination in the terms and conditions of his lease.[59] *See Dominos Pizza, Inc. v. McDonald*, 126 S. Ct. 1246, 1250 (2006) ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as plaintiff has or would have rights under the existing or proposed contractual relationship"); *see id* at 1251 (section 1981 requires "that the plaintiff be the person whose right to make and enforce contracts was impaired on account of race"). Similarly, Bratton Realty, LLC possesses standing to pursue an action under sections 1981 and 1982 to recover economic damages suffered by it as a result of defendants' discrimination. *See Bains LLC*, 405 F.3d 764, at 770 (citing *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053 (9th Cir. 2004) ("[W]hen a corporation has acquired an 'imputed' racial identity, it can be the direct target of discrimination and has standing to pursue a claim under § 1981"). Further, Mary White, Inc. is a proper defendant in this case because of its extensive involvement in leasing Mary White's property to plaintiff.

---

[59] *See* Plaintiff's Opposition to Defendants' First Motion for Summary Judgment.

Pursuant to Local Civil Rules 7(i) and 15, plaintiff's SAC would be deemed filed "on the date on which the order granting the motion is entered." This date would be within the statute of limitations because amendments relate back to the date of the original pleading for existing parties, and the SAC only alleges a violation of 42 U.S.C. § 1981 and § 1982 (subject to a three-year statute of limitations) with respect to Bratton Realty, LLC and Mary White, Inc.

## CONCLUSION

For the above reasons, plaintiff respectfully requests the Court to grant his motion for leave to amend.

Respectfully submitted,

Dated: March 17, 2007

/s/ Stefan Shaibani
Stefan Shaibani (Bar No. 490024)
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, DC 20036
Tel: (202) 862-4335
Fax: (202) 828-4130

*Attorney for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2007, I electronically filed "PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND," and that service was thus effected upon defendants' counsels in accordance with Local Civil Rule 5.4(d).

/s/ Stefan Shaibani