**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN BRATTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 06-0694 (JDB) |
| | ) |
| CHATEL REAL ESTATE, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION TO STRIKE PLAINTIFF'S EXPERT**

Plaintiff, John Bratton, respectfully requests the Court to deny the motions to strike

plaintiff's expert filed by defendants Chatel Real Estate, Inc., Thierry Liverman, and Mary White

(collectively "defendants").  As discussed below, defendants' motion should be denied because

(1) plaintiff's expert, Thomas Lynch, is a highly experienced and knowledgeable real estate

broker well-respected in the Washington community, (2) his testimony concerning the standards

of conduct and code of ethics governing real estate professionals will assist the trier of fact, and

(3) plaintiff concedes that the report filed by Mr. Lynch should be excluded from evidence.

**STATEMENT OF FACTS**

The facts surrounding plaintiff's civil rights action against defendants for discrimination

in the terms and conditions of leasing office space to plaintiff have been set forth in great detail

in Plaintiff's Opposition to Defendants Chatel Real Estate, Inc.'s and Thierry Liverman's First

Motion for Summary Judgment, in Plaintiff's Opposition to Defendant Mary White's First

Motion for Summary Judgment or, in the Alternative, to Dismiss, and in Plaintiff's Second

Motion for Leave to Amend.  Plaintiff will not repeat those facts here.[1]

Defendants' motions to strike plaintiff's expert present a one-sided view of Mr. Lynch's

deposition testimony, taking his statements out of context, and mischaracterize his intended

testimony at trial.  Plaintiff, therefore, presents the following facts concerning Mr. Lynch's

qualifications and deposition testimony to assist the Court in resolving defendants' motions to

strike.

**1.     Thomas Lynch has 40 years of experience as a real estate broker in the Washington**

**area and has acted as an expert in 30 real estate cases.[2]**  Thomas Lynch has been a real estate

broker for 40 years and is an instructor to other brokers on topics such as real estate standards

and code of ethics.  Mr. Lynch is currently a member of the following real estate organizations:

Washington, D.C. Association of Realtors, the Greater Capital Area Association of Realtors

("GCAAR"), the National Association of Realtors ("NAR"), and the Northern Virginia

Association of Realtors (NVAR).[3]  He has been retained by GCAAR as an instructor for classes

relating to ethics, professional standards, fair housing, diversity, and grievance investigations.[4]

Indeed, defendant Mary White attended one of Mr. Lynch's classes in Washington several weeks

ago.[5]  From 1979 to the present, Mr. Lynch has testified as an expert in 30 lawsuits involving

real estate professionals.[6]  Mr. Lynch's expertise have recently been sought by counsel in the

U.S. Department of Justice's antitrust action against the National Association of Realtors.

---

[1] Plaintiff incorporates by reference the Statement of Facts and exhibits filed in connection with
the aforementioned filings.
[2] Expert Report of Thomas Lynch, dated October 20, 2006, p. 1.
[3] Exhibit 1, Thomas Lynch Resume.
[4] Exhibit 1, Thomas Lynch Resume.
[5] Exhibit 3, Thomas Lynch Depo. Trans. dated February 12, 2007, pp. 252, lines 14-15.
[6] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, pp. 13-14, lines 3-22.

In the instant case, Mr. Lynch intends to testify at trial concerning the following subjects: (1) the standards of conduct applicable to real estate brokers, (2) the code of ethics governing real estate brokers, (3) the rules imposed on real estate brokers by the Metropolitan Regional Information Systems (MRIS), the sole electronic database wherein real estate rentals and sales listings are shared among brokers, (4) the terms of a commercial lease and negotiation of the lease at issue, (5) rights of first refusal and options to renew, and (6) the competence of defendants in their capacity as real estate brokers.  Should the Court permit, Mr. Lynch will also testify concerning plaintiff's economic damages.

**2.     Mr. Lynch testified that defendants' 24-day delay in processing John Bratton's lease applications and their rejection of his five offers to lease the Property was highly unusual given the simple nature of the lease at issue.[7]**  In applying the Code of Ethics and the Standard of Practice to the facts of this case, Mr. Lynch testified that defendants' failure to respond to Plaintiff's questions and his desire to start the application process, displayed a "lack of alacrity on their part."[8]  The fact that Roberta Medlin's lease was drawn and processed much faster than John Bratton's when Plaintiff had been the first applicant to seriously express interest in the property showed the distinction drawn between the two potential applicants with regard to how they were treated by Defendants.[9]  According to Mr. Lynch, it should not have taken Defendants

---

[7] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 200 7, pp. 38-39, lines 18-1; See also Exhibit 2, pp.40-41, lines 12-13; See also Expert Report of Thomas Lynch, pp. 12-13.
[8] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, pp. 38-39, lines 18-1; See also Expert Report of Thomas Lynch, p.8, §C, last ¶.
[9] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, pp. 107-108, lines 16-3; p. 109, lines 8-15;  See also Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, p. 281, lines 5-9.

24 days to process and finalize John Bratton's application for a lease considered to be a "fairly simple negotiation" in the real estate world.[10]

**3.      Mr. Lynch testified that defendants' misrepresentation to John Bratton concerning the availability of the Property was a significant violation of the applicable standards of conduct and code of ethics governing real estate brokers in the District.**[11]  There was no signed lease between Roberta Medlin and Mary White on October 12, 2005.[12]   Mr. Lynch testified that stating a property is no longer available when it is, in fact, available is a "mischaracterization of what's really happening" and a violation of applicable standards of conduct.[13]

**4.      Mr. Lynch testified that defendants Chatel's and Liverman's failure to change the availability status of the Property on the MRIS, which indicated that the Property was available as of October 13, 2005, and their failure to alter material terms regarding the duration of the lease in the MRIS, amounted to a violation of the MRIS rules.[14]**
Significantly, the Property was advertised to the public as available for a 1-4 year lease but defendants refused to lease it to plaintiff for a term longer than 2 years in contravention of the MRIS rules. [15]

**5.      Defendants' negotiation of the lease with Plaintiff was unacceptable based on industry standards and the NAR Code of Ethics and Standards of Practice.**

---

[10] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, p. 101, lines 4-7.
[11] Expert Report of Thomas Lynch, p. 15, §e, 1st ¶.
[12] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, p. 121, lines 9-10.
[13] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, p. 130, lines 17-18.
[14] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, pp. 142-143, lines 15-12;
Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, pp. 306-307, lines 19-2.
[15] Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, pp. 306-307, lines 19-2.

a)      Real estate salespersons are entrusted with the duty to ensure that all parties receive the "same standard of service."[16]  Mary White required Plaintiff to submit additional financial documents, but did not request the same from Roberta Medlin.[17]  According to Mr. Lynch, defendant did not provide the same standard of service to both applicants when she instituted barriers for Plaintiff not applied to Ms. Medlin.

b)      Mary White refused to lease the basement of the Property to Plaintiff, even though both the street and lower-levels were listed as available on the MRIS when plaintiff inquired about the Property.[18]  This could be interpreted as an attempt by defendants to discourage Mr. Bratton from entering into lease negotiations.[19]

**6.      Mr. Lynch testified that defendants' giving a right of first refusal to Roberta Medlin but excluding the same from John Bratton's lease was a violation of the standards of conduct applicable to real estate brokers.[20]**  Mr. Lynch stated in his deposition that including the right of first refusal in a lease is inherently beneficial *for the owner* because she potentially has two buyers for her property; one as the original tenant and the other as a third-party buyer.[21] If anything, providing Plaintiff with a right of first refusal for the space he is leasing would appear to be "fundamental" and "basic" in the lease negotiation process.[22]  Mr. Lynch did not find any difficulty in offering John Bratton this provision.[23]

---

[16] Expert Report of Thomas Lynch, p. 9, §E, last ¶, quoting Modern Real Estate Practice, at 349.
[17] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, p. 139, lines 4-10; p. 199, lines 16-18; See also Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, pp. 279-280, lines 20-3; p. 281, lines 14-22.
[18] Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, p. 295, lines 2-5.
[19] Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, pp. 286-287, lines 21-13.
[20] Expert Report of Thomas Lynch, pp. 8-9, §E; pp. 21-22, §C, §2.
[21] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, p. 51, lines 13-17.
[22] Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, pp. 298-299, lines 18-6.
[23] Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, pp. 298-299, lines 18-6.

**7.      It is Tom Lynch's belief that based on the level of experience John Pagones had acquired throughout his 39 years in the real estate business, Mr. Pagones was a very competent broker, who decidedly chose to conduct himself in a manner which clearly fell below the requisite industry standard and the standard set forth in the Code of Ethics, during his interactions with Plaintiff.** [24]  Even if Mr. Pagones didn't have as much experience leasing commercial units as he did residential ones, the commercial lease offered to plaintiff wasn't so "complicated" that someone with Mr. Pagones' 40 years of experience and knowledge couldn't handle it.[25]  This was not a 10-year lease for several floors of a high-rise offered to a law firm.  It was a two-year lease for a small office rented at $2,500 per month, much like a residential unit.

**8.      Plaintiff has a viable claim for economic damages.**[26]  As a result of the denial of the option to renew and the right to convert his lease to month-to-month at the end of the two year term, Plaintiff has lost rental revenue for having to maintain two separate offices in DC when he could have rented his property in Logan Circle for at least $1600 per month for the duration of his lease with Mary White.  These damages, alone, amount to over $38, 400.[27]  Plaintiff's economic damages also include time lost in expending his resources to rectify defendants' discriminatory behavior rather than conducting profitable real estate deals.  The economic

---

[24] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, pp. 170-171, lines 16-8 (in which Thomas Lynch states that he finds it "hard to fathom that John Pagones was as ill prepared for this transaction as he appeared to be"); See also pp.189-190, lines 20-7 (in which Mr. Lynch states that Bratton lacked a "fair amount of guidance from Pagones.")

[25] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, p. 172, lines 2-9 (in which Mr. Lynch distinguishes between handling a commercial lease for the 1622 Wisconsin Avenue Property from the complexities associated with a "law firm leasing 40,000 square feet at Franklin Square."); See also Exhibit 3, Thomas Lynch Depo. Trans., dated February 12, 2007, pp. 297-298, lines 21-7.

[26] Exhibit 2, Thomas Lynch Depo. Trans., dated February 9, 2007, pp. 191-192, lines 14-1.

[27] Plaintiff's Second Motion for Leave to Amend, Dated March 17, 2007, ¶8, p. 6.

damages suffered by Bratton Realty, LLC consist of: (a) relocation expenses, which include

moving costs, purchasing new office furniture and supplies, creating new letterhead, logos,

advertising and marketing material, and business cards for the seven independent contractors and

plaintiff and the application fee to change the address of the brokerage with the DC Real Estate

Commission;[28] and (b) lost profits and loss of goodwill as a result of having to move its business

from 1622 Wisconsin Avenue in Georgetown.  Mr. Lynch testified that Plaintiff will suffer

damages as a result of having to move from his Georgetown office and the loss of goodwill and

potential profits which will stem from relocating to a less prominent location.[29]

**9.       Defense counsel objected to questions during depositions of Chatel's witnesses on**

**the basis that the questions called for "expert opinion."**  Now that Plaintiff attempts to present

expert opinion on these subjects, defendants contend that the opinions proffered are unhelpful to

the jury.  Defendants should be judicially estopped from maintaining inconsistent positions in

this case.

**a)       Competence of John Pagones.**  During Barrett Anderson's deposition on

November 16, 2006, Defense counsel objected when Plaintiff's counsel questioned Mr.

Anderson about John Pagones' competence as a real estate agent.  The objection was on the basis

that the question called for "expert testimony."[30]  This same objection was made during both

Hope Edward's deposition and Patsy Petty's deposition on November 3, 2006, when Plaintiff's

counsel questioned these witnesses with regard to their opinion on John Pagones' competence.[31]

---

[28] *Id.*
[29] See Footnote 27 *supra.*
[30] Exhibit 4, Barrett Anderson Depo. Trans, dated November 16, 2006, p. 95, lines 9-12.
[31] Exhibit 5, Hope Edwards Depo. Trans., dated November 3, 2006, p. 17, lines 13-21; p. 19, lines 2-5; See also Exhibit 6, Patsy Petty's Depo. Trans., dated November 3, 2006, p. 28, lines 10-22.

Mr. Lynch intends to testify about John Pagones' and defendants' competence as real estate brokers. This goes to defendants' stated defense that John Pagones' conduct toward plaintiff was not the result of discrimination but incompetence. As discussed below, the Court should deny defendants' motions to strike plaintiff's expert because Mr. Lynch's intended testimony at trial is admissible pursuant to Federal Rule of Evidence 702 and this Court's precedent.

## ARGUMENT

The "twin requirements for the admissibility of expert testimony are evidentiary reliability and relevance." *United States v. Naegele*, 2007 WL 214399, at *1 (D.D.C. 2007). In determining evidentiary reliability, "the Court's focus must be on the methodology or reasoning employed by the application of the factors in Rule 702." *Id.* The relevance of expert testimony, in turn, is determined by "whether the proffered evidence is sufficiently tied to the facts of the case and whether it will aid the jury in resolving a factual dispute." *Id. See also Ambrosini v. Labarraque*, 101 F.3d 129, 133 (DC Cir. 1996). As demonstrated below, Thomas Lynch's proposed testimony meets both of these requirements and should be admitted at trial.

## I.   Plaintiff's Expert Clearly Possesses The Requisite Knowledge And Experience To Qualify As An Expert In This Action Under *Daubert*

Thomas Lynch has 40 years of experience as a real estate broker in the Washington area and has acted as an expert witness in 30 other real estate cases. Mr. Lynch also instructs real estate brokers concerning the standards of conduct and code of ethics governing real estate professionals. Mr. Lynch is clearly "qualified as an expert by knowledge, skill, experience, training, [and] education." Fed. R. Evid. 702. Significantly, defendants do not contest Mr. Lynch's qualifications as an expert in the real estate field because they cannot.

**II.**     **The Intended Testimony Of Plaintiff's Expert Will Assist The Trier Of Fact And Is Admissible Under Federal Rule Of Evidence 702**

Mr. Lynch's opinions and intended testimony concerning the applicable standards of conduct in the real estate profession, industry standards, MRIS rules, the terms and conditions of a commercial lease, and the Code of Ethics and Standards of Practice governing real estate brokers in the District are proper subjects of expert opinion.[32]   Contrary to defendants' contentions, these are not "ultimate questions" or "issues of law."  Instead, they are issues of fact relevant to determination of whether defendants' conduct in this case was not in line with the applicable norms governing real estate professionals.  That the jury's determination of these factual issues could lead to an inference of discrimination does not render the intended testimony of Mr. Lynch inadmissible.

Indeed, courts have permitted introduction of expert testimony in civil rights actions with respect to standards of conduct and code of ethics governing a particular profession.  *See, e.g.*, *Kopf v. Skyrm*, 993 F.2d 374, 378-79 (4th Cir. 1993) (holding that exclusion of expert testimony concerning the "objective reasonableness standard" of excessive force and proper use of police dogs in effecting arrest was an abuse of discretion in civil rights action); *Katt v. City of New York*, 151 F. Supp.2d 313, 352-55 (S.D.N.Y. 2001) (permitting expert testimony concerning "the culture of retaliation within the NYPD" and the "practices of the NYPD by which officers and civilian employees might suffer recriminations for reporting official wrongdoing" in civil rights action alleging a sexually harassing hostile work environment); *accord United States v. Mohr*, 318 F.3d 613, 624-25 (4th Cir. 2003) (permitting introduction of expert testimony concerning "prevailing police practices" and "unreasonable" use of force); *Naegele*, 2007 WL 214399, at *11-13 (permitting introduction of expert testimony concerning a lawyer's ethical obligations to

---

[32] Expert Report of Thomas Lynch, dated October 20, 2006, pp.7-8.

his clients and familiarity with particular statutes and the Bankruptcy Code in criminal

prosecution of debtor for committing bankruptcy fraud).

Nor is there any question that expert testimony concerning economic damages is

permissible in civil rights actions. *See Drago v. Aetna Plywood, Inc.*, 1998 WL 474100, at \*4

(N.D.Ill. 1998) (expert testimony on lost wages damages permissible in civil rights action);

*Troendle v. Yellow Freight, Inc.*, 1999 WL 554589, at \*2 (E.D.Pa. 1999) (expert testimony on

economic damages permissible in sexual harassment civil rights action); *accord Boyar v. Korean*

*Airlines Co.*, 954 F. Supp. 4 (D.D.C. 1996) (expert testimony on economic damages concerning

future income generated by a professional practice admissible even though allegedly

speculative).

The Court should allow Mr. Lynch to testify at trial concerning the standards of conduct

and code of ethics governing real estate brokers, MRIS rules, the terms and conditions of a

commercial lease, rights of first refusal, negotiation of the lease at issue, and the economic

damages suffered by plaintiff and Bratton Realty, LLC.

## III.    Plaintiff Stipulates To Exclusion Of The Report Filed By Thomas Lynch

The report filed by Thomas Lynch was drafted without the benefit of deposition

testimony. Plaintiff concedes that Mr. Lynch's existing report should be excluded from

evidence. However, plaintiff insists that the intended testimony of Mr. Lynch, as set forth in his

deposition testimony (taken during two days) and as described above, should be admitted at trial.

Plaintiff is prepared to file an amended expert report should the Court deem it necessary.

**CONCLUSION**

For the above reasons, plaintiff respectfully requests the Court to deny Defendants Mary

White's, Chatel Real Estate, Inc.'s, and Thierry Liverman's Motion to Strike Plaintiff's Expert.

Respectfully submitted,

Dated: March 22, 2007

/s/ Stefan Shaibani
Stefan Shaibani (Bar No. 490024)
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, DC 20036
Tel:  (202) 862-4335
Fax: (202) 828-4130

*Attorney for Plaintiff*

11

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2007, I electronically filed "PLAINTIFF'S

OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT," and that

service was thus effected upon defendants' counsels in accordance with Local Civil Rule 5.4(d).


<u>/s/ Stefan Shaibani</u>