Capital Reporting Company

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLUMBIA
 3   ------------------------------:
     JOHN BRATTON,                 :
 4                                 :
         Plaintiff,                :
 5                                 :
         v.                        :  Case No.:
 6                                 :  0694(JDB)
     CHATEL REAL ESTATE, INC.,     :
 7   THIERRY LIVERMAN and          :
     MARY WHITE,                   :
 8                                 :
         Defendants.               :
 9                                 :
     ------------------------------:
10
                                        Washington, D.C.
11                                      November 16th, 2006
12   Deposition of:
13                   E. BARRETT ANDERSON,
14       Called for oral examination by counsel for
15   Plaintiff, pursuant to notice, at the offices of
16   Litigation Association, PLLC, 1150 Connecticut Avenue,
17   N.W., 9th Floor, Washington, D.C., beginning at 10:47 AM
18   10:50 a.m, before Teague Gibson of Capital Reporting, a
19   Notary Public.
20
21
22
```

(866) 448 - DEPO
www.CapitalReportingCompany.com

PLAINTIFF'S EXHIBIT 4

Page 86

1  Q  Two additional exhibits, 15 is the lease
2  between Mary White and that is CH 71, that's Exhibit
3  15. Exhibit 16 is CH 7.
4      (Anderson Exhibit No. 15 was marked)
5      (Anderson Exhibit No. 16 was marked)
6  A  I have no knowledge of these. It's the
7  first time I've ever seen them. I was not involved
8  in any of that stuff.
9  Q  Please take a look at paragraph -- I want
10 to point out there are some cross-outs in Exhibit 16
11 which is a lease between John Bratton and Mary White
12 and there are no paragraphs crossed out in the
13 Exhibit 15 which is a document bearing the caption
14 commercial unit of lease between Mary White and
15 Roberta Medlin d/b/a Gallery?
16     MR. RANCK: Let me just interpose on objection.
17 The documents speak for themselves and the witness
18 said he's never seen these before today.
19     MR. BOUSE: I object.
20     MR. RANCK: I don't know what relevance having
21 him agree that there's cross-outs.
22 Q  There's clear relevance here. Why is it

Page 87

1  that one lease has all of these provisions crossed
2  out, the one for John Bratton?
3      MR. RANCK: Objection.
4  Q  Where as the other one doesn't have any?
5      MR. BOUSE: I object. He wasn't involved with
6  that.
7      MR. RANCK: Objection, speculation.
8  A  Are you asking me what my opinion is?
9  Q  Yes.
10 A  On why those things are crossed out?
11 Q  Yes.
12 A  Let me ask you what's the general rule of
13 thumb on a contract that you being a lawyer when you
14 cross something else out of a contract, what is it,
15 let me ask you. Why do you cross things out? You
16 don't know.
17 Q  You're negotiating terms?
18     MR. RANCK: The lawyers negotiating terms.
19 This witness said he didn't negotiate terms.
20 A  I had nothing to do with these two
21 contracts and cross-outs are cross-outs.
22 Q  I'm trying to find out in your opinion why

Page 88

1  would Mary White want certain provisions of this
2  lease crossed out for John Bratton but not for
3  Roberta Medlin?
4      MR. BOUSE: I object.
5      MR. RANCK: Objection, speculation.
6      MR. BOUSE: He's not an expert.
7  A  I can't say what Mary White can do, what
8  she can't do, it's not an issue.
9  Q  Did she ever talk to you about her wanting
10 these terms?
11 A  She never talked to me about leases, lease
12 terms, anything. My function was to let her know
13 that she received telephone calls that she had had
14 mail there and that sort thing. As far as the rest
15 of that stuff goes I had no part of anything to do
16 with terms or anything else.
17 Q  Look at Exhibit 16, page 6 designated CH
18 12. You see where it says paragraph 41?
19 A  I do.
20 Q  Could you please read paragraph 41?
21     MR. RANCK: I object.
22     MR. BOUSE: Object.

Page 89

1      MR. RANCK: Document speaks for itself.
2  A  Paragraph 31 of 41 of this lease agreement
3  and what are you --
4      MR. RANCK: He'd like you to take the time and
5  the number of lines necessary in the record to read
6  what this document clearly says.
7  Q  Paragraph 41 a few lines which could be
8  read?
9  A  It's difficult to read.
10     MR. RANCK: 13 lines.
11 A  It's underlined.
12 Q  Why don't I --
13 A  Where they underline it they didn't
14 underline it properly.
15 Q  Why don't I point out a specific --
16 A  What are you trying get at?
17 Q  This is what I want to get at in paragraph
18 41. There's a provision that's found in the second
19 to the last sentence it says landlord hereby agrees
20 that in the event that the property of which the
21 lease premises is part is offered for sale during
22 the term of the lease tenant shall be given five

23 (Pages 86 to 89)

Page 94
1  company of Chatel and I told him it's not
2  discriminatory, they are not discriminatory, the
3  gentleman is not well, the term I used is the fact
4  that he was not competent.
5     Q   On that point I'd like to pass out Exhibit
6  17 now which is CH 299.
7        (Anderson Exhibit No. 17 was marked)
8     Q   Exhibit 17, do you see where on the top it
9  says John Pagones summary of charges 2005?
10    A   I do.
11    Q   And do you see on the bottom it says total
12 124,690?
13    A   I do.
14    Q   Does this amount of earnings for a real
15 estate agent suggest to you that they were doing
16 well?
17    MR. RANCK: Objection.
18    MR. BOUSE: I object.
19    MR. RANCK: Speculation.
20    A   It had no bearing on his competence.
21    Q   It has no bearing on how much he makes; is
22 that what you're saying? Even if he's making

Page 95
1  124,000, which I'd like to point to you Exhibit 18,
2  too, which is apparently the second highest income
3  of at least 12 agents of Chatel, the second highest
4  income by only a $2,000 difference?
5     A   It's my contention that Mr. Pagones was
6  making that money in spite of himself.
7     Q   And why do you think that he's
8  incompetent?
9     MR. RANCK: Let me object. I think it calls
10 for expert testimony and it calls for speculation
11 and lacks any foundation that a witness would need
12 in order to give that opinion, but go ahead.
13    Q   Why do you say that?
14    A   He didn't meet my expectations on how a
15 client of a realtor should be treated and should be
16 acted upon. And the young lady that he rented the
17 apartment to on the third floor had mentioned to me
18 about John Pagones and that he had a reputation in
19 the area as a property manager that his predominant
20 property rented was to Georgetown students and his
21 modus operandi was one of intimidation. Now that's
22 my conclusion. I have nothing to base that on other

Page 96
1  than just what my interaction with him and my
2  hearsay from Natasha Giddins. He was interested in
3  doing what he wanted to do. It had nothing to do
4  with what the clients wanted. And so that's where I
5  come up with the contention that he's making the
6  money in spite of himself. He was in a position to
7  carry out whatever function he needed to carry out,
8  to manage property or to lease, I think he was in
9  the sales part of the thing as I recall, and then
10 Patsy was the -- managed the other things. And I
11 told Mary that she was making a big mistake being
12 involved with him, once again my opinion.
13    Q   In your opinion by John Pagones you
14 mentioned your words he wanted to do whatever he
15 wanted, would he also select who he wants to do
16 business with?
17    A   I don't think Mr. Pagones and this, again,
18 is my opinion but I don't think Mr. Pagones was all
19 there. I think he had reached a level where he was
20 hanging on past what he should have been doing.
21    Q   Wasn't Mr. Pagones selecting with whom he
22 would do business with in spite of civil rights and

Page 97
1  fair housing laws?
2     MR. BOUSE: I object.
3     MR. RANCK: Objection, speculation.
4     A   I can't say that.
5     Q   By not offering a lease to John Bratton
6  wasn't he discriminating against him?
7     MR. BOUSE: Objection.
8     MR. RANCK: Objection.
9     A   I don't believe he knew that there was a
10 commercial lease available from the office or knew
11 where to get it because he didn't --
12    MR. RANCK: Objection.
13    A   That's my opinion. I was trying to get a
14 copy of a commercial lease myself and I couldn't get
15 one out of Chatel. Now whether or not -- they
16 weren't discriminating against me I don't think. I
17 think Mr. Bratton's way off base. He's a type A
18 personality that wants things done. If he could
19 have had that lease 15 minutes and signed it and
20 written his checks and that sort of thing, that's
21 the way he wanted business done and the people he
22 was doing business with didn't work that way.

25 (Pages 94 to 97)

```
 1              CERTIFICATE OF NOTARY PUBLIC
 2              I, TEAGUE GIBSON, the officer before whom
 3    the foregoing deposition was taken, do hereby
 4    certify that the witness whose testimony appears in
 5    the foregoing deposition was duly sworn by me; that
 6    the testimony of said witness was taken by me in
 7    stenotypy and thereafter reduced to typewriting
 8    under my direction; that said deposition is a true
 9    record of the testimony given by said witness; that
10    I am neither counsel for, related to, nor employed
11    by and of the parties to the action in which this
12    deposition was taken; and, further, that I am not a
13    relative or employee of any counsel or attorney
14    employed by the parties hereto, nor financially or
15    otherwise interested in the outcome of this action.
16
17                              [signature: Teague]
18                              Teague Gibson
                                Notary Public in and for
19                              the District of Columbia
20
21
      My commission expires:
22    June 14, 2010
```