Capital Reporting Company

```
                                                          Page 1
 1              UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF COLUMBIA
 3   -------------------------------:
                                    :
 4   JOHN BRATTON,                  :
                                    :
 5              Plaintiff,          :
                                    :
 6        v.                        : Civil Action No.
                                    :
 7   CHATEL REAL ESTATE, INC.,      : 06-0694 (JDB)
                                    :
 8   et al.,                        :
                                    :
 9              Defendants.         :
                                    :
10   -------------------------------:
11
                              Washington, D.C.
12                            Friday, November 3, 2006
13   Deposition of
14                    PATSY PETTY
15   called for oral examination by counsel for the
16   Plaintiff, pursuant to notice, at the law offices of
17   LITIGATION ASSOCIATE, PLLC, 1150 Connecticut Avenue,
18   Northwest, Suite 900, Washington, D.C., before
19   Marijane Simon, RDR, CLR, of Capital Reporting
20   Company, a Notary Public in and for the District of
21   Columbia, beginning at 2:29 a.m. when were present
22   on behalf of the respective parties:
```

(866) 448 - DEPO
www.CapitalReportingCompany.com



PLAINTIFF'S EXHIBIT 6

Page 26

1  MR. RANCK: Pause before you answer,
2  please. Let me interpose an objection. The
3  document speaks for itself and I don't believe, in
4  fairness, you've read the entire passage.
5  BY MR. SHAIBANI:
6  Q. Would you say that the statement, "always
7  try to answer a call or question before the end of
8  the day," is an accurate statement in terms of
9  Chatel's standard operating procedures?
10  MR. RANCK: Same objection.
11  You can answer.
12  MR. BOUSE: Let me ask -- This is only for
13  clarification. Mr. Shaibani, are you talking about
14  someone who is interested in the property or as this
15  says, is a tenant or owner?
16  MR. SHAIBANI: Both, actually. Beginning
17  with the tenant and owner.
18  MR. RANCK: May we just -- For the record,
19  can we read the preliminary language before the
20  bullet point that you keep reading?
21  MR. SHAIBANI: "Please shoot for the
22  ideal."

Page 27

1  MR. RANCK: "For the following ideal."
2  BY MR. SHAIBANI:
3  Q. "If you cannot answer before the end of
4  the day make sure that you get back to the customer
5  with an explanation - then make sure that you answer
6  that question before the end of the next business
7  day."
8  Would you say that this is a standard
9  operating procedure implemented by Chatel?
10  MR. RANCK: Well, let me -- Again, let me
11  object because I think you're mischaracterizing what
12  the document says. And it speaks for itself. The
13  document says to shoot for that ideal so if your
14  question is, is shooting for that ideal their
15  policy, then that's fine. If your question is, is
16  it their policy to get back to the customer with an
17  explanation, et cetera, then that's a different
18  question.
19  MR. SHAIBANI: I'll rephrase the question.
20  BY MR. SHAIBANI:
21  Q. Does Chatel instruct its employees and
22  staff to promptly respond to telephone calls?

Page 28

1  A. Yes, as it says here, "Please shoot for
2  the following ideal."
3  Q. Do you know if John Pagones was ever
4  accused of not responding to a client's telephone
5  calls?
6  A. I don't know.
7  Q. Was John Pagones ever accused of not doing
8  his job properly?
9  A. I don't know.
10  Q. What is your -- To your knowledge, was
11  John Pagones a competent real estate agent at
12  Chatel?
13  MR. RANCK: Objection. Foundation. Calls
14  for expert testimony.
15  THE WITNESS: I don't know.
16  BY MR. SHAIBANI:
17  Q. You don't know if John Pagones was
18  competent as a real estate agent?
19  MR. RANCK: Same objection. And that is a
20  completely unfair question, so her answer -- I want
21  to say that based on your question, her answer is
22  she doesn't know.

Page 29

1  BY MR. SHAIBANI:
2  Q. Was John Pagones ever reprimanded or
3  disciplined by Chatel for his work duties?
4  A. I don't know.
5  Q. Did John Pagones ever receive an ethics
6  complaint from GCAR?
7  A. I don't know.
8  Q. Do you know who maintains files on
9  Chatel's real estate agents?
10  A. I don't know.
11  Q. Does Chatel maintain files on its real
12  estate agents?
13  A. I don't know.
14  Q. Who's the custodian of records at Chatel?
15  A. I don't know.
16  Q. To your knowledge, was John Pagones ever
17  accused of discriminating against a client?
18  A. To my knowledge, no.
19  Q. And I assume you're referring to instances
20  other than this particular case.
21  A. I have no knowledge of that.
22  Q. Who writes the performance reviews on real

8 (Pages 26 to 29)

Page 92

1      CERTIFICATE OF NOTARY PUBLIC

2          I, Marijane W. Simon, RDR, CLR, the

3   officer before whom the foregoing deposition was

4   taken, do hereby certify that the witness whose

5   testimony appears in the foregoing deposition was

6   duly sworn by me; that the testimony of said witness

7   was taken by me to the best of my ability in

8   stenotypy and thereafter reduced to typewriting

9   under my direction; that said deposition is a true

10  record of the testimony given by said witness; that

11  I am neither counsel for, related to, nor employed

12  by any of the parties to the action in which this

13  deposition was taken; and, further, that I am not a

14  relative or employee of any counsel or attorney

15  employed by the parties hereto, nor financially or

16  otherwise interested in the outcome of the action.

17

18              *Marijane W. Simon*

19              Notary Public in and for

20              the District of Columbia

21

22  My Commission expires: 08/14/08