**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

JOHN BRATTON;                          )
BRATTON REALTY, LLC,                   )
                                       )
    Plaintiffs,                        )
                                       )
      vs.                           )  Civil Action No. 06-694 (JDB)
                                       )
CHATEL REAL ESTATE, INC.;              )  **JURY TRIAL DEMANDED**
THIERRY LIVERMAN;                      )
MARY WHITE;                            )
MARY WHITE, INC.,                      )
                                       )
    Defendants.                        )
_____)

## SECOND AMENDED COMPLAINT

    Plaintiffs, John Bratton and Bratton Realty, LLC, for their complaint, allege as follows:

### NATURE OF THE ACTION

1.    This is an action for unlawful racial discrimination and deprivation of civil rights in connection with defendants' leasing of office space to plaintiffs in the District of Columbia.

2.    Plaintiffs seek compensatory (including economic damages) and punitive damages against defendants Chatel Real Estate, Inc. ("Chatel"), Thierry Liverman, Mary White, and Mary White, Inc. for their violation of 42 U.S.C. §§ 1982 and 1981.

3.    In addition to the asserted federal civil rights violations, John Bratton alleges violations of §§ 2-1402.21 and 2-1402.23 of the District of Columbia Human Rights Act ("Human Rights Act") against defendants Chatel, Thierry Liverman, and Mary White, giving rise to additional damages.

4.    Plaintiffs' request for damages is based upon the following:  (1) defendants discriminated against plaintiffs with respect to the terms and conditions of the lease given to John Bratton,

causing plaintiffs substantial economic damages; (2) from October 6 through October 30, 2005, defendants repeatedly rejected plaintiffs' five lease proposals for office space in Georgetown because John Bratton is African-American and Bratton Realty, LLC has a black racial identity; (3) on October 12, 2005, defendants falsely represented to plaintiffs that Mary White's property had been leased to another tenant when no other tenant had executed a lease agreement for the property and no verbal commitment had been reached between Mary White and the other tenant, Roberta Medlin; (4) defendants or their agents made racial slurs about plaintiffs when discussing their lease proposals; (5) racial animus was the motivating factor in defendants' wrongful actions; and (6) defendants' racial discrimination of plaintiffs was willful or done with reckless disregard of the civil rights laws.

## JURISDICTION AND VENUE

5.    This action arises under 42 U.S.C. § 1982 (prohibiting racial discrimination in property transactions), 42 U.S.C. § 1981 (prohibiting racial discrimination in the making and enforcement of contracts), and the Human Rights Act, §§ 2-1402.21 (prohibiting discrimination based upon race or personal appearance in commercial space accommodations) and 2-1402.23 (prohibiting discrimination by real estate brokers).

6.    The Court possesses jurisdiction to entertain plaintiffs' claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction, as the pendent claims are so related to the federal claims that they form part of the same case or controversy).

7.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because all defendants are citizens of the District of Columbia and all of the events and omissions giving rise to plaintiffs' claims occurred in the District of Columbia.

## THE PARTIES

8.      John Bratton is a citizen of the Commonwealth of Virginia, residing at 410 North Jackson Street, Arlington, Virginia 22201.  Mr. Bratton is a real estate broker.  At all relevant times, Mr. Bratton was African-American and had long hair with dreadlocks.

9.      Bratton Realty, LLC ("Bratton Realty") is a District of Columbia limited liability company engaged in the real estate brokerage business.  Bratton Realty is solely owned and operated by John Bratton.  Bratton Realty has no employees; it has seven independent contractors who are engaged in real estate sales transactions; and its only officer is John Bratton. At all relevant times, Bratton Realty was vested with a black racial identity.

10.      Chatel Real Estate, Inc. is a District of Columbia corporation having its principal place of business at 3210 N Street, N.W., Washington, DC 20007.  Chatel is in the business of real estate brokerage—the sale and leasing of residential and commercial property—and property management.

11.      Thierry Liverman is a citizen of the District of Columbia residing at 3554 T Street, N.W., Washington, DC 20007.  Mr. Liverman is Chatel's manager and principal broker.  At all relevant times, Mr. Liverman was the lawful agent of Chatel, constituting a principal-agent relationship for *repondeat superior* purposes.

12.      John Pagones was an associate real estate broker employed by or acting as an agent of Chatel.  Mr. Pagones was the real estate agent at Chatel's Georgetown Office in charge of listing Mary White's property.  At all relevant times, John Pagones was the lawful agent of Chatel and its broker, Thierry Liverman, constituting a principal-agent relationship for *repondeat superior* purposes.

13.     Mary White is a citizen of the District of Columbia residing at 1241 33rd Street, N.W., Washington, DC 20007.  Ms. White is a real estate broker currently affiliated with Washington Fine Properties, LLC.  Ms. White is the owner of the commercial property located at 1622 Wisconsin Avenue, N.W., Washington, DC 20007.

14.      Mary White, Inc. is a District of Columbia corporation formed on August 31, 1979 and owned and operated by Mary White.  Mary White, Inc. was actively involved in the leasing of the 1622 Wisconsin Avenue Property to plaintiff.  At all relevant times, Mary White was the executive officer and director of Mary White, Inc., acting within the scope of her duties as an executive officer and director of Mary White, Inc. in connection with leasing the 1622 Wisconsin Avenue Property to plaintiff.  Mary White was further acting with respect to the conduct of her business, Mary White, Inc., and with respect to her duties as a manager, executive officer, and director of Mary White, Inc., in connection with her leasing of the 1622 Wisconsin Avenue Property to plaintiff.

15.     At all relevant times, Barrett Anderson was Mary White's and Mary White, Inc.'s lawful agent and Temporary Office Manager at 1622 Wisconsin Avenue, N.W., Washington, DC 20007, constituting a principal-agent relationship for *respondeat superior* purposes.

16.     At all relevant times, Chatel Real Estate, Inc., Thierry Liverman, and John Pagones were lawful agents of Mary White and Mary White, Inc., constituting a principal-agent relationship for *repondeat superior* purposes.

## FACTUAL ALLEGATIONS

17.     Defendants and each of them knew at all relevant times that John Bratton is an African-American and had long hair with dreadlocks, and that Bratton Realty, LLC has a black racial identity.

18.     On July 29, 2005, defendant White publicly announced her intent to lease her commercial property located at 1622 Wisconsin Avenue, N.W., Washington, DC 20007 ("Wisconsin Avenue property"). This property has three levels, the upper level being residential and the street and basement levels commercial.

19.     On July 29, 2005, defendants Chatel and Liverman, through their employee or agent John Pagones, listed the street level of Ms. White's property located at 1622 Wisconsin Avenue, N.W., Washington, DC 20007. The listing was posted on the Metropolitan Regional Information Systems, Inc. ("MRIS"), the primary source of listing information for real estate brokers and agents in the District of Columbia.

20.     On or about the same time, Chatel prepared graphic design materials and placed a visible "for rent" sign outside Ms. White's Wisconsin Avenue property. Chatel also inserted a "lockbox" next to the entrance of the Wisconsin Avenue property to provide real estate agents access to the property for showing to prospective tenants.

21.      The MRIS listing provided that the street level of the Wisconsin Avenue property was available for a 12 to 48-month lease at the rate of $2,500 per month.

22.     On September 23, 2005, based upon Ms. White's instructions, defendants Chatel and Liverman, through their employee or agent John Pagones, listed on the MRIS the basement of the Wisconsin Avenue property.

23.     The listing specifically provided that the basement of the Wisconsin Avenue property was available for a 12 to 36-month lease at the rate of $1,000 per month.

24.     On October 6, 2005, both the street-level and basement of the Wisconsin Avenue property were vacant and continued to be posted on the MRIS as available for rent. Further, Chatel's lockboxes and "for rent" signs continued to be visibly placed outside the Wisconsin

Avenue property.  When plaintiff first went to Chatel to inquire about Mary White's property, the street level of the Wisconsin Avenue property had been on the market for 66 days, and the basement had been on the market for 13 days.

25.     On October 6, 2005, Mr. Bratton visited the Wisconsin Avenue property to determine whether it would be a suitable office space for both himself and Bratton Realty, LLC.  Mr. Bratton was directed by Barrett Anderson to discuss the proposed lease with John Pagones.

26.     On October 6, 2005, Mr. Bratton visited Chatel's Georgetown office located at 3210 N Street, N.W., Washington, DC 20007, to obtain further information and execute a lease agreement for the Wisconsin Avenue property.  Mr. Bratton informed Mr. Pagones that he had recently toured the Wisconsin Avenue property and would like to lease it.  Mr. Bratton further informed Mr. Pagones that he was a real estate broker and the owner of Bratton Realty, LLC.

27.     Upon learning that John Bratton, an African-American with long hair with dreadlocks, intended to lease the Wisconsin Avenue property, Mr. Pagones informed Mr. Bratton that he did not have a lease agreement available; failed to provide Mr. Bratton with a rental application even though he had one; and did not give any information to Mr. Bratton about the property other than the fact that the monthly rent was $2,500.  When Mr. Bratton offered to provide a security deposit and first month's rent to secure the property, Mr. Pagones declined to accept his checks.

28.     Despite Mr. Pagones' representations to Mr. Bratton, Chatel possessed blank rental applications and lease agreements at its Georgetown office on October 6, 2005.

29.     On October 7, 2005, plaintiffs personally delivered their lease agreement to Barrett Anderson, along with their financial information, security deposit ($2,500), and first month's rent ($2,500).  Mr. Anderson delivered this material to Mr. Pagones the same day.

30.     On October 7, 2005, John Pagones introduced plaintiffs' lease application to Mary White by stating: "I told her it was a real estate office, and **it was an African-American. And I told her 'be prepared for trouble.'** "

31.     From October 7 to October 11, 2005, plaintiffs submitted five draft lease agreements to Chatel for the purpose of leasing Mary White's property. All of these proposed lease agreements were rejected by defendants.

32.     On October 12, 2005, defendants falsely informed plaintiffs that Mary White's property had been leased to another prospective candidate (Roberta Medlin), that the property was gone, and this was "just business." Despite these representations, no verbal commitment had been reached between Roberta Medlin and Mary White, and no lease agreement had been executed between them at anytime.

33.     Defendants and each of them knew that the Wisconsin Avenue property was available for rent on October 12, 2005, and they refused to lease the space to plaintiffs because Mr. Bratton is an African-American and Bratton Realty has a black racial identity. Defendants' decision not to lease the Wisconsin Avenue property to plaintiffs on October 12, 2005 was driven by racial animus and done willfully or with reckless disregard of the civil rights laws.

34.     On October 12, 2005, plaintiffs informed defendants of their intent to institute legal proceedings against defendants for their unlawful discrimination in connection with the leasing of the Wisconsin Avenue property.

35.     On October 19, 2005, plaintiffs filed an administrative complaint with the Office of Human Rights, alleging unlawful discrimination against defendants in connection with the leasing of the Wisconsin Avenue property.

36.     Upon learning of plaintiffs' intent to sue them for discrimination, defendants chose to lease the Wisconsin Avenue property to Mr. Bratton to avoid a lawsuit and to conceal their discrimination.

37.     After plaintiffs filed their administrative complaint for discrimination, Ms. White's attorney, John Gordon Forester, informed Mr. Bratton that he was going to "negotiate the lease" with him.  Mr. Forester indicated Ms. White would only execute a lease agreement containing the following terms and conditions, none of which were included in the MRIS listing:

(1) Mr. Bratton would not have a right of first refusal allowing him to purchase the Wisconsin Avenue property during the term of the lease, (2) Mr. Bratton would not be able to lease the basement of the Wisconsin Avenue property, (3) Bratton Realty could not be a party named on the lease, (4) Mr. Bratton would neither have an option to renew his lease nor be able to convert it to month-to-month at the expiration of the two-year term, and (5) Mr. Bratton would have to pay $200 per month for real estate taxes.

38.     Mr. Forester further accused Mr. Bratton of being **a "test case" for discrimination**, stating that he did not intend in good faith to lease Georgetown office space and was simply "looking for a reason to sue."

39.     Defendants refused to lease the basement of Mary White's property to plaintiffs even though the basement had been advertised to the public as available 13 days before plaintiffs first inquired about the property, and Mary White had attempted to lease her basement to a Georgetown resident who worked out of his home during the same time-frame.  The basement of the Wisconsin Avenue property was vacant from October 2005 until January 2007.  Ms. White used her basement only "a dozen times" during this 14-month period.

40.    The terms and conditions of the lease demanded by defendants as described in paragraph 37 above were highly unfavorable, were designed to dissuade plaintiffs from leasing the Wisconsin Avenue property, and were driven by defendants' racial animus toward plaintiffs. These terms were not negotiated with plaintiffs but forced upon them by defendants and each of them.

41.    On October 31, 2005, after 24 days of attempting to lease the property, Mr. Bratton executed a lease agreement with Ms. White incorporating the terms and conditions described in paragraph 37 above as demanded by defendants.  These terms and conditions were not negotiated with but dictated by defendants to Mr. Bratton.

42.    Defendants discriminated against plaintiffs with respect to the terms and conditions of their lease agreement.  Specifically, (a) defendants refused to give plaintiffs a right of first refusal when this provision was a boilerplate clause in Chatel's Commercial Agreement of Lease, Mary White had instructed Chatel to "use Chatel's lease" months before plaintiffs inquired about the property, and a right of first refusal was offered by defendants to Roberta Medlin, the white female prospective candidate for the property; (b) defendants required plaintiffs to vacate the property after the initial two-year term of his lease even though Mary White's property had been advertised to the public as available for a 12-48 month lease, and Roberta Medlin was given a provision in her lease allowing her to convert it to month-to-month at the end of the initial two-year term; (c) defendants denied plaintiffs an option to renew the lease and removed the provision in Chatel's boilerplate Commercial Agreement of Lease that provided for conversion of the lease to month-to-month at the end of the initial lease term.

43.    Plaintiffs have been occupying the street level of the Wisconsin Avenue property since November 2005.  As a result of defendants' discriminatory treatment of plaintiffs with respect to

the terms and conditions of the lease, plaintiffs have been forced to move their business from 1622 Wisconsin Avenue at the end of the two-year lease.

44.    As a result of defendants' unlawful discrimination and John Bratton's involvement in this case, Mr. Bratton developed a depression that is impacting his life in a negative way. Defendants' discrimination has taken an emotional toll on Mr. Bratton to the point that he does not feel like himself any longer.

45.    As a result of defendants' unlawful discrimination, plaintiffs have suffered and will continue to suffer substantial economic damages.  These economic damages are a direct result of the discriminatory treatment plaintiffs received from defendants with respect to the terms and conditions of the lease agreement executed between Mr. Bratton and Ms. White, which requires plaintiffs to vacate Ms. White's property at the end of the initial two-year term.  Specifically, (1) John Bratton has suffered over $38,400 in lost rental revenues from having to maintain two separate offices in DC for two years (the duration of his lease with Mary White) when he would have otherwise leased his Logan Circle property for at least $1,600 per month; (2) Bratton Realty will suffer relocation expenses amounting to over $12,000 for having to move its business from 1622 Wisconsin Avenue to elsewhere in November 2007; (3) Bratton Realty will also suffer tens of thousands of dollars of lost profits and loss of good will for having to relocate its business from 1622 Wisconsin Avenue to a less prestigious location.  In addition, Mr. Bratton has suffered economic damages arising from devoting time to rectify defendants' discrimination, which time would have otherwise been used to engage in profitable real estate transactions.  Had defendants not discriminated against plaintiffs by denying them an option to renew or a provision in the lease converting it to a month-to-month lease at the expiration of the initial term, plaintiffs would not suffer the above-mentioned economic damages.

46.    Plaintiffs have further suffered additional economic damages in an amount to be determined at trial.

47.    At all relevant times, defendants' refusal to allow Bratton Realty to be a named tenant and a party to the lease agreement executed with Mary White was due to defendants' racial animus toward plaintiffs because Mr. Bratton is an African-American and Bratton Realty has a black racial identity.  At all relevant times, both Bratton Realty and John Bratton intended to be contractual parties and named tenants for the 1622 Wisconsin Avenue Property.  Had defendants not discriminated against plaintiffs, Bratton Realty and John Bratton would have both been named tenants and contractual parties to the lease agreement executed with Mary White.

48.    If defendants' discriminatory conduct toward plaintiffs was not based on racial animus, the impact of defendants' conduct was discriminatory upon plaintiffs, resulting in the same degree of economic and emotional damages.

49.    At all relevant times, Mary White, Inc. was actively involved in the leasing of Mary White's Property to plaintiff.  This involvement entailed, among other things, Mary White, Inc.'s Temporary Office Manager—Barrett Anderson—giving tours of the Property to plaintiff and other prospective candidates, his using the email, telephone, and facsimile lines at Mary White, Inc.'s offices to lease the Property, his attempts to lease the basement of the Property to a male prospective candidate who resided in Georgetown, and his giving instructions to Chatel and John Pagones on behalf of Mary White with respect to how to "flower up" the listing for the Property. Mary White and Barrett Anderson were also engaged in winding down the affairs of Mary White, Inc., a central mission of which was to lease the 1622 Wisconsin Avenue Property that was used by Mary White, Inc. as its office space for many years.  At all relevant times, Mary White was acting within the scope of her employment with Mary White, Inc. in her capacity as

the executive officer and director of Mary White, Inc. in connection with leasing the Property to plaintiff. Any discrimination exhibited by Chatel, Thierry Liverman, John Pagones, Mary White and their agents upon plaintiffs are directly attributable to Mary White, Inc. for *respondeat superior* purposes.

## COUNT ONE

### (42 U.S.C. § 1982)

50.    Plaintiffs repeat and re-allege all previous allegations as if set forth herein.

51.    Section 1982 prohibits racial discrimination in property transactions. It provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982.

52.    The protections of section 1982 extend to the leasing of commercial property and to the terms and conditions of commercial leases, including the office space sought by plaintiffs in this case.

53.    Defendants' repeated rejection of plaintiffs' five lease proposals for the Wisconsin Avenue property for 24 days, their misrepresentation of the availability of the property to plaintiffs on October 12, 2005, their refusal to lease the basement of the 1622 Wisconsin Avenue Property to plaintiffs, their imposition of higher financial qualification requirements on plaintiffs than that imposed on white candidates, and their refusal to allow Bratton Realty to be a named tenant and a party to the lease agreement executed with Mary White were driven by racial animus toward plaintiffs because Mr. Bratton is an African-American and Bratton Realty has a black racial identity. There were no legitimate non-discriminatory reasons for defendants' aforementioned conduct. Alternatively, if defendants' discriminatory conduct toward plaintiffs

was not based on racial animus, the impact of defendants' conduct was discriminatory upon

plaintiffs, resulting in the same degree of economic and emotional damages.

54.    Defendants' aforementioned conduct amounts to racial discrimination in violation of

section 1982.

55.    Defendants' demand of unfavorable terms and conditions from plaintiffs (as set forth in

¶¶ 37 and 42 above), when these conditions were not set forth in the MRIS listing nor imposed

on Roberta Medlin, amounts to unlawful discrimination in violation of section 1982.

56.    Defendants' aforementioned conduct has caused and will cause plaintiffs substantial

economic damages, including lost rental revenue, relocation expenses, loss of time that would be

devoted to profitable real estate transactions, lost profits, and loss of good will (as set forth in ¶¶

45-46 above), as well as depression, humiliation, embarrassment, and emotional distress upon

John Bratton.

57.    Defendants' racial discrimination was willful or done with reckless disregard of the civil

rights laws warranting the imposition of punitive damages.

## COUNT TWO

### (42 U.S.C. § 1981)

58.    Plaintiffs repeat and re-allege all previous allegations as if set forth herein.

59.    Section 1981 prohibits racial discrimination in the making and enforcement of contracts.

It provides in pertinent part:  "All persons within the jurisdiction of the United States shall have

the same right in every State and Territory to make and enforce contracts, . . . and to the full and

equal benefit of all laws and proceedings for the security of persons and property as is enjoyed

by white citizens."  42 U.S.C. § 1981(a).  Subsection (b) defines the term "make and enforce

contracts" as "the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b).

60.     The protections of section 1981 extend to the making and enforcement of contracts, including the terms and conditions of contracts for the leasing of commercial property, including the office space sought by plaintiffs in this case.

61.     Defendants' repeated rejection of plaintiffs' five lease proposals for the Wisconsin Avenue property for 24 days, their misrepresentation of the availability of the property to plaintiffs on October 12, 2005, their refusal to lease the basement of the 1622 Wisconsin Avenue Property to plaintiffs, their imposition of higher financial qualification requirements on plaintiffs than that imposed on white candidates, and their refusal to allow Bratton Realty to be a named tenant and a party to the lease agreement executed with Mary White were driven by racial animus toward plaintiffs because Mr. Bratton is an African-American and Bratton Realty has a black racial identity. There were no legitimate non-discriminatory reasons for defendants' aforementioned conduct. Alternatively, if defendants' discriminatory conduct toward plaintiffs was not based on racial animus, the impact of defendants' conduct was discriminatory upon plaintiffs, resulting in the same degree of economic and emotional damages.

62.     Defendants' aforementioned conduct amounts to racial discrimination in violation of section 1981.

63.     Defendants' demand of unfavorable terms and conditions from plaintiffs (as set forth in ¶¶ 37 and 42 above), when these conditions were not set forth in the MRIS listing nor imposed on Roberta Medlin, amounts to unlawful discrimination in violation of section 1981.

64.     Defendants' aforementioned conduct has caused and will cause plaintiffs substantial economic damages, including lost rental revenue, relocation expenses, loss of time that would be devoted to profitable real estate transactions, lost profits, and loss of good will (as set forth in ¶¶ 45-46 above), as well as depression, humiliation, embarrassment, and emotional distress upon John Bratton.

65.     Defendants' racial discrimination was willful or done with reckless disregard of the civil rights laws warranting the imposition of punitive damages.

## COUNT THREE

## (DC ST. § 2-1402.21)

66.     John Bratton repeats and re-alleges all previous allegations as if set forth herein.

67.     Section 2-1402.21 of the Human Rights Act prohibits discrimination based upon race and personal appearance in commercial space accommodations.

68.     The protections of section 2-1402.21 extend to the leasing of the office space as well as the terms and conditions of the lease sought by John Bratton in this case.

69.     Defendants' repeated rejection of Mr. Bratton's five lease proposals for the Wisconsin Avenue property for 24 days, their misrepresentation of the availability of the property to him on October 12, 2005, their refusal to lease the basement of the 1622 Wisconsin Avenue Property to him, and their imposition of unfavorable terms and conditions in his lease were driven by racial animus toward him because Mr. Bratton is an African-American and had long hair with dreadlocks.  There were no legitimate non-discriminatory reasons for defendants' aforementioned conduct.  Alternatively, if defendants' discriminatory conduct toward Mr. Bratton was not based on racial animus, the impact of defendants' conduct was discriminatory upon Mr. Bratton, resulting in the same degree of economic and emotional damages.

70.     Defendants' aforementioned conduct amounts to unlawful discrimination in violation of section 2-1402.21 of the Human Rights Act.

71.     Defendants' aforementioned conduct caused Mr. Bratton substantial economic damages (as set forth in ¶¶ 45-46 above) as well as depression, humiliation, embarrassment, and emotional distress.

72.     Defendants' discrimination toward Mr. Bratton was willful or done with reckless disregard of the Human Rights Act warranting the imposition of punitive damages.

**COUNT FOUR**

**(DC ST. § 2-1402.23)**

73.     John Bratton repeats and re-alleges all previous allegations as if set forth herein.

74.     Section 2-1402.23 of the Human Rights Act prohibits discrimination by real estate brokers and salespersons in the sale and leasing of residential and commercial property.

75.     The protections of section 2-1402.23 extend to the leasing of the office space as well as the terms and conditions of the lease sought by Mr. Bratton in this case.

76.     Defendants were all highly experienced real estate professionals fully aware of and subject to the duties set forth in section 2-1402.23.

77.     Defendants' repeated rejection of John Bratton's five lease proposals for the Wisconsin Avenue property for 24 days, their misrepresentation of the availability of the property to him on October 12, 2005, their refusal to lease the basement of the 1622 Wisconsin Avenue Property to him, and their imposition of unfavorable terms and conditions in his lease were driven by racial animus toward him because Mr. Bratton is an African-American and had long hair with dreadlocks.  There were no legitimate non-discriminatory reasons for defendants' aforementioned conduct.  Alternatively, if defendants' discriminatory conduct toward Mr.

Bratton was not based on racial animus, the impact of defendants' conduct was discriminatory upon Mr. Bratton, resulting in the same degree of economic and emotional damages.

78.     Defendants' aforementioned conduct amounts to unlawful discrimination in violation of section 2-1402.23.

79.     Defendants' aforementioned conduct caused Mr. Bratton substantial economic damages (as set forth in ¶¶ 45-46 above) as well as depression, humiliation, embarrassment, and emotional distress.

DEMAND FOR JURY TRIAL

80.     Plaintiffs hereby demand trial before a jury.

PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief against defendants and each of them, jointly and severally, as follows:

(a) Judgment in favor of plaintiffs and against all defendants for counts 1 and 2, and judgment in favor of John Bratton and against defendants Chatel Real Estate, Inc., Thierry Liverman, and Mary White for counts 3 and 4;

(b) Awarding plaintiffs compensatory damages in an amount to be determined at trial for the economic damages suffered by them as a result of defendants' unlawful discrimination in violation of 42 U.S.C. §§ 1981 and 1982;

(c) Awarding John Bratton compensatory damages in an amount to be determined at trial for the economic damages, depression, humiliation, embarrassment, emotional distress, and deprivation of civil rights he has suffered as a result of defendants' violation of 42 U.S.C. §§ 1981 and 1982, and as a result of defendants Chatel Real Estate, Inc.'s, Thierry Liverman's, and Mary White's violation of §§ 2-1402.21 and 2-1402.23 of the Human Rights Act;

(d) Awarding plaintiffs punitive damages for defendants' willful and malicious violation of 42 U.S.C. §§ 1981 and 1982, and awarding John Bratton punitive damages for Chatel Real Estate, Inc.'s, Thierry Liverman's, and Mary White's willful and malicious violation of §§ 2-1402.21 and 2-1402.23 of the Human Rights Act;

(e) Awarding plaintiffs reasonable attorney's fees and costs for prosecuting this action pursuant to 42 U.S.C. § 1988(b), and awarding John Bratton reasonable attorney's fees and costs for prosecuting this action pursuant to DC ST. §§ 2-1403.16(b) and 2-1403.13(a)(1)(E);

(f) Awarding plaintiffs expert witness fees incurred in prosecuting this action pursuant to 42 U.S.C. § 1988(c) and the Human Rights Act;

(g)  Prejudgment and post-judgment interest on the above counts as provided by law; and

(h) Awarding plaintiffs such other and further relief as the Court may deem just and proper.


Dated: March 17, 2007                      /s/ Stefan Shaibani
                                           Stefan Shaibani (Bar No. 490024)
                                           LITIGATION ASSOCIATE, PLLC
                                           1150 Connecticut Avenue, N.W.
                                           Suite 900
                                           Washington, DC 20036
                                           Tel:  (202) 862-4335
                                           Fax: (202) 828-4130

                                           *Attorney for Plaintiff*