lease it to another candidate for a longer term. The disparate terms and conditions offered by Defendants to plaintiffs and Roberta Medlin for the same Property were contrary to industry standards and applicable ethical principles. In addition, requiring plaintiffs to pay $200 per month for real estate taxes, but not requiring the same of Roberta Medlin runs afoul of MRIS Rules.[12] Plaintiffs were required to pay $2,700 per month rather than the $2,500 for the street level of the Property as advertised on the MRIS. It is improper to require an African-American candidate to pay higher rents for a property than a Caucasian candidate, particularly when the MRIS advertisement specifies the rent.

V. **CONCLUSION**

Based on my discussions with plaintiffs, my review of the documents and pleadings referenced above, and my familiarity with the industry standards and code of ethics applicable to real estate brokers, it is my opinion that Defendants' unreasonable delay in processing plaintiffs' lease application, Defendants' misrepresentations to plaintiffs regarding the availability of the Property, Defendants' rejection of the first five lease applications submitted by plaintiffs, Defendants' imposition of more stringent financial qualification requirements on plaintiffs than that imposed on Roberta Medlin, Defendants' denial to plaintiffs of an option to renew the lease and the right to convert the lease to month-to-month at the end of the two-year term, and Defendants' other acts and omissions discussed above were unacceptable violations of the code of ethics and industry standards applicable to real estate brokers.

Dated: September 5, 2007

Thomas J. Lynch

---

[12] MRIS Rules and Regulations Manual, Art. XII, § 1.