DEPOSITION OF THOMAS J. LYNCH
CONDUCTED ON FRIDAY, FEBRUARY 9, 2007

1 (Pages 1 to 4)

---

**Page 1**

```
 1    IN THE UNITED STATES DISTRICT COURT
 2        FOR THE DISTRICT OF COLUMBIA
 3   ------------------------------X
 4   JOHN BRATTON,              :
 5         Plaintiff            :
 6      v.                      : Case No.:
 7   CHATEL REAL ESTATE, INC., et al.,  : 1:06CV00694
 8         Defendants           :
 9   ------------------------------X
10
11        Deposition of THOMAS J. LYNCH
12             Washington, D.C.
13          Friday, February 9, 2007
14                1:25 p.m.
15   Job No.: 1-96264
16   Pages 1 - 211
17   Reported by: Lynn Schindler
```

**Page 2**

```
 1        Deposition of THOMAS J. LYNCH, held at the
 2   offices of:
 3
 4
 5        LITIGATION ASSOCIATE, PLLC
 6        Connecticut Building, Ninth Floor
 7        1150 Connecticut Avenue, Northwest
 8        Washington, D.C. 20036
 9        (202) 277-8892
10
11
12
13        Pursuant to agreement, before Lynn M.
14   Schindler, Notary Public in and for the District of
15   Columbia.
```

**Page 3**

```
 1                 A P P E A R A N C E S
 2
 3   ON BEHALF OF PLAINTIFF:
 4        STEFAN SHAIBANI, ESQUIRE
 5        LITIGATION ASSOCIATE, PLLC
 6        Connecticut Building, Ninth Floor
 7        1150 Connecticut Avenue, Northwest
 8        Washington, D.C. 20036
 9        (202) 277-8892
10
11
12   ON BEHALF OF DEFENDANTS CHATEL REAL ESTATE AND
13   THIERRY LIVERMAN:
14        MATTHEW A. RANCK, ESQUIRE
15        ECCLESTON & WOLF, P.C.
16        2001 S Street, Northwest
17        Suite 310
18        Washington, D.C. 20009
19        (202) 857-1696
```

**Page 4**

```
 1              A P P E A R A N C E S (Continued)
 2
 3
 4   ON BEHALF OF DEFENDANT MARY WHITE: (BY TELEPHONE)
 5        ROBERT H. BOUSE, JR., ESQUIRE
 6        ANDERSON, COE & KING
 7        Suite 2000
 8        201 North Charles Street
 9        Baltimore, Maryland 21201
10        (410) 752-1630
```

EXHIBIT 5

**Page 5**

```
                    CONTENTS
 2   EXAMINATION OF THOMAS J. LYNCH            PAGE
 3     By Mr. Ranck: . . . . . . . . . . . . . .  6
 4                        - - -
 5                    EXHIBITS
 6     (Exhibits retained by counsel.)
 7   LYNCH DEPOSITION EXHIBITS                  PAGE
 8    1   Curriculum vitae . . . . . . . . . . .  6
 9    2   Shaibani letter 9/12/06 . . . . . . .   6
10    3   Draft Expert Report of Thomas Lynch .   6
11    4   Final Expert Report of Thomas Lynch .   6
12    5   Handwritten notes . . . . . . . . . . 168
13    6   Shaibani letter 9/12/06 with time  .. 168
14        entries
```

**Page 6**

```
 1                   PROCEEDINGS
 2        (Lynch Deposition Exhibit Numbers 1 through
 3    4 were marked for identification and retained by
 4    counsel.)
 5    Whereupon,
 6             THOMAS J. LYNCH,
 7    being first duly sworn to testify to the truth, the
 8    whole truth, and nothing but the truth, was examined
 9    and testified as follows:
10    EXAMINATION BY COUNSEL FOR THE DEFENDANTS CHATEL REAL
11         ESTATE AND THIERRY LIVERMAN
12    BY MR. RANCK:
13    Q   Could you state your name and address for
14    the record, please?
15    A   Thomas J. Lynch, 1062 Harriman Street, Great
16    Falls, Virginia, 22066.
17    Q   Mr. Lynch, my name is Matt Ranck. I
18    introduced myself before the deposition started. I
19    represent Thierry Liverman and Chatel Real Estate.
20    Bob Bouse who represents Mary White is also on the
21    phone. I take it you've been deposed any number of
22    times before?
```

**Page 7**

```
 1    A   I have.
 2    Q   About how many? Just roughly.
 3    A   10, 12, 15 times.
 4    Q   Okay. The only thing I'm going to ask you
 5    is if you don't understand my question, or need to
 6    review something, let me know. If you don't
 7    understand my question, let me know, I'll try to
 8    clarify it to make sure you're answering what I'm
 9    asking. Is that fair?
10    A   That's fair.
11    Q   Okay. And obviously if you need a break at
12    any time, let us know. Prior to the deposition,
13    Mr. Shaibani provided me with some documents that
14    apparently were mailed a couple days ago but not
15    received in my office yet, and you brought with you
16    some binders here today; correct?
17    A   That is correct.
18    Q   Among the documents Mr. Shaibani provided is
19    an index of documents that you apparently reviewed,
20    and a similar list appears in your report in this
21    case, and my question to you is is that what's
22    reflected in those binders, all those documents
```

**Page 8**

```
 1    identified in your report?
 2    A   That's correct.
 3    Q   All right. Do you have one couple things
 4    I've not been provided? I've not been provided with
 5    any notes that you have regarding this case. Do you
 6    have any notes?
 7    A   I have a couple.
 8    Q   Okay. May I take a look at them, please?
 9    A   These are fairly recent.
10    Q   They bear a date at the top, Monday,
11    February 5, and it says prep for depo. Is that the
12    day you prepared these?
13    A   That's correct.
14    Q   Okay. Give me one minute just to take a --
15    actually, I'll come back to these in a little bit.
16    Are there any other notes that you have perhaps on
17    some of the substantive documents in those binders?
18    Do you know if you took any notes?
19    A   I don't believe so. I may have -- I may
20    have made a pencil check mark somewhere in the middle
21    of a deposition or something.
22    Q   The other thing I've not been provided is
```

**189**

1  A  That's what is supportedly have said, two to
2  three years. So Bratton in his first proposal asked
3  for one and one.
4  BY MR. RANCK:
5  Q  Obligated himself to one; right?
6  A  Well, I mean, if I'm writing my lease, I'm
7  writing it to my benefit as I perceive my benefit to
8  be at the moment.
9  Q  Exactly. So Mr. Bratton's first proposed
10 lease was tenant friendly; right? It was written for
11 his benefit; correct?
12    MR. SHAIBANI: Objection.
13    MR. RANCK: That's what your witness just
14 said; correct?
15 A  Well --
16 BY MR. RANCK:
17 Q  Yes or no.
18 A  I think.
19 Q  You can explain.
20 A  I'll say yes, but what I'm saying is that
21 Bratton, I think, lacked -- felt like he really lacked
22 a fair amount of guidance from Pagones. You may pick

**190**

1  on this point or that point. He was clearly getting
2  the message that Pagones didn't know very much at all
3  about this property, so I see Bratton starting the
4  ball rolling somewhere to elicit some sort of a
5  response that would give a lot more predictable
6  direction than is just being given by a guy who says I
7  really don't know much about it.
8  Q  Okay. I want to ask just one other thing,
9  and then we can break for the day. Let me show you,
10 can you just identify for the record Exhibits 5 and 6,
11 please?
12 A  Exhibit 5 are some notes that I took --
13 wrote down in preparation for today's deposition in a
14 face-to-face with Mr. Bratton, and a conference call
15 with counsel to review the issues rather than sit back
16 and reread all this stuff.
17 Q  Okay.
18 A  That's 5. 6 is the, I would call it, the
19 delivery letter from Mr. Shaibani to me of all the
20 documents in my large binder here that were assembled
21 and organized for my review prior to getting together
22 for the opinion.

**191**

1  Q  Okay. We can put these aside or put them on
2  the side. Looking at -- can you get your copy of
3  Exhibit 5 out? It's the notes. You should have your
4  original back.
5  A  I should. Exactly where I put it is --
6  Q  I saw Mr. Shaibani give it to you.
7  A  It's called hidden under the book.
8  Q  And you have written at the top economic
9  damages, and then you have written on the left-hand
10 margin economic damages again, and you discuss some
11 issues here. Those pertain to Mr. Bratton. That
12 information is coming from Mr. Bratton; is that right,
13 on what he claims his economic damages are?
14 A  Well, he obviously has a claim of economic
15 damages. The question -- what I was talking about him
16 saying I have -- I understand that as I wrote it down
17 here, those are probably more my words than anything
18 else, the panache and the cachet for Georgetown having
19 been operating out of offices in Georgetown myself for
20 a long, long time. Having to move is an issue. It's
21 a problem. I mean, and it's being -- saying, you
22 know, Georgetown as your office as compared to

**192**

1  somewhere else.
2  Q  These issues have nothing to do with the
3  question of whether he was discriminated against;
4  correct?
5    MR. SHAIBANI: Objection. The damages
6  obviously relate to his claim. They follow from it.
7    MR. RANCK: That's not the -- really wasn't
8  what I was asking for in the question.
9  BY MR. RANCK:
10 Q  I mean, these issues don't have anything to
11 do with whether he was discriminated. These issues
12 pertain to what damages assuming --
13 A  No, I don't think they have to deal with
14 whether he was discriminated against. It's the effect
15 of the discrimination is what I'm talking about.
16 Q  Okay. Now, I don't see anywhere in your
17 report anything concerning damages, any effect of
18 damages. Is that a fair assessment?
19 A  Fair assessment.
20 Q  I don't believe you were designated to
21 testify to any of that, so I'm not going to --
22   MR. SHAIBANI: Objection. That's not --