1

1  IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF COLUMBIA
2
3  - - - - - - - - - - - - - - -+           **ORIGINAL**

4  JOHN BRATTON, et al.,

5           Plaintiffs,

6                                  | Case No.
      vs.                          | 1:06CV00694
7
   CHATEL REAL ESTATE, INC.,
8  et al,
            Defendants.
9
   - - - - - - - - - - - - - - -+
10
11         Continued Deposition of JOHN BRATTON
12                  Washington, D.C.
13                  December 4, 2007
14                    10:53 a.m.
15
16
17
18
19  Job No. 1-116799
20  Pages 1 - 249
21  Reported by:  Michele E. Eddy
22


EXHIBIT 18

L.A.D. REPORTING & DIGITAL VIDEOGRAPHY
1100 Connecticut Avenue, NW • Suite 850, Washington, D.C. 20036
Tel: 202.861.3410 • 800.292.4789 • Fax: 202.861.3425
Web: ladreporting.com • E-mail: lisa@ladreporting.com
Additional Offices: Rockville, MD • Baltimore, MD • Greenbelt, MD • McLean, VA

CONTINUED DEPOSITION OF JOHN BRATTON
CONDUCTED ON TUESDAY, DECEMBER 4, 2007

2

1          Deposition of

2          JOHN BRATTON

3

4   Held at the offices of:

5          ECCLESTON & WOLF

            2001 S Street, NW, Suite 310

6          Washington, D.C.  20009

7          (202) 875-1696

8

9

10

11

12

13

14

15

16          Pursuant to Notice, before Michele E. Eddy,

17   Registered Professional Reporter, Certified Realtime

18   Reporter, and Notary public in and for the District of

19   Columbia.

20

21

22

CONTINUED DEPOSITION OF JOHN BRATTON
CONDUCTED ON TUESDAY, DECEMBER 4, 2007

3

1           A P P E A R A N C E S

2

3   ON BEHALF OF THE PLAINTIFF:

4           STEFAN SHAIBANI, ESQUIRE

5           LITIGATION ASSOCIATE, PLLC

6           1150 Connecticut Avenue, N.W, 9th Floor

7           Washington, D.C.  20036

8           Telephone:  (202) 277-8892

9

10  ON BEHALF OF THE DEFENDANT MARY WHITE:

11          ROBERT H. BOUSE, JR., ESQUIRE

12          ANDERSON, COE & KING, LLP

13          201 North Charles Street, Suite 2000

14          Baltimore, Maryland  21201

15          Telephone:  (410) 752-1630

16

17

18

19

20

21

22

4

1    A P P E A R A N C E S   C O N T I N U E D

2

3    ON BEHALF OF THE DEFENDANTS CHATEL REAL ESTATE, INC.

4    and THIERRY LIVERMAN:

5        MATTHEW A. RANCK, ESQUIRE

6        SETH P. KLEINER, ESQUIRE

7        Eccleston & Wolf, P.C.

8        2001 S Street, N.W., Suite 310

9        Washington, D.C.  20009

10       (202) 857-1696

5

EXAMINATION INDEX

PAGE

EXAMINATION BY MR. RANCK . . . . . . . . . . . . . 6

EXAMINATION BY MR. BOUSE . . . . . . . . . . . . 190

EXAMINATION BY MR. SHAIBANI . . . . . . . . . . .213

FURTHER EXAMINATION BY MR. BOUSE . . . . . . . . 241

FURTHER EXAMINATION BY MR. SHAIBANI . . . . . . .244

6

1          P R O C E E D I N G S

2          JOHN BRATTON,

3   having been duly sworn, testified as follows:

4   EXAMINATION BY COUNSEL FOR THE DEFENDANT CHATEL REAL

5                    ESTATE, INC.

6   BY MR. RANCK:

7       Q    Mr. Bratton, good morning. Thank you for

8   coming in. We're going to ask you some questions

9   today about some of the -- or all of the economic

10  damage claims that have been inserted into the case

11  since our last deposition. You understand that?

12      A    Yes.

13      Q    The gentleman next to me is Seth Kleiner

14  from my office. You haven't met him before. He's

15  fairly recent to the firm. The fellow that was with

16  me the last time is no longer with the firm anymore.

17  I just wanted to explain who Mr. Kleiner is.

18           Mr. Bratton, do you recall the deposition

19  rules from the first go-around?

20      A    Yes.

21      Q    Okay. I'm not going to go over them with

22  you again with you. Obviously if you need a break for

1      MR. SHAIBANI: Objection. Asked and
2  answered.
3      A   I do not.
4      MR. SHAIBANI: I will also object that the
5  rules don't require actual figures to support damages.
6  It could be reasonable estimates.
7      Q   Do you have invoices -- I don't agree with
8  your counsel, but do you have invoices that reflect
9  how much -- do you or Bratton Realty -- strike that.
10 Let me start over.
11     Do you or Bratton Realty have invoices that
12 reflect what you or Bratton Realty paid for business
13 cards -- for new business cards for you and Jeanette?
14     A   As I stated before, I have invoices for some
15 items, and some items didn't come with invoices. So
16 for anything that comes with an invoice, and I can't
17 sit here and rattle off which ones does and which ones
18 doesn't, I have invoices for. If it didn't come with
19 an invoice, I don't have it.
20     Q   Did you pay for it individually or did
21 Bratton Realty pay for the business cards?
22     A   Bratton Realty paid for it.

CONTINUED DEPOSITION OF JOHN BRATTON
CONDUCTED ON TUESDAY, DECEMBER 4, 2007

59

1   Q   The expert report next identifies new office
2   letterhead. Did you or Bratton Realty, in fact,
3   purchase new office letterhead for the 2008 10th
4   Street address?
5   A   Yes.
6   Q   Do you know how much you or Bratton Realty
7   paid for that?
8   A   I do not know the answer to that.
9   Q   Do you know whether you have an invoice
10  reflecting how much was paid?
11  A   I don't know the answer to that.
12  Q   Was that something that Bratton Realty would
13  have paid or you individually?
14  A   Bratton Realty.
15  Q   Do you know who you purchased it from?
16  A   No, I do not.
17  Q   How about the business cards, do you know
18  who you purchased those from?
19  A   I do not.
20  Q   Do you know whether they were purchased from
21  the same company?
22  A   I do not.

CONTINUED DEPOSITION OF JOHN BRATTON
CONDUCTED ON TUESDAY, DECEMBER 4, 2007

60

1  Q    Would you have been the one personally
2  responsible for seeing that that was accomplished, or
3  did someone else in your office do that?
4  A    It would be Jeanette Dembrell, Jeanette.
5  Q    How about any office supplies that would
6  have been purchased, would that have been something
7  that you purchased or Jeanette?
8  A    Both.
9  Q    The expert report next identifies office
10 accessories for $300.  Do you know what he's referring
11 to when he says office accessories?
12     MR. SHAIBANI:  Objection.
13 Q    You can answer.
14 A    Once again, I'm not going to try to pretend
15 how I understand how they have these things broken
16 down into whatever categories they have them broken
17 down into.  I can rattle off things that I either need
18 to purchase or thought I needed to purchase.  So what
19 categories they're broken down to as I'm sitting right
20 here, I don't know.
21 Q    Have you ever -- since the move, have you
22 ever given your counsel -- strike that.

61

1  Have you ever given your counsel a listing
2  of everything that was purchased or spent as a result
3  of the relocation?
4       MR. SHAIBANI:  Objection.  Calls for
5  attorney-client communications.  You don't have to
6  answer that.
7       MR. RANCK:  Counsel, you have already said,
8  yourself, that the information in this report came
9  from Mr. Bratton, and you passed it on to Mr. Lynch.
10 I believe that's what you said, correct?
11      MR. SHAIBANI:  It was a cooperative effort.
12      MR. RANCK:  So I'm trying to find out if the
13 witness --
14  Q   Let me ask it this way:  Did you or
15 individually on behalf of Bratton Realty ever prepare
16 a listing of everything that was purchased as a result
17 of the relocation in late -- in October, November
18 2007?
19  A   No.  I have not prepared a list of
20 everything on -- about anything during the case.
21 There's always things that you could leave out.  Did I
22 prepare a list of things that came up to the top of my

CONTINUED DEPOSITION OF JOHN BRATTON
CONDUCTED ON TUESDAY, DECEMBER 4, 2007

62

1  head?  The obvious things, yes.  I'm sure there's
2  plenty of things I've left out that I have spent money
3  on during the cost of this that did not make the list.
4  So to say everything is on a list would not be
5  accurate.  To say most things are on the list would be
6  accurate.
7       Q   Do you -- let me show you your expert's
8  report.  I'm going to cover up some handwritten notes
9  I have on the side.  Do you see under location costs,
10 paragraph three says office accessories, $300.  You
11 don't know what that refers to?
12      A   I can guess what that refers to.  I can
13 rattle off things that may fall into the category of
14 accessories.  Would you like me to do that?
15      Q   Sure.  Thank you.
16      A   Accessories could be anything from signage
17 that I hang on the wall that has Bratton Realty as
18 soon as you walk into the office.  That's an
19 accessories.  Light fixtures are considered
20 accessories.  Rugs are considered accessories.
21 Anything to make an office feel more inviting in a
22 lobby could be considered an accessory.

63

1   Q   And you purchased some of those things for
2   the relocation?
3   A   Yes, I did.
4   Q   Next is office paint. Now, what paint does
5   this refer to?
6   A   I'm very proud of my business colors and
7   logos, so everything that -- I like people to see the
8   three colors of Bratton Realty. Regardless of what
9   color the office is that I go to purchase it or lease
10  it, it will end up being green, purple and orange.
11  Q   So you painted the new space?
12  A   Yes, I did, inside and out.
13  Q   Did you paint it or did you hire someone to
14  do the painting?
15  A   I hired someone to paint.
16  Q   Who did you hire?
17  A   I can't give you the name of the company off
18  the top of my head, but it was Megalin something.
19  Q   Do you know how much you paid?
20  A   Magent or something.
21      No, I don't.
22  Q   Is that something you would have paid or

64

1  Bratton Realty would have paid?

2       A    Bratton Realty.

3       Q    How about the office accessories, Bratton
4  Realty would have paid it?

5       A    Yes, it would have.

6       Q    The next thing identified in this report is
7  office appliances.  Do you know what that refers to?

8       A    I believe it refers to computer equipment,
9  copier machines or fax machines, different things of
10 that nature.

11      Q    Did you purchase any of those for the new
12 location?

13      A    I purchased office -- new desks, as I
14 mentioned earlier.  There's a new desk that's designed
15 to go with the computer setup, slide-out lap trays and
16 a special space for the computer.  I have purchased
17 security stuff because the environment there is --
18 requires much more security than the place we were
19 previously in.  That's all I can think of off the top
20 of my head.

21      Q    Is that something Bratton Realty paid for,
22 those items --

1    A    Yes.

2    Q    -- as opposed to you individually?

3    A    See, this is why -- this is why your
4    questions are -- you say Bratton Realty and John
5    Bratton like so specific like it's cut and dry. It
6    may be on a Bratton Realty check or it may be on a
7    personal John Bratton check. It's based on what I
8    have on me at the time. So, for example, the painting
9    came out of my personal check because that's what I
10   had on me when the guy wanted to collect the invoice.
11   But it's still in the name of Bratton Realty. The
12   work was requested by Bratton Realty. So I'm a
13   one-person operation, you know. I own the company as
14   well as I'm a sole proprietorship, if you will. So if
15   someone is requesting payment and if I have a personal
16   check on me versus a Bratton Realty check, then I'm
17   going to write the check out of whatever I have on me
18   at the time and I don't --

19   Q    Do you -- when you do that, do you reimburse
20   yourself from Bratton Realty?

21   A    No, not always.

22   Q    With regard to all these categories, it's

CONTINUED DEPOSITION OF JOHN BRATTON
CONDUCTED ON TUESDAY, DECEMBER 4, 2007

97

1   Q   That was mid '06?

2   A   Yes.

3   Q   Do you know why it stopped at that point?

4   A   Why it stopped?

5   Q   Paying you rent.

6   A   I just -- it didn't make any sense after
7   talking to my accountant to write a check to myself.
8   Basically I was writing a check to myself. You're
9   paying -- you're paying yourself. It's all my money.

10  Q   You talked to your accountant about that
11  specifically?

12  A   Yes.

13  Q   How much do you think you could have rented
14  1223 10th Street for during the two years that you
15  were in Miss White's property had you been able to
16  rent it?

17  A   Approximately $1,800 a month.

18  Q   What's the basis for that figure?

19  A   That's what a one-bedroom basement apartment
20  with parking goes for in that area.

21  Q   So this would have been a residential?

22  A   Yes.