UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN BRATTON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Civil Action No. 06-694 (JDB) |
| ) | |
| CHATEL REAL ESTATE, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

## EXPERT REPORT OF THOMAS LYNCH ON ECONOMIC DAMAGES

### I. INTRODUCTION

I have been asked by the law firm of Litigation Associates, PLLC to render an opinion concerning the economic damages suffered by John Bratton and Bratton Realty, LLC ("plaintiffs") as a result of defendants Chatel Real Estate, Inc.'s, Mary White, Inc.'s, Mary White's, and Thierry Liverman's conduct in leasing office space to plaintiffs. I understand that this report will be filed in this case to assist the Court in resolving plaintiffs' complaint. I have examined defendants' conduct in this case in light of real estate industry standards, the National Association of Realtors ("NAR") Code of Ethics and Standards of Practice, the Greater Capital Area Association of Realtors ("GCAAR") Bylaws on Professional Standards, the Metropolitan Regional Information Systems ("MRIS") Rules and Regulations, Chatel's Fair Housing Manual and Property Manager's Manual, and the Independent Contractor Agreement executed by Mary White with Washington Fine Properties, which collectively set forth proper standards of conduct for real estate brokers.

I have also examined Bratton Realty's financial papers, including its income tax returns, the Listing Summary Reports for Bratton Realty for 2005-2007, a cost summary analysis



EXHIBIT
19

itemizing Bratton Realty's relocation costs and expenses, MRIS listings pertaining to plaintiffs' lost commissions, as well as other documents.

In support of this report, I incorporate by reference my report dated September 5, 2007 on the standards of conduct filed concurrently in this case.

## II.   QUALIFICATIONS

My qualifications are as follows. I have been a licensed real estate broker in the District of Columbia, Virginia, and Maryland for over 35 years. I attended Maryland University, Strayer College, Arlington County Adult Education for real estate courses as well as seminars in the real estate industry sponsored by the National Association of Realtors and local associations. I have owned Thomas J. Lynch Real Estate, Inc. since 1979 and am currently the owner and principal broker for Realitywatch.com, LLC. In addition, I am a member of numerous real estate organizations including the Washington, D.C. Association of Realtors, the Greater Capital Area Association of Realtors ("GCAAR"), the National Association of Realtors ("NAR") and the Northern Virginia Association of Realtors ("NVAR"). Further, I have taught courses to real estate brokers sponsored by GCAAR, including classes on ethics, professional standards, fair housing, diversity and grievance investigations for many years. From 1979 to the present, I have been retained as an expert witness in approximately 30 lawsuits involving real estate professionals. I have recently been contacted as a possible expert witness in the United States Department of Justice's antitrust action against the National Association of Realtors.

In my 35-plus years of experience as a real estate broker, I have acquired substantial knowledge concerning how real estate brokerage companies conduct business, their approaches to marketing, their sources of revenue, their operating expenses, as well as financial and

economic issues faced by the real estate brokerage industry as a whole and brokerage companies in the Washington, DC area in particular.

### III. DOCUMENTS REVIEWED

In drafting this report, I reviewed the following material:

1. Complaint; First Amended Complaint; Second Amended Complaint

2. Answer of Defendant Mary White to Plaintiff's Complaint ( May 3, 2006)

3. Answer of Defendants Chatel Real Estate, Inc. and Thierry Liverman to Counts I and II of Plaintiff's Complaint (May 8, 2006)

4. First Amended Complaint (filed May 17, 2006)

5. Answer of Defendants Chatel Real Estate, Inc. and Thierry Liverman to Plaintiff's Amended Complaint (June 7, 2006)

6. Answer to First Amended Complaint by Mary White (June 14, 2006)

7. Scheduling Order (July 25, 2006)

8. Mary White's Response to Request for Admissions of Fact (August 25, 2006)

9. Defendants Chatel Real Estate's and Thierry Liverman's Responses to Plaintiff's Requests for Admissions of Fact (September 8, 2006)

10. Defendant Mary White's Response to Plaintiff's Request for Production of Documents

11. Defendants Chatel Real Estate's and Thierry Liverman's Responses to Plaintiff's Interrogatories

12. Defendant Mary White's Response to Plaintiff's Interrogatories

13. Plaintiff's Response to Defendants Chatel Real Estate's and Thierry Liverman's Interrogatories

14. Plaintiff's Response to Defendant Mary White's Interrogatories

15. Defendants Chatel and Thierry Liverman's Initial Disclosures Pursuant to Rule 26(a)(1) (August 25, 2006)

16. Defendant Mary White's Initial Disclosures Pursuant to Rule 26(a)(1) (August 24, 2006)

17. Plaintiff's Initial Disclosures Pursuant to Rule 26(a)(1) (August 25, 2006)

18. GCAAR Rental Application from Roberta J. Medlin (signed by Roberta Medlin) (October 11, 2005)

19. Commercial Agreement of Lease between Mary White and unnamed Tenant (unsigned) (October 11, 2005)

20. Commercial Agreement of Lease between Mary White and Roberta J Medlin (unsigned) (October 11, 2005)

21. Roberta J. Medlin's Credit Report: Invoice No: 29807640: First American Registry Inc. (October 11, 2005)

22. Commercial Lease Agreement between Mary White & John Bratton: (signed by Mary White and John Bratton) (October 31, 2005)

23. Leases submitted by John Bratton to Chatel Real Estate which were rejected

24. GCAAR Rental Application from Bratton Realty, LLC (signed by John Bratton) (October 10, 2005)

25. John Bratton's Letter to Mary White (October 7, 2005)

26. John Gordon Forester's Letter to John Bratton re: 1622 Wisconsin Avenue, N.W.

27. John Bratton's Letter to John Gordon Forester re: 1622 Wisconsin Ave— Commercial Lease Agreement (October 19, 2005)

28. John Gordon Forester's Letter to John Bratton re: 1622 Wisconsin Avenue, N.W. (October 19, 2005)

29. John Gordon Forester's Facsimile to Thierry Liverman re: 1622 Wisconsin Avenue (October 26, 2005)

30. John Gordon Forester's Letter to John Bratton re: 1622 Wisconsin Avenue, N.W. (October 26, 2005)

31. John Bratton's Facsimile to John Gordon Forester re: 1622 Wisconsin Avenue— Delayed Lease Agreement (October 26, 2005)

32. John Bratton's Letter to John Gordon Forester re: 1622 Wisconsin Avenue— Final Lease (October 28, 2005)

33. Metropolitan Regional Information Systems, Inc. (first floor) (October 6, 2005)

34. Metropolitan Regional Information Systems, Inc. (lower floor) (October 6, 2005)

35. Metropolitan Regional Information Systems, Inc. (first floor) (October 13, 2005)

36. Metropolitan Regional Information Systems, Inc. (lower floor) (October 13, 2005)

37. Metropolitan Regional Information Systems, Inc. (lower floor) (November 7, 2005)

38. Metropolitan Regional Information Systems, Inc. (first floor) (November 7, 2005)

39. Facsimile Transmission from Paul Beito to John Gordon Forester re: John Bratton (October 18, 2005)

40. Bank of America Account Activity: Business Economy Checking Account held by John Bratton (October 19, 2005)

41. Bank of America Account Activity: Regular Checking Account held by John Bratton (October 19, 2005)

42. John Bratton: Mortgages, bank accounts and bills as of October 6, 2005

43. John Bratton: National Registry Credit Report (October 12, 2005)

44. John Bratton's formal complaint filed at the District of Columbia Office of Human Rights, including October 25, 2005 letter of Mandi Galloway

45. Photographs of John Bratton: October 2005

46. Chatel Real Estate Inc.'s Fair Housing Manual

47. Chatel Real Estate Inc.'s Property Manager's Manual

48. Transcript of the Deposition of Roberta J. Medlin (September 26, 2006)

49. Transcript of the Deposition of Thierry Liverman

50. Transcript of the Depositions John Bratton

51. Transcript of the Deposition of Mary White

52. Transcript of the Deposition of John Pagones

53. Transcript of the Deposition of Barrett Anderson

54. Transcript of the Deposition of Hope Edwards

55. Transcript of the Deposition of Patsy Petty

56. Transcript of the Deposition of Thomas Anderson

57. Metropolitan Regional Information Systems, Inc. Rules and Regulations Manual

58. Code of Ethics and Standards of Practice of the National Association of Realtors (NAR)

59. Greater Capital Area Association of Realtors, Inc. Bylaws

60. Chatel Real Estate Inc. Fair Housing Manual

61. Chatel Real Estate Inc. Property Manager's Manual

62. Bratton Realty's Income Tax Returns for 2005 and 2006

63. Metropolitan Regional Information Systems, Inc. Listing Summary Report for Bratton Realty for 2005-2007

64. Metropolitan Regional Information Systems, Inc. Year End Real Estate Trend Indicator for 01/01/06 to 12/31/06.

65. Metropolitan Regional Information Systems, Inc. Computation for Rental Value for Basement of 1223 10th Street, NW Property.

66. Metropolitan Regional Information Systems, Inc. Summary Data on the Mid-Atlantic Housing Market.

67. MRIS listings pertaining to transactions conducted by clients whom plaintiffs lost in 2005.

### IV.  ECONOMIC DAMAGES SUFFERED BY PLAINTIFFS

As described in my report on the standards of conduct, Defendants' unreasonable delay in processing plaintiffs' lease application, Defendants' misrepresentations to plaintiffs regarding the availability of the Property, Defendants' rejection of the first five lease applications submitted by plaintiffs, Defendants' imposition of more stringent financial qualification requirements on plaintiffs than those imposed on Roberta Medlin, Defendants' denial to plaintiffs of an option to renew the lease and the right to convert the lease to month-to-month at the end of the two-year term, and Defendants' other acts and omissions discussed in my report on the standards of

conduct were unacceptable violations of the code of ethics and industry standards applicable to real estate brokers.

As a result of Defendants' acts and omissions described above, plaintiffs have suffered substantial economic damages. Plaintiffs' economic damages fall into the following categories: relocation costs incurred by plaintiffs as a result of having to move their office from Georgetown, lost rental revenue in connection with John Bratton's property in Logan Circle, lost income and profits for plaintiffs, and lost commissions suffered by plaintiffs due to protracted negotiations on the Property in October 2005. A loss of agents resulting from the move will further add to plaintiffs' lost income and profits.

### a. Lost Profits and Loss of Good Will

The lease between Mary White and plaintiffs will terminate on November 1, 2007. In leasing the Property to plaintiffs, Defendants refused to allow plaintiffs to renew their lease or convert it to month-to-month or otherwise hold a lease for a term of 48 months which was advertised to the public. A minimum 5-year lease is customary in the real estate industry for commercial leases held by real estate brokers, and plaintiffs were prepared to lease the Property for four years. Plaintiffs will have to relocate from their Wisconsin Avenue Office in Georgetown by November 1, 2007 after only two years of occupying the space. As a result of having to relocate from Wisconsin Avenue in Georgetown to elsewhere, plaintiffs will suffer lost profits and loss of good will. This is due to the fact that plaintiffs will have to once again inform the public about their presence in a new location, attempt to persuade their existing customers to continue doing business with them at their new location, and lose client and customer visibility associated with their Wisconsin Avenue location. In addition, Bratton Realty will have a

*has Grant*

difficult time retaining and recruiting new agents who are interested in working at a Wisconsin Avenue real estate brokerage in Georgetown.

One cannot overlook the significance of having a Wisconsin Avenue Georgetown location for a real estate brokerage company. Given the decline of the housing market, if Bratton Realty were still operating from the basement of Mr. Bratton's 1223 Logan Circle property, its sales would have been dramatically lower than what they have been since moving to Georgetown. Having an office in Georgetown offers a real estate broker instant credibility which translates to greater sales. Once a real estate broker mentions that his business is located in Georgetown, he no longer needs to sell the business – the business's location in Georgetown speaks for itself. Bratton Realty's customers have come to associate the business with the Wisconsin Avenue location and this location draws numerous clientele and greater foot traffic through its visibility and marketability. Transferring the business to a new location will be a blow to the Bratton Realty, resulting in a substantial lost profits and loss of good will.

Studies concerning displaced businesses have confirmed that the effect of involuntary relocation on a business is substantial in the form of lost revenues. In the real estate industry, when a real estate brokerage is forced to relocate to a less desirable location, it loses revenues because of the delay associated with its customers and the public learning about its new location. It also loses revenues because it may have more difficulty in recruiting and retaining good real estate agents who previously associated with the brokerage due to its prime location on Wisconsin Avenue in Georgetown. The combined result of this is lost profits for the brokerage.

I would estimate Bratton Realty's lost profits to amount to over two months of revenue as a direct result of being forced to relocate from Wisconsin Avenue in Georgetown to a new location. This amounts to over **$73,874**.[1]

### b. Lost Rental Revenue

Because plaintiffs were denied an option to renew and the right to convert the lease to month-to-month at the end of the two-year term, they were forced to maintain two separate offices in the District of Columbia – the Georgetown Property leased from Mary White and Bratton Realty's previous office location at 1223 10th Street in Logan Circle to ensure that Bratton Realty had office space to relocate to after expiration of its lease with Mary White. Had defendants not insisted on Mr. Bratton's lease being terminated after 24 months, Mr. Bratton could have leased the 1223 10th Street Property to a tenant for over $1,500 per month during the two-year term of his lease with Mary White.[2] Plaintiffs have thus suffered over **$36,000** in lost rental revenue as a result of defendants' conduct.

### c. Relocation Costs

It is indisputable that Bratton Realty will suffer relocation expenses for having to move its office from Wisconsin Avenue in Georgetown to elsewhere in the District. The costs associated with the relocation consist of: (a) new office supplies for $500; (b) new business cards for seven independent contractors and John Bratton and new office letterhead for $1,500; (c) office accessories for $300; (d) office paint for $900; (e) new office appliances for $700; (f) new office furniture for $2,700; (g) new office brochures for $300; (h) new "For Sale" signs for $1,200; (i) mover's fees for $5,000; (j) fees paid to Geeks on Call, a computer company Bratton

---

[1] Bratton Realty generated $443,246 in real estate sales commissions in 2006. Its monthly revenue for sales commissions was thus $36,937.
[2] Metropolitan Regional Information Systems, Inc. CMA Statistics.

9

Realty uses for networking their computers, phone lines and DSL/cable internet service for $300 (j) losing business for two weeks as a result of the time incurred in relocating and setting up a new office which equates to $18,468. In my opinion, plaintiffs' reasonable relocation costs will amount to over **$31,868**.

### d. Lost Commissions

As a result of the unreasonable 24-day delay plaintiffs encountered in attempting to negotiate the lease with Defendants in October 2005, the inordinate time and energy expended to obtaining the lease, plaintiffs lost potential deals and sales commissions because Mr. Bratton was unable to assist certain clients with their real estate transactions in October 2005, and his clients were compelled to find another real estate agent to conduct these transactions.

In mid-October 2005, one of John Bratton's longtime friends and repeat clients, Paul Stanton, approached plaintiffs to sell a property located at 1213 Fairmont St., NW, Washington, DC 20009. Due to plaintiffs' inability to devote sufficient time and energy to Mr. Stanton in October 2005, Mr. Stanton was compelled to find another real estate agent to sell his house. Mr. Stanton was presented with a contract on December 2, 2005 and sold his house for $640,000 on January 15, 2006. At 2.5% commission, plaintiffs lost $16,000 of commissions for this transaction.

Penelope and Phillip Edwards approached Mr. Bratton to purchase a property in October 2005, but were compelled to find another real estate agent because of Mr. Bratton's inability to devote sufficient time and energy to the Edwards in October 2005. The Edwards ultimately purchased a property worth $279,900 on April 5, 2006 (with a contract date of February 21, 2006). The property is located at 3708 4th Street, SE, Washington, DC 20032. At 2.5% commission, plaintiffs lost $6,997.5 in commissions.

The Yepes family—Fedrico Yepes, Alexander Yepes, Aurelio Yepes, and Elisa Martin--approached Mr. Bratton in October 2005 to purchase two properties but were compelled to find another real estate agent because of Mr. Bratton's inability to devote sufficient time and energy to the Yepes in October 2005. The Yepes family ultimately purchased two properties in the very same neighborhood Mr. Bratton had toured with the Yepes in October 2005. These properties are located at 1448 Harvard Street, NW, Washington, DC 20009 and 1030 Lamont Street, NW, Washington, DC 20010. These properties were purchased for $640,000 and $665,000, respectively. At 2.5% commission, plaintiffs lost $16,000 on the Harvard Street property and $16,625 on the Lamont Street property.

The total commissions lost by plaintiffs as a result of defendants' unreasonable delay in leasing the Property to plaintiffs in October 2005 amount to **$55,622.50**.

## V.    CONCLUSION

It is my opinion that as a direct result of defendants' acts and omissions described above, plaintiffs will sustain over **$197,364.50** of economic damages.


Dated: September 7, 2007                                   _____
                                                            Thomas J. Lynch