UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**JOHN BRATTON, et al.**

      Plaintiffs

v.

**CHATEL REAL ESTATE, INC., et al.**

      Defendants

Case No.: 1:06CV00694

**ORAL HEARING REQUESTED**

Hon. John D. Bates

### DEFENDANTS CHATEL REAL ESTATE, INC. AND THIERRY LIVERMAN'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW, Defendants Chatel Real Estate, Inc. and Thierry Liverman ("Chatel Defendants"), by and through undersigned counsel, and hereby file this Reply to Plaintiffs' Opposition to Chatel Defendants' Motion for Summary Judgment. In support thereof, Chatel Defendants incorporate herein their original Motion for Summary Judgment and the Memorandum in Support thereof and state the following.

### ARGUMENT

While Plaintiffs attempt to overburden the Chatel Defendants and the Court with numerous exhibits and a lengthy "Statement of Material Facts Not in Dispute," they do not in any way raise a genuine dispute of material fact that would preclude entry of summary judgment for the Chatel Defendants. In that regard, much of the information cited by Plaintiffs is inadmissible and, in any event, immaterial regarding the claimed discrimination in the leasing process as alleged in this case.[1] Consequently, the Chatel Defendants remain entitled to summary judgment.

---

[1] Plaintiffs apparently fail to realize that evidence presented in response to a Motion for Summary Judgment must be *admissible*, as they indicate that they intend to rely on a recording of a Dateline NBC episode allegedly depicting discrimination against the underlined disabled by Mr. Pagones. However, there is absolutely no basis for the admissibility of

## I.    PLAINTIFF BRATTON DOES NOT HAVE STANDING TO PURSUE INDIVIDUAL CLAIMS

The undisputed facts make clear that Plaintiff Bratton does not have standing to pursue any individual claims against the Chatel Defendants.  Plaintiffs' position relies nearly exclusively on the fact that the final lease agreed to by Plaintiffs and Defendant White identifies John Bratton, individually, as the lessee.  The Chatel Defendants do not contest this fact.  However, Plaintiffs' Opposition fails to create a genuine dispute of material fact concerning the Chatel Defendants' lack of involvement in the negotiation of those lease terms, and it remains undisputed that the Chatel Defendants were not substantively involved in the negotiation and preparation of the final lease.  Thus, it is not disputed that all negotiations in which the Chatel Defendants were involved occurred with Bratton Realty, not Mr. Bratton individually.  Plaintiffs' failure to address this temporal difference (the Chatel Defendants' involvement concerned Bratton Realty, LLC, not Mr. Bratton; but the lease was later signed by Mr. Bratton individually) is fatal to his claims.

Plaintiffs somehow contend that the Chatel Defendants were "intimately" involved in the leasing process after October 12 because they drafted (i.e. typed up) the final lease per the instructions of Mary White's attorney, continued to manage the property, received a commission for the lease, and transmitted a plumbing bill to Plaintiffs. *See* Pl. Opp. at pp. 18-19.  The Chatel Defendants do not dispute these facts, but submit that they cannot evidence substantive involvement by the Chatel Defendants in the *lease negotiations* after October 12, 2005 sufficient to constitute discrimination.

Contrary to Plaintiffs' assertions, the undisputed facts do not demonstrate the Chatel Defendants' "intimate" involvement in the leasing process after October 12, 2005.  Indeed,

---

the videotape.  It has not been properly authenticated and has obviously been heavily edited.  As such, it is irrelevant and inadmissible hearsay and must be disregarded.

Plaintiffs admit as much in their Answers to Interrogatories and in Mr. Bratton's deposition testimony. First, the Plaintiffs responded to Interrogatory No. 11 as follows: "Mary White decided to engage in 'negotiations' with plaintiff on October 18, 2005 through her attorney, John Gordon Forester." Exhibit 13 attached to the Chatel Defendants' Motion for Summary Judgment, at p. 16. The Plaintiffs do not identify any involvement by the Chatel Defendants in that process. In addition, Mr. Bratton testified: "From that point on [the phone call from Thierry Liverman on October 12, 2005], I was dealing with John Gordon Forester." Exhibit 2 attached to the Chatel Defendants' Motion for Summary Judgment, Deposition of John Bratton dated January 19, 2007, at 221:14-19. Again, the Plaintiffs specifically refer to Mr. Forester, but do not identify the Chatel Defendants as involved after October 12, 2005. *See id.*

Moreover, it is undisputed that the only involvement of the Chatel Defendants after October 12, 2005 in the *lease negotiations* at issue was merely transmitting one of their form leases to Mr. Forester for further negotiations. Indeed, Exhibit 2 attached to the Plaintiffs' Opposition supports this contention. In that regard, the fax letter from Mr. Forester to Mr. Liverman dated October 26, 2005 stated that the *form* lease, with certain changes specifically instructed by Mr. Forester, was to be sent to Mr. Forester "for negotiations." As such, the undisputed facts show that any changes made to the Chatel Defendants' form lease were done pursuant to the instructions of Mr. Forester. Thus, there is no evidence that the Chatel Defendants were making recommendations to Ms. White or were otherwise "intimately" involved in the leasing process after October 12, 2005.

As all leases submitted prior to October 12, 2005 (*see* Exhibits 30-34 attached to the Plaintiffs' Opposition) identify Bratton Realty as the lessee, the undisputed facts continue to demonstrate that prior to that date, when the Chatel Defendants <u>were</u> involved in the negotiations, Bratton Realty was the only contemplated lessee. While Mr. Bratton's name

appears as the lessee on the final lease, he does not possess standing to pursue claims against the Chatel Defendants arising from alleged discrimination occurring after they ceased being substantively involved in the negotiation or completion of the lease.

Making another attempt to demonstrate Mr. Bratton's individual standing, Plaintiffs attempt to distinguish the damages allegedly suffered by Bratton Realty from those allegedly suffered by Mr. Bratton individually. In doing so, Plaintiffs concede that the claims relating to relocation expenses and lost profits were suffered, if at all, solely by Bratton Realty. *See* Pl. Opp., at p. 24. On the other hand, they attribute to Mr. Bratton individually the alleged lost commissions, lost rental revenue, and emotional distress. However, the Plaintiffs' claims fail for several reasons, each based on the undisputed facts.

First, regarding the alleged lost commissions, Plaintiffs have presented no evidence that the commissions would have inured to the benefit of Mr. Bratton individually rather than Bratton Realty, LLC.[2] In fact, Mr. Lynch, the Plaintiffs' purported expert witness, testified as follows:

> Q     Had another agent at Bratton Realty assisted Mr. Stanton in selling his property Bratton Realty would have earned a commission on that; correct?
> [Objection]
> A     That's correct.

*See* Exhibit 1 attached hereto, Deposition of Thomas J. Lynch dated December 10, 2007, at 468:1-6. Mr. Lynch testified similarly with regard to other customers allegedly lost. *See id.* at 487:22 – 488:11.

Moreover, as stated in the Chatel Defendants' Motion, the alleged lost rental revenue is not sufficiently supported even to demonstrate Mr. Bratton's standing. In that regard, the only document produced allegedly to support that claim is one page titled CMA Statistics,[3] which is

---

[2] In addition to the fact that these commissions, if proved, were suffered by Bratton Realty and not Mr. Bratton individually, these alleged damages are not sufficiently supported by the undisputed facts, as explained more fully in Section V, *infra*.
[3] *See* Exhibit 28 attached to Defendants' Motion for Summary Judgment.

apparently a comparison of nine (9) rental listings and provides average and median list and rent prices. However, the document does not include the size or location of the properties apparently compared. Furthermore, although Mr. Lynch estimated Plaintiffs' lost rental revenue at "over $36,000," he testified that he did not look at any comparable properties to come to that figure.[4] He was also unaware of the amount of space Plaintiffs' allegedly could have rented.[5] As such, his opinion regarding the amount that Plaintiffs allegedly could have received for renting their other property is purely speculative and cannot be used to support this claim.

Third, although Plaintiffs attempt to support Mr. Bratton's individual standing with his claim of emotional distress damages, the undisputed facts fail to support that claim. In this regard, several witnesses testified that Mr. Bratton's personality and demeanor did not change after the lease negotiations concluded. Gerardo Cruz testified that Bratton "was always a happy guy," even after the move to Georgetown.[6] James Grant "[could not] say that [he] saw a difference" between Mr. Bratton's demeanor at the 10th Street address and 1622 Wisconsin Avenue.[7] Finally, Paul Stanton, one of the Plaintiffs' friends and customers, testified that he never noticed a change in Mr. Bratton's demeanor.[8] As such, the established undisputed facts do not support Plaintiffs' alleged emotional distress damages.

Fourth, the fact that Bratton Realty assigned its claims to Mr. Bratton is immaterial. That does not provide Mr. Bratton standing to pursue individual claims; it merely allows Mr. Bratton to pursue any claims that Bratton Realty may have. It is completely illogical to suggest that the assignment automatically provides Mr. Bratton with individual claims that he otherwise would

---

[4] *See* Exhibit 22 attached to Defendants' Motion for Summary Judgment, at 424:4-8.
[5] *See id.* at 425:2-4.
[6] *See* Exhibit 25 attached to Defendants' Motion for Summary Judgment, at 26:2-11.
[7] *See* Exhibit 27 attached to Defendants' Motion for Summary Judgment, at 33:5-15.
[8] *See* Exhibit 29 attached to Defendants' Motion for Summary Judgment, at 41:17-22.

not possess. Therefore, the Plaintiffs' argument that "no person or entity" would have standing to pursue claims if Mr. Bratton's claims are excluded is clearly misplaced.

Finally, the fact that Mr. Bratton may have used the property for his own development projects, even if true, is immaterial. As already stated herein and in the Chatel Defendants' Motion and supported by the undisputed facts, during the time that the Chatel Defendants were substantively involved in the lease negotiations, only Bratton Realty, LLC was attempting to lease the property. Indeed, every lease submitted to the Chatel Defendants included Bratton Realty as the lessee (*see* Plaintiffs' Exhibits 30-34 attached to their Opposition), and Mr. Bratton indicated that the property was a great fit for Bratton Realty. *See* Chatel Defendants' Motion for Summary Judgment, at p. 3

As the damages alleged by Mr. Bratton individually are not supported by the undisputed facts, the only damages suffered, if at all, were suffered by Bratton Realty. Moreover, as the Chatel Defendants were not substantively involved in the lease negotiations after October 12, 2005, the fact that Mr. Bratton's name appears as the lessee on the final lease is immaterial. Therefore, the undisputed facts do not support Mr. Bratton's standing to pursue individual claims, and the Chatel Defendants are entitled to judgment as a matter of law with regard to Mr. Bratton's individual claims.

## II.    THE UNDISPUTED FACTS FAIL TO SUPPORT ANY CLAIMS OF DISCRIMINATION THROUGH OCTOBER 12, 2005

The Plaintiffs begin their Statement of Material Facts Not in Dispute by setting forth Mr. Pagones' statement to Defendant White regarding Bratton Realty's first proposed lease. They apparently attempt to imply that the Chatel Defendants must have discriminated against Plaintiffs given Mr. Pagones' statement. However, Mr. Pagones unequivocally explained that the reason for his statement was: "Because John [Bratton] had been very -- what I've been telling you --

6

John was very rude to me. In a way -- well, not threatening, but he was very rude and loud. And I told her about that."[9]   Furthermore, even if that statement is admitted, it is clearly not discriminatory in violation of the relevant statutes.

Moreover, Plaintiffs fail to dispute the facts set forth on pages 2 through 4 of the Chatel Defendants' Memorandum in support of their Motion for Summary Judgment. That is, although Plaintiffs have contended that Ms. Medlin's application was processed quicker, the undisputed facts demonstrate that the Chatel Defendants were not even aware of Ms. Medlin's interest until after she spoke to Defendant White on October 11, 2005.[10]   In addition, the Chatel Defendants met with Ms. Medlin at Defendant White's request and were never asked to meet with Mr. Bratton. *See* Chatel Defendants' Motion for Summary Judgment, at p. 19. Furthermore, credit checks for both applicants were performed on the same day in accordance with their completed rental applications. *See id.* at p. 4.

While Plaintiffs have asserted that Ms. Medlin was offered more favorable lease terms, they conveniently ignore the uncontradicted testimony of all witnesses that Ms. Medlin's lease was merely a draft, and was subject to negotiation and to certain terms being stricken by Defendant White.[11]   As Ms. Medlin withdrew her application, the document was never finalized and there was no agreement. As such, Defendant White never deleted those provisions she objected to had negotiations proceeded.[12]

Similarly, Ms. White and Ms. Medlin testified that, although they were negotiating the lease, certain of the specific terms had not yet been discussed, such as the Right of First

---

[9] *See* Exhibit 2 attached hereto, Deposition of John Pagones, at 54:7-10.
[10] *See* Exhibit 3 attached hereto, Deposition of Roberta Medlin, at 36:2-6; 42:2-10.
[11] *See* Exhibit 3 attached to Chatel Defendants' Motion for Summary Judgment, Deposition of Thierry Liverman, at 105:14 – 109:5.
[12] *See* Exhibit 11 attached to Chatel Defendants' Motion for Summary Judgment, Deposition of Mary White, at 106:11 – 109:5.

Refusal.[13]  Nevertheless, Ms. White testified with certainty that she would not have agreed to a Right of First Refusal with any applicant.[14]  Thus, there is no evidence to create a genuine dispute of material fact supporting the Plaintiffs' claims that Ms. Medlin was offered more favorable lease terms.

In addition, while the Plaintiffs have asserted that, unlike Ms. Medlin, they were required to provide income tax returns and bank statements before leasing the Property, the undisputed facts show that the only reason Defendant White did not request two years of income tax returns and bank statements from Ms. Medlin was because negotiations did not proceed that far.[15]  Had negotiations continued, Defendant White would have asked for those documents.[16]

Finally, although the Plaintiffs contend that the Chatel Defendants "misrepresented" the availability of Defendant White's property in Mr. Liverman's telephone call with Mr. Bratton, the undisputed facts fail to provide a basis for a discrimination claim based upon the exchange in that telephone call, as discussed further in Section IV, *infra*.

### III.  THE CHATEL DEFENDANTS' LACK OF SUBSTANTIVE INVOLVEMENT AFTER OCTOBER 12, 2005 DOES NOT SUPPORT CLAIMS OF DISCRIMINATION

As discussed above, Plaintiffs apparently argue that the Chatel Defendants were "intimately" involved in the alleged discrimination by having (1) input information into a form lease per the instructions of Defendant White's attorney, (2) managing the property during the

---

[13] *See id.* at 106:18 – 107:9, 107:19 – 108:22; *see also* Exhibit 14 attached to Chatel Defendants' Motion for Summary Judgment, Deposition of Roberta Medlin, at 24:19 – 25:13, 44:8-13.
[14] *See* Exhibit 11 attached to Chatel Defendants' Motion for Summary Judgment, at 62:3-18; 109:1-5
[15] *Id.* at 173:2-22.
[16] *Id.*

Plaintiffs' lease, (3) receiving a commission for the lease, and (4) transmitting a plumbing bill to Plaintiffs.[17]

However, the Plaintiffs' allegations in this case pertain to discrimination that allegedly occurred during the lease negotiations, not after the lease was agreed upon. Therefore, any actions alleged by Plaintiffs that occurred after the lease was finalized are immaterial, i.e. numbers (2) – (4) above. In any event, there has been no evidence generated that the Chatel Defendants discriminated at all with regard to their management of the property, their receipt of a commission, or their transmittal of a plumbing bill. Indeed, Mr. Bratton testified as to the substance of the allegations in this case as follows:

> I never contended the last two things you brought up [an issue with the payment of rent and the plumbing bill] as the grounds for my complaint … The meat and potatoes of my case is all the stuff that we've talked about prior to me getting into the space, prior to my negotiating that lease on October the 31st.[18]

Mr. Bratton also testified that the plumbing bill did not have to be paid because the issue was resolved, was apparently the result of an honest mistake, and was not discriminatory.[19] Thus, even Mr. Bratton himself does not contend that the issue with the plumbing bill evidences discrimination.[20]

Finally, the fact that the Chatel Defendants revised the form lease at the instruction of Defendant White's attorney and per his specific instructions does not support a claim of discrimination against them. In this regard, the Plaintiffs admitted that after October 12, 2005,

---

[17] While the Plaintiffs refer to "illegal steering" by the Defendants, for having negotiated with a potential tenant that was already a Georgetown property owner, there is no evidence of the alleged illegality. In any event, Defendant White leased her property to Plaintiffs, not Ms. Medlin.

[18] Exhibit 4 attached hereto, Deposition of John Bratton dated January 24, 2007, at 90:22 – 91:12.

[19] *See id.* at pp. 89-94.

[20] Similarly, the Chatel Defendants' receipt of a commission and management of the property during the Plaintiffs occupancy in no way evidence discrimination to support the Plaintiffs' claims. While the Chatel Defendants do not dispute the receipt of a commission and management of the property for the purposes of this Motion, those mere acts do not demonstrate discrimination. They merely evidence the Chatel Defendants' fee for their services prior to October 12, 2005 in finding a willing and ready lessee and their fulfillment of the duty to their principal to manage her property as agreed. As such, these actions are not evidence of discrimination that allow the Plaintiffs to avoid summary judgment.

all of their discussions regarding the lease terms occurred through Mr. Forester. *See* p. 3, *supra.*
Furthermore, in their Opposition, even the Plaintiffs state that the Chatel Defendants input the
information into the lease after Mr. Forester "requested" that they do so, and that the Chatel
Defendants were specifically "instructed" by Mr. Forester. *See* Pl. Opp., at p. 25. Thus, there is
no evidence that the Chatel Defendants *were at all involved in the actual negotiations* concerning
the terms to be included in the final lease. Rather, for all they knew, the terms set out by Mr.
Forester to be included in the form lease had already been agreed upon by Plaintiffs and Ms.
White. Based upon these undisputed facts, the Chatel Defendants cannot be liable to Plaintiffs
for any post-October 12, 2005 conduct as a matter of law.

Thus, the undisputed facts entitle the Chatel Defendants to judgment as a matter of law as
they were not substantively involved in the lease negotiations after October 12, 2005 and
anything that occurred after the lease was finalized is immaterial inasmuch as it is not the basis
for the Plaintiffs' Complaint and, in any event, is not discriminatory.

## IV.    THERE IS NO GENUINE DISPUTE OF MATERIAL FACT REGARDING DEFENDANT LIVERMAN'S LIMITED PERSONAL INVOLVEMENT

The Plaintiffs' Opposition fails to raise a genuine dispute of material fact concerning
Defendant Liverman's limited personal involvement in this matter. As support for their
arguments, the Chatel Defendants refer the Court to pages 18-19 of the Memorandum in support
of their Motion for Summary Judgment. As stated therein, Defendant Liverman is entitled
judgment as a matter of law based on the following undisputed facts: (1) he was never asked to
meet with Mr. Bratton regarding his proposed lease; (2) he advised Defendant White that she

could not engage in discrimination with regard to her leasing of the property; and (3) he promptly advised Mr. Bratton of Ms. White's decision.[21]

Thus, the undisputed facts provide absolutely no basis for a claim of discrimination against Defendant Liverman. Thus, Defendant Liverman is entitled to judgment as a matter of law on all claims asserted against him herein.

## V. PLAINTIFFS FAILED TO CREATE A GENUINE DISPUTE OF MATERIAL FACT CONCERNING THE LACK OF SUPPORT FOR THEIR ECONOMIC DAMAGES

The Plaintiffs' Opposition fails to generate a genuine dispute of material fact as to their alleged economic damages. In this regard, the Plaintiffs baldly contend that they have "suffered substantial monetary damages …." Pl. Opp., at p. 3. However, the Plaintiffs' support for their alleged damages continues to emanate from the insufficient and speculative report of their expert witness and deposition testimony and documents that do not support what the Plaintiffs allege. For these reasons, the Chatel Defendants continue to be entitled to judgment as a matter of law based on the undisputed facts.

While the Plaintiffs merely restate the alleged bases for their claimed economic damages in Paragraph 5 of their Statement of Material Facts Not in Dispute, they did not add any support beyond the speculative and conjectural statements made in their expert's most recent report. In that regard, as discussed in Section V of the Chatel Defendants' Motion, the Plaintiffs' purported expert witness did not even interview the witnesses upon whom he relies as the basis for the alleged damages, and makes several unsupportable assumptions in his report and testimony that are directly contradicted by the actual evidence.

---

[21] Even if Defendant Liverman said what the Plaintiffs allege in the telephone call on October 12, 2005, given Defendant White's decision to pursue negotiations with Ms. Medlin, there is no basis for a discrimination claim in Defendant Liverman merely relating to Plaintiffs that the property was being leased to someone else.

Mr. Lynch estimates that the Plaintiffs lost $73,874 in profits and "good will." However, Mr. Lynch apparently failed to recognize that Bratton Realty's profits were actually higher in 2005, when it was not located at the subject property for most of the year. Moreover, Mr. Lynch mentioned "studies concerning displaced businesses," but could not identify any such study.

Furthermore, as discussed in the Chatel Defendants' Motion, Mr. Lynch was only aware of one agent that left Bratton Realty, James Grant, who subsequently testified that he left to work at Keller Williams which does a lot of business and structures its teams differently, the motivating factor in his move. Other agents testified that they left real estate altogether due to market conditions unrelated to Bratton Realty's move from Georgetown. *See* Chatel Defendants' Motion for Summary Judgment, at p. 22. Thus, contrary to the Plaintiffs' statements, the undisputed facts do not support their claims of lost profits and the Chatel Defendants are entitled to judgment as a matter of law thereon.

The Plaintiffs' alleged lost rental revenue is also unsupported, as discussed in Section I, *supra.* Specifically, the Plaintiffs have presented one document allegedly to support this claim. That document — Exhibit 28 attached to the Chatel Defendants' Motion — apparently compares nine (9) properties allegedly similar to the Plaintiffs' property, but does not state the size or location of those other properties. Mr. Lynch also testified that he did not review any other properties to arrive at his estimation of the lost rental revenue and was even unaware of the size of the Plaintiffs' property.[22] As such, the alleged lost rental revenue is also speculative and based on conjecture regarding the rent that allegedly could have been received on a property not sufficiently compared to other similar properties.

The Plaintiffs also fail to recognize that their alleged relocation costs are unrecoverable inasmuch as they are all expenses that would have been incurred at some point, even if the

---

[22] *See* Exhibit 22 attached to Defendants' Motion for Summary Judgment, at 424:4-8.

Plaintiffs had a longer lease at the subject property. Therefore, the Plaintiffs do not present any evidence to create a genuine dispute of material fact that these alleged damages were *caused by* the alleged discrimination.

Furthermore, while the Plaintiffs include several invoices and receipts for the alleged relocation expenses, there is no evidence that many of the items on the receipts were purchased for Bratton Realty, as opposed to personal use unrelated to this case. Thus, the Plaintiffs cannot support their alleged relocation expenses with the undisputed material facts and the Chatel Defendants are entitled to judgment as a matter of law thereon.

The Plaintiffs also cannot properly document and support their alleged lost commissions. Their "support" appears to amount to self-serving statements that Mr. Bratton, individually, "would have conducted" transactions with Paul Stanton, the Edwards, and the Yepes and the MRIS listings pertaining to transactions in which those customers were involved. *See* Pl. Opp., at p. 11. However, Paul Stanton testified that he never uses one agent exclusively and was working with other agents at the time that Mr. Bratton was allegedly his agent. Subsequently, Mr. Stanton used another agent for the transaction identified by Plaintiffs not because of any lack of time on Mr. Bratton's part, but because he "[chooses] the broker that … is most appropriate for the transaction at issue …."[23]

Federico Yepes testified that he had not even engaged any agent at the time period alleged by Mr. Bratton. *See* Chatel Defendants' Memorandum in Support of their Motion for Summary Judgment, at p. 25. As such, far from supporting the Plaintiffs' claims, the undisputed testimony of their purported clients contradicts their claims that they would have earned these commissions.

---

[23] *See* Exhibit 29 attached to the Chatel Defendants' Motion, Deposition of Paul Stanton, at 48:7-11.

Although the Edwards did not testify in deposition, the MRIS listing allegedly supporting the Plaintiffs' claim to lost commissions does not support their claim. *See* Exhibit 31 attached to the Chatel Defendants' Motion for Summary Judgment. The listing indicates that the Edwards contracted for a property on February 21, 2006 and closed in April 2006. *See id.* In addition, there is no evidence that the Edwards used another agent due to Mr. Bratton's alleged lack of time relating to the events of this case. Thus, the undisputed facts do not support the Plaintiffs' claims that they would have earned a commission on a property purchased by the Edwards almost six months after the lease negotiations at issue concluded.

Moreover, as stated on page 26 of the Chatel Defendants' Memorandum and page four (4), *supra*, respectively, the Plaintiffs' agents gladly would have taken on clients had Mr. Bratton been unable to service them and Bratton Realty still would have earned a commission on those transactions. Additionally, Mr. Bratton testified that while Chatel was involved in the lease negotiations, he did not work on securing the lease as much as he represents. In this regard, he spent numerous days merely "waiting" for a return phone call, and apparently had ample time to attend to Bratton Realty's clients.[24]

Finally, the Plaintiffs are not entitled to damages for Mr. Bratton's alleged emotional distress, as there is no support for that claim beyond the Plaintiffs' own self-serving statements in their Opposition. Several of Mr. Bratton's friends, customers, and agents testified that they noticed no change in Mr. Bratton's demeanor after the lease negotiations concluded. *See* p. 5, *supra*; *see also* Chatel Defendants' Memorandum in Support of their Motion for Summary Judgment, at pp. 26-27. Thus, the undisputed material facts on this issue do not support the Plaintiffs' claims and entitle the Chatel Defendants to judgment as a matter of law.

---

[24] *See* Exhibit 2 attached to the Chatel Defendants' Motion, Deposition of John Bratton dated January 19, 2007, at 159:2-14; 166:21 – 167:6; 172:11 – 173:4; 266:3-11.

## CONCLUSION

WHEREFORE, for all of the above reasons and those stated in their original Motion for Summary Judgment and the Memorandum of Points and Authorities in support thereof, Defendants Chatel Real Estate, Inc. and Thierry Liverman respectfully request that this Honorable Court grant their Motion for Summary Judgment and dismiss this action with prejudice.

Respectfully Submitted,

**CHATEL REAL ESTATE, INC. and THIERRY LIVERMAN**

By:  _____/s/ Matthew A. Ranck_____
Matthew A. Ranck, Esq. (D.C. Bar # 484983)
ECCLESTON AND WOLF, P.C.
2001 S Street, N.W., Suite 310
Washington, D.C. 20009
(202) 857-1696 (telephone)
(202) 857-0762 (facsimile)
*Counsel for Defendants Chatel Real Estate, Inc. and Thierry Liverman*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2008, a true copy of the foregoing Reply was served electronically upon:

**Stefan Shaibani**
LITIGATION ASSOCIATE, PLLC
1150 Connecticut Avenue, N.W.
9th Floor
Washington, D.C. 20036
*Counsel for Plaintiffs*

**Robert H. Bouse, Jr.**
ANDERSON, COE & KING, LLP
201 North Charles Street
Suite 2000
Baltimore, MD 21202
*Counsel for Defendants Mary White and Mary White, Inc.*

_____/s/ Matthew A. Ranck_____
Matthew A. Ranck